HUGH HANDEYSIDE (*pro hac vice* application forthcoming)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
Fax: 212-549-2583
hhandeyside@aclu.org

MATTHEW CAGLE (CA Bar No. 286101)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: 415-621-2493
Fax: 415-255-1478
mcagle@aclunc.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA,<br><br>*Plaintiffs*,<br><br>v.<br><br>DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF STATE,<br><br>*Defendants*. | No. _____<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF THE FREEDOM OF INFORMATION ACT** |

1

# INTRODUCTION

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to enforce the public's right to information about the Defendant federal agencies' surveillance of social media users and speech.

2. Multiple agencies are taking steps to monitor social media users and their speech, activities, and associations. According to publicly available information, Defendants are investing in technology and systems that enable the programmatic and sustained tracking of U.S. citizens and noncitizens alike. They also have ramped up the monitoring and retention of immigrants' and visa applicants' social media information, including for the purpose of conducting what the Trump administration has called "extreme vetting" or "visa lifecycle vetting."

3. Defendants' surveillance of social media users and speech raises serious free speech and privacy concerns. Government monitoring and retention of information about First Amendment-protected speech increases the likelihood that agencies will investigate or otherwise monitor people based on that speech. It also risks chilling expressive activity and can lead to the disproportionate targeting of racial and religious minority communities, and those who dissent against government policies.

4. Over seven months ago, on May 24, 2018, Plaintiffs American Civil Liberties Union Foundation and American Civil Liberties Union Foundation of Northern California (together, the "ACLU"), submitted a FOIA request ("Request") to Defendants seeking the release of records pertaining to the federal government's social media surveillance. Plaintiffs sought expedited processing and a waiver of fees.

5. To date, none of the Defendants has released any responsive record.

6. Little information is available to the public on the tools and methods that Defendants use to conduct surveillance of social media users and speech, or any policies and guidelines that govern such surveillance. The public interest in the release of these records is clear. Because the government's growing use of social media surveillance implicates the online

speech of millions of social media users, U.S. citizens and residents of all backgrounds have an urgent need to understand the nature, extent, and consequences of that surveillance. Plaintiffs are entitled to immediate processing of the Request and timely release of the records.

## JURISDICTION

7. This Court has subject-matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(A)(vii), (4)(B), and (6)(E)(iii). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-06.

## VENUE AND INTRADISTRICT ASSIGNMENT

8. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

9. Pursuant to Local Rule 3-2(c) and (d), assignment to the San Francisco division is proper because a Plaintiff is headquartered in San Francisco.

## PARTIES

10. Plaintiffs American Civil Liberties Union Foundation and American Civil Liberties Union Foundation of Northern California are non-profit, non-partisan organizations dedicated to the principles of liberty and equality and to ensuring that the government complies with the Constitution and laws. They educate the public about civil liberties and employ lawyers who provide legal representation free of charge in cases involving civil liberties. They are also committed to transparency and accountability in government and seek to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating it to the press and the public (in both its raw and analyzed form) are critical and substantial components of their work.

11. Defendant Department of Justice ("DOJ") is a department of the Executive Branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

12. Defendant Federal Bureau of Investigation ("FBI") is a component of DOJ and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

13. Defendant Department of Homeland Security ("DHS") is a department of the Executive Branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

14. Defendant U.S. Customs and Border Protection ("CBP") is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

15. Defendant U.S. Citizenship and Immigration Services ("CIS") is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

16. Defendant U.S. Immigration and Customs Enforcement ("ICE") is a component of DHS and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

17. Defendant Department of State is a department of the Executive Branch of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## FACTUAL BACKGROUND

18. A person's speech and behavior on social media—including information that is not protected using privacy controls provided by social media companies themselves—can reveal extremely sensitive details about that person's private life.

19. For most U.S. citizens and non-citizens, using social media to speak, connect, and engage with others is second nature. As the Supreme Court observed in 2017, "social media users employ these websites to engage in a wide array of protected First Amendment activity on topics as diverse as human thought." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735–36 (2017) (quotation omitted).

20. Publicly available information indicates that the Defendant agencies routinely conduct surveillance of social media users and speech.

21. DHS and its component agencies use social media surveillance for various aspects of their operations. According to a February 2017 report by the DHS Inspector General, DHS has established a Shared Social Media Screening Service in order to "expand social media screening across all DHS components." Office of Inspector General, OIG-17-40, *DHS' Pilots for Social Media Screening Need Increased Rigor to Ensure Scalability and Long-term Success* 1 n.2, 4 (Feb. 27, 2017).

22.     Immigrants and visa applicants are a significant focus of expanded manual and automated social media surveillance by DHS and its components. A public notice issued in September 2017 shows that CIS, ICE, and CBP retain records in immigrants' files that include "social media handles, aliases, associated identifiable information, and search results." Dep't of Homeland Security, Privacy Act of 1974: System of Records, 82 Fed. Reg. 43,557 (Sept. 18, 2017). Federal contract notices also reflect that ICE has spent millions of dollars in the past year alone on social media surveillance technologies.

