1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO-OAKLAND DIVISION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, *et al.*,

   *Plaintiffs*,

  v.

DEPARTMENT OF JUSTICE, *et al.*,

   *Defendants*.

Case No. 19-CV-00290-EMC

**JOINT STATUS REPORT**

  The parties jointly submit this status report pursuant to the order issued by the Court following the status conference held on June 12, 2019 (ECF Nos. 22, 23).

I. *Negotiations Regarding Scope of Requests to FBI and DHS.*

  The parties continue to meet and confer regarding the scope of portions of the ACLU's request to the FBI and to DHS.

  Defendants state as follows:

  DHS believes that the ACLU's proposed revised request will be workable if the ACLU can identify the specific offices within DHS Headquarters from which it seeks records. DHS is willing to meet and confer with the ACLU to identify such offices.

The FBI has determined that the revision to Part 3 of the FOIA request has refined the request sufficiently for the FBI to conduct a reasonable search, and the FBI is initiating a search of custodians in the Finance and Facilities Division for records responsive to Part 3.  The FBI has determined that the proposed revision of Part 4 of the request is still too broad for a reasonable search, as a responsive search would involve all investigative offices and custodians in FBI Headquarters. The FBI can continue to meet and confer with Plaintiffs with respect to that portion of the request.

Plaintiffs respond that they are willing to continue conferring with DHS and the FBI in an effort to reach agreement on the scope of Parts 3 and 4 of the request.

II.     *Status of the State Department's Search and Processing.*

The State Department ("State") has commenced its search in response to Plaintiffs' revised FOIA request, and the initial search has yielded approximately 7,200 pages of potentially responsive records. State is now reviewing certain results to determine responsiveness, and will be conducting additional follow-up searches as needed if the records located in the initial search indicate additional leads. State is prepared to make a first production on August 1, 2019. The parties have agreed to meet and confer regarding a schedule for further productions.

III.    *FBI and OIP's Processing of Plaintiffs' Request.*

         *A. Defendants' Report.*

As requested by the Court, Defendants are also providing further information regarding the challenges faced by the FBI and OIP in processing Plaintiffs' FOIA request, which prevent those components from completing their ongoing searches and processing in a more compressed timeframe.

First, the FBI is currently processing an enormous number of FOIA requests. In FY 2018, the FBI received approximately 32,777 new requests with approximately 9,316 and 7.7 million pending pages at the end of the fiscal year. This is an approximate 18% rise in requests received from the previous fiscal year.

2

In addition, recent years have seen a high volume of extremely complex requests. The complexity of the requests processed by the FBI's Records Office, as well as the volume of requests that implicate sensitive law enforcement and/or national security information, has seriously taxed the resources of the Record/Information Dissemination Section ("RIDS") Further, in recent years, the FBI has faced a record amount of FOIA and Privacy Act litigation. At the same time, RIDS' resources for processing FOIA requests have remained static. In this case, the FBI's processing of parts 1 and 5 of the ACLU's request are affected by these and other challenges. Due to the universal utility of social media analysis by FBI investigators, across the FBI's areas of responsibility, RIDS has encountered difficulties establishing the full extent of divisions/sections/units who possess potentially responsive records.  RIDS began its search by requesting searches be completed by a select group of FBI entities it deemed most likely to possess responsive records.  In reviewing responses and potentially responsive records provided by these entities, RIDS found indications additional divisions/sections/units possibly possessed potentially responsive records.  In following these additional search leads, RIDS has now located indications it needs to request even more FBI entities conduct searches of their holdings.  This pattern of an ever-expanding search has caused RIDS to encounter delays as it attempts to be as thorough as possible in complying with Plaintiffs' request.

In a good faith effort to show the FBI is diligently working to comply with Plaintiffs' request, the FBI while searching will concurrently begin to process currently gathered responsive records while it continues to search for and scope through additionally potentially responsive records.  RIDS will begin assembling the pages that have been scoped and then will start to identify records ready for processing that it has deemed responsive to Plaintiffs' request.  However, the processing work must take into consideration other competing processing deadlines in other pending FOIA litigation cases in combination with already

3

strained resources.  The FBI anticipates it can provide the first batch of 500 responsive pages reviewed by August 31, 2019. The FBI will provide the Court and Plaintiff with an accounting of the size of the total universe of responsive records by September 30, 2019.  Additionally, at that time, the FBI will propose a processing schedule for this material.

Second, OIP's estimated search completion date of August 31, 2019, based on an agreement with Plaintiffs to limit the search to 44 custodians in six DOJ offices, will itself pose a challenge. For FOIA requests processed by OIP, IT staff in DOJ's Justice Management Division ("JMD") complete necessary searches of electronic records, including the emails of relevant custodians. JMD currently has four staff members working on electronic searches.  They have hired more, but the new hires are not fully trained and operational at this time.

