JOSEPH HUNT
Assistant Attorney General
ELIZABETH SHAPIRO
Deputy Director, Federal Programs Branch
AMY POWELL
Trial Attorney (NY Bar)
Department of Justice
Civil Division, Federal Programs Branch
150 Fayetteville St, Suite 2100
Raleigh, NC 27601
T: 919-856-4013
E: Amy.Powell@usdoj.gov
*Attorney for Defendant*
*United States Department of Justice*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>Defendants. | Case No. 3: 19-cv-00290-EMC<br><br>**DEFFENDANT'S NOTICE AND MOTION FOR PARTIAL SUMMARY JUDGMENT WITH RESPECT TO FBI**<br><br>Hearing Date: Oct. 17, 2019<br>Time: 1:30 pm<br>Place: Courtroom 5 |

**DEFENDANT DOJ'S NOTICE AND MOTION FOR**

**PARTIAL SUMMARY JUDGMENT WITH RESPECT TO FBI**

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ......................................................................................................................... 3

I.     Statutory Standards ..................................................................................................... 3

      A.     The Freedom of Information Act .................................................................... 3

      B.     The Glomar Response ..................................................................................... 5

II.     The FBI Properly Declined to Confirm or Deny the Existence of Certain Immigration Enforcement Records Pursuant to Exemption (7)(E). ................................................ 5

      A.     Exemption 7 Threshold .................................................................................. 5

      B.     The Withheld Information Reveals Non-Public Details of a Law Enforcement Technique ........................................................................................................ 6

           (1)     7(E) Standards ..................................................................................... 6

           (2)     The FBI Established that the Partial Glomar Response is Proper Pursuant to Exemption 7(E) ..................................................................... 7

III.     The FBI Has Not Waived These Exemptions By Official Acknowledgement. ....... 9

i

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

# TABLE OF AUTHORITIES

CASES

*ACLU v. CIA*,
  710 F.3d 422 (D.C. Cir. 2013) ............................................................................................ 9, 10

*ACLU v. DOJ*,
  880 F.3d 473 (9th Cir. 2018) ...................................................................................................... 6

*Afshar v. Dep't of State*,
  702 F.2d 1125 (D.C. Cir. 1983) ................................................................................................ 10

*Bigwood v. Dep't of Defense*,
  132 F. Supp. 3d 124 (D.D.C. 2015) ............................................................................................ 6

*Church of Scientology v. U.S. Dep't of the Army*,
  611 F.2d 738 (9th Cir. 1979) .................................................................................................. 4, 5

*CIA v. Sims*,
  471 U.S. 159 (1985) .................................................................................................................... 3

*Cozen O'Connor v. Dep't of Treasury*,
  570 F. Supp. 2d 749 (E.D. Pa. 2008) .......................................................................................... 7

*Ctr. for Nat'l Sec. Studies v. DOJ*,
  331 F.3d 918 (D.C. Cir. 2003) .................................................................................................... 3

*Favish v. Office of Indep. Counsel,*
  217 F.3d 1168 (9th Cir. 2000) .................................................................................................... 4

*Fitzgibbon v. CIA*,
  911 F.2d 755 (D.C. Cir. 1990) .................................................................................................... 9

*Freedom of the Press Found. v. DOJ*,
  241 F. Supp. 3d 986 (N.D. Cal. 2017) ........................................................................................ 9

*Frost v. DOJ*,
  No. 17-CV-01240-JCS, 2017 WL 2081185 (N.D. Cal. May 15, 2017) ................................. 6, 7

*Gardels v. CIA*,
  689 F.2d 1100 (D.C. Cir. 1982) .................................................................................................. 4

*Gordon v. FBI*,
  388 F. Supp. 2d 1028 (N.D. Cal. 2005) ...................................................................................... 7

ii

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

*Hamdan v. DOJ*,
    797 F.3d 759 (9th Cir. 2017) .................................................................................................. 6

*Irons v. Bell*,
    596 F.2d 468 (1st Cir. 1979) ................................................................................................... 5

*Janangelo v. Treasury Inspector Gen. for Tax Admin.*,
    726 F. App'x 660 (9th Cir. 2018) ........................................................................................... 9

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ............................................................................................................ 3, 4

