

**U.S. Department of Justice**
Civil Division, Federal Programs Branch

**Courier Address:**
Rm 12522
1100 L Street, NW
Washington, DC 20005

| Elizabeth Tulis | Telephone: | (202) 514-9237 |
| Trial Attorney | Fax: | (202) 616-8470 |
| | Email: | elizabeth.tulis@usdoj.gov |

February 19, 2020

**_VIA ECF_**
Hon. Robert M. Illman
Eureka-McKinleyville Courthouse
3140 Boeing Ave.
McKinleyville, CA 95519

      Re:     <u>ACLU et al. v. DOJ et al.</u>, 19-cv-290-EMC

Dear Judge Illman:

      I write respectfully, pursuant to the Court's request, to set forth Defendants' position with respect to a schedule for certain agencies and components to complete processing of documents in response to Plaintiffs' FOIA request. Five agencies or components are still completing their searches and/or processing. Plaintiffs have demanded that all agencies and components complete their searches, processing, and productions by August 2020. For the reasons set forth below, the Court should not impose this arbitrary deadline.

      **I.**      **Background**

      By letter dated May 24, 2018, Plaintiffs submitted a broad FOIA request to seven different agencies and components, seeking records related to "social media surveillance." *See* FOIA Request dated May 24, 2018, attached hereto. Specifically, Plaintiffs submitted their request to the U.S. Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), the U.S. Department of State ("State Department"), the U.S. Department of Homeland Security ("DHS") Privacy Office, U.S. Customs and Border Protection ("CBP"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Citizenship and Immigration Services ("USCIS") *See id.* Three components—CBP, ICE, and USCIS—have now completed their processing and releases of documents responsive to the request. The statuses of the remaining agencies' and components' searches/processing are described below.

      **A.**      **FBI**

      The FBI issued a response to Plaintiffs' FOIA request on June 8, 2018. Declaration of David M. Hardy ("Hardy Decl.") ¶ 6. In this original response, known as a "Glomar" response, the FBI refused to confirm or deny the existence of responsive records, pursuant to FOIA Exemption 7(E). *See id.* Plaintiffs administratively appealed the FBI's response to DOJ's Office of Information Policy ("OIP"). *Id.* ¶ 7. On January 31, 2019, OIP issued its final decision on Plaintiffs' appeal, and remanded the request to the FBI for further processing. *Id.* ¶ 10. Upon remand, the FBI promptly began

reprocessing the request. *See id.* ¶¶ 12-13. By letter dated May 31, 2019, the FBI issued a modified response to Plaintiffs' FOIA request, advising that:

- In regards to items 2)a-c, the FBI could neither confirm nor deny the existence of any responsive records, pursuant to FOIA Exemption 7(E)
- Items 3 and 4 did not constitute proper FOIA requests because they were not framed in a manner that would allow the FBI to locate the requested records with a reasonable amount of effort.
- The FBI was conducting searches for records responsive to the remaining portions of Plaintiffs' FOIA request (items, 1, 2)d, and 5).

*Id.* ¶ 11. Plaintiffs ultimately agreed to revise item 3 in their request, and to forgo seeking item 4 from the FBI. *See* ECF No. 21 at 2; ECF No. 25 at 2. On September 9, 2019, the FBI moved for partial summary judgment, with respect to its Glomar response for items 2)a-c. ECF No. 31. On November 18, 2019, the Court denied that motion. ECF No. 39.

Throughout this time, the FBI continued to process the request and made its first release on August 30, 2019. *See* ECF No. 25 at 2-4; Hardy Decl. ¶ 13. The FBI has now completed its searches and continues to process documents at a rate of 500 pages per month, making rolling monthly releases. *Id.* To date, the FBI has reviewed 3,045 pages and released 310 pages in whole or part. *Id.* The FBI anticipates completing its substantive review by November 2020, with full completion of other government agency and third party corporation consultations by **January 2021**. *See id.*

The FBI is currently inundated with an extraordinarily large number of FOIA/Privacy Act requests, which are processed by the FBI's Records/Information Dissemination Section ("RIDS"). *Id.* ¶¶ 2, 14. For example, in FY 2019, the FBI received 31,344 requests—a 78% increase compared to FY 2014. *Id.* ¶ 14. Moreover, over the past several years, FOIA requests submitted to the FBI have grown significantly more complex, seeking records on numerous and/or multi-faceted subjects and requiring the FBI to engage in more coordination with external and internal stakeholders in order to make disclosure decisions. *Id.* ¶ 15. Cases like this one, involving thousands of pages of potentially responsive records, dramatically affect the complexity of and time required for FOIA processing. *Id.* ¶ 16. In FY 2019, the FBI resolved 31,962 FOIA/PA requests and reviewed over 1 million pages in response to such requests. *Id.* ¶ 14.

