UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO-OAKLAND DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, *et al.*, <br><br> *Defendants*. | Case No. 19-CV-00290-EMC <br><br> **JOINT STATUS REPORT** |

The parties jointly submit this status report pursuant to the order issued by the Court on September 8, 2020. (ECF No. 73.)

During a telephonic hearing on September 8, 2020, Judge Illman addressed disputes raised in previous status reports regarding the processing of Plaintiffs' FOIA Request by the State Department and the Department of Homeland Security's Privacy Office ("DHS"). Judge Illman directed Plaintiffs to prepare a proposed order, noting any objections from Defendants, to be filed by September 14, 2020 for Judge Illman's review. Defendants raised no objections to Plaintiffs' draft proposed order, which Plaintiffs submitted and the Court entered on September 15, 2020. (ECF No. 77.) That order provided, among other things, that Defendant DHS:

- "[S]hall respond to Plaintiffs' proposal dated June 29, 2020 regarding the parameters of Defendant's search, to which Defendant has agreed in principle except as to parameters for a search related to Part 1 of the Request;" and

- "[S]hall subsequently meet and confer with Plaintiffs as necessary and commence the search, processing, and production of records responsive to the Request by October 2, 2020." (*Id.*)

The Court's order also directed the State Department to "adopt and communicate to Plaintiffs by October 9, 2020 a written plan for resuming the processing and production of records responsive to the Request in this case within a reasonable timeframe." (*Id.*)

The parties conferred regarding Defendants' implementation of the court order. On September 21, 2020, Plaintiffs received DHS's response to Plaintiffs' June 29, 2020 proposal.

I.   *Plaintiffs' Report*

    a.  Defendant DHS

Defendant's September 21 response to Plaintiffs' proposal reflected a reversal of its prior positions and a significant narrowing of parameters on which the parties had previously agreed—part of a pattern of egregious delay and obfuscation by DHS throughout this litigation. *See* ECF Nos. 46 at 4, 53 at 4-5, 55 at 5, 67 at 4-5. For instance, on December 16, 2019, after negotiations marked by DHS's repeated failure to respond promptly to Plaintiffs' communications, the parties agreed on terms for DHS's search. As of January 9, 2020, DHS had not even attempted to execute that search (*see* ECF No. 40 at 2), and Defendants' counsel subsequently informed Plaintiffs that DHS no longer agreed to the search parameters due to limitations in the capacity of its FOIA processing software.

Following further prolonged conferral, DHS informed Plaintiffs on May 5, 2020 that it agreed to Plaintiffs' proposed revised search terms. *See* ECF No. 53 at

2. A month later, however, DHS reversed course again and reported that the revised agreed terms were no longer acceptable, again citing the technical limitations in its FOIA processing system. *See* ECF No. 55 at 4. Plaintiffs agreed to confer directly with DHS's FOIA personnel regarding search parameters via conference call on June 26, 2020, and Plaintiffs provided a revised proposal to DHS three days later, on June 29. DHS subsequently represented to Plaintiffs and the Court that all but one part of that further revised proposal was acceptable. *See* ECF Nos. 64 at 2-3, 65 at 2-3. And, as noted above, DHS raised no objection to Plaintiffs' proposed order, which stated, "Defendant has agreed in principle" to Plaintiffs' June 29 proposal "except as to parameters for a search related to Part 1 of the Request." ECF No. 75.

Despite these assurances, and despite having had months to raise any issues with the search parameters, DHS reversed itself *yet again* following entry of the Court's order. In an email on September 21, 2020, Defendants' counsel conveyed a response from DHS to Plaintiffs' June 29 proposal with a set of terms and custodians for Parts 2, 3, and 5 of the Request that differed significantly from the terms to which DHS had previously agreed. Specifically, the response included a search cut-off date of January 14, 2020—an apparently arbitrary date eight months earlier than the previously agreed cut-off date, which was the date the search was to be conducted. *See Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2015 WL 4452136 at *10 (N.D. Cal. 2015) (appropriate cut-off date for responsive records "is the day searching began") (citing cases). DHS's response also set forth a significantly more restrictive set of search terms than the third set of terms on which the parties had agreed. And yet again, DHS pointed to technical limitations in its FOIA processing technology in justifying the further narrowing of the parameters. Plaintiffs objected to this latest reversal and explained their position as to why DHS's terms are unduly restrictive. DHS declined to revert to the agreed

terms, and Plaintiffs understand that DHS commenced the search on October 1.[1]

It remains Plaintiffs' position that DHS's latest reversal improperly contravenes its prior agreement to the search parameters set forth in Plaintiffs' June 29, 2020 proposal—an agreement memorialized in the Court's order of September 15 (ECF No. 77). DHS's search parameters, including its date limitation, are unreasonably restrictive and are not calculated to locate responsive records consistent with FOIA and the parties' prior conferrals on these parts of the Request. Additionally, any technical limitations in DHS's processing technology— limitations other agencies do not appear to have—cannot dictate the scope of DHS's response to this or any other FOIA Request. DHS's continual reference to those limitations as a reason to further narrow search parameters is at odds with FOIA. *See, e.g.*, *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985) (agency must demonstrate "that it has conducted a search reasonably calculated to uncover all relevant documents").

DHS has long been in breach of its FOIA obligations in this case and still has not produced a single page of responsive records. Given the repeated delays and reversals outlined above, Plaintiffs respectfully request that the Court direct DHS to produce all responsive records by January 15, 2021, so that Plaintiffs may seek any necessary further relief from the Court as to the adequacy of DHS's search and production. *See Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline").

