BRIAN M. BOYNTON
Acting Assistant Attorney General
ELIZABETH SHAPIRO
Deputy Director, Federal Programs Branch
ELIZABETH TULIS
MICHAEL J. GERARDI
Trial Attorneys
Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
T: 202-616-0680
E: Michael.j.Gerardi@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, et al., <br><br> Defendants. | Case No. 3: 19-cv-00290-EMC <br><br> **MOTION OF DEFENDANT DEPARTMENT OF HOMELAND SECURITY FOR SUMMARY JUDGMENT WITH RESPECT TO CBP, ICE, AND USCIS** <br><br> Hearing Date:  5/6/2021 <br> Time:  1:30 pm <br> Place:  Videoconference Only |

# TABLE OF CONTENTS

NOTICE OF MOTION ................................................................................................ 1

INTRODUCTION ...................................................................................................... 1

I.    Plaintiffs' Request for Records ........................................................................ 2

II.   Responses of ICE, CBP, and USCIS .............................................................. 3

ARGUMENT ............................................................................................................ 4

I.    Standard of Review ......................................................................................... 4

II.   The Searches Conducted By ICE, CBP, And USCIS Fulfilled Their FOIA  Obligations. .... 4

      A.   ICE's Search Was Adequate ..................................................................... 5

      B.   CBP's Search Was Adequate ..................................................................... 6

      C.   USCIS's Search Was Adequate ................................................................. 8

III.  The Government Properly Withheld Information That Is Exempt from Disclosure Under FOIA ...................................................................................... 9

      A.   ICE And CBP Properly Withheld Information Under Exemption 4. .............................. 10

      B.   CBP, ICE, And USCIS Properly Withheld Information Under Exemption 5. ................. 11

      C.   ICE, CBP, And USCIS Properly Withheld Information Under Exemption 7(E) ............. 14

i

# TABLE OF AUTHORITIES

## Cases

*Animal Legal Def. Fund v. FDA*,
836 F.3d 987 (9th Cir. 2016) ........................................................................ 4

*Assembly of Cal. v. U.S. Dep't of Commerce*,
968 F.2d 916 (9th Cir. 1992) ........................................................................ 12

*Baldrige v. Shapiro*,
455 U.S. 345 (1982) ...................................................................................... 9

*Binion v. U.S. Dep't of Just.*,
695 F.2d 1189 (9th Cir. 1983) ...................................................................... 15

*Blackwell v. F.B.I.*,
646 F.3d 37, 42 (D.C. Cir. 2010) ................................................................. 15

*Carter v. U.S. Dep't of Commerce*,
307 F.3d 1084 (9th Cir. 2002) ...................................................................... 13

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854, 866 (D.C. Cir. 1980) ........................................................ 13, 14

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
802 F. App'x 309 (9th Cir. 2020) ................................................................. 10

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2356 (2019) ......................................................................... 9, 10, 11

*Formaldehyde Inst. v. HHS*,
889 F.2d 1118 (D.C. Cir. 1989) .................................................................... 12

*Hamdan v. U.S. Dep't of Just.*,
797 F.3d 759 (9th Cir. 2015) .............................................................. 4, 15, 16

*In re Sealed Case*,
737 F.2d 94 (D.C. Cir. 1984) ....................................................................... 14

*Kortlander v. Bureau of Land Mgmt.*,
816 F. Supp. 2d 1001 (D. Mont. 2011) ........................................................ 13

*KXTV, LLC v. U.S. Citizenship & Immigration Servs.*,
No. 2:19-cv-00415, 2020 WL 1082779 (E.D. Cal. Mar. 6, 2020) ............... 15

*Lahr v. NTSB*,
569 F.3d 964 (9th Cir. 2009) ......................................................................... 4

*Lion Raisins, Inc. v. USDA*,
354 F.3d 1072 (9th Cir. 2004) ........................................................................ 4

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*,
108 F.3d 1089 (9th Cir. 1997) ...................................................................... 13

*N.Y. Times Co. v. U.S. Dep't of Just.*,
282 F. Supp. 3d 234 (D.D.C. 2017) ............................................................... 14

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) ................................................................................ 11, 14

*Public Employes for Envt'l Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*,
740 F.3d 195, 201 (D.C. Cir. 2014) ............................................................... 12

*Rojas v. FAA*,
927 F.3d 1046 (9th Cir. 2019), *en banc rehearing ordered*, 948 F.3d 952 (2020) .................... 12

*Shannahan v. IRS*,
672 F.3d 1142 (9th Cir. 2012) ...................................................................... 10

