UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF STATE,<br><br>Defendants. | No. 19-cv-290 |

## DECLARATION OF FERNANDO PINEIRO

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am the Acting FOIA Officer of the Freedom of Information Act Office (the "ICE FOIA Office") at U.S. Immigration and Customs Enforcement ("ICE"). The ICE FOIA Office is responsible for processing and responding to all Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. I have held this position since July 10, 2019 and I am the ICE official immediately responsible for supervising ICE responses to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a (the "Privacy Act"), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA Office from December 29, 2013 to July 9, 2019, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

1

2. My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE.  Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

3. I make this declaration in support of ICE's Motion for Summary Judgment in the above-captioned action.  The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4. This declaration describes how ICE responded to Plaintiffs' FOIA request.  In addition, in accordance with the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration explains the basis for withholding portions of the requested information pursuant to FOIA Exemptions (b)(4), (b)(5), and (b)(7)(E), 5 U.S.C. § 552 (b)(4), (b)(5), and (b)(7)(E).[1]  **ICE's *Vaughn* Index is attached hereto as Exhibit A**.

I. **PROCEDURAL HISTORY OF THE PLAINTIFFS' FOIA REQUEST AND THE INSTANT LITIGATION**

5. This suit stems from a FOIA request Plaintiffs sent to ICE on May 24, 2018. The FOIA request was processed by the ICE FOIA Office and contained a request for the following records:

---

[1] ICE had additionally withheld portions of the requested information pursuant to FOIA Exemptions (b)(6) and (b)(7)(C), however, the parties have agreed that these withholdings, and other withholdings identified by the Plaintiffs would not be challenged and so they have been excluded from the *Vaughn* Index.

"1. All policies, guidance, procedures, directives, advisories, memoranda, and/or legal opinions pertaining to the agency's search, analysis, filtering, monitoring, or collection of content available on any social media network;

2. All records created since January 1, 2015 concerning the purchase of, acquisition of, subscription to, payment for, or agreement to use any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network, including but not limited to:
    a. Records concerning any product or service capable of using social media content in assessing applications for immigration benefits or admission to the United States;
    b. Records concerning any product or service capable of using social media content for immigration enforcement purposes;
    c. Records concerning any product or service capable of using social media content for border or transportation screening purposes;
    d. Records concerning any product or service capable of using social media content in the investigation of potential criminal conduct;

3. All communications to or from any private business and/or its employees since January 1, 2015 concerning any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network;

4. All communications to or from employees or representatives of any social media network (e.g., Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015 concerning the search, analysis, filtering, monitoring, or collection of social media content; and

5. All records concerning the use or incorporation of social media content into systems or programs that make use of targeting algorithms, machine learning processes, and/or data analytics for the purpose of (a) assessing risk, (b) predicting illegal activity or criminality, and/or (c) identifying possible subjects of investigation or immigration enforcement actions."

6.    By email dated May 31, 2018, the ICE FOIA Office acknowledged receipt of Plaintiffs' FOIA Request and assigned it ICE FOIA case number 2018-ICFO-39222.

7.    Additionally, on May 31, 2018, upon reviewing Plaintiffs' FOIA request, the ICE FOIA Office determined that because of the subject matter of Plaintiffs' FOIA Request, the following offices would be tasked to conduct a search for responsive records:  Office Homeland

Security Investigations ("HSI"); Office of Acquisition Management ("OAQ"); Office of Policy ("Policy"), and Office of Enforcement and Removal Operations ("ERO").

8. On January 17, 2019, Plaintiffs filed the Complaint in this case.

## II. ICE'S STANDARD PROCEDURE FOR INITIATING SEARCHES IN RESPONSE TO FOIA REQUESTS

9. When the ICE FOIA Office receives a FOIA request, the intake staff evaluates it to determine if it is a proper FOIA request per DHS FOIA regulation 6 C.F.R. § 5.3. Generally, a FOIA request is considered proper and in compliance with DHS regulations if it reasonably describes the records sought and the records are under the purview of ICE.

10. If a FOIA request does not reasonably describe the records sought, the ICE FOIA Office will seek clarification from the requester. If the requested information is under the purview of a DHS component other than ICE, the ICE FOIA Office will refer the request to the appropriate DHS component for processing and direct response to the requester. If the FOIA request seeks records under the purview of a government agency other than DHS, ICE FOIA informs the requester to contact the other government agency directly and ICE FOIA administratively closes the FOIA request.

11. Proper FOIA requests are entered into a database known as FOIAXpress and assigned a case tracking number. Based upon the requester's description of the records being sought and ICE FOIA's knowledge of the various program offices' missions, the ICE FOIA Office identifies the program office(s) likely to possess responsive records and tasks the appropriate program office(s) to conduct the necessary searches.

12. Upon receipt of a proper FOIA request, the ICE FOIA Office will identify which program offices, based on their experience and knowledge of ICE's program offices, within ICE are reasonably likely to possess records responsive to that request, if any, and initiates searches

4

within those program offices. Once the ICE FOIA Office determines the appropriate program offices for a given request, it provides the FOIA point of contact (POC) within each of those program offices with a copy of the FOIA request and instructs them to conduct a search for responsive records. The POCs then review the FOIA request, along with any case-specific instructions that may have been provided, and based on their experience and knowledge of their program office practices and activities, forward the request and instructions to the individual employee(s) or component office(s) within the program office that they believe are reasonably likely to have responsive records, if any. In conformity with the ICE FOIA Office's instructions, the individuals and component offices are directed to conduct searches of their file systems, including both paper files and electronic files, which in their judgment, based on their knowledge of the way they routinely keep records, would most likely be the files to contain responsive documents. Once those searches are completed, the individuals and component offices provide any potentially responsive records to their program office's POC, who in turn, provides the records to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records for responsiveness and application of appropriate FOIA Exemptions.

13. ICE employees maintain records in several ways. ICE program offices use various systems to maintain records, such as investigative files, records regarding the operation of ICE programs, and administrative records. ICE employees may store electronic records on their individual computer hard drives, their program office's shared drive (if the office uses one), DVDs, CDs, and/or USB storage devices. The determination of whether or not these electronic locations must be searched in response to a particular FOIA tasking, as well as how to conduct any necessary searches, is necessarily based on the manner in which the employee maintains his/her files.

14. Additionally, all ICE employees have access to email. ICE uses the Microsoft Outlook email system. Each ICE employee stores his/her files in the way that works best for that particular employee. ICE employees use various methods to store their Microsoft Outlook email files: for example, some archive their files monthly, without separating by subject; others archive their email by topic or by program; still others may create PST files of their emails and store them on their hard drive or shared drive.

15. Records received by the ICE FOIA Office from the program office POCs are assigned to a FOIA processor who makes a determination whether the records are responsive to the FOIA request, or not. If the records are responsive, the FOIA processor will redact information pursuant to the FOIA or the Privacy Act, as appropriate, while simultaneously ensuring that all reasonably segregated non-exempt information is released.

16. Frequently, the ICE FOIA Office must coordinate between multiple program offices to ensure the program office records are properly redacted and information is correctly segregated. Once the ICE FOIA Office completes its coordination efforts and all responsive records have been processed, the ICE FOIA Office releases the responsive records to the requester.

### III.  DESCRIPTION OF PROGRAM OFFICES TASKED WITH SEARCHING FOR RECORDS IN RESPONSE TO PLAINTIFFS' FOIA REQUEST

17. ICE is the principal investigative arm of DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now employs more than 20,000 people in offices in every state and in 48 foreign countries.

18. The ICE FOIA Office determined that because of the subject matter of Plaintiffs' FOIA Request, and the ICE FOIA Office's experience and knowledge of what types of records each Office maintains, the following offices would likely have records responsive to Plaintiff's FOIA request: Office of Homeland Security Investigations ("HSI"); Office of Acquisition Management ("OAQ"); Office of Policy ("Policy"), and Office of Enforcement and Removal Operations ("ERO"). Specifically, if there were any records relating to the analytical tools used for searching, analyzing, filtering, monitoring, or collecting information from social media networks, these Offices would be the Offices likely to have responsive records. The ICE FOIA Office instructed each office to conduct a comprehensive search for records and to provide all records located during that search to the ICE FOIA Office for review and processing.

### HSI's Searches and Response to Plaintiffs' FOIA Requests

19. HSI is a critical investigative arm of the DHS and is a vital U.S. asset in combating criminal organizations illegally exploiting America's travel, trade, financial and immigration systems. HSI's workforce includes special agents, analysts, auditors and support staff. HSI has broad legal authority to enforce a diverse array of federal statutes. It uses this authority to investigate all types of cross-border criminal activity including: financial crimes, money laundering and bulk cash smuggling; commercial fraud and intellectual property theft; cybercrimes; human rights violations; human smuggling and trafficking; immigration, document and benefit fraud; narcotics and weapons smuggling/trafficking; transnational gang activity; export enforcement; and international art and antiquity theft. HSI has 30 Special Agent in Charge ("SAC") principal field offices throughout the United States. The SAC offices are responsible for the administration and management of all investigative and enforcement activities within the geographic boundaries of the office.

20.     When HSI receives a FOIA tasking from the ICE FOIA Office, the request is submitted to HSI Records and Disclosure Unit ("RDU"), where the FOIA Section Chief reviews the substance of the FOIA request.  HSI RDU, based on subject matter expertise and knowledge of the internal practices of offices within HSI, RDU tasks a geographic SAC office, program office and/or specific individual(s) to conduct searches of their file systems, including both paper files and electronic files, based on their knowledge of routine file maintenance where responsive records would most likely be located.  If the FOIA request pertains to a specific operation or program, the program office responsible for that operation will be tasked.  Employees tasked with conducting searches, rely upon the language of the request, guidance from the FOIA Section Chief as well as their operational knowledge and subject matter expertise, to identify the specific search term(s) or combinations thereof, most likely to produce responsive records.  Once searches are completed, the individuals and program offices provide any potentially responsive records to RDU to analyze for HSI law enforcement equities and recommend disclosures to the ICE FOIA Office. The ICE FOIA Office then reviews the collected records and disclosure recommendations and applies redactions to withhold statutorily exempt information before making a disclosure to the requester.

21.     Within HSI is the National Security Investigations Division (NSID).  NSID leads the effort to identify, disrupt and dismantle transnational criminal enterprises and terrorist organizations that threaten the security of the United States.  NSID comprises of two program offices, and many units under those program offices.  In particular, NSID units relevant to the current FOIA request, are the Counterterrorism and Criminal Exploitation Unit (CTCEU), the Human Rights Violators and War Crimes Unit (HRVWC), and the Visa Security Coordination Center (VSCC).

22. The CTCEU proactively scrutinizes known or suspected terrorists and their associates, identifies terrorist criminal enterprises, and prevents terrorists and other criminals from exploiting the nation's immigration system and the student visa system. HRVWC targets war criminals, persecutors and human rights abusers who seek shelter from justice in the United States to ensure there is no safe haven for these violators. The VSCC participates in the screening and vetting of non-immigrant and immigrant visa applications at the 33 current Visa Security Posts utilizing the Pre-Adjudication Threat Recognition Intelligence Operations Team (PATRIOT). VSS works in partnership with HSI International Operations and Customs and Border Protection (CBP) to provide the Department of State (DOS) with one joint DHS recommendation on visa issuance.

23. On May 31, 2018, the ICE FOIA Office tasked HSI with responding to Plaintiffs' FOIA request. RDU reviewed the request and, because the request referred to the use of social media in law enforcement operations, tasked the NSID to conduct a search. The FOIA POC within NSID reviewed the request, and based upon subject matter expertise, tasked the CTCEU, the HRVWC, and the VSCC with conducting the search within NSID. Within CTCEU, four Intelligence Managers, three Intelligence Analysts, one Criminal Investigative Specialist, one Intelligence Research Specialist, and three Intelligence Associates conducted searches of their computers, shared drives, and Outlook using the terms "Giant Oak," "Social Locator," "Social media training," "Social media training material," "social media analytical tools," GOST," "training guidelines," and "training material" based upon the FOIA request and their own subject matter expertise. Within the HRVWC, the Section Chief conducted a search of Outlook using the name of the software HRVWC uses for social media vetting/screening. Within the VSCC, one Unit Chief, one Management and Program Analyst, two Program Manager/Special Agent, and one

9

Section Chief, conducted a search of their computers, shared drives, and Outlook using the terms, "VLVI," "Lifecycle," "Social Media," "GOST," "Giant Oak," "vetting," "screening," "contract," "social," and "Extreme Vetting" based upon the FOIA request and their own subject matter expertise. In total, the NSID located 1,944 pages of potentially responsive records and forwarded those pages to the ICE FOIA Office for processing.

### OAQ's Searches and Response to Plaintiffs' FOIA Requests

24. ICE OAQ is located within ICE's Management and Administration (M&A) directorate, which coordinates administrative and managerial components.

25. ICE OAQ is dedicated to the Agency's business performances, and procures law enforcement services and products, detention and removal services, data analysis, interpreter services and clerical support, and information technology supplies and services.

26. In response to the FOIA tasking, the OAQ FOIA POC reviewed the substance of the FOIA request and, relying upon subject matter expertise and knowledge of OAQ's activities, determined that the Section Chief of the Detention and Compliance Removals ("DCR") division should be tasked to search for responsive records. DCR provides acquisition support to ICE HQ and Field Offices throughout the country for Detention, along with ancillary services and supplies in support of the ICE mission to remove illegal aliens from the United States. DCR also supports the Office of Enforcement and Removal Operations (ERO) in the planning, awarding, and administering contracts for law enforcement and compliance requirements, including detention management compliance, fugitive operations, criminal alien program, removal management, and response coordination. The Section Chief, based upon his subject matter expertise, searched a shared drive folder dedicated to the only contract that would be responsive to Plaintiff's FOIA request. While the Section Chief did not use any search terms, the Section Chief conducted a

manual search of the shared drive folder dedicated to the contract responsive to Plaintiff's FOIA request. The Section Chief located 133 pages of potentially responsive documents, which the OAQ FOIA POC provided to the ICE FOIA Office for review and processing.

### **Policy's Searches and Response to Plaintiffs' FOIA Requests**

27. ICE Policy is also located within M&A. ICE Policy identifies, develops and effectively communicates ICE organizational priorities and Agency-wide policies to internal and external stake holders, leads interagency strategic policy projects, and oversees ICE's regulatory process.

28. In response to the FOIA tasking, the ICE Policy FOIA POC reviewed the substance of the FOIA request and, relying subject matter expertise and knowledge of ICE Policy's activities, determined that a Management and Program Analyst ("MPA") should be tasked to search for responsive records. The MPA searched the electronic ICE Policy Manual system and the division share drive using the terms "surveillance," "social media," and "extreme vetting." The MPA located 47 pages of potentially responsive documents, which the ICE Policy FOIA POC provided to the ICE FOIA Office for review and processing.

### **ERO's Searches and Response to Plaintiffs' FOIA Requests**

29. The mission of ERO is to identify, arrest, and remove aliens who present a danger to national security or are a risk to public safety, as well as those who enter the United States illegally or otherwise undermine the integrity of immigration laws and border control efforts. ERO upholds federal immigration laws at, within, and beyond our borders, through efficient enforcement and removal operations. ERO prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, and recent border entrants. Individuals seeking asylum also work with ERO. ERO transports removable aliens from

point to point, manages aliens in custody or in an alternative to detention program, and removes individuals from the United States who have been ordered deported.

30. When ERO receives a FOIA tasking from the ICE FOIA Office, the request is submitted to ERO's Information Disclosure Unit ("IDU"). POCs in IDU review the substance of the request. Based on subject matter expertise and knowledge of the program offices' activities within ERO, IDU forwards the FOIA request to specific individuals and component offices, and directs specific employees to conduct searches of their file systems (including both paper files and electronic files) which in their judgment, based on their knowledge of the manner in which they routinely keep records, would be reasonably likely to have responsive records, if any.

31. In response to the FOIA tasking, ERO IDU reviewed the substance of the FOIA request and, relying upon subject matter expertise and knowledge of the ERO's activities, determined that the Office of Detention Policy and Planning ("ODPP') should be tasked with conducting the search for responsive records. The ODPP FOIA POC determined that a Senior Detention and Deportation Officer ("SDDO") within ODPP should conduct the search. The SDDO conducted a manual search of paper files for any contract documents relating to the FOIA request, as this SDDO did not store contract documents on her computer, and her Outlook folders by reviewing all communications with specific contractors based upon her subject matter expertise and her unique knowledge of the way in which she organizes her emails. The SDDO located 45 pages of potentially responsive documents which were subsequently provided to the ICE FOIA Office for review and processing

**IV.    ORGANIZATION OF THE *VAUGHN* INDEX**

32. Pursuant to the requirements set forth in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), a *Vaughn* Index accompanies this declaration; the *Vaughn* Index provides a description of each redaction and the corresponding FOIA exemption being applied.

33. The *Vaughn* index is in a table format. The first column contains the bates number prefix for the records produced. The second column contains the bates stamp suffix (page numbers) of the responsive records. The third column describes the category of withholdings taken on the documents (full or partial). The fourth column describes the redaction codes, which are citations to the sections of the FOIA Exemptions. The fifth column describes the underlying records and provides justifications for the asserted exemptions. The *Vaughn* index encompasses the responsive records produced by the program office. During the course of the litigation, ICE made six productions producing 2,169 pages of records subject to withholdings pursuant to FOIA Exemptions (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

34. After processing the first four productions, the ICE FOIA Office determined that it must provide notice to a private contractor whose information was contained in the remaining responsive records. On August 30, 2019, in accordance with Executive Order 12600 and U.S. Department of Homeland Security's FOIA regulations found at 6 C.F.R. § 5.8, the ICE FOIA Office provided a submitter notice to the private contractor whose information was contained in the responsive records (*i.e.*, Thundercat Technology) to inform them that Plaintiffs' FOIA request sought business information that they had provided to ICE. The private contractor provided its submitter notice response on January 15, 2020. Thereafter, ICE made its fifth production.

35. During the course of litigation, ICE determined that redactions on eight pages of records should be removed. The withholdings on these eight pages were removed and on January 28, 2021, ICE re-released those eight pages to Plaintiffs.

## V.  DESCRIPTION OF FOIA WITHHOLDINGS APPLIED TO RECORDS PROVIDED TO PLAINTIFFS

36. As outlined in the *Vaughn* Index, the ICE FOIA Office processed and produced the 2,169 pages to the Plaintiffs subject to withholdings pursuant to FOIA Exemptions (b)(4), (b)(5), and (b)(7)(E).[2]

### A.  FOIA Exemption (4)

37. ICE has withheld information from documents pursuant to FOIA Exemption 4, which protects trade secrets and information that are: (1) commercial or financial; (2) obtained from a person; (3) and privileged or confidential.  Commercial or financial information is deemed to be confidential if (1) the submitter customarily keeps the transmitted commercial or financial information private or at least closely held, and (2) the government provides some assurance that it will remain confidential.  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, (2019).

38. ICE applied FOIA Exemption 4 to protect hourly rates of individuals who are assigned under contracts with ICE to perform analyst services.  Contracts for analysts are subject to intense competition among private contractors, and competition is largely based on price where very small margins separate winning and losing bids.  The contractors submit private bids to ICE with the understanding that ICE will not disclose their pricing information to other contractors, as doing so would provide an unfair advantage to their competitors.  ICE customarily keeps this information private and has a long history of protecting unit pricing from disclosure.  The contractors therefore submitted their private bids with the implicit understanding that these prices would be kept confidential.

---

[2] Additionally, there were withholdings that Plaintiffs have agreed not to challenge under FOIA Exemptions (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  These withholdings have not been included in the *Vaughn* Index.

39. For the above reasons, private contractors customarily keep unit pricing information private, and ICE's historical and customary practices are an assurance to the contractors that the unit pricing will not be made public.

**B.   FOIA Exemption (5)**

40. Exemption 5 of the FOIA allows the withholding of inter- or intra-agency records that are normally privileged in the civil discovery context. Pursuant to Exemption (b)(5), the two most frequently invoked privileges are the deliberative process privilege and the attorney-client privilege.

41. ICE applied FOIA Exemption (b)(5) to protect from disclosure information subject to the deliberative process privilege.

42. ICE withheld pre-decisional, deliberative internal discussions, deliberations, and recommendations amongst HSI regarding the decisions, terms, and language relating to contracts and draft responses, edits, and discussions when responding to senior leaders and providing opinions in response to questions regarding the use of social media. For example: discussions between ICE employees regarding security classification procedures, who should have access, who makes the decision, and what draft language should be added to a Performance Work Statement was withheld at bates numbers 2019-ICLI-00017.1002-1007; discussions between ICE employees on how to respond to senior leaders regarding the ICE's use of Facebook data was withheld at bates numbers 2019-ICLI-00017.1008-1020; and discussions on whether or not to exercise options under a contract and the issues and recommendations surrounding making that decision at bates numbers 2019-ICLI-00017.1112-1113. For these issues, many open and frank comments, recommendations, and discussions are necessary. Thus, the contents of these discussions and deliberations are pre-decisional in nature because they were prepared in order to assist a

15

decisionmaker in making a final decision, and deliberative because they are consultative processes given that the facts and options discussed in the communications are selective in nature and highlight the portions of the record that were deemed pertinent to the recommendation and decision. The deliberative process privilege protects the integrity of the deliberative or decision-making processes within the agency by exempting from mandatory disclosure opinions, conclusions, and recommendations included within inter-agency or intra-agency memoranda, letters, or emails. The release of this internal information would cause harm, discourage the expression of candid opinions, and inhibit the free and frank exchange of information among agency personnel. This harm would result in a chilling effect on intra- and inter-agency communications. ICE employees must be able to discuss proposed agency action freely.

43. Exemption 5 was also applied to various draft documents of acquisition plans, contracts, training material, PowerPoint slides, and talking and briefing points, many of which bore "draft" watermarks as well as red-lined edits and comments. For example: a draft document titled "Visa Security Program Social Media Pilot Program" contained tracked changes and comments bubbles and was withheld at bates numbers 2019_ICLI-00017.1891-1959; several incomplete Performance Work Statements involving the Visa Lifecycle Vetting Initiative were watermarked with "DRAFT" and were withheld at bates numbers 2019-ICLI-00017.596-640, 2019-ICLI-00017.957-1001, 2019-ICLI-00017.1264-1308, 2019-ICLI-00017.1356-1400, 2019-ICLI-00017.1717-1760, and 2019-ICLI-00017.1983-2027. By their very nature, draft documents are pre-decisional, preliminary versions of what may later become a final document in whole or in part, or they remain drafts that never mature into final form as the material may be withdrawn or discarded during the decision- making process. In fact, the process by which a draft evolves into a final document is itself a deliberative process. All of the draft documents withheld from the

responsive document set contain edits, marginal suggestions and comments, and/or embedded questions regarding content. Disclosure of such material could cause harm and mislead the public as the comments and text of draft documents often differ, sometimes significantly, from final agency positions. Disclosure of such material could also cause the same chilling effect noted in paragraph 42.

### C. FOIA Exemption 7 Threshold

44. Exemption 7 establishes a threshold requirement that, in order to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes.

45. The information for which FOIA Exemption 7 has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103. ICE is the largest investigative arm of the DHS and the second largest investigative agency in the federal government. Created in 2003 through a merger of the investigative and interior enforcement elements of the U.S. Customs Service and the Immigration and Naturalization Service, ICE now has more than 20,000 employees and offices in all 50 states and 48 foreign countries, and is responsible for enforcing the nation's immigration laws, and identifying and eliminating vulnerabilities within the nation's borders.

46. There are three directorates within ICE, including, as relevant here, HSI. HSI investigates domestic and international activities that arise from the illegal movement of people and goods into, within, and out of the United States. These include, for example, immigration fraud, human rights violations, financial crimes, cybercrime, export enforcement issues, and

human, narcotics, and weapons smuggling. In addition to criminal investigations, HSI oversees ICE international affairs questions and intelligence functions. As a threshold matter, the records and information located in response to Plaintiffs' FOIA request were collected and compiled by ICE law enforcement officers during the investigation of suspected violations of criminal laws. Therefore, the records and information located in response to the FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

### D.     FOIA Exemption (b)(7)(E)

47.     FOIA Exemption (b)(7)(E), 5 U.S.C. §552(b)(7)(E), protects from disclosure records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions that are not well known to the public, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

48.     First, ICE applied FOIA Exemption (b)(7)(E) in a limited number of instances to protect from disclosure law enforcement sensitive Uniform Resource Locators ("URLs"), dial in and access codes, and internal locations of files of various law enforcement sensitive databases and case management systems. This information, which points to or contains information about systems that law enforcement use to store, index, and communicate information, or how and where to access law enforcement information could be used by persons seeking improper access to law enforcement sensitive data to navigate these databases and compromise the integrity of the data either by deleting or altering information. The release of this information could also reasonably be expected to allow a person to breach sensitive legal/law enforcement sensitive systems and potentially circumvent detection or manipulate law enforcement sensitive information, in an attempt to sabotage ICE operational activities. The disclosure of this information, which is not

readily known by the public, would serve no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities.

49. Second, ICE applied Exemption (b)(7)(E) to safeguard law enforcement sensitive information that would disclose techniques and/or procedures regarding HSI investigations that could reasonably be expected to risk circumvention of the law and that are not well known to the public. Most of the techniques and procedures at issue in this litigation concern the exact details of how HSI conducts investigations using open source research. For example, these records contain manuals and other training material regarding using open source research, which lists out step by step instructions, provides tips and tradecraft, what source sites should be used, how to utilize those sites, identifying the vulnerabilities with this type of investigations. For example: pages were withheld from a document titled "NCTC Pursuit Open Source Tips and Tricks" that contain tips for using open source research to conduct law enforcement investigations, tradecraft, how to counter risks, and what open source sites law enforcement officers should use, how to use those sites, what to do with the results at bates numbers 2019-ICLI-00017.208-218; a document titled "Open Source Training Manual" teaches law enforcement agents the techniques and procedures that law enforcement agents should use when conducting open source research at bates numbers 2019-ICLI-00017.1829-1877; and a PowerPoint titled "Discussing Intelligence Assessments" that contains discussions on the pitfalls and opportunities to detect terrorist activities at bates numbers 2019-ICLI-00017.161-167. Additionally, these records contains resource allocation information, the location of various program offices, the number of assets used and the scope of the funding to conduct operations. The disclosure of these techniques, guidelines, and resource allocation, could permit those seeking to violate or circumvent the law to take proactive

steps to counter operational and investigative actions taken by HSI during operations, such as evading detection, avoiding certain sites, or overwhelming certain locations with false information.

50. The disclosure of this information, which is not readily known by the public, would serve no public benefit and would not assist the public in understanding how the agency is executing its statutory responsibilities beyond what is already publicly known.

## VI. SEGREGABILITY

51. 5 U.S.C. § 552(b) requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt."

52. A line-by-line review was conducted to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied.

53. With respect to the records that were released, all information not exempted from disclosure pursuant to the FOIA exemptions specified above was correctly segregated and non-exempt portions were released. ICE did not withhold any non-exempt information on the grounds that it was non-segregable.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 28th day of January, 2021.

_____
Fernando Pineiro, Acting FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009