UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,

Plaintiffs,

v.

DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF STATE,

Defendants.

No. 19-cv-290-EMC

**DECLARATION OF TERRI WHITE**

I, TERRI WHITE, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury:

1. I am the Acting Associate Center Director in the Freedom of Information and Privacy Act (FOIA/PA) Unit, National Records Center (NRC), United States Citizenship and Immigration Services (USCIS), within the United States Department of Homeland Security (DHS), in Lee's Summit, Missouri. I have held the position of Acting Associate Center Director since January 1, 2021, and previously served as the Chief of the Significant Interest Group since June 2019. I am also an attorney, licensed to practice law by the State of Missouri in 2006. Prior to joining DHS in 2019, I served as an attorney with the United States Bureau of Prisons (BOP) under the United States Department of Justice (DOJ) for almost seven years. As part of my duties with the BOP, among other things, I provided legal advice to the agency on the release of information sought under the FOIA.

2. As Acting FOIA Officer for USCIS, I supervise over 200 information access professionals who are responsible for the orderly processing of all public, congressional, judicial, and inter-/intra-agency requests or demands for access to USCIS records and information pursuant to the FOIA, Privacy Act, Executive Orders, departmental directives, regulations and compulsory legal process.

3. Through the exercise of my official duties as Acting Associate Center Director, I am familiar with USCIS's standard process for responding to FOIA requests, including search procedures for locating agency records.

4. The statements contained in this declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other USCIS employees in the course of my official duties.

5. This declaration is submitted in support of USCIS's Motion for Summary Judgment in this matter. This declaration describes, generally, agency procedures for processing FOIA requests for access to agency records and, more specifically, agency action taken in response to Plaintiffs American Civil Liberties Union Foundation and American Civil Liberties Union Foundation of Northern California's FOIA request.

## USCIS'S STANDARD FOIA OPERATING PROCEDURES

6. USCIS routinely and consistently processes FOIA requests in compliance with DHS implementing regulations found at 6 C.F.R. Part 5 and Management Directive No. 0460.1.[1] Specifically, when the agency receives a FOIA request for USCIS information or documents, the agency's standard procedure includes the following:

    a) after determining the nature, scope, and contours of a valid FOIA request, a preliminary search is conducted to locate potentially responsive records;

---

[1] DHS requirements for submitting a FOIA request for an individual's records include the following:

1. All FOIA requests must be submitted in writing and signed by the requester. 6 C.F.R. § 5.3(a).

2. If the requester seeks records about him/herself the requester must verify identity by submitting, in writing, a statement containing his/her full name, current address, date of birth and place of birth. This statement must be signed, and the signature must either be notarized or submitted under 28 U.S.C. § 1746 (penalty of perjury in lieu of notarized signature). This signature must be submitted along with the FOIA request. 6 C.F.R. §§ 5.3(a), 5.21(d).

3. The FOIA request must describe the records that are being sought in sufficient detail to enable DHS personnel to locate them with a reasonable amount of effort. 6 C.F.R. § 5.3(b).

       b) because FOIA requests are generally processed by the NRC on a first-in/first-out basis, the request is logged in the approximate order of its receipt into a computerized case tracking and retrieval system which automatically assigns a control number and tracks the file created;

       c) an acknowledgement letter is contemporaneously mailed to the requester, advising of the control number, processing fee arrangement, processing options, and contact information, and addressing any collateral requests made by requester;

       d) during any abeyance in processing, periodic system inquiries are conducted to maintain updated information concerning the disposition of agency records that are subject to the pending FOIA request;

       e) if relevant records are in the possession of an office or agency other than the responding office, a request for the production of the records is sent to the records' custodian(s) for that office or agency;

       f) during the course of processing, the FOIA request and any responsive records are subjected to rigorous analyses to arrive at the proper final agency determination; and finally;

       g) the NRC sends its response to the requester, granting or denying, in whole or in part, access to requested records, and advising of any additional rights that may have vested in the requester by virtue of the final agency determination.

7. In recent years, USCIS has experienced a significant increase in the amount of FOIA requests received and processed by the agency. USCIS is only one of ninety-nine federal agencies subject to the FOIA, but it receives more than one-fifth of the total requests received. For example, during FY 2019, USCIS received 200,174 total requests, which represents more than half of the total requests received by DHS and over 22 percent of the total requests received government-wide in FY 2019. See http://www.foia.gov.

8. Given the significant number of FOIA requests received by USCIS and in an effort to process FOIA requests in a manner designed to be fair and expeditious, USCIS has adopted a policy of processing such requests on a first-in/first-out basis. This process is further enhanced by the implementation of a regulation providing for expedited processing of requests under given circumstances, and the adoption of a multi-track system of processing which not only allows the agency to process requests on a first-in/first-out basis within each track, but also permits the USCIS to respond to relatively simple requests more quickly than requests involving

      complex and/or voluminous records. USCIS's first-in/first-out and multi-track processing is consistent with the requirements set forth in Open America v. Watergate Special Prosecution Force, 547 F.2d 605 (D.C. Cir. 1976) and Exner v. FBI, 612 F.2d 1202, 1980 U.S. App. LEXIS 20856, February 4, 1980.

9. The majority of the FOIA/PA requests that USCIS receives seek immigration records located in an individual's Alien File (A-file).[2] USCIS also receives a significant volume of requests seeking non A-file records, such as USCIS policy documents.

10. The NRC's Significant Interest Group (SIG) team handles all FOIA/PA requests for non-alien file records on behalf of the agency. Upon receipt of such a request, a SIG team reviews the request and determines its precise nature and scope, and any and all agency offices that may have potentially responsive records based on the specific missions and work of each office and Directorate.

11. After a member of the SIG team has identified any and all agency offices that may have potentially responsive records, he or she then forwards the request to those offices for a search and response. In addition to searching its own records, those offices are generally asked to identify any other agency offices that it believes could have potentially responsive records. The objective of this process is to devise and conduct a search that is reasonably calculated to uncover all potentially relevant and responsive records.

**PLAINTIFFS' MAY 24, 2018 FOIA REQUEST**

12. On May 29, 2018, USCIS's FOIA office received a FOIA request dated May 24, 2018, which had been submitted to seven government agencies, including USCIS. The request was submitted by Hugh Handeyside, on behalf of the American Civil Liberties Union Foundation and American Civil Liberties Union Foundation of Northern California ("Plaintiffs" or "ACLU"). The request sought a copy of

[2] An A-File and ELIS make up the official government record that contain information regarding transactions involving an individual as he/she passes through the U.S. immigration and inspection process. *See* 82 Fed. Reg. 43556 (September 18, 2017). The Alien File/Central Index System is a centralized and consolidated electronic system of records through which A-Files are stored, maintained, updated, tracked, and retrieved. Although USCIS is the official custodian of all A-Files and the system manager for the Alien File/Central Index System, both the files and systems are shared with U.S. Immigration and Customs Enforcement and U.S. Customs and Border Protection, all of which create and contribute documents to A-Files. A-Files are maintained under and retrievable by reference to an individual's name and Alien number, and date of birth, or combination thereof.

various records and information "pertaining to social media surveillance, including the monitoring and retention of immigrants' and visa applicants' social media information for the purpose of conducting 'extreme vetting.'" See Plaintiffs' FOIA request, Exhibit A.

13. Specifically, Plaintiffs' FOIA request sought the following records:

   a. All policies, guidance, procedures, directives, advisories, memoranda, and/or legal opinions pertaining to the agency's search, analysis, filtering, monitoring, or collection of content available on any social media network;
   b. All records created since January 1, 2015 concerning the purchase of, acquisition of, subscription to, payment for, or agreement to use any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network, including but not limited to:
      I. Records concerning any product or service capable of using social media content in assessing applications for immigration benefits or admission to the United States;
      II. Records concerning any product or service capable of using social media content for immigration enforcement purposes;
      III. Records concerning any product or service capable of using social media content for border or transportation screening purposes;
      IV. Records concerning any product or service capable of using social media content in the investigation of potential criminal conduct;
   c. All communications to or from any private business and/or its employees since January 1, 2015 concerning any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network;
   d. All communications to or from employees or representatives of any social media network (e.g., Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015 concerning the search, analysis, filtering, monitoring, or collection of social media content; and
   e. All records concerning the use or incorporation of social media content into systems or programs that make use of targeting algorithms, machine learning processes, and/or data analytics for the purpose of (a) assessing risk, (b) predicting illegal activity or criminality, and/or (c) identifying possible subjects of investigation or immigration enforcement actions. See Plaintiffs' FOIA request, Exhibit A.

14. In a letter to the Plaintiffs dated June 6, 2018, in accordance with its normal procedures, the NRC acknowledged receipt of the Plaintiffs' FOIA request, and

advised Plaintiffs that their request was assigned case number COW2018000654. See USCIS FOIA Acknowledgement letter, Exhibit B.

**USCIS'S SEARCH FOR RECORDS AND PROCESSING OF PLAINTIFFS' FOIA REQUEST**

15. After reviewing Plaintiffs' request, the NRC determined that the request sought non-alien file records. Accordingly, this request was assigned to the SIG team, who followed the USCIS's standard procedures for processing a FOIA request.

16. Based on the SIG team's review of this request, they determined that documents responsive to the request would most likely be maintained by the following USCIS offices:

a. Office of Chief Counsel (OCC): OCC is responsible for providing legal advice to senior leadership within USCIS on all aspects of immigration law, including issues related to vetting and screening processes that are part of the adjudication of applications and petitions for immigration benefits. Given the mission and nature of OCC's work, and because OCC had assigned specific attorneys to be part of the USCIS Social Media Working Group, the USCIS FOIA office felt that OCC might have documents responsive to the request.

b. Office of Information Technology (OIT): OIT leads USCIS in the design, development, and deployment of IT services and solutions to support USCIS's mission and role in the nation's immigration process. OIT often provides support on FOIA requests involving email searches.

c. Fraud Detection and National Security (FDNS): FDNS protects national security by leading agency efforts aimed at enhancing the integrity of the legal immigration system. FDNS develops and maintains efficient and effective anti-fraud and screening programs, leading information sharing and collaboration activities and supporting law enforcement and intelligence communities. Given the mission and nature of FDNS's work, specifically as it relates to FDNS's role in the collection of social media information as part of USCIS's vetting and screening processes, the USCIS FOIA office felt that FDNS might have documents responsive to the request.

d. Office of Policy and Strategy (OP&S): OP&S serves as the principal policy advisor for the Director and USCIS, manages the USCIS Policy Manual, coordinates USCIS strategic goals and objectives, and oversees the regulatory development process to ensure compliance with the policy goals of USCIS, DHS, and the Administration. OP&S also coordinates the developing of USCIS's immigration policies, including the social media vetting process and the proposed policy options. Given

the mission and nature of OPS's work, and because OPS was responsible for leading and coordinating the efforts of the USCIS Social Media Working Group, the USCIS FOIA office felt that OPS might have documents responsive to the request.

e. Executive Secretariat (EXSO): EXSO manages the USCIS policy review and decision-making processes, coordinating the development, clearance, and submission of all policy documents for the Director's review and approval. In support of the Director and Deputy Director, EXSO governs official communications between those offices and Congress, DHS headquarters, and other DHS components. EXSO also manages the flow, format, and substance of all written correspondence, both to and from the Director. Given the mission and nature of EXSO's work, and because of the high-level coordination that they provide for reviewing draft policy documents, the USCIS FOIA office felt that EXSO might have documents responsive to the request.

f. Office of Contracting: The Office of Contracting is responsible for planning, awarding, and administering the agency's contracts to ensure that all contracts deliver the best value products and services to USCIS on a timely basis while maintaining the public's trust and fulfilling public policy objectives. Given the mission and nature of the Office of Contracting's work, and because of the potential options being considered that may have involved the use of contractors as part of the vetting process, the USCIS FOIA office felt that the Office of Contracting might have documents responsive to the request.

17. In June 2018, the SIG team forwarded the request to each office, and requested that staff in those offices conduct a search of their records for any responsive documents. Each office was provided with a copy of the request, which included the specific records being sought by Plaintiffs. Since each employee conducting a search may have a different organization system or way of phrasing a topic that could be responsive, all employees were instructed to read the request and use those search terms that would reasonably be calculated to locate any records responsive to the request.

18. In an email dated November 20, 2018, one of the Senior Government Information Specialists in the USCIS FOIA Office reached out to Plaintiffs to advise them that the agency was unable to conduct a search for two of the items in Plaintiffs' request, because the items were overbroad. The two items include the following:

a. All communications to or from any private business and/or its employees since January 1, 2015 concerning any product or service that searches,

    analyzes, filters, monitors, or collects content available on any social media network;

  b. All communications to or from employees or representatives of any social media network (e.g., Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015 concerning the search, analysis, filtering, monitoring, or collection of social media content; and

The email advised Plaintiffs that these two requested items were too broad, and would require the agency to conduct an unduly burdensome search. The email also advised Plaintiffs that USCIS would be willing to conduct a search if the Plaintiffs would be willing to narrow the scope of these two items to specific USCIS employees or positions in a USCIS offices, or in any other way that would allow USCIS to conduct a reasonable search. See USCIS and Plaintiffs' Emails Regarding Scope of FOIA Request, Exhibit C.

19. In January 2019, USCIS FOIA staff had a phone call with Mr. Handeyside to discuss the scope of the two items. During that call, Mr. Handeyside agreed to limit the search for these two items to records maintained by OIT and the Office of Contracting.

20. Pursuant to Mr. Handeyside's agreement to limit the scope of the search for these two items, the USCIS FOIA office sent updated search requests to OIT and the Office of Contracting on January 7, 2019.

21. On January 17, 2019, Plaintiffs filed a Complaint in the Northern District of California, challenging the Defendants', including USCIS's, failure to provide information in response to Plaintiffs' FOIA request within the statutory timeframe required by the FOIA. See Plaintiffs' Complaint (ECF No. 1).

22. Subsequent to the filing of the Plaintiffs' Complaint, USCIS continued to search for and process records responsive to Plaintiffs' request. After receiving records from the assigned offices, the SIG team reviewed all documents to determine whether the search was reasonably calculated to locate records responsive to Plaintiffs' FOIA request. Based upon the SIG team's review of the Plaintiffs' FOIA request and its particular subject matter, along with the responsive records received, the agency determined that it had identified all of the appropriate Directorates and program offices within USCIS, and each office had received all of the information needed to perform a search that was reasonably calculated to locate any records responsive to this request. Additionally, after reviewing the responses from each office, the USCIS FOIA office determined that staff within the offices searched all files that were reasonably likely to contain records responsive to the Plaintiffs' FOIA request. Based on the SIG team's review of this information, it determined that the

search was adequate, and that it was unlikely that any of the other USCIS Directorates or program offices would have records responsive to this request.

23. Records were provided as part of a monthly rolling production in two parts. The first production occurred on July 10, 2019, and the second production occurred on August 7, 2019. In total, USCIS produced 2,645 pages in response to Plaintiffs' request, of which 306 were released in their entirety, 2234 released in part, and 64 pages withheld in full. Additionally, USCIS notified Plaintiffs that it had referred 8 pages to DHS and 30 pages to U.S. Immigration and Customs Enforcement (ICE) for their review and direct response to Plaintiffs. See Final Action letters dated July 10, 2019 and August 7, 2019, Exhibit D.

24. In the letters provided with each monthly production, USCIS provided the total amount of pages provided, and the exemptions applied to each production, pursuant to 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA and provided Plaintiff with a description of the referenced exemptions that served as the basis for the withholdings. See Final Action letters dated July 10, 2019 and August 7, 2019, Exhibit D.

25. On August 20, 2020, in order to allow the parties to attempt to narrow the issues in dispute, USCIS provided Plaintiffs with a "Sample Redaction Index." During the drafting of the index, USCIS identified multiple pages that contained information that could be provided as a supplemental disclosure. Specifically, a few months after USCIS completed its original production, USCIS released information on its website about the agency's social media vetting process that previously was not publicly available. As a result, many of the exemptions previously applied were no longer applicable, including deliberative information that had not been finalized at the time USCIS made its original release. Therefore, USCIS advised Plaintiffs that it would reprocess the records previously provided to Plaintiffs and would provide a supplemental production. See September 10, 2020 Joint Status Report (ECF No. 74).

26. On October 8, 2020, USCIS provided the updated production, which encompassed all pages previously released to Plaintiffs, including the pages with supplemental releases. Specifically, after reprocessing the 2,645 pages of records responsive to Plaintiffs' request, 543 pages were released in their entirety, 2058 pages were released in part, and 6 pages were withheld in full. 38 pages were referred to other agencies for their review and direct response to Plaintiffs. The remaining redacted portions were withheld pursuant to 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA.

27. After reviewing the reprocessed records, the parties conferred to discuss the redactions at issue. By email dated November 6, 2020, Plaintiffs advised

Defendants that they would not be challenging any redactions under Exemptions (b)(6) or (b)(7)(C). Accordingly, the only remaining redactions at issue are those under Exemptions (b)(5) or (b)(7)(E). See Handeyside November 6, 2020 Email, Exhibit E.

28. Exemption 5 was invoked to protect inter-agency or intra-agency memorandums, emails, PowerPoint presentations, briefing papers, talking points, and letters, which would not be available by law to a party other than an agency in litigation with the agency. Here, USCIS withheld the information as exempt from disclosure under three privileges contemplated by Exemption 5: (1) deliberative process, (2) attorney-client, and (3) attorney work-product.

29. The deliberative process privilege was invoked to protect USCIS's decision-making process in connection with the development of USCIS's procedures for the operational use of social media as part of the immigration adjudication process. The privilege was applied to documents reflecting advisory opinions, as well as recommendations and deliberations related to these social media use issues. The material withheld included information prepared to assist USCIS in decision making on the use of social media in adjudications, such as how it would be used, which employees would be authorized for operational use, what technological tools would best fit the agency's operational needs. The types of records in which information was withheld pursuant to the deliberative process privilege included draft delegation documents, privacy compliance documents, testimony drafts, legal opinions, meeting summaries, memoranda, briefing papers, training materials, emails, and other draft documents. For example, in draft documents, USCIS redacted information such as comments and edits made by USCIS employees and attorneys reflecting draft revisions, additions, re-wordings, suggestions, clarifications, questions, about accuracy, statements of uncertainty, and requests for additional information. Similarly, USCIS withheld information in emails that reflected deliberative exchanges regarding potential policies and procedures for operational use of social media, options for implementation of operational social media use, and discussions regarding information sharing with law enforcement and the intelligence community. For example, at page 1694 to 1695, which consist of emails between USCIS OCC and USCIS employees discussing draft responses to questions from Chairman McCaul related to potential restrictions on DHS's use of publicly available social media information, USCIS withheld a summary of specific operational and legal issues, draft responses to the questions, and discussions of which restrictions should be considered in the operational use of social media.

30. Disclosure of the deliberative, pre-decisional information withheld by USCIS would reveal the internal deliberations of federal agency employees and decrease the quality of USCIS decision-making.

31. In making its redactions under Exemption 5 and the deliberative process privilege, USCIS segregated and released any information that reflected a final decision or finalized process that did not otherwise include any pre-decisional or deliberative information. For example, on pages 339 and 340, a final version of Delegation 15002, "Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities," signed and dated January 15, 2017, was released in full because it reflected a final decision document and did not include any pre-decisional or deliberative information. In contrast, on pages 1423-1424, a draft revision of the Delegation includes portions of withheld information, because this information reflected proposed changes to the process and authorized use of social media to support USCIS's mission.

32. USCIS also withheld or redacted information under Exemption 5 that was determined to be protected by the attorney-client privilege. The attorney-client privilege protects confidential information shared between an attorney and his client relating to the legal matter on which the client seeks advice. Here, this includes information in legal memoranda, draft documents, meeting summaries, and emails from agency counsel to their clients, in particular, agency policy makers, agency decision makers, and agency employees implementing policy. USCIS also redacted information divulged to the attorney by the client seeking legal advice and communications between agency counsel about the confidential information provided by the client. In addition, the attorney-client privilege was also applied to protect legal opinions provided in draft documents, where USCIS OCC attorneys provided legal responses or raised suggestions based on legal guidance in order to advise agency clients about potential legal risks with options being considered, and legal memoranda from DHS Office of General Counsel (OGC) or USCIS OCC attorneys related to legal issues and guidance pertaining to DHS and USCIS's operational use of social media. The purpose of these memoranda was to provide legal analysis and guidance on issues related to USCIS obtaining law enforcement authority, the implementation of the operational use of social media, and the legal limitations to the use of social media. The memoranda also provided counsel's legal opinion to the client on issues related to enforcement and intelligence activities involving online and social media monitoring, and DHS's compliance with applicable privacy laws, civil rights and civil liberties and constitutional rights. To compel the disclosure of the attorney-client information withheld in this case would have an immediate impact and drastic chilling effect on all interactions between DHS and USCIS counsel and USCIS employees and among USCIS counsel themselves.

33. USCIS withheld documents pursuant to Exemption 7(E) that contain information which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions, if such disclosure could reasonably be expected to risk circumvention of the law.

34. Exemption 7 establishes a threshold requirement that, in order to withhold information on the basis of any of its subparts, the records or information must be compiled for law enforcement purposes. The information for which FOIA Exemption 7 has been asserted in the instant matter satisfies this threshold requirement. Pursuant to the Immigration and Nationality Act codified under Title 8 of the U.S. Code, the Secretary of Homeland Security is charged with the administration and enforcement of laws relating to the immigration and naturalization of aliens, subject to certain exceptions. *See* 8 U.S.C. § 1103. USCIS is responsible for safeguarding the homeland by deterring, detecting, and addressing vulnerabilities in the immigration system. As part of the agency's mission, USCIS must employ and enhance rigorous security measures to safeguard our nation against immigration fraud and ensure that pathways to the United States are not exploited. To achieve this goal, USCIS works to identify and mitigate known and unknown risks to the lawful immigration system, implement and enhance uniform vetting practices, and maximize internal and external information sharing with law enforcement and Intelligence Community partnerships to strengthen the integrity of the lawful immigration system.

35. As a threshold matter, the records and information located in response to Plaintiffs' FOIA request were collected and compiled by the USCIS Fraud Detection and National Security Directorate, the Office of Chief Counsel, and other USCIS employees that were part of the DHS and USCIS social media working group, and were compiled as part of the development and implementation of DHS and USCIS's social media vetting process, which was established to enhance the integrity of the legal immigration system. This process and the documentation related to it focuses on USCIS's anti-fraud and screening programs, and the agency's information sharing and collaboration activities with law enforcement and intelligence communities. Therefore, the records and information located in response to the FOIA request were compiled for law enforcement purposes and meet the threshold requirement of FOIA Exemption 7.

36. The types of documents and/or information withheld consists of training materials for agency employees that would be involved in the operational use of social media, background check processes, procedures for information sharing and coordination with law enforcement partners and the Intelligence Community, emails related to the operational use of social media and implementing the process, and legal memoranda related to USCIS obtaining

law enforcement authority and how that authority would impact the agency's vetting methods, the implementation of the operational use of social media, the legal limitations to the use of social media, and on issues related to enforcement and intelligence activities involving online and social media monitoring, and other documents containing specific guidelines or techniques and procedures involved in USCIS's operational use of social media. The withheld information consists of detailed background check information pertaining to specific applicants that had been screened and the results of that screening, the specific social media applications reviewed, which words and phrases were used to search those social medias applications, guidelines for the use and operation of government systems and technological tools used as part of the screening process, specific challenges and vulnerabilities identified in the process of social media screening and vetting, and other law enforcement information related to the agency's operational use of social media. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting. Further, information was withheld that details the methods and circumstances of USCIS's coordination with other law enforcement agencies, like CBP, ICE, FBI, Department of State, Department of Justice, as it relates to the vetting and screening process. This information reveals the types of background checks authorized to be conducted in certain cases, and which techniques and procedures are involved in the enforcement of specific types of immigration and national security laws and directives.

37. The withheld information also contains guidelines as to what actions should be taken for certain cases where there is suspected fraud or concerns regarding public safety or national security, the specific methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods. This information, if disclosed, would reveal the specific methods and procedures that immigration officers are authorized to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting. The release of this information would risk circumvention of the law because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are, what information is considered as part of the screening and vetting process, what words and images are being searched for, the specific tools used by law enforcement, and what technology is being used. The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the

guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless because it could allow individuals to research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process. It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).

38. When reviewing the redactions applied and the reprocessed records, the USCIS FOIA office considered whether any information could be segregated and released. Based on their review of the processed records, the agency determined that no further segregation of meaningful information in the withheld documents would be possible without disclosing information that warrants protection under the law. The only information withheld from the Plaintiff is information that is entitled to protection from disclosure.

39. To provide further detail regarding the information withheld from the agency's response that is discussed above, attached to this declaration is an index identifying and describing each document in which information was withheld, specifying the particular exemption under which the information was withheld, and explaining how the exemption applies to the information that was withheld. Information regarding how non-exempt information was segregated from exempt information is included in the index. See Vaughn Index, Exhibit F. I am familiar with the records described in the Vaughn index. It accurately describes those records, and explains USCIS's proper assertion of the appropriate FOIA exemptions.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Executed in Kansas City, Missouri, on this 28th day of January 2021.

Terri White

TERRI WHITE
Acting Associate Center Director
Freedom of Information Act & Privacy Act Unit
USCIS National Records Center