23.     The State Department collects and retains social media information routinely. On March 30, 2018, the department disclosed that it would significantly expand its collection of social media information. It published two notices of new rules requiring nearly all of the 14.7 million people who annually apply for work or tourist visas to submit social media identifiers they have used in the past five years on up to 20 online platforms in order to travel or immigrate to the United States. *See* 60-Day Notice of Proposed Information Collection: Application for Immigrant Visa and Alien Registration, 83 Fed. Reg. 13,806 (Mar. 30, 2018); 60-Day Notice of Proposed Information Collection: Application for Nonimmigrant Visa, 83 Fed. Reg. 13,807 (Mar. 30, 2018). The notices do not indicate whether the State Department shares such information with other government agencies or what consequences its collection may have for individuals living in the United States, including U.S. citizens.

24.     DOJ and its component agencies use social media surveillance for law enforcement purposes. In 2012, the FBI sought information from contractors on a planned automated tool that would enable the FBI to search and monitor information on social media platforms. The FBI also revealed in November 2016 that it would acquire social media monitoring software that would give it full access to Twitter data, searchable using customizable filters "tailored to operational needs." Federal Bureau of Investigation, Requisition Number DJF-17-1300-PR00000555, Limited Source Justification at 1 (Nov. 8, 2016).

25.     News reports further indicate that the FBI has established a social media surveillance task force. *See* Chip Gibbons, "The FBI Is Setting Up a Task Force to Monitor

Social Media," The Nation, Feb. 1, 2018. The purpose and scope of the task force remain unclear.

26. Technology plays a critical role in enabling the Defendant agencies to surveil and analyze social media content. The migration of speech and associational activity onto the social media web, and the concentration of that activity on a relatively small number of social media platforms, has made it possible for the Defendants to monitor speech and association to an unprecedented degree. At the same time, advances in data mining, network analysis, and machine-learning techniques enable the government to search, scrape, and aggregate content on a vast scale quickly and continuously, or to focus and filter such content according to specific investigative priorities.

27. Government surveillance of social media raises serious free speech and privacy concerns. Online speech is generally subject to the full protections of the First Amendment and should not serve as the basis for surveillance, investigation, or other adverse government actions, like placing people on watchlists. Government surveillance and retention of online speech without any connection to the investigation of actual criminal conduct makes it more likely that innocent people will wrongly be investigated, surveilled, or watchlisted. Additionally, public awareness that the government systematically monitors social media discourages the expression of disfavored or potentially controversial speech, which the First Amendment protects.

28. Basic due process and fairness are also undermined when significant decisions affecting peoples' lives—such as decisions about immigration status or whether a law enforcement or intelligence agency targets a person for additional scrutiny—are influenced by secret algorithms that analyze information obtained from social media without necessary context or rules to prevent abuse.

29. Suspicionless social media surveillance also facilitates the disproportionate targeting of specific racial and religious communities for investigation. Such discriminatory surveillance promotes a climate of fear and self-censorship within those communities.

30. Despite the Defendants' routine use of social media surveillance and the constitutional concerns it raises, little information is available to the public on the tools and

methods Defendants use for such surveillance or the policies and guidelines that govern their use.

31. Because government social media surveillance could impact free expression and individual privacy on a broad scale, it has generated widespread and sustained public and media interest.

### The ACLU's FOIA Request

32. On May 24, 2018, the ACLU submitted its FOIA Request to Defendants seeking the release of five categories of records, described with specificity in the Request: (1) social media surveillance-related policies and guidance; (2) records concerning the purchase or acquisition of social media surveillance technologies; (3) communications to or from private businesses concerning social media surveillance products; (4) communications to or from social media platforms concerning surveillance of social media content; and (5) records concerning the use or incorporation of social media content within systems or programs that make use of algorithms, machine-learning processes, or predictive analytics applications.

33. The ACLU sought expedited processing of the Request on the basis that the ACLU is primarily engaged in disseminating information, and the records are urgently needed to inform the public about actual or alleged federal government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v); 6 C.F.R. § 5.5(e); 28 C.F.R. § 16.5(e); 22 C.F.R. § 171.11(f).

34. The ACLU also sought a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and is not in the ACLU's commercial interest. *See* 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k); 28 C.F.R. § 16.10(k); 22 C.F.R. § 171.16. The ACLU further sought a fee waiver because it qualifies as a "representative of the news media" and the records are not for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 6 C.F.R. § 5.11(d)(1); 28 C.F.R. § 16.10(b)(6); 22 C.F.R. § 171.14(b).

35. None of the Defendants has released any responsive record or explained why responsive records are being withheld.

*Department of Justice*

36.     By letter dated June 13, 2018, DOJ acknowledged receipt of the Request. In the same letter, DOJ denied the ACLU's request for expedited processing and deferred a decision on the request for a fee waiver.

37.     The June 13, 2018 letter asserted that due to "unusual circumstances," DOJ would need to extend the time limit to respond to the Request beyond the additional ten-day extension provided in the FOIA. *See* 5 U.S.C. § 552(a)(6)(B)(i)–(iii).

38.     To date, over seven months since the ACLU submitted the Request, DOJ has neither released responsive records nor explained its failure to do so.

*Federal Bureau of Investigation*

39.     By letter dated June 8, 2018, the FBI acknowledged receipt of the Request.

40.     In the same June 8, 2018 letter, the FBI stated, "we neither confirm nor deny the existence of records responsive to your request pursuant to FOIA exemption (b)(7)(E)."

41.     By letter dated July 18, 2018, the ACLU administratively appealed the FBI's refusal to confirm or deny the existence of any responsive records.

42.     In a letter dated July 23, 2018, the FBI acknowledged receipt of the ACLU's administrative appeal and denied the ACLU's request for expedited processing of the appeal.

43.     To date, the ACLU has received no further response to its administrative appeal.

*Department of State*

44.     By letter dated June 22, 2018, the State Department acknowledged receipt of the Request. The same letter stated, "we are unable to process the request as submitted because it does not reasonably describe the records sought."

45.     By letter dated September 19, 2018, the ACLU administratively appealed the State Department's determination. The State Department acknowledged receipt of the administrative appeal by letter dated September 27, 2018.

46.     By letter dated October 30, 2018, the State Department upheld the original decision and rejected the ACLU's administrative appeal.

*Department of Homeland Security*

47. By letter dated May 30, 2018, DHS acknowledged receipt of the Request and stated that it had received the Request on May 24, 2018. The same letter stated, "we determined that your request is too broad in scope or did not specifically identify the records which you are seeking."

48. By letter dated June 29, 2018, the ACLU administratively appealed DHS's determination. DHS acknowledged receipt of the administrative appeal by letter dated July 2, 2018.

49. By letter dated December 18, 2018, the appeals officer granted the ACLU's appeal and remanded it for corrective processing.

50. To date, DHS has neither released responsive records nor explained its failure to do so.

*U.S. Customs and Border Protection*

51. By letter dated May 25, 2018, CBP acknowledged receipt of the Request.

52. To date, the ACLU has received no further communication from CBP regarding the Request. CBP has neither released responsive records nor explained its failure to do so.

*U.S. Immigration and Customs Enforcement*

53. By email on May 31, 2018, ICE acknowledged receipt of the Request. In the same email, ICE invoked a 10-day extension of the deadline to respond to the Request under 5 U.S.C. § 552(a)(6)(B).

54. To date, the ACLU has received no further communication from ICE regarding the Request. ICE has neither released responsive records nor explained its failure to do so.

*U.S. Citizenship and Immigration Services*

55. By letter dated June 6, 2018, CIS acknowledged receipt of the Request. In the same letter, CIS granted the ACLU's requests for expedited processing and a fee waiver.

56. In email correspondence, CIS requested that the ACLU narrow the scope of the Request. By responsive email and over the phone, the ACLU explained that the scope of the Request is reasonable and declined to narrow its scope.

57. To date, CIS has neither released responsive records nor explained its failure to do so.

## CAUSES OF ACTION

58. Defendants' failure to make a reasonable effort to search for records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations.

59. Defendants' failure to timely respond to the Request violates the FOIA, 5 U.S.C. § 552(a)(6)(A), and Defendants' corresponding regulations.

60. Defendants' failure to process the Request expeditiously and as soon as practicable violates FOIA, 5 U.S.C. § 552(a)(6)(E), and Defendants' corresponding regulations.

61. Defendants' failure to make promptly available the records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

62. The failure of Defendants DOJ, FBI, DHS, CBP, ICE, and the Department of State to grant Plaintiffs' request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and Defendants' corresponding regulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1. Order Defendants to conduct a thorough search for all responsive records;

2. Order Defendants to immediately process and release all records responsive to the Request;

3. Enjoin Defendants DOJ, FBI, DHS, CBP, ICE, and the Department of State from charging Plaintiffs search, review, or duplication fees for the processing of the Request;

4. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

5. Grant such other relief as the Court may deem just and proper.

//
//
//
//

|   |   |
|---|---|
| | Respectfully submitted, |
| DATED: January 17, 2019 | Hugh Handeyside<br>American Civil Liberties Union Foundation<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>Telephone: 212-549-2500<br>hhandeyside@aclu.org |
| | _/s/ Matthew Cagle_____<br>Matthew Cagle<br>American Civil Liberties Union Foundation of Northern California<br>39 Drumm Street<br>San Francisco, CA 94111<br>Telephone: 415-621-2493<br>mcagle@aclunc.org |
| | *Attorneys for Plaintiffs* |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
CASE NO.