OIP faces a large backlog of searches due to a spike in FOIA requests and lawsuits. Requestors submitted about 3,500 new FOIA requests to OIP in fiscal year 2018, which was a 25% increase from FY 2017 and a 95.4% increase from FY 2016 (which was already the highest total on record). OIP is currently engaged in over 100 active litigation matters, about 50 of which still require records searches or document production schedules to be completed. The resulting backlog was exacerbated by technical issues: Specifically, OIP discovered two significant technical issues in May 2018 that implicated the searches that the IT staff at JMD had already completed for a significant number of OIP's FOIA requests. Those technical issues required JMD to remediate all relevant data impacted before re-running all of the searches against that remediated data. This was a major setback in OIP's efforts to tackle its growing backlog of email searches. In addition, OIP suffered the consequences of a thirty-five day lapse in appropriations from December 21, 2018, until January 25, 2019.  During the thirty-five days that the government was closed, no OIP personnel were authorized to work on FOIA matters. However, OIP's websites remained active, and over the course of these

4

thirty-five days, OIP continued to receive a high volume of FOIA requests. This inability to work on preexisting deadlines as new requests continued to pour in resulted in a compounding of request deadlines and pressures on OIP staff.

Although OIP is taking diligent and reasonable steps to increase its productivity, OIP's existing resources are insufficient to deal with the overall volume, and its backlog continues to increase each day. OIP recently restructured its FOIA processing procedures to create a more agile team-centric approach that better aligned with OIP's existing multi-track processing system in which requests are processed on a first-in, first-out basis. OIP has also worked with JMD/OCIO to implement an even more aggressive restructuring of JMD's search process within seven search queues, which are distinguished by the number of search custodians implicated by a given FOIA request. This restructuring improved efficiencies, and has allowed OIP to make substantial progress in its FOIA request processing backlog. Given the challenges and constraints described above, even OIP's estimated search completion date of August 31, 2019, is ambitious. Once the search is completed, and OIP is aware of the volume of records at issue, OIP will be able to provide an estimated final processing schedule.

If requested by the Court, the defendants are willing to submit sworn declarations addressing the challenges and constraints referenced above.

*B. Plaintiffs' Response.*

Plaintiffs again emphasize that they filed their request thirteen months ago, and this lawsuit has now been pending for over five months, yet the FBI and OIP appear to have taken only limited steps toward processing the request. Plaintiffs, moreover, substantially narrowed the request as to both agencies in response to stated concerns regarding breadth. While courts may consider the volume of pending requests to agencies in setting a reasonable production schedule, Plaintiffs maintain that the FBI and OIP have already significantly delayed processing the request. Plaintiffs continue to urge that the FBI's initial production and OIP's

5

1

search should be complete well prior to August 31.

2

3    IV.   *The Parties' Positions Regarding Plaintiffs' Request for Early Summary*
4          *Judgment Motions Regarding the FBI's Partial Glomar Response.*

5              A.  *Plaintiffs' Position.*

6          In the parties' joint letter dated June 14, 2019 (ECF No. 24), Plaintiffs stated

7    that, in light of the unavailability of administrative relief, the parties should submit

8    a proposed schedule for partial summary judgment briefing on the FBI's "Glomar"

9    response to parts 2(a)-(c) of the request. Plaintiffs now seek to more fully explain

10   their position as to the appropriateness of partial summary briefing as to the FBI's

11   Glomar response.

12         Partial summary judgment allows for the prompt disposition of specific

13   claims or defenses. *Hendrickson v. Octagon, Inc.*, 225 F. Supp. 3d 1013, 1024

14   (N.D. Cal. 2016). The Ninth Circuit has approved of partial summary judgment

15   where it narrows the issues before the court, shortens the overall duration of

16   proceedings, or "efficiently separate[s] the legal from the factual questions."

17   *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1525

18   (9th Cir. 1987). Partial summary judgment is routinely used to resolve threshold

19   disputes in FOIA litigation, including specifically regarding an agency's Glomar

20   response. *See, e.g.*, *ACLU v. Dep't of Justice*, 880 F.3d 473, 480 n.3 (9th Cir.

21   2018) (district court bifurcated issues for summary judgment purposes); *Elec.*

22   *Frontier Found. v. Dep't of Justice*, No. 16-cv-02041-HSG, 2019 WL 1369922

23   (N.D. Cal. Mar. 26, 2019) (hereinafter "EFF"); *Ctr. for Biological Diversity v.*

24   *Office of Mgmt. and Budget*, 625 F. Supp. 2d 885, 888-89 (N.D. Cal. 2009); *ACLU*

25   *v. Dep't of Defense*, 389 F. Supp. 2d 547 (S.D.N.Y. 2005); *Reporters Committee*

26   *for Freedom of Press v. Fed. Bureau of Investigation*, 369 F. Supp. 3d 212 (D.D.C.

27   2019); (Glomar response by FBI); *James Madison Project v. Central Intelligence*

28   *Agency*, 344 F. Supp. 3d 380, 385 (D.D.C. 2018) (Glomar responses by Central

Intelligence Agency (CIA), National Security Agency, and FBI); *Int'l Counsel Bureau v. Cent. Intelligence Agency*, 774 F. Supp. 2d 262 (D.D.C. 2011) (Glomar response by CIA). Government defendants themselves—including the FBI—have initiated or agreed to partial summary judgment briefing in FOIA litigation. See, e.g., *ACLU*, 880 F.3d at 481; *Reporters Committee*, 369 F. Supp. 3d at 218; *EFF*, 2019 WL 1369922 at *1; *James Madison Project*, 344 F. Supp. 3d at 385; *Int'l Counsel Bureau*, 774 F. Supp. 2d at 264.

Immediate partial summary briefing on the FBI's Glomar response is plainly warranted here. First, the Glomar response raises a distinct legal issue that no other defendant has asserted. *ACLU*, 880 F.3d at 480 n.3 (bifurcation of summary judgment briefing because of "distinct factual and legal questions"). Adjudicating the legal questions posed by the Glomar response will not affect other agencies' processing of the request and will simply clarify the scope of the FBI's search, processing, and production of records. Second, waiting to resolve the parties' Glomar dispute would inappropriately delay the resolution of a clear threshold question: whether FBI should even search for and process the records requested in parts 2(a)-(c). Delaying briefing would postpone resolution of that issue until after all other agencies have completed their searches and productions, and after the FBI itself has searched for and processed records responsive to the other parts of the request. Notably, most Defendants—including the FBI—have not yet provided anticipated dates for the ultimate completion of the processing of the request. It therefore remains unclear when—if the parties do not brief the validity of the Glomar response now—the issue will ultimately be adjudicated. And if the Court were to rule in Plaintiffs' favor, the FBI would then have to search for, process, and produce records responsive to parts 2(a)-(c), further delaying the ultimate resolution of this case. Third, Defendants can offer no valid countervailing reason not to proceed with partial summary judgment briefing on this distinct issue.

Because partial summary judgment briefing would promote efficiency by

7

resolving a distinct threshold legal issue, and because there is no just reason for delaying that briefing, Plaintiffs respectfully request that the Court direct the parties to confer regarding, and submit, a proposed briefing schedule by July 3, 2019.

### B. The FBI's Position.

The FBI opposes Plaintiffs' request that the Court set an immediate summary judgment briefing schedule with respect to the isolated issue of the FBI's Glomar response. First, the equities at issue in the FBI's Glomar response are closely related to the equities that likely will be at issue if the ACLU challenges withholdings or redactions of documents located and processed in response to other portions of the ACLU's request. In other words, in this case, although the Glomar does present some distinct legal questions, the issues it implicates in fact overlap with other issues likely to arise in this litigation. It makes sense for the Court to consider those issues together, once the FBI and the other defendants have issued final responses to all parts of Plaintiffs' request, rather than considering the Glomar issue in isolation. Second, even if the Court does order bifurcated summary judgment briefing, it would not be feasible for the FBI to file any such summary judgment motion before October 2019. The undersigned counsel is lead counsel for the Government in a multi-million person class action lawsuit that is scheduled to go to trial in August 2019. The undersigned counsel will be out of the country from June 24-July 2, 2019 (and out of the office through July 3, 2019), and then will be occupied with pretrial deadlines, trial preparation, litigation of the trial itself, and post-trial briefing through September 2019, along with existing commitments in this case and others. Accordingly, should the Court order bifurcated summary judgment briefing in this case, the FBI respectfully requests that the briefing commence in or after October 2019.

Respectfully submitted,

8

1   DATED: June 21, 2019                    /s/*Hugh Handeyside*
2                                           Hugh Handeyside
                                            American Civil Liberties Union Foundation
3                                           125 Broad Street, 18th Floor
4                                           New York, NY 10004
                                            Telephone: 212-549-2500
5                                           hhandeyside@aclu.org

6
                                            Matthew Cagle
7                                           American Civil Liberties Union Foundation
                                                of Northern California
8                                           39 Drumm Street
9                                           San Francisco, CA 94111
                                            Telephone: 415-621-2493
10                                          mcagle@aclunc.org
11                                          *Attorneys for Plaintiffs*

12                                          JOSEPH H. HUNT
                                            Assistant Attorney General
13
                                            ELIZABETH J. SHAPIRO (D.C. Bar No.
14                                          418925)
                                            Deputy Branch Director
15
                                            /s/ *Elizabeth Tulis*
16                                          ELIZABETH TULIS (NY Bar)
                                            Trial Attorney
17                                          U.S. Department of Justice,
                                            Civil Division, Federal Programs Branch
18                                          1100 L Street, NW
                                            Washington, D.C.  20005
19                                          Telephone:  (202) 514-9237
                                            elizabeth.tulis@usdoj.gov
20
                                            *Attorneys for Defendants*
21

22

23

24

25

26

27

28

JOINT STATUS REPORT
CASE NO. 19-CV-00290-EMC