*Kalu v. IRS*,
    159 F. Supp. 3d 16 (D.D.C. 2016) .......................................................................................... 7

*Kissinger v. Reporters Comm. for Freedom of the Press*,
    445 U.S. 136 (1980) ................................................................................................................ 4

*Lane v. Dep't of Interior*,
    523 F.3d 1128 (9th Cir. 2008) ................................................................................................ 4

*Lawyers Comm. for Civil Rights of S.F. Bay Area v. Dep't of Treasury*,
    534 F. Supp. 2d 1126 (N.D. Cal. 2008) .................................................................................. 4

*Lion Raisins, Inc. v. U.S. Dep't of Agric.*,
    354 F.3d 1072 (9th Cir. 2004) ................................................................................................ 4

*Mayer Brown, LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) .............................................................................................. 6

*McCash v. CIA*,
    No. 5:15-CV-02308-EJD, 2017 WL 1047022 (N.D. Cal. Mar. 20, 2017) ............................. 7

*Minier v. CIA*,
    88 F.3d 796 (9th Cir. 1996) .................................................................................................... 3

*PETA v. NIH*,
    745 F.3d 535 (D.C. Cir. 2014) ................................................................................................ 7

*Phillippi v. CIA*,
    546 F.2d 1009 (D.C. Cir. 1976) .............................................................................................. 5

*Pickard v. DOJ*,
    653 F.3d 782 (9th Cir. 2011) ............................................................................................. 5, 9

iii

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

*Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
   740 F.3d 195 (D.C. Cir. 2014) .................................................................................... 5

*Rosenfeld v. DOJ*,
   57 F.3d 803 (9th Cir. 1995) ........................................................................................ 6

*SafeCard Servs., Inc. v. SEC*,
   926 F.2d 1197 (D.C. Cir. 1991) ................................................................................. 4

*Spurlock v. FBI*,
   69 F.3d 1010 (9th Cir. 1995) ..................................................................................... 3

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009) ......................................................................................... 5

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007) ............................................................................ 4, 10


STATUTES

5 U.S.C. § 552(a)(4)(B) .................................................................................................. 3, 4

5 U.S.C. § 552(b) ............................................................................................................... 3

5 U.S.C. § 552(b)(7) .......................................................................................................... 5

5 U.S.C. § 552(b)(7)(E) ............................................................................................ *passim*


OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) .......................................................................................................... 4

H.R. Rep. No. 89-1497 (1966), reprinted in 1966 U.S.C.C.A.N. 2418 ............................. 3

iv

ACLU v. DOJ, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

# INTRODUCTION

NOTICE is hereby given of the filing of this motion by Defendant Department of Justice, for hearing on October 17, 2019, at 1:30 p.m., pursuant to the schedule entered by the Court on July 11, 2019. *See* Order, ECF No. 28. Defendant respectfully moves for partial summary judgment in this Freedom of Information Act ("FOIA") matter.

Plaintiff ACLU seeks information from the Federal Bureau of Investigation ("FBI") about a particular law enforcement technique. More specifically, Plaintiff seeks several categories of records related to the analytical tools used for searching, analyzing, filtering, monitoring, or collecting information from social media networks. The FBI is searching for and processing records responsive to some parts of this request, including searching for records about the acquisition of these analytical tools in connection with criminal law enforcement investigations. The FBI has declined, however, to confirm or deny the existence of records responsive to a subset of the request – records regarding the alleged acquisition of social media analytical tools specifically for immigration enforcement and related purposes.

This "partial Glomar" response to a portion of Plaintiff's FOIA request is the only subject of the present motion for partial summary judgment, and it is proper. Immigration enforcement is not part of the FBI's primary mission. Revealing whether or not the FBI has responsive documents would also reveal whether or not FBI was using immigration-enforcement specific tools in furtherance of other objectives, such as criminal law enforcement, national security or intelligence purposes. Confirming or denying the existence of records showing the FBI applies such techniques specific to immigration enforcement or transportation would itself reveal FBI capabilities, or the lack thereof. This non-public information about a law enforcement technique is therefore properly withheld pursuant to Exemption 7(E).

There has been no official acknowledgement of the existence or non-existence of FBI records of the FBI's use of such tools in connection with immigration enforcement or transportation screening. Accordingly, the Glomar response as to these portions of the FOIA

1

request is proper.  The Court should defer to Defendant's determination in this regard and grant the FBI partial summary judgment.

## BACKGROUND

This matter arises from FOIA requests submitted to the Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the Department of State, the Department of Homeland Security ("DHS"), and several DHS components. By letter dated May 24, 2018, Plaintiffs submitted a FOIA request to the FBI seeking:

1. All policies, guidance, procedures, directives, advisories, memoranda, and/or legal opinions pertaining to the agency's search, analysis, filtering, monitoring, or collection of content on any social media network [hereafter "item 1"];
2. All records created since January 1, 2015 concerning the purchase of, acquisition of, subscription to, payment for, or agreement to use any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network, including but not limited to:
   a. Records concerning any product or service capable of using social media content in assessing applications for immigration benefits or admission to the United States [hereafter "item 2.a."];
   b. Records concerning any product or service capable of using social media content for immigration enforcement purposes [hereafter "item 2.b."];
   c. Records concerning any product or service capable of using social media content for border or transportation screening purposes [hereafter "item 2.c."];
   d. Records concerning any product or service capable of using social media content in the investigation of potential criminal conduct [hereafter "item 2.d."];
3. All communications to or from any private business and/or its employees since January 1, 2015 concerning any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network [hereafter "item 3"];
4. All communications to or from employees or representatives of any social media network (*e.g.,* Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015 concerning the search, analysis, filtering, monitoring, or collection of social media content [hereafter "item 4"]; and
5. All records concerning the use or incorporation of social media content into systems or programs that make use of targeting algorithms, machine learning processes, and/or data analytics for the purpose of (a) assessing risk, (b) predicting illegal activity or criminality, and/or (c) identifying possible subjects of investigation or immigration enforcement actions [hereafter "item 5"].

2

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

Declaration of Michael G. Seidel ("Seidel Decl."), dated September 6, 2019, ¶ 5 & Ex. A. The FBI acknowledged the Request and informed Plaintiffs it could neither confirm nor deny the existence of records responsive to their request pursuant to FOIA Exemption 7(E). Seidel Decl. ¶ 6. The requestor appealed, and the appeal was pending when the present lawsuit was filed. *Id*. ¶¶ 7-10.

By letter dated May 31, 2019, the FBI advised Plaintiffs it was modifying its earlier response. *Id*. ¶ 11. As pertinent to this motion, the FBI explained that in regards to items 2.a-2.c, the FBI could neither confirm nor deny the existence of any responsive records pursuant to FOIA Exemption (b)(7)(E). *Id*. The Court directed the parties to brief separately the question of the propriety of this partial Glomar response. Order, ECF No. 26.

## ARGUMENT

### I. Statutory Standards

#### A. The Freedom of Information Act

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citation omitted). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166–67 (1985). Accordingly, Congress sought "a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *John Doe Agency*, 493 U.S. at 152 (quoting H.R. Rep. No. 89-1497, at 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003).

FOIA mandates disclosure of government records unless the requested information falls within one of nine enumerated exemptions. *See* 5 U.S.C. § 552(b). "A district court only has *jurisdiction* to compel an agency to disclose *improperly withheld* agency records," *i.e.* records that do "not fall within an exemption." *Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996) (citing *Spurlock v. FBI*, 69 F.3d 1010, 1015-16 (9th Cir. 1995)); *see also* 5 U.S.C. § 552(a)(4)(B)

3

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

(providing the district court with jurisdiction only "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant"); *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150 (1980) ("Under 5 U.S.C. § 552(a)(4)(B)[,] federal jurisdiction is dependent upon a showing that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"). While narrowly construed, FOIA's statutory exemptions "are intended to have meaningful reach and application." *John Doe Agency*, 493 U.S. at 152; *accord Favish v. Office of Indep. Counsel,* 217 F.3d 1168, 1178 (9th Cir. 2000).

The courts resolve most FOIA actions on summary judgment. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008); *Lawyers Comm. for Civil Rights of S.F. Bay Area v. Dep't of Treasury,* 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("As a general rule, all FOIA determinations should be resolved on summary judgment."). The Government bears the burden of proving that the withheld information falls within the exemptions it invokes. *See* 5 U.S.C. § 552(a)(4)(B). Summary judgment is warranted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the government bears the burden of justifying non-disclosure, it may satisfy that burden through submission of an agency declaration that describes the reasons for non-disclosure. *See Church of Scientology v. U.S. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1979); *Lane*, 523 F.3d at 1135-36 ("A court may rely solely on government affidavits, so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim.") (quoting *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1078 (9th Cir. 2004)). Such declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and internal quotation marks omitted).

4

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

### B. The Glomar Response

A Glomar response allows the Government to "refuse to confirm or deny the existence of records where to answer the FOIA inquiry would cause harm cognizable under an FOIA exception." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982)); *accord Pickard v. DOJ,* 653 F.3d 782, 785–86 (9th Cir. 2011); *Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009) ("The *Glomar* doctrine is well settled as a proper response to a FOIA request because it is the only way in which an agency may assert that a particular FOIA statutory exemption covers the 'existence or non-existence of the requested records.'" (quoting *Phillippi v. CIA*, 546 F.2d 1009, 1012 (D.C. Cir. 1976)).  The agency can satisfy its obligation by providing "public affidavit[s] explaining in as much detail as is possible the basis for its claim that it can be required neither to confirm nor to deny the existence of the requested records."  *Phillippi*, 546 F.2d at 1013.

### II. The FBI Properly Declined to Confirm or Deny the Existence of Certain Immigration Enforcement Records Pursuant to Exemption (7)(E).

The FBI has established that the existence or nonexistence or responsive records related to the acquisition of social media analytical tools for immigration enforcement is properly exempt from disclosure pursuant to Exemption 7(E).  The withheld information is compiled for law enforcement purpose and reveals non-public information about a law enforcement technique.

### A. Exemption 7 Threshold.

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes" that could reasonably be expected to cause one of the six harms outlined in the Exemption's subparts.  5 U.S.C. § 552(b)(7).  "To fall within any of the exemptions under the umbrella of Exemption 7, a record must have been 'compiled for law enforcement purposes.'" *Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 202 (D.C. Cir. 2014) (quoting 5 U.S.C. § 552(b)(7)).  "An agency which has a clear law enforcement mandate, such as the FBI, need only establish a

5

'rational nexus' between enforcement of a federal law and the document for which an exemption is claimed." *Church of Scientology*, 611 F.2d at 748 (citing *Irons v. Bell,* 596 F.2d 468, 472 (1st Cir. 1979)).  Here, FBI records, if they existed, regarding social media analytical tools for immigration enforcement or transportation security would plainly be compiled for law enforcement purposes.  Seidel Decl. ¶¶ 15-16.

### B. The Withheld Information Reveals Non-Public Details of a Law Enforcement Technique.

#### (1) 7(E) Standards.

Exemption 7(E) authorizes withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Congress intended that Exemption 7(E) protect law enforcement techniques and procedures from disclosure, as well as techniques and procedures used in all manner of investigations after crimes or other incidents have occurred.  The Ninth Circuit does not interpret the "risk of circumvention" requirement as applying to the first phrase; accordingly, Exemption 7(E) does not require a showing that disclosure of particular techniques would risk circumvention of the law.  *ACLU v. DOJ*, 880 F.3d 473, 491 (9th Cir. 2018); *Hamdan v. DOJ*, 797 F.3d 759, 778 (9th Cir. 2017).[1]

The Ninth Circuit has held that Exemption 7(E) applies only where the investigative technique or procedure claimed to fall within the exemption is "not generally known to the public."  *Rosenfeld v. DOJ*, 57 F.3d 803, 815 (9th Cir. 1995) (citations omitted); *Frost v. DOJ*,

---

[1] Even when the agency is required to make a showing of risk, Exemption 7(E) is written in broad and general terms to cover not only information that will definitively lead to the circumvention of the law, but also information that risks circumvention of the law.  *Mayer Brown, LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009); *Bigwood v. Dep't of Defense*, 132 F. Supp. 3d 124, 152–53 (D.D.C. 2015).

6

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

No. 17-CV-01240-JCS, 2017 WL 2081185, at *4 (N.D. Cal. May 15, 2017).  Nonetheless, an agency can withhold details about how it uses a tool, even if the existence of that tool is publicly known.  *See Hamdan*, 797 F.3d at 777-78 (recognizing that credit searches and surveillance are "publicly known law enforcement techniques," but holding that Exemption 7(E) allowed the FBI to withhold details of specific "techniques and procedures related to surveillance and credit searches" because disclosure "would preclude [their] use in future cases"); *McCash v. CIA*, No. 5:15-CV-02308-EJD, 2017 WL 1047022, at *2 (N.D. Cal. Mar. 20, 2017).

Courts have generally upheld the use of a Glomar response in the context of Exemption 7, where other requirements are met.  *See, e.g.*, *PETA v. NIH*, 745 F.3d 535, 541 (D.C. Cir. 2014) (Exemption 7's threshold requirement satisfied in a Glomar response case because FOIA requester did not dispute that "any responsive documents," if they existed, "would constitute records or information compiled for law enforcement purposes") (citation and internal quotation marks omitted); *Frost,* 2017 WL 2081185, at *5  ("courts have found that Exemption 7(E) allows agencies not only to withhold such records but to refuse to even confirm or deny whether they exist—what is known as a 'Glomar response'—so long as the agency provides affidavits showing that such a response is justified under Exemption 7."); *Kalu v. IRS*, 159 F. Supp. 3d 16, 23 (D.D.C. 2016) (upholding 7(E) Glomar); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1037 (N.D. Cal. 2005) (same); *Cozen O'Connor v. Dep't of Treasury*, 570 F. Supp. 2d 749, 788 (E.D. Pa. 2008).

### (2) The FBI Established that the Partial Glomar Response is Proper Pursuant to Exemption 7(E).

The only portion of the request at issue in this motion seeks FBI records concerning the acquisition of:

> any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network, including but not limited to:
> a. Records concerning any product or service capable of using social media content in assessing applications for immigration benefits or admission to the United States [hereafter "item 2.a."];
> b. Records concerning any product or service capable of using social media content for immigration enforcement purposes [hereafter "item 2.b."];

7

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

      c. Records concerning any product or service capable of using social media content for border or transportation screening purposes [hereafter "item 2.c."].

Seidel Decl. ¶ 5. The Seidel Declaration establishes that disclosure of existence or non-existence of certain records responsive to items 2.a, 2.b, or 2.c would reveal non-public information about a law enforcement technique or procedure. *Id.* ¶¶ 13, 18, 23.

      These subsets of the request seek information about acquisition of analytical tools specific to particular purposes, mostly related to immigration enforcement. Generally, "[r]evealing the FBI has, or does not have, records responsive to Plaintiff's items 2.a- 2.c would itself reveal the fact that the FBI has the capability, or lacks the capability, to employ tools to analyze data located on social media platforms, in conjunction with immigration enforcement data, in furtherance of criminal or national security investigations." *Id*. ¶ 18. Mr. Seidel explains that:

> [t]hese items seek records about tools for analyzing social media data in conjunction with a specific type of enforcement action: *immigration enforcement*. The use of such tools for immigration enforcement would imply that the FBI is analyzing social media data in conjunction with immigration records or similar data. Immigration enforcement is not part of the FBI's primary law enforcement and intelligence gathering missions. Accordingly, where the FBI were to employ tools for analysis of social media data, in conjunction with immigration enforcement data, it would do so in furtherance of other criminal law enforcement, national security, or intelligence purposes. . . . While the FBI has acknowledged generally it monitors social media as a law enforcement technique, it has not acknowledged whether it uses tools specifically to analyze social media data in conjunction with immigration records or enforcement procedures, or in the transportation security context. Confirming or denying the existence of records showing the FBI applies such techniques specific to immigration enforcement or transportation would itself reveal FBI capabilities, or the lack thereof. This non-public information about law enforcement techniques would allow criminals, terrorists, or intelligence targets to modify their behavior to evade FBI investigative efforts.

Seidel Decl. ¶ 13.

      The Ninth Circuit does not require a showing that disclosure would risk circumvention of the law, but Mr. Seidel has nonetheless considered the harms of disclosure and concluded that disclosure of the existence or nonexistence of the responsive records would risk circumvention

8

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

of the law.  Mr. Seidel explains that: "providing a non-Glomar response under these circumstances would provide criminals or terrorists with a key piece of investigative information to either predict the use of investigative tools/intelligence analysis to alter or plan their activity if such records exist, or exploit enforcement blind spots if any such records do not exist."  Seidel Decl. ¶ 19.  The declaration provides multiple examples of how criminals or terrorists might exploit that information.  *Id*. ¶¶ 20-22.

Additionally, item 2.c also seeks the FBI's use of social media surveillance in conjunction with transportation screening.  Seidel Decl. ¶ 13.  The Seidel Declaration explains that this category would also reveal non-public information about a law enforcement technique, namely, "the fact that the FBI has the capability, or lacks the capability, to employ tools to analyze data located on social media platforms in transportation screening." *Id*. ¶ 18. "Revealing the FBI uses or does not use social media analysis to determine whether or not individuals pose a threat to the United States transportation infrastructure and other travelers would also allow for law enforcement circumvention."  *Id*. ¶ 13.  Mr. Seidel similarly determined that disclosure of the existence or nonexistence of such records would similarly provide valuable information to individuals attempting to target transportation security.  *Id*. ¶¶ 13, 23.

### III.     The FBI Has Not Waived These Exemptions By Official Acknowledgement.

As a general matter, under FOIA, "when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information." *ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013).  An official acknowledgment requires that the information requested be as specific as the information previously released, match the information previously disclosed, and already have been made public through an official and documented disclosure.  *Pickard*, 653 F.3d at 786 (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)); *Freedom of the Press Found. v. DOJ*, 241 F. Supp. 3d 986, 1003 (N.D. Cal. 2017).  Accordingly, the Ninth Circuit has held that such official confirmation must "mean an intentional, public disclosure made by or at the request

9

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

of a government officer acting in an authorized capacity by the agency in control of the information at issue." *See Pickard*, 653 F.3d at 787; *Janangelo v. Treasury Inspector Gen. for Tax Admin.*, 726 F. App'x 660, 661 (9th Cir. 2018) ("A fact has been 'officially acknowledged' if information that precisely matches the information requested was previously disclosed." (citation omitted)).

This "official acknowledgement" principle applies to the Glomar context; so a requester "can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or non-existence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *ACLU v. CIA*, 710 F.3d at 427. Plaintiff "bear[s] the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Wolf*, 473 F.3d at 378 (quoting *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983)). The information already released must also be of the same level of generality as the information sought—broadly crafted disclosures, even on the same general topic, do not waive the Glomar response. *See, e.g., Afshar*, 702 F.2d at 1133 (previous disclosure that plaintiff had "'created a problem' in U.S.-Iranian relations" was too general to justify releasing documents detailing the nature of that problem).

To the extent Plaintiffs argue that Exemption 7(E) has been waived, Plaintiffs cannot meet their burden of pointing to an official disclosure of the specific information sought. The agency declaration establishes that no authorized Executive Branch government official has disclosed the precise information withheld. *See* Seidel Decl. ¶¶ 13, 18. Although the Complaint cites a number of public statements, *see* Compl. ¶¶ 20-25, ECF No. 1, these cited public statements do not come close to meeting the standard for official acknowledgement. The FBI has not generally confirmed or denied the use of social media analytical tools in conjunction with immigration data, immigration enforcement, or transportation security. Accordingly, Plaintiff has not overcome his burden to show an official acknowledgement of the withheld information.

## CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment for the FBI.

10

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: September 6, 2018 | Respectfully Submitted, |
| 3 | | JOSEPH HUNT |
| 4 | | Assistant Attorney General |
| 5 | | ELIZABETH SHAPIRO |
| | | Deputy Director, Federal Programs Branch |
| 6 | | |
| 7 | | */s/Amy E. Powell* |
| | | AMY E. POWELL |
| 8 | | U.S. Department of Justice, Civil Division |
| | | 150 Fayetteville St, Suite 2100 |
| 9 | | Raleigh, NC 27601 |
| 10 | | Phone: 919-856-4013 |
| | | Email: amy.powell@usdoj.gov |
| 11 | | |
| 12 | | *Attorneys for Defendants* |

11

*ACLU v. DOJ*, No. 3: 19-cv-00290-EMC
FBI Mot. for Partial Summ. J.