Further, FOIA litigations have imposed additional burdens on the agency. The FBI is currently involved in approximately 347 pending FOIA litigations, an all-time high. *Id.* ¶ 18. Many of these cases involve court-ordered or established processing schedules, and these cases demand approximately 25% of RIDS' resources, even though the requests at issue only account for 1% of the requests processed by RIDS. *Id.* ¶ 19. By nature, requests in litigation place more labor-intensive demands on RIDS than requests being processed administratively. *Id.* ¶ 20. Further, many of the cases in litigation involve complex or high volumes of records. Of particular note is *Leopold v. DOJ et al.*, 19-cv-1278, which involves FOIA requests seeking records related to Special Counsel Robert Mueller's investigation and implicates potentially millions of highly sensitive pages of records. *Id.* RIDS has designated a single, specialized team of 23 personnel to handle request for Special Counsel's Office ("SCO") and SCO-related records. *Id.* Further details regarding the exceptional burdens the FBI currently faces in processing FOIA requests are included in the attached Declaration of David M. Hardy. *See id.* ¶¶ 14-20.

These exceptional circumstances have made it virtually impossible for RIDS to complete its response to Plaintiffs' FOIA request by Plaintiffs' proposed deadline of August 2020. *Id.* ¶ 20.  To meet such a deadline, the FBI would have to apply a disproportionate amount of its limited resources to Plaintiffs' request, and shift resources away from processing the FOIA requests submitted by other requestors. *Id.* As the attached Declaration explains, the FBI's standard processing rate of 500 pages per month was carefully developed to equitably and efficiently process the large volume of FOIA requests submitted to the FBI and  allow for a steady flow of information to the public at large. *See id.* ¶¶ 21-27. In order to ensure equitable distribution of its limited resources, the FBI must be permitted to continue processing records in this case at its standard rate of 500 pages per month, with the FBI's internal processing completed by November 30, 2020, and additional referrals or consultations with other federal agencies or third-party entities completed by **January 2021**. *Id.* ¶¶ 20, 27-28.

## B.  OIP

DOJ's Office of Information Policy ("OIP") processes FOIA requests on behalf of the Offices of the Attorney General, Deputy Attorney General, Associated Attorney General, Public Affairs, Legislative Affairs, Legal Policy, and Information Policy. Declaration of Vanessa R. Brinkmann ("Brinkmann Decl.") ¶ 1. Less than two weeks after Plaintiffs submitted their FOIA request, the assigned OIP Attorney-Advisor reached out to Plaintiffs' representative via telephone to discuss Plaintiffs' FOIA request and a proposal to narrow the request. *Id.* ¶ 5. The Attorney-Advisor explained that OIP believed that the FBI would be the DOJ component most like to maintain the requested records. *Id.* Insofar as Plaintiffs were seeking records from DOJ senior leadership offices, the Attorney-Advisor asked if Plaintiffs would be willing to narrow their request to official policy only, as OIP believed the FBI, not DOJ senior leadership offices, would maintain underlying records regarding implementation of policies related to Plaintiffs' FOIA request. *Id.* Plaintiffs were not willing to narrow their request. *Id.*

After Plaintiffs filed suit, OIP again sought to negotiate a narrowing of the request, and Plaintiffs ultimately agreed that OIP could limit its search to a narrowed list of custodians. *See id.* ¶ 8; ECF No. 21 at 2, 3; ECF No. 25 at 4.  OIP then conducted a search with those parameters. Brinkmann Decl. ¶ 10. Nonetheless, OIP's electronic search returned a huge volume of potentially responsive documents, and OIP again sought to meet and confer with Plaintiffs on narrowing options. *Id.* ¶¶ 10-11. The parties ultimately came to an agreement to narrow the universe of documents sought from OIP. *Id.* However, even after this narrowing, OIP still must review more than 25,000 documents (not pages) for responsiveness. *Id.*

As of February 18, 2020, OIP has 1,715 open FOIA requests and 121 ongoing litigations. *Id.* ¶ 15. Since FY 2016, OIP has been inundated with an unprecedented surge of FOIA requests, including an influx of increasingly complicated requests requiring complex, voluminous searches of a variety of electronic records. *Id.* ¶¶ 18-19. At the same time, the number of lawsuits filed in connection with requests processed by OIP has exponentially increased, tripling over the last three years. *Id.* ¶ 19. These factors have substantially increased the amount of time and resources required for OIP to complete its searches and processing, exhausting OIP's resources. *Id.* OIP has taken a variety of steps to improve its capability to handle the increasingly large and complex volume of FOIA requests, and these improvements have resulted in OIP processing record number of FOIA requests to completion each year. *Id.* ¶¶ 20-24. Nonetheless, the backlog of FOIA requests continues to grow. *Id.* ¶ 24.

OIP's staff responsible for processing FOIA requests in litigation includes only seven full-time employees and three temporary detailees. *Id.* ¶ 17. Each FOIA litigation is assigned to a team of two – one Attorney-Advisor and one Supervisory Attorney. *Id.* Each Attorney-Advisor is responsible for handling all aspects of each assigned litigation request, including searching for and processing responsive records, coordinating consultations within the Executive Branch, drafting declarations and certain other court filings, and working with the litigator(s) assigned to the case. *Id.*

Given all these constraints, in Defendants' January 9, 2020, status report to the Court, OIP estimated that it would require 6 months to complete a responsiveness review of the 25,000+ documents located in its electronic search. *See* ECF No. 40 at 4. In an effort to resolve the issues in dispute and avoid unnecessarily burdening the Court, OIP proposed a compromise schedule to Plaintiffs, whereby **OIP would complete its responsiveness review by April 9, 2020, and then process 250 pages of records per month** once the universe of responsive records is identified, with rolling releases beginning on May 9, 2020. Brinkmann Decl. ¶ 12. Plaintiffs have informed OIP that they do not consent to this proposed schedule. *Id.* For the reasons set forth above, however, Plaintiffs' requested final deadline of August 31, 2020 is not reasonable.

## C.  State Department ("State")

The State Department made every effort to respond to Plaintiffs' May 24, 2018, request within the 20-day statutory timeline. Declaration of Eric F. Stein ("Stein Decl.") ¶ 6. In June 2018, State engaged with Plaintiffs in an attempt to narrow the scope of the request, but Plaintiffs declined any such narrowing. *Id.* Accordingly, by letter dated June 22, 2018, State informed Plaintiffs it was unable to process the request because it did not reasonably describe the records sought. *Id.* Plaintiffs administratively appealed that determination. *Id.* By letter dated October 30, 2018, State informed Plaintiffs that the Department's Appeals Review Panel upheld the original decision that the request was overly broad and burdensome. *Id.*

After this lawsuit was initiated, State again attempted to negotiate with Plaintiffs to narrow their request, and the parties ultimately reached an agreement to narrow the scope of the request. *See id.* ¶ 7; ECF No. 21.

Since that time, State has worked diligently to process Plaintiffs' narrowed request, making rolling productions every six weeks starting on August 1, 2019, and processing an average of 450 pages per six-week period. Stein Decl. ¶ 8. To date, State has made five productions and processed approximately 2,500 pages of records. *Id.* Approximately 3,700 pages of potentially responsive records remain to be processed, and State continues to process this material at an average rate of 450 pages per six weeks. *Id.* ¶ 18. This processing rate is commensurate with the FOIA processing rate to which State can routinely commit (300 pages per month or 450 pages per six weeks). *Id.*

Over the past several years, State's FOIA burden has grown significantly. *Id.* ¶ 10. As of early 2014, State was a defendant in approximately 50 FOIA litigation cases. *Id.* ¶ 11. Currently, State is a defendant in approximately 180 FOIA litigations involving approximately 300 FOIA requests. *Id.* Despite a drop in FOIA requests received by State in FY 2018, the number of FOIA litigations brought against State has been steadily increasing over the past four years. *Id.* As of February 2020, State is attempting to process more than 30,000 pages per month for FOIA requests in litigation. *Id.* ¶ 12. FOIA litigations that do not have regular production schedules also require resources for tasks such as searches, ingesting search results into State's document review platform, and drafting and

reviewing *Vaughn* indexes. *Id.* At the same time, State must continue to use its resources to process the thousands of request that are not in litigation. *Id.*

State's Office of Information Programs and Services ("IPS") processes FOIA requests submitted to the agency on a first-in, first-out basis within three request tracks—expedited, simple, and complex. *Id.* ¶ 20. When a request goes into litigation, it is transferred to a different specialized component of IPS, the Litigation and Appeals Branch of the Program and Policies Division ("IPS/PP/LA") for processing. *Id.* Details regarding IPS/PP/LA's procedures for FOIA processing are included in the attached Declaration. *See id.* FOIA requests subject to litigation comprise approximately 2% of all FOIA requests at State but demand a disproportionate share—approximately 90%--of State's current FOIA review resources. *Id.* ¶ 12

The efforts to meet its litigation obligations come at the expense of all other FOIA requestors. *Id.* ¶ 13. In FY 2019, State's FOIA backlog increased for the first time in two years, and it currently includes 14,500 pending requests. *Id.* The demands of FOIA litigation, including one court order requiring State to process 5,000 pages per month, have impeded State's ability to reduce this backlog. *Id.* State is also facing a notable increase in its FOIA burden due to the volume of requests and litigation related to matters concerning the Ukraine, including approximately 160 FOIA requests and 17 FOIA lawsuits. *Id.* ¶ 14. Court orders that require processing in excess of State's declared capabilities adversely impact the Department's overall FOIA program, including its capacity to satisfy requests by other members of the public. *Id.* ¶ 20.

In light of State's existing and anticipated FOIA workload and processing resources, and the complexity of processing that will be required in each case, State requires until **December 18, 2020** to complete processing of Plaintiffs' FOIA request. *Id.* ¶ 21.

### D. DHS Office of Intelligence and Analysis ("I&A")

I&A only is involved in this litigation as a result of post-Complaint negotiations between the parties and DHS's willingness to take action not required by FOIA in order to narrow the disputes for the Court's resolution. FOIA requires that requesters submit their FOIA requests in accordance with rules and regulations promulgated by the applicable agency. *See* 5 U.S.C. § 552(a)(3)(A). "DHS has a decentralized system for responding to FOIA requests, with each component designating a FOIA office to process records from that component," 6 C.F.R. § 5.3(a)(1), and DHS regulations direct requesters to "write directly to the FOIA office of the component that maintains the records being sought," *id.* Plaintiffs did not submit their FOIA Request to I&A—though they did direct their Request to several other DHS components, including the DHS Privacy Office, CBP, USCIS, and ICE. FOIA requesters who are uncertain as to which component would maintain responsive records may instead submit their request to the DHS Privacy Office. *See id.* § 5.3(a)(2). However, the Privacy Office in such cases is only obligated to forward the request to the component or components "that it determines to be most likely to maintain the records that are sought," not to every component that might possess such records. *Id.* Thus, the Privacy Office was under no obligation in this case to forward or refer Plaintiffs' request to I&A. Nonetheless, as part of the ongoing attempts by the parties to resolve as many issues as possible without the Court's intervention, the DHS Privacy Office agreed to make such a referral. *See* ECF No. 40 at 3. I&A received the referral on January 8, 2020, and promptly undertook a search. *See* Declaration of Melissa Smislova ("Smislova Decl.") ¶¶ 8-9. I&A has now identified a universe of potentially responsive documents and is working diligently to identify

- 6 -

documents that are actually responsive and process or refer those documents as necessary. *Id.* ¶¶ 10-11. However, Plaintiffs' proposed deadline of August 31, 2020, is not reasonable.

As background, there are only two I&A personnel dedicated to FOIA and Privacy Act request processing. *See id.* ¶ 1. I&A currently has 23 pending FOIA requests (not in litigation) and is involved with 18 pending lawsuits. *Id.* ¶ 7. Last year, I&A received 254 FOIA requests, as well as numerous record consultations and referrals, and it anticipates a similar number of requests this year. *Id.* When a request is in litigation, I&A typically processes 250 pages per month. *See* ECF No. 40 at 2.

After receipt of the referral from DHS Privacy in this case, I&A FOIA tasked out searches to all I&A personnel who would reasonably have records responsive to the requests. Smislova Decl. ¶ 9. In addition, I&A worked with DHS Office of the Chief Information Officer (OCIO) to run automated searches of certain I&A personnel email accounts. *Id.* I&A FOIA has begun reviewing the responses to complete page counts and eliminate duplicates. *Id.* It has identified approximately 850 potentially responsive pages from I&A personnel's manual searches and 14,135 potentially responsive pages from OCIO's automated email searches, for a total of approximately 15,000 pages. *Id.* ¶ 10. In reviewing a sampling of the latter, I&A anticipates that the vast majority of these emails will be determined to be non-responsive. *Id.*

From an initial review, the potentially responsive records from I&A personnel's searches appear to fall into two categories. *Id.* ¶ 11. First, I&A has records relating to the Social Media Task Force. *Id.* The Social Media Task Force was not an I&A body, but rather a Department-wide Task Force chaired by a former Under Secretary for I&A and co-chaired by representatives from the DHS Office of Policy and the Transportation Security Administration, examining non-intelligence social media use programs. *Id.* I&A anticipates that all such records will be referred to other DHS offices and components as these records did not originate with I&A. *Id.* Second, I&A has records related to I&A's intelligence collection of social media to address foreign intelligence threats. *Id.* These records appear unrelated to the issues and events discussed in Plaintiffs' FOIA request, and most of these records post-date Plaintiffs' May 2018 request. *Id.* However, I&A anticipates that some records would fall within the five broad categories of "Requested Records" listed on pages 6-7 of Plaintiffs' request, if the descriptions of those categories of records were read in isolation from the rest of the request. *Id.* Were Plaintiffs to confirm that they do not seek such unrelated records, I&A would be able to reduce its processing timeline. *Id.*

Because I&A has determined that the documents located in I&A personnel's manual searches are more likely to be responsive, I&A proposes to prioritize its processing of those documents and to complete its review and processing of this subset of documents by April 2020. *Id.* ¶ 12. As noted above, this timeline could be shortened if Plaintiffs confirm they do not seek records related to I&A's foreign intelligence mission. *Id.* In May, I&A could then commence its review and processing of the 14,000+ pages located via the electronic search, and complete that review, including processing any responsive documents, by **December 31, 2020**. *See id.* This already is an aggressive processing timeline for I&A. *See id.* ¶ 14. Because of I&A's limited FOIA resources, and the number of other pending FOIA requests and litigations that I&A is currently handling, completing processing and productions by August 2020 is not feasible. *See id.*

**E.  DHS Privacy Office**

In recent years, the DHS Privacy Office, which processes FOIA requests for a number of DHS components, has faced a spike in FOIA requests amid significant resource constraints. Declaration of James V.M.L. Holzer ("Holzer Decl.") ¶¶ 8, 11-12. For example, from FY 2017 to FY 2018, the number of requests more than doubled from FY 2016. *Id.* ¶ 12. In addition, the number of FOIA requests received by the DHS Privacy Office increased exponentially in FY 2019, to 43,024. *Id.* This increase is a result of the realignment that made the DHS Privacy Office responsible for processing FOIA requests directed to Office of Biometric Identity Management. *Id.* The DHS Privacy Office has also seen a spike in FOIA litigation. *Id.* ¶ 13. The Privacy Office has taken a number of steps to address the increase in FOIA requests and litigations, including reorganizing its staff, which allowed a 39% increase in the number of FOIA requests processed in FY 2018 compared to the prior fiscal year. *Id.* ¶ 11. It has also increased staffing levels on the FOIA team, from 16.58 in FY 2016 to more than 25 full-time equivalents in FY 2018. *Id.* ¶ 16. The Privacy Office is also taking steps to address the staffing shortfall that remains by working to bring on additional full-time federal employees and contractors. However, that hiring process can be lengthy and unpredictable. *Id.* To address the surge in production demands caused by increased litigation activity, the Office authorized overtime at a cost of $45,000 in FY 2019 alone. *Id.* Despite these efforts, the Privacy Office is struggling to handle the significant increase in FOIA requests and litigations. *Id.*

In this case, the DHS Privacy Office acknowledged Plaintiffs' May 24, 2018, FOIA request by letter dated May 30, 2018, and assigned the matter a reference number. *Id.* ¶ 17. The letter advised Plaintiffs that the request was too broad in scope and did not specifically identify the records sought, and asked Plaintiffs to more reasonably describe the requested records. *Id.*

After this litigation was filed, the DHS Privacy Office attempted to negotiate with Plaintiffs to narrow their FOIA request and more specifically identify the records sought. *Id.* ¶ 18. As reported in the parties' January 2020 status report, the parties ultimately reached an agreement as to the scope of the DHS Privacy Office's search. *See* ECF No. 40 at 2. On January 14, 2020, after receiving necessary custodian information, the DHS Privacy Office tasked the Office of Chief Information Officer ("OCIO") to conduct the search. Holzer Decl. ¶ 19. OCIO had to split the search into three parts by date range because of the manner in which the relevant data is stored. *Id.* Plaintiffs have since agreed to exclude the earliest of the three date ranges, January 1, 2015, to April 30, 2015. *Id.* OCIO's initial search retrieved an excessively large volume of data 200GB, beyond the transfer capacity of DHS's IT systems. *Id.* OCIO determined that one of the search terms, "analy\*" was likely responsible for causing most of the hits, though other wildcards ("\*") could also be driving up the file size. *Id.* On February 6, 2020, Plaintiffs agreed that the term "analy\*" could be removed from the search, and on February 10, 2020, OCIO re-ran the search with the revised terms. *Id.*  OCIO made this search a priority – halting or postponing searches for other FOIA requests and litigations in order to provide the DHS Privacy Office with the results on an expedited basis. *Id.*  However, the revised search returned 199GB, a volume that is still too large for processing. *Id.*  An additional factor contributing to the volume of search results is the number of accounts searched—currently 161 individuals, including almost the entire staff of the DHS Policy Office. *Id.* ¶ 21.

DHS plans to propose to Plaintiffs revised search terms and a narrower set of custodians by March 4, 2020 and, once a sufficiently limited search is agreed to by the parties, will again task OCIO. *Id.* ¶ 22. Once DHS Privacy tasks a search, it typically takes OCIO two to four weeks to conduct a search depending on a number of variables, including the keywords, number of individuals, and time

period used, other searches in the queue, and court-ordered priorities that may take precedence. *Id.* An additional two to four weeks will likely be necessary to complete further steps to prepare the documents for processing. *Id.* Thus, DHS cannot provide a production schedule at this time. *See id.* However, DHS is committed to continuing to work with Plaintiffs to craft a search that will both locate the records Plaintiffs are seeking, and be tailored in scope so that DHS's systems will be able to handle the data retrieved. *Id.*

## II.     Argument

As set forth above, the relevant agencies and components are working diligently to complete their searches for and processing of records responsive to Plaintiffs' FOIA request, as modified pursuant to the parties' agreements. Plaintiffs have no legal basis to demand that the agencies complete their productions by the arbitrary deadline of August 31, 2020.

FOIA does not provide requestors with the right to have an agency complete its searches and processing within a set timeframe. Upon receipt of a properly submitted FOIA request that "reasonably describes" the records sought, 5 U.S.C. § 552(a)(3)(A), an agency is generally to determine within 20 days "whether to comply with such request," *id.* § 552(a)(6)(A)(i), and then to "make the records promptly available" to the requester, *id.* § 552(a)(3)(A). FOIA permits an agency to extend this 20-day deadline up to 10 days in "unusual circumstances[,]" including "the need for consultation . . . with another agency having a substantial interest in the determination of the request." *Id.* §§ 552(a)(6)(B)(i), (iii). Moreover, the statute explicitly provides that courts may allow agencies further time to process proper FOIA requests: "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." *Id.* § 552(a)(6)(C)(i). While FOIA requires that agencies make non-exempt requested records "promptly available" upon making a determination to comply with a request for records, *id.*, the statute does not define "promptly." The reasonableness of an agency's processing timeline will depend on the circumstances of the case. *See, e.g.*, *Sierra Club v. EPA*, No. 18-CV-03472-EDL, 2018 WL 10419238, at *5 (N.D. Cal. Dec. 26, 2018).

Much of the FOIA case law regarding courts' authority to order particular processing timelines addresses *motions for preliminary injunctions* in which the plaintiffs sought expedited processing of their requests under 5 U.S.C. § 552(a)(6)(E). *See, e.g.*, *Protect Democracy v. DOD*, 263 F. Supp. 3d 293, 296 (D.D.C. 2017). The statute provides that when expedition is appropriate, an agency is obligated to process the FOIA request "as soon as practicable," but not within any set timeframe. *Id.* § 552(a)(6)(E)(iii); *see also* 28 C.F.R. § 16.5(e)(4) (DOJ FOIA regulation).

In this case, Plaintiffs did not file a motion for preliminary injunction seeking expedited processing, let alone demonstrate that they would be entitled to expedited processing. Nor did Plaintiffs file a motion for summary judgment seeking a permanent injunction. *Cf. Sierra Club*, 2018 WL 10419238, at *1. The topic of Plaintiffs' FOIA request—social media surveillance—may well be of public importance, but there is no reason to believe that Plaintiffs' request is particularly time-sensitive in comparison to other pending requests. Recent matters in which courts have ordered production by a date certain, include, for instance, two cases involving FOIA requests for documents relevant to the recent Presidential impeachment proceedings. *See Ctr. for Pub. Integrity v. DOD*, 411 F. Supp. 3d 5, 12-13 (D.D.C. 2019); *Am. Oversight v. U.S. Dep't of State*, No. 19-CV-2934 (CRC), 2019 WL 5665930, at *4 (D.D.C. Oct. 25, 2019).

Moreover, as discussed above, Plaintiffs chose to negotiate with the FBI, OIP, State, and DHS Privacy Office regarding the scope of their FOIA request and ultimately reached agreements with those agencies and components to narrow or modify their original request after they filed this lawsuit. *Cf.* 5 U.S.C. § 552(a)(3)(A) (requiring a FOIA request to "reasonably describe[ ]" the records sought). I&A, in turn, only received the request after it was referred by the DHS Privacy Office pursuant to an agreement reached between the parties—Plaintiffs had not previously directed their request to I&A or indicated that they sought such a referral.

There is no basis for the Court to conclude that Defendants are failing to fulfill their statutory obligations. As set forth above, the relevant agencies and components face exceptional circumstances and are processing Plaintiffs' request with "due diligence." 5 U.S.C. § 552(a)(6)(C)(i). Plaintiffs' requested completion date, August 2020, is not tethered to the reality of the agencies' current resources and FOIA caseloads—or to any other relevant facts. Indeed, Plaintiffs' proposed deadline is entirely arbitrary. As another district court observed in a recent FOIA case, "[i]mposing on Defendants an arbitrary deadline for processing would run the risk of overburdening them, and could even lead to the mistaken release of protected information." *Protect Democracy*, 263 F. Supp. 3d at 302.

If the Court were to impose the arbitrary deadline demanded by Plaintiffs, the agencies would be forced to slow their processing of other pending FOIA requests, disadvantaging the other requesters – some of whose requests have been pending for longer than Plaintiffs'. *Cf. Elec. Privacy Info. Ctr. v. DOJ*, 15 F. Supp. 3d 32, 47 (D.D.C. 2014) (observing, on motion for preliminary injunction seeking expedited processing, that "allowing [a plaintiff] to jump to the head of the line would upset the agency's processes and be detrimental to the other expedited requesters, some of whom may have even more pressing needs"). Defendants recognize that Plaintiffs are impatient to receive the records they have requested. But Plaintiffs' frustration is not a legal ground to impose the deadline they seek.

Finally, at around 5:00 pm Eastern today, Plaintiffs informed the undersigned counsel that they planned to ask this Court to order ICE, USCIS, and CBP (the components that have completed their productions) to "provide Plaintiffs with Vaughn indices and set a schedule for partial summary judgment briefing regarding the redactions and withholdings." Any such request is beyond the scope of the briefing ordered by the Court. Moreover, as Defendants noted during the telephone hearing held on February 5, Judge Chen explicitly retained management of the case with respect to any disputes regarding redactions or withholdings. Regardless, given the eleventh hour notice, Defendants have not had a reasonable opportunity to prepare a response to Plaintiffs' inappropriate demand. If the Court needs further information, Defendants respectfully request an opportunity to submit a supplemental letter brief.

Respectfully,

*/s/ Elizabeth Tulis*
Elizabeth Tulis

cc:    Plaintiffs' counsel