---

[1] In its September 21 response, DHS also proposed a set of terms and custodians for Part 1 of the Request. Plaintiffs responded that they could agree to those terms and custodians, provided that DHS was representing, based on internal discussions, that the terms and custodians are reasonably calculated to locate all currently operative policies, guidance, and directives, per Part 1 of the Request. As of the filing of this status report, DHS has not confirmed that its proposed terms as to Part 1 are in fact so calculated.

b. Department of State

The State Department has not yet provided the written plan for resuming the processing and production of records responsive to the Request. *See* ECF No. 77.

II.     *Defendants' Response*

   a. DHS

The DHS Privacy Office ("DHS") responds as follows:

DHS's search of the Office of Policy using the time frame May 1, 2015 through September 8, 2020, and the updated agreed upon key word/filters: "social media AND (collect* OR monitor* OR search)" is reasonably calculated and broad enough to produce the operative policies/directives currently relied upon by DHS related to "the agency's search, analysis, filtering, monitoring, or collection of content available on any social medial network" of interest to Plaintiffs. This position is based on DHS's knowledge of the subject matter, substantial expertise and historical knowledge. It is also consistent with DHS's standard practice.

Regarding Part 1 of Plaintiffs' request, on September 30, 2020, DHS sent the Office of Policy a revised tasking to conduct a targeted search using the keywords/filters suggested by Plaintiffs for this search tasking: "social media AND (collect* OR monitor* OR search)" and the date range of May 1, 2015 through September 8, 2020. This search is ongoing. DHS initially tasked the Office of Policy to conduct a targeted search on September 8, 2020 using different search terms. For this Part 1 search, the Privacy Office must rely on the expertise and knowledge of the Office of Policy to identify the custodians to task. DHS continues to stand by the proposed date range of May 1, 2015 through September 8, 2020 as capturing all potentially responsive records given their knowledge of the subject matter. DHS will not agree to update the tasking to request that the Office of Policy search for all policies/directives on the specified topic that are operative as of the date of the search (regardless of when they were first promulgated). Agreeing to Plaintiffs' request for all operative policies/directives will require

DHS to search back potentially 17 plus years to a time that predates the Department, and is therefore overly burdensome.

For Parts 2, 3, and 5 of Plaintiffs' request, in a good faith effort to comply with the Court's Order, DHS tasked OCIO to conduct a search on October 1, 2020, using the date parameters January 1, 2018 through January 14, 2020 and the keywords/filters: (1) (Purchase or subscription or acquisition or payment or agreement) AND (Product or service) AND (Immigration Benefits or immigration enforcement or border screening or transportation screening or criminal conduct) AND (social media AND collect*) AND (monitor OR search) and (2) social media AND investigat* AND (risk or illegal or enforce* or target* or predict* or algorithm* or vetting).  OCIO has reported that this search returned approximately 388 GB of data and is working with the Privacy Office to transfer the data in 30 GB increments for ingestion into FOIAXpress.  The search returned a volume of data much greater than expected even given the narrowed search and date parameters.

DHS stands by its position of September 21 and 25, 2020, that DHS will only agree to conduct one search for Parts 2, 3, and 5 using the time frame January 1, 2018 through January 14, 2020 and the keywords/filters: (1) (Purchase or subscription or acquisition or payment or agreement) AND (Product or service) AND (Immigration Benefits or immigration enforcement or border screening or transportation screening or criminal conduct) AND (social media AND collect*) AND (monitor OR search) and (2) social media AND investigat* AND (risk or illegal or enforce* or target* or predict* or algorithm* or vetting).  This proposed search tasking includes more "and" limiters in hopes of making the size of the search manageable for EDR to handle and ingest/load. If DHS conducts separate searches for each part of Plaintiffs' request, the resulting data will ultimately need to be consolidated in FOIAXpress for processing and the combined size of the data would exceed the capacity of the system.  Based on DHS's limited personnel

resources as well as the capacity limits of FOIAXpress, DHS cannot agree to conduct three separate searches. In addition, the searches proposed by DHS were drafted based on the combined expertise of the OCIO and the Privacy Office – knowing how the system works and how best to target the records of interest. The proposed search is likely over-inclusive of parts 2, 3, and 5 of Plaintiff's request, and reasonably calculated to produce the records of key interest to Plaintiff's once the results of the search are processed in FOIAXpress.

DHS tasked the Office of the Chief Information Officer (OCIO) to conduct a search of 67 custodians in OCIO, Office of Operations, the DHS Privacy Office, the Office of Civil Rights and Civil Liberties, and the Science and Technology Directorate. DHS had previously provided the position titles for the Office of Operations and Coordination and has provided Plaintiffs with a list of the position titles of these custodians by Office. DHS has the discretion to craft its search to meet the reasonableness standard and need not conduct multiple searches if additional searches are unlikely to produce any marginal return. DHS is acting in good faith to conduct a search reasonably calculated to produce the records responsive to all parts of Plaintiffs' FOIA request based on their substantial experience and expertise.

     b. State Department

In accordance with the order entered by the Court on September 8, *see* ECF No. 77, the State Department intends to provide its written plan for resuming the processing and production of records responsive to Plaintiffs' FOIA request on October 9, 2020.

Respectfully submitted,

DATED: October 8, 2020

/s/
Hugh Handeyside
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004

Telephone: 212-549-2500
hhandeyside@aclu.org

Matthew Cagle
American Civil Liberties Union Foundation
    of Northern California
39 Drumm Street
San Francisco, CA 94111
Telephone: 415-621-2493
mcagle@aclunc.org

*Attorneys for Plaintiffs*


JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
Deputy Branch Director

*/s/*
ELIZABETH TULIS (NY Bar)
Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Telephone:  (202) 514-9237
elizabeth.tulis@usdoj.gov

*Attorneys for Defendants*