*Sierra Club, Inc. v. U.S. Fish & Wildlife Serv.*,
925 F.3d 1000 (9th Cir. 2019) ...................................................................... 12

*Stewart v. U.S. Dep't of Interior*,
554 F.3d 1236, 1245 (10th Cir. 2009) ........................................................... 12

*Tax Analysts v. IRS*,
117 F.3d 607, 618 (D.C. Cir. 1997) ............................................................... 14

*U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) .................................................................................... 9, 13

*Watkins v. U.S. Bureau of Customs & Border Protection*,
643 F.3d 1189 (9th Cir. 2011) ...................................................................... 10

*Weisberg v. U.S. Dep't of Just.*,
745 F.2d 1476, 1485 (D.C. Cir. 1984) ........................................................... 10

*Zemansky v. EPA*,
767 F.2d 569 (9th Cir. 1985) ................................................................ *passim*

**Other Authorities**

5 U.S.C. § 552 .................................................................................... 11, 14

iii

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

NOTICE is hereby given of the filing of this motion by Defendant Department of Homeland Security ("DHS"), for hearing on May 6, 2021, at 1:30 p.m., via videoconference, pursuant to the schedule entered by the Court on January 13, 2021. See Order, ECF No. 96. Defendant respectfully moves for summary judgment in this Freedom of Information Act ("FOIA") matter with respect to the searches and withholdings of U.S. Immigration and Customs Enforcement ("ICE"), U.S. Customs and Border Protection ("CBP"), and U.S. Citizen and Immigration Services ("USCIS") (together, "the Government").

## INTRODUCTION

This action arises out of Plaintiffs' FOIA request for records related to analytical tools used for searching, analyzing, filtering, monitoring, or collecting information from social media networks. Plaintiffs submitted FOIA requests to several federal agencies and components, including ICE, CBP, and USCIS, which are components of DHS. These components conducted extensive searches for records in response to Plaintiffs' requests, and processed thousands of pages of responsive records. The parties have resolved many issues regarding Defendant's withholdings without intervention of the Court.  The issues that remain before the Court for resolution are (1) the adequacy of the search conducted by ICE, CBP, and USCIS and (2) the propriety of redactions taken under FOIA Exemptions 4, 5, and 7(E).

The declarations submitted by ICE, CBP, and USCIS establish that the components' searches were reasonably calculated to locate responsive documents and therefore adequate to discharge their obligations under FOIA. Further, the government's declarations establish that, in the redactions that remain at issue, ICE, CBP, and USCIS properly withheld information protected by the applicable FOIA exemptions. Specifically, the components properly withheld information under FOIA Exemption 4 that would disclose the proprietary commercial or financial information of government contractors. They also withheld information pursuant to Exemption 5 that is protected by the deliberative process privilege or attorney-client privilege.  Finally, they properly

1

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

withheld law enforcement information under FOIA Exemption 7(E) because disclosure of such information would disclose information regarding law enforcement techniques and procedures that would make it possible for individuals to modify their behavior to circumvent those techniques and frustrate these agencies' law enforcement missions.

Accordingly, the Court should grant DHS's motion for summary judgment with respect to the search and withholdings of ICE, CBP, and USCIS.

## BACKGROUND

### I.    Plaintiffs' Request for Records

This motion concerns a five-part FOIA request that Plaintiffs submitted to CBP, ICE, and USCIS on May 24, 2018.  Compl., ECF No. 1, ¶ 32.  The request seeks the following records:

1. All policies, guidance, procedures, directives, advisories, memoranda, and/or legal opinions pertaining to the agency's search, analysis, filtering, monitoring, or collection of content available on any social media network;

2. All records created since January 1, 2015 concerning the purchase of, acquisition of, subscription to, payment for, or agreement to use any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network, including but not limited to:

    a.   Records concerning any product or service capable of using social media content in assessing applications for immigration benefits or admission to the United States;

    b.   Records concerning any product or service capable of using social media content for immigration enforcement purposes;

    c.   Records concerning any product or service capable of using social media content for border or transportation screening purposes;

    d.   Records concerning any product or service capable of using social media content in the investigation of potential criminal conduct;

3. All communications to or from any private business and/or its employees since January 1, 2015 concerning any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network;

2

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

4.  All communications to or from employees or representatives of any social media network (e.g., Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015 concerning the search, analysis, filtering, monitoring, or collection of social media content; and

5.  All records concerning the use or incorporation of social media content into systems or programs that make use of targeting algorithms, machine learning processes, and/or data analytics for the purpose of (a) assessing risk, (b) predicting illegal activity or criminality, and/or (c) identifying possible subjects of investigation or immigration enforcement actions."

*Id.*

## II.   Responses of ICE, CBP, and USCIS

ICE processed and released 2,169 pages of records to Plaintiffs over the course of six productions.  Decl. of Fernando Pineiro ("Pineiro Decl.) ¶¶ 33, 36.  On January 28, 2021, ICE intends to release a small number of reprocessed records with certain redactions removed.  *Id.* ¶ 35.  Relevant to this motion, ICE continues to withhold records and information pursuant to Exemption 4, Exemption 5 (deliberative process privilege), and Exemption 7(E).

CBP provided responsive records in a series of rolling productions between June and October of 2019.  Decl. of Patrick Howard ("Howard Decl.") ¶¶ 24–27.  Following the final production, reprocessed records with fewer redactions were released to Plaintiffs on December 15, 2020.  *Id.* ¶ 29.  In total, CBP located 362 pages of responsive records, released 358 of those pages with redactions, and withheld one, four-page record in its entirety.  *Id.* ¶ 31.  CBP continues to withhold records and information pursuant to Exemption 4, Exemption 5 (deliberative process privilege and attorney-client privilege), and Exemption 7(E).

USCIS provided responsive records to Plaintiffs in two rolling productions in July and August 2019.  Decl. of Terri White ("White Decl.") ¶ 23. USCIS subsequently provided an updated production of these records, in which it lifted some of the original redactions.  *See id.* ¶ 26. Ultimately, of 2,645 pages of responsive records identified by USCIS's search, 543 pages were released in their entirety, 2,058 pages were released in part, and 6 pages were withheld in full. *Id.* In addition, 38 pages were referred to other agencies for their review and direct response to

3

Plaintiffs. *Id.* USCIS continues to withhold records and information pursuant to Exemption 5 (deliberative process privilege and attorney-client privilege) and Exemption 7(E).

## ARGUMENT

### I.     Standard of Review

Both the sufficiency of the agency's search for records in response to a FOIA request and the propriety of its withholdings under FOIA's exemptions are properly resolved through summary judgment on the basis of affidavits submitted by the agency's FOIA officer. *See Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1082 (9th Cir. 2004) (court may resolve exemption claims at summary judgment based on "detailed public affidavits identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption"), *overruled on other grounds*, *Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016); *Zemansky v. EPA*, 767 F.2d 569, 574 (9th Cir. 1985) (granting government summary judgment on the adequacy of its search as described in affidavits). Affidavits submitted to explain a FOIA request are accorded a presumption of good faith. *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 770–71 (9th Cir. 2015).

### II.    The Searches Conducted By ICE, CBP, And USCIS Fulfilled Their FOIA Obligations.

An agency responding to a FOIA request is required to "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr v. NTSB*, 569 F.3d 964, 986 (9th Cir. 2009) (quoting *Zemansky*, 767 F.2d at 571). The reasonableness of a search "depends, not surprisingly, upon the facts of each case." *Zemansky*, 767 F.2d at 571 (quoting *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). In demonstrating the adequacy of its search, "the failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Lahr*, 569 F.3d at 988. That is because "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was *adequate*." *Zemansky*, 767 F.2d at 571. Here, the declarations submitted in support of this motion for summary judgment establish the searches

4

conducted by ICE, CBP, and USCIS were reasonably calculated to locate responsive records, and therefore were adequate under FOIA.

### A.    ICE's Search Was Adequate

ICE's response to Plaintiffs' FOIA request was led by ICE's FOIA Office, which is responsible for processing and responding to all FOIA requests ICE receives.  Pineiro Decl. ¶ 1. Upon reviewing Plaintiffs' request, ICE determined that four offices were likely to possess responsive records: the Office of Homeland Security Investigations ("HSI"); Office of Acquisition Management ("OAQ"); Office of Policy, and Office of Enforcement and Removal Operations ("ERO").  *Id.* ¶ 19. As set forth in Mr. Pineiro's declaration, each of these offices performed a detailed search for responsive records.

HSI is primarily responsible for investigating cross-border criminal activity. *Id.* ¶ 19. HSI referred Plaintiffs' request to its Records and Disclosure Unit, which tasked a response to a number of components within the National Security Investigations Division (NSID) of HSI: the Counterterrorism and Criminal Exploitation Unit ("CTCEU"), the Human Rights Violators and War Crimes Unit ("HRVWC"), and the Visa Security Coordination Center ("VSCC").  *Id.* ¶ 21. CTCEU proactively scrutinizes known or suspected terrorists and their associates, identifies terrorist criminal enterprises, and prevents terrorists and other criminals from exploiting the nation's immigration system and the student visa system.  *Id.* ¶ 22. HRVWC targets war criminals, persecutors and human rights abusers who seek shelter from justice in the United States. *Id.* VSCC works in concert with CBP and the Department of State to screen non-immigrant and immigrant visa applications. *Id.* These components all performed searches of their relevant systems, based upon their subject matter expertise, to identify responsive records, and located nearly 2,000 pages of potentially responsive records that were ultimately processed by the FOIA Office. *Id.* ¶ 23.

OAQ, which is located within ICE's Management and Administration ("M&A") directorate, is dedicated to the Agency's business performances, and procures law enforcement services and products, detention and removal services, data analysis, interpreter services and clerical support, as well as information technology supplies and services. *Id.* ¶ 25.  Based on the

5

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

subject matter of the request, OAQ referred the search task to the Detention and Compliance Removals ("DCR") division. *Id.* ¶ 26. After conducting a manual search of files likely to contain responsive information, DCR identified 133 pages of [potentially] responsive records for processing. *Id.* The ICE Policy office is also located within M&A; it identifies, develops and effectively communicates ICE organizational priorities and agency-wide policies to internal and external stake holders, leads interagency strategic policy projects, and oversees ICE's regulatory process. *Id.* ¶ 27.  ICE Policy tasked an analyst with doing an electronic search for records and identified 47 pages of [potentially] responsive records for processing. *Id.* ¶ 28.

ERO's mission is to identify, arrest, and remove aliens who present a danger to national security or a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of immigration laws and border control efforts. *Id.* ¶ 29.  A senior detention and deportation officer performed a manual search for contract documents relating to the FOIA request, as well as a search of her e-mail for communications with relevant contractors. *Id.* ¶ 31. ERO located 45 pages of potentially responsive records that were ultimately processed. *Id.*

## B.      CBP's Search Was Adequate

CBP's response to Plaintiffs' request was led by CBP's FOIA Division, which is the office responsible for reviewing FOIA requests, determining whether records exist, and, if so, whether and to what extent they can be released under FOIA.  Howard Decl. ¶ 7.  Although the FOIA Division does not always have direct access to records that may be responsive to a request, it determines which CBP component offices are likely to have responsive information and work with those offices to gather any potentially responsive records. *Id.* ¶ 11. Based on the FOIA Division's familiarity, experience and knowledge with the types of records that each office maintains, an assessment is made as to where responsive records are likely to be maintained based on a review of the content of the request itself and the nature of the records sought, as well as discussions with knowledgeable agency personnel. *Id.* Accordingly, when CBP receives a FOIA request that reasonably describes the records requested and complies with the agency's rules governing the

6

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

procedures for FOIA requests, the office likely to have responsive information is tasked with searching for and retrieving potentially responsive records based on their knowledge of the records maintained by the office and their understanding of the information being requested. *Id.*

Following an initial review of Plaintiffs' request, CBP determined that the office most likely to maintain responsive documents was the Office of Field Operations ("OFO"). Howard Decl. ¶ 18. OFO is the largest component in CBP, and conducts vetting of international travelers seeking to enter the United States at ports of entry. In addition to consulting with relevant subject-matter experts and conducting a manual search for records, OFO searched the electronic record repository identified as likely to contain responsive records, using keyword searches and knowledge of the types of documents maintained in such locations. *Id.* ¶ 20. The documents OFO maintains related to this subject matter are generally stored in common locations on the CBP network to facilitate collaboration and to ensure persons and offices are using the most recent, up-to-date version of a document. *Id.*  In addition to general searches of these common locations using appropriate search terms associated with the request, responsive documents were also identified by reviewing documents provided in response to previous similar requests and the professional knowledge and experience of the CBP personnel responsible for the programs/offices most likely to create and/or maintain such documents. *Id.*  CBP personnel conducting the search were familiar with relevant government databases in which relevant data could be found, and searched these accordingly. *Id.*

Following further consultation within CBP, it was determined that, in addition to OFO, the Privacy and Diversity Office ("PDO" U.S. Border Patrol ("USBP"), Office of Professional Responsibility ("OPR"), Office of Acquisition ("OA"), Office of Information Technology ("OIT"), Office of Intelligence ("OI"), Office of Trade ("OT"), Office of Public Affairs ("OPA"), and Air and Marine Operations ("AMO") might have records responsive to the FOIA request. *Id.* ¶ 20. The request was provided to personnel within each office responsible for implementing searches for records in response to FOIA requests, based on their position, subject-matter

7

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

expertise, and knowledge of their organization's structure and recordkeeping practices. *Id.* Each office conducted a search for records based on the types of records requested, a review of repositories where such records would reasonably expected to be located, and consultations with subject-matter experts. *Id.* Each office tailored its searches based on the knowledge of relevant personnel about what records were likely to exist and how they were maintained. *Id.* These included searches of folders and emails, such as those related to programs, systems, and efforts in which the operational use of social media is involved. *Id.*

### C.    USCIS's Search Was Adequate

The Significant Interest Group ("SIG") team in USCIS's National Records Center ("NRC") handles all FOIA/PA requests for non-alien file records on behalf of the agency.  White Decl. ¶ 10. Upon receipt of such a request, a SIG team reviews the request and determines its precise nature and scope, and any and all agency offices that may have potentially responsive records based on the specific missions and work of each office and Directorate.  *Id.* After a member of the SIG team has identified any and all agency offices that may have potentially responsive records, he or she then forwards the request to those offices for a search and response.  *Id.* ¶ 11. In addition to searching its own records, those offices are generally asked to identify any other agency offices that it believes could have potentially responsive records. *Id.*

In this case, NRC determined that Plaintiffs' request sought non-alien file records, and accordingly assigned the request to its SIG team. *Id.* ¶ 15. The SIG team determined that documents responsive to the request were most likely to be maintained by USCIS's Office of Chief Counsel ("OCC"), Office of Information Technology ("OIT"), Fraud Detection and National Security Directorate ("FDNS"), Office of Policy and Strategy ("OP&S"), Executive Secretariat, and Office of Contracting. *Id.* ¶ 16. In June 2018, the SIG team forwarded the request to these offices and requested that staff in the offices conduct a search of their records for any responsive documents. *Id.* ¶ 17.   Because each employee conducting a search might have a different organization system or way of phrasing a topic that could be responsive, all employees were

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

instructed to read the request and use those search terms that would reasonably be calculated to locate any records responsive to the request. *Id.*

By email on November 20, 2018, one of the Senior Government Information Specialists in the USCIS FOIA Office reached out to Plaintiffs to advise them that the agency was unable to conduct a search for two of the items in Plaintiffs' request, because the items were overbroad. *Id.* ¶ 18. Plaintiffs ultimately agreed to limit a search for these two items to records maintained by OIT and the Office of Contracting. *Id.* ¶ 19.

After receiving records from the assigned offices, the SIG team reviewed all documents to determine whether the search was reasonably calculated to locate records responsive to Plaintiffs' FOIA request. *Id.* ¶ 22. Based upon the SIG team's review of the Plaintiffs' FOIA request and its particular subject matter, along with the responsive records received, the agency determined that it had identified all of the appropriate Directorates and program offices within USCIS, and each office had received all of the information needed to perform a search that was reasonably calculated to locate any records responsive to this request. *Id.* Additionally, after reviewing the responses from each office, the USCIS FOIA office determined that staff within the offices searched all files that were reasonably likely to contain records responsive to the Plaintiffs' FOIA request. *Id.* Based on the SIG team's review of this information, it determined that the search was adequate, and that it was unlikely that any of the other USCIS Directorates or program offices would have records responsive to this request. *Id.*

## III.   **The Government Properly Withheld Information That Is Exempt from Disclosure Under FOIA**

FOIA generally requires disclosure of agency records, but the statute recognizes "that public disclosure is not always in the public interest," *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982), and mandates that records need not be disclosed if "the documents fall within [the] enumerated exemptions," *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001). The "important interests" these exemptions serve "are as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Food Mktg. Inst. v. Argus Leader*

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

*Media*, 139 S. Ct. 2356, 2366 (2019) ("*Argus Leader*") (internal citations and brackets omitted). Although the burden falls on the agency to show it is justified in withholding information, courts "accord substantial weight to an agency's declarations regarding the application of a FOIA exemption." *Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012).

The parties have successfully narrowed their disagreements to the agencies' reliance on FOIA Exemptions 4, 5, and 7(E). For the reasons that follow, and as explained in further detail in the *Vaughn* indices attached to this motion, the agencies have properly invoked, and adequately supported, these exemptions.

### A.    ICE And CBP Properly Withheld Information Under Exemption 4.

Exemption 4 "shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *Argus Leader*, 139 S.Ct. at 2362 (quoting 5 U.S.C. § 552(b)(4)). In order to invoke Exemption 4, the government agency must demonstrate that the information it seeks to protect is (1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential." *Watkins v. U.S. Bureau of Customs & Border Protection*, 643 F.3d 1189, 1194 (9th Cir. 2011) (citations and quotations omitted). In this context, "confidential" information, at a minimum, covers "commercial or financial information is both [1] customarily and actually treated as private by its owner and [2] provided to the government under an assurance of privacy." *Argus Leader*, 139 S. Ct. at 2366. That represents a break from the standard that used to govern Exemption 4 claims in the Ninth Circuit. it is no longer necessary for the government to show a likelihood that "substantial competitive harm" will occur if the information is released. *See Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 802 F. App'x 309, 310–11 (9th Cir. 2020) (comparing standards and ordering remand to district court to reevaluate Exemption 4 claims under *Argus Leader*). *Argus Leader* leaves open the question of whether an assurance of privacy by the government is always necessary to defend an Exemption 4 claim, but affirms that information may be withheld if it is both treated as private and provided under an assurance of privacy. *Argus Leader*, 139 S. Ct. at

10

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

2363.

Both ICE and CBP have properly claimed Exemption 4 in this case.   ICE applied Exemption 4 to protect hourly rates of individuals who are assigned under contracts with ICE to perform analyst services. Pineiro Decl. ¶ 38.  This information is subject to intense competition among private contractors. *Id.* ICE has a long history of protecting unit pricing from disclosure. *Id.* As such, private contractors customarily keep unit pricing information private, and ICE's historical and customary practices are an assurance that ICE will keep this information in confidence during and after the bidding process. *Id.* ¶¶ 38–39.  CBP applied Exemption 4 to commercial contracts and orders entered into between CBP and certain contractors, as well as to information in Privacy Threshold Analyses ("PTAs") which CBP submits to the DHS Privacy Office to explain CBP pilots and programs and provide recommendations on whether further compliance documentation is necessary for the program. Howard Decl. ¶ 34. The PTAs contain proprietary financial information shared by contractors, including product specifications, descriptions of product capabilities, and ways the product may be used by CBP that are not generally known to the public. *Id.* ¶ 35.  Contractors provide this information to the government under circumstances which suggest the government will be used for official purposes and kept private. *Id.* These forms of financial and commercial information, obtained by the government, are confidential under the Supreme Court's *Argus Leader* test and properly withheld pursuant to Exemption 4.

### B.    CBP, ICE, And USCIS Properly Withheld Information Under Exemption 5.

FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) ("Exemption 5"). In other words, Exemption 5 permits agencies to withhold privileged information, including attorney work product, deliberative materials, and confidential attorney-client communications, that would also be deemed privileged in litigation. *See NLRB v. Sears, Roebuck & Co., 42*1 U.S. 132, 149 (1975). The terms "inter-agency or intra-

11

agency" are properly understood to "include U.S. agency records authored by *non*-agency entities if those records were solicited by a U.S. agency in the course of its deliberative process," a doctrine known as the "consultant corollary."[1] *Public Employees for Envt'l Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 201 (D.C. Cir. 2014); *see also Stewart v. U.S. Dep't of Interior*, 554 F.3d 1236, 1245 (10th Cir. 2009) (reports made by a paid consultant to an agency were covered by Exemption 5 because he "functioned akin to an agency employee").

### (1)     Deliberative Process Privilege

The deliberative process privilege applies when disclosure "would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Sierra Club, Inc. v. U.S. Fish & Wildlife Serv., 92*5 F.3d 1000, 1011 (9th Cir. 2019) (quoting *Kowack v. U.S. Forest Serv., 76*6 F.3d 1130, 1135 (9th Cir. 2014)). Documents are "predecisional" if they are "prepared in order to assist an agency decisionmaker in arriving at his decision," including "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992) (quoting *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1122 (D.C. Cir. 1989)). Documents are part of the "deliberative process" if "the disclosure of [the] materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id.*

The purpose of the deliberative process privilege is "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny."

---

[1] A panel of the Ninth Circuit declined to adopt the consultant corollary in *Rojas v. FAA*, but the full court subsequently ordered the case to be reheard en banc, vacating the panel's opinion. 927 F.3d 1046 (9th Cir. 2019), *en banc rehearing ordered*, 948 F.3d 952 (2020).  The en banc court heard oral argument on September 22, 2020, and the matter remains pending.

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

1   *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1088-89 (9th Cir. 2002) (citations omitted). As

2   the Supreme Court has explained: "The deliberative process privilege rests on the obvious

3   realization that officials will not communicate candidly among themselves if each remark is a

4   potential item of discovery and front page news, and its object is to enhance the quality of agency

5   decisions by protecting open and frank discussion among those who make them within the

6   Government." *Klamath Water Users Protective Ass'n*, 532 U.S. at 8-9 (internal citations and

7   quotations omitted). The privilege also serves to "protect against confusing the issues and

8   misleading the public by dissemination of documents suggesting reasons and rationales for a

9   course of action which were not in fact the ultimate reasons for the agency's action." *Kortlander*

10  *v. Bureau of Land Mgmt.*, 816 F. Supp. 2d 1001, 1011 (D. Mont. 2011) (quoting *Coastal States*

11  *Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

12       All three DHS components implicated have properly asserted Exemption 5 over records

13  responsive to Plaintiffs' request. ICE withheld documents identified by HSI regarding the

14  decisions, terms, and language relating to contracts and draft responses, edits, and discussions

15  when responding to senior leaders and providing opinions in response to questions regarding the

16  use of social media.  Pineiro Decl. ¶ 42.  It also withheld various draft documents of acquisition

17  plans, contracts, training material, PowerPoint slides, and talking and briefing points, many of

18  which bore "draft" watermarks as well as red-lined edits and comments. *Id.* ¶ 43.  CBP withheld

19  documents that were prepared to assist agency decision-making; communications containing

20  recommendations, evaluation or comments regarding proposed agency action; and documents

21  reflecting agency deliberations and consideration of policy recommendations.  Howard Decl. ¶ 39.

22  USCIS also invoked deliberative process privilege to protect its decision-making processes in

23  conjunction with the development of its procedures for operational use of social media, capturing

24  documents reflecting advisory opinions as well as recommendations and deliberations related to

25  social media use.  White Decl. ¶ 29–31.  As explained in greater detail in the declarations and

26  supporting *Vaughn* indices, disclosure of these pre-decisional, deliberative documents will almost

27

28

13

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

certainly have a chilling effect on future agency deliberations, and fall squarely within the deliberative process privilege.

(2)    <b>Attorney-Client Privilege</b>

Through Exemption 5, the attorney-client privilege applies in FOIA processing to the same extent it applies in ordinary litigation. *See Sears, Roebuck & Co., 42*1 U.S. at 149; *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1092 (9th Cir. 1997). The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services. *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984). The privilege "fully applies to communications between government attorneys and the government officials and agencies to which they render legal service." *N.Y. Times Co. v. U.S. Dep't of Just.*, 282 F. Supp. 3d 234, 237 (D.D.C. 2017) (citing *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997)). A government agency "needs the . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." *Coastal States*, 617 F.2d at 863.

CBP invoked Exemption 5 to protect legal advice prepared by attorneys of CBP's Office of Chief Counsel, as well as descriptions of communications with counsel undertaken for the purpose of seeking or obtaining legal advice. Howard Decl. ¶ 41. USCIS also invoked Exemption 5 to protect information in legal memoranda, draft documents, meeting summaries, and emails from agency counsel to their clients, in particular, agency policy makers, agency decision makers, and agency employees pertaining to DHS and USCIS's operational use of social media. White Decl. ¶ 32. These determinations are amply justified, and summary judgment is appropriate on the assertions of Exemption 5 by CBP and USCIS.

**C.    ICE, CBP, And USCIS Properly Withheld Information Under Exemption 7(E)**

Exemption 7(E) protects "records or information compiled for law enforcement purposes . . . to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would

14

disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  Exemption 7(E) sets "a relatively low bar for the agency to justify withholding." *KXTV, LLC v. U.S. Citizenship & Immigration Servs.*, No. 2:19-cv-00415, 2020 WL 1082779, at *7 (E.D. Cal. Mar. 6, 2020) (quoting *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2010)).  The two-part showing Exemption 7(E) requires is amply satisfied here.

As a threshold matter, the records requested from ICE, CBP, and USCIS all meet Exemption 7's requirement that records be compiled for "law enforcement purposes."  Agencies with "a clear law enforcement mandate . . . need establish only a 'rational nexus' between its law enforcement duties and the document for which Exemption 7 is claimed" to satisfy this test. *Binion v. U.S. Dep't of Just.*, 695 F.2d 1189, 1190 (9th Cir. 1983) (citation omitted).   The three components of DHS who responded to Plaintiffs' FOIA request all have such a mandate.  Pineiro Decl. ¶¶ 44–46 (ICE is DHS's largest investigative arm and the second largest investigative agency in the federal government); White Decl. ¶ 35 (USCIS is responsible for detecting and addressing vulnerabilities in the immigration system and preventing fraud); Howard Decl. ¶ 44 (CBP is responsible for securing the border to prevent threats from entering the United States, and to enforce customs, immigration, agriculture and other federal laws at the border).  The requested records seek information about the use of social media networks in law enforcement activities that fall squarely within Exemption 7's coverage.

Having met this threshold test, records and information may be withheld pursuant to Exemption 7(E) if they "would disclose techniques and procedures for law enforcement investigations or prosecutions, *or* would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." The agency needs to show a risk of circumvention of the law only if it is disclosing "guidelines." *Hamdan*, 797 F.3d at 778.  Otherwise, the agency need only show that the technique is not generally known to the public.  *Id.* at 777.  The government may withhold information about a

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

technique that is publicly known at a high level of generality, but where the specific means are unknown and disclosures of those means would "compromise the very techniques the government is trying to keep secret." *Id.* at 778.

ICE withheld two broad categories of information under Exemption 7(E). First, in a limited number of instances, it protected from disclosure law enforcement sensitive URLs, dial in and access codes, and internal locations of files of various law enforcement sensitive databases and case management systems. Pineiro Decl. ¶ 48. This information could give members of the public improper access to law enforcement sensitive data or allow a person to breach sensitive systems in order to avoid detection or manipulate law enforcement sensitive information. *Id.* Second, ICE withheld information that would disclose techniques and/or procedures regarding HSI investigations that could reasonably be expected to risk circumvention of the law and that are not well known to the public. *Id.* ¶ 49. Although it is obvious that law enforcement agencies research public, open source materials, much of the information Plaintiffs' seek concern the precise details of how HIS conducts such investigations. These include training materials regarding open source research containing step by step instructions, advice on which sites to use and how to use them, and guidance on the vulnerabilities of these investigations. *Id.* They also provide a sense of how ICE has allocated resources to perform this work. *Id.*

CBP has applied Exemption 7(E) to at seventeen specific types of information that would disclose techniques and procedures for law enforcement. Howard Decl. ¶ 46. More generally, CBP relied upon Exemption 7(E) to withhold information that would reveal the scope and investigatory focus of CBP's operational use of social media; descriptions of specific law enforcement techniques and types of analysis that CBP does or does not utilize when using publicly available social media information; and descriptions of how CBP intends to access and utilize commercial tools and the specific types of information accessed while using those tools in support of the CBP law enforcement and national security mission. *Id.* ¶ 50–51.

16

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS

USCIS also used Exemption 7(E) to withhold two broad categories of information.  First, it withheld a number of different materials related to the operational use of social media in its work, including information about background check processes, information sharing, and advice on the legal limits of USCIS's vetting authority and the use of social media. White Decl. ¶ 36. This category also includes withheld information on specific background checks, the social media applications USCIS screens and the words or phrases it uses to search them, guidelines on how to use the government screening tools, and challenges or vulnerabilities inherent to social media searches.  *Id.*  Disclosure of this information would tend to reveal the types of background checks authorized by USCIS, and what types of procedures are used in the enforcement of specific immigration or national security directives. *Id.* Second, USCIS withheld guidelines as to what actions should be taken for certain cases where there is specific fraud or concerns regarding public safety or national security, the specific methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods. *Id.* ¶ 37. Disclosing such information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless because it could allow individuals to research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  *Id.*  It may also result in individuals hiding social media use, dampening the effectiveness of screening. *Id.*

The declarations of ICE, CBP, and USCIS, combined with their detailed *Vaughn* indices, amply demonstrate that the responsive records contain non-public information about how social media monitoring is conducted by immigration authorities, including information about methods and guidelines for conducting information.  Disclosure of the information will make procedures the Government has a right to maintain in secrecy public, and will make it more difficult for them to pursue their law enforcement missions.  Accordingly, summary judgment is appropriate as to Exemption 7(E).

17

## __CONCLUSION__

For the foregoing reasons, the Court should grant DHS's motion for summary judgment as to ICE, CBP, and USCIS.

Dated:  January 28, 2021                              Respectfully Submitted,

BRIAN BOYNTON
Acting Assistant Attorney General

ELIZABETH SHAPIRO
Deputy Director, Federal Programs Branch

*/s/Michael J. Gerardi*
AMY E. POWELL
ELIZABETH TULIS
MICHAEL J. GERARDI
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20005
Phone: 202-616-0680
Email: michael.j.gerardi@usdoj.gov

*Attorneys for Defendants*

18

*ACLU v. DOJ*, No. 3:19-cv-00290-EMC
DHS Mot. for Summary J. – CBP, ICE, USCIS