# EXHIBIT A

# ACLU
AMERICAN CIVIL LIBERTIES UNION

May 24, 2018

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
LEGAL DEPARTMENT

National Office
125 Broad Street,
18th Floor
New York, NY 10004
Tel: (212) 549-2644
Fax: (212) 549-2644
aclu.org

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA

39 Drumm Street.
San Francisco, CA 94111
Tel: (415) 621-2493
Fax: (415) 255-1478
aclunc.org

FOIA/PA Mail Referral Unit
Department of Justice
Room 115
LOC Building
Washington, D.C. 20530-0001

**SIG**

**MAY 2 9 2018**

**RECEIVED**

Federal Bureau of Investigation
Attn: FOI/PA Request
Record/Information Dissemination Section
170 Marcel Drive
Winchester, VA 22602-4843

Chief Privacy Officer/Chief FOIA Officer
The Privacy Office
U.S. Department of Homeland Security
245 Murray Lane SW, STOP-0655
Washington, D.C. 20528-0655

FOIA Officer
U.S. Customs & Border Protection
90 K Street NW,
9th Floor, Mail Stop 1181
Washington, D.C. 20229

National Records Center, FOIA/PA Office
U.S. Citizenship & Immigration Services
P. O. Box 648010
Lee's Summit, MO 64064-8010

FOIA Office
U.S. Immigration & Customs Enforcement
500 12th Street SW, Stop 5009
Washington, D.C. 20536-5009

U. S. Department of State
Office of Information Programs and Services
A/GIS/IPS/RL
SA-2, Suite 8100
Washington, D.C. 20522-0208

**Re:     Request Under Freedom of Information Act (Expedited Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern:

The American Civil Liberties Union Foundation and the American Civil Liberties Union Foundation of Northern California (together, the "ACLU"),[1] submit this Freedom of Information Act ("FOIA") request (the "Request") for records pertaining to social media surveillance, including the monitoring and retention of immigrants' and visa applicants' social media information for the purpose of conducting "extreme vetting."

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

## I. Background

Multiple federal agencies are increasingly relying on social media surveillance to monitor the speech, activities, and associations of U.S. citizens and noncitizens alike.

The Department of Homeland Security ("DHS") has used social media surveillance for "situational awareness," intelligence, and "other operations."[2] According to documents that the ACLU obtained through FOIA, as of 2015 the DHS Office of Intelligence and Analysis was collecting, analyzing, retaining, and disseminating social media information related to "Homeland Security Standing Information Needs"—subjects on which DHS continuously gathers information.[3] A February 2017 report by the DHS Inspector General also confirmed DHS's use of manual and automated social media screening of immigration and visa applications, the establishment within DHS of a "Shared Social Media Screening Service," and the planned "department-wide use of

---

[1] The American Civil Liberties Union Foundation is a 26 U.S.C. § 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, educates the public about civil rights and civil liberties issues across the country, directly lobbies legislators, and mobilizes the American Civil Liberties Union's members to lobby their legislators. The American Civil Liberties Union is a separate non-profit, 26 U.S.C. § 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analysis of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] Dep't of Homeland Security, Privacy Impact Assessment of the Office of Operations Coordination and Planning, *Publicly Available Social Media Monitoring and Situational Awareness Initiative* 3 (June 22, 2010), available at https://goo.gl/R1LVxM.

[3] Dep't of Homeland Security, Office of Intelligence and Analysis, Policy Instruction IA-900, *Official Usage of Publicly Available Information* 2 (Jan. 13, 2015), available at https://goo.gl/6gnmzn.

social media for screening."[4] The same report concluded, however, that DHS lacked the means to evaluate and measure the effectiveness of such programs.[5] Similarly, internal reviews obtained through FOIA from U.S. Citizenship and Immigration Services show that its social-media screening efforts lacked protections against discrimination and profiling and yielded few actionable results.[6]

Nonetheless, DHS is expanding its social media surveillance efforts as part of the Trump administration's "extreme vetting" initiatives. The department issued a public notice in September 2017 indicating that the records it retains in immigrants' files include "social media handles, aliases, associated identifiable information, and search results."[7] U.S. Immigration and Customs Enforcement ("ICE") also solicited proposals from contractors to utilize "social media exploitation" to vet visa applicants and monitor them while they are in the United States.[8] According to contract documents, ICE plans to spend $100 million on a program that will employ approximately 180 people to monitor visitors' social media posts.[9]

The State Department plays a significant role in the collection of social media information for vetting purposes. In May 2017, the department submitted an emergency request to the Office of Management and Budget to expand the information sought from approximately 65,000 visa applicants each year to include, *inter alia*, social media identifiers.[10] On March 30, 2018,

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[4] Office of Inspector General, OIG-17-40, *DHS' Pilots for Social Media Screening Need Increased Rigor to Ensure Scalability and Long-term Success* 1 n.2, 4 (Feb. 27, 2017), available at https://goo.gl/WDb5iJ.

[5] *Id.* at 2.

[6] *See* Aliya Sternstein, "Obama Team Did Some 'Extreme Vetting' of Muslims Before Trump, New Documents Show," Daily Beast, Jan. 2, 2018, available at https://goo.gl/azKwLm.

[7] Dep't of Homeland Security, Privacy Act of 1974; System of Records, 82 Fed. Reg. 43,557 (Sept. 18, 2017), available at https://goo.gl/GcLYoQ.

[8] Dep't of Homeland Security, Immigration & Customs Enforcement, *Extreme Vetting Initiative: Statement of Objectives* §§ 3.1-3.2 (June 12, 2017), available at https://goo.gl/ZTHzBS.

[9] Dep't of Homeland Security, Acquisition Forecast No. F2018040916 (Apr. 11, 2018), available at https://goo.gl/Zd7p1p; *see also* Drew Harwell & Nick Miroff, "ICE Just Abandoned Its Dream of 'Extreme Vetting' Software That Could Predict Whether a Foreign Visitor Would Become a Terrorist," Wash. Post, May 17, 2018, available at https://goo.gl/UxiF5P.

[10] Notice of Information Collection Under OMB Emergency Review: Supplemental Questions for Visa Applicants, 82 Fed. Reg. 20,956 (May 4, 2017), available at https://goo.gl/2hsRNi. On August 3, 2017, the State Department notified the public that it would extend the collection of social media information beyond the emergency period. *See* Sixty-Day Notice of Proposed Information Collection: Supplemental Questions for Visa Applicants, 82 Fed. Reg. 36,180 (Aug. 3, 2017), available at https://goo.gl/JXTFfi.

the department signaled a dramatic expansion of its collection of social media information, publishing two notices of new rules which, if adopted, would require nearly all of the 14.7 million people who annually apply for work or tourist visas to submit social media identifiers they have used in the past five years on up to 20 online platforms in order to travel or immigrate to the United States.[11] The notices do not indicate how such information may be shared across government agencies or what consequences its collection may have for individuals living in America, including U.S. citizens.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The Federal Bureau of Investigation ("FBI") also engages in extensive social media surveillance. In 2012, the FBI sought information from contractors on a planned "social media application" that would enable the FBI to "instantly search and monitor" publicly available information on social media platforms.[12] The FBI revealed in November 2016 that it would acquire social media monitoring software designed by Dataminr that would enable it to "search the complete Twitter firehose, in near real-time, using customizable filters" that are "specifically tailored to operational needs."[13] News reports indicate that the FBI is now also establishing a social media surveillance task force, the purpose and scope of which remain unclear.[14]

The FBI uses social media surveillance not only "to obtain information about relevant breaking news and events in real-time," but also to identify subjects for investigation.[15] For instance, it acquired the Dataminr software so that it could identify content that "track[s] FBI investigative priorities."[16] Similarly, the FBI appears to be using social media as a basis for deciding who to interview, investigate, or target with informants or undercover agents.[17]

---

[11] 60-Day Notice of Proposed Information Collection: Application for Immigrant Visa and Alien Registration, 83 Fed. Reg. 13,806 (Mar. 30, 2018), available at https://goo.gl/Rakt1v; 60-Day Notice of Proposed Information Collection: Application for Nonimmigrant Visa, 83 Fed. Reg. 13,807 (Mar. 30, 2018), available at https://goo.gl/SxJVBk.

[12] Federal Bureau of Investigation, Strategic Information and Operations Center, Request for Information – Social Media Application (Jan. 19, 2012), available at https://goo.gl/kRPLZt.

[13] Federal Bureau of Investigation, Requisition Number DJF-17-1300-PR00000555, Limited Source Justification, 1 (Nov. 8, 2016), available at https://goo.gl/Ty9WFZ.

[14] Chip Gibbons, "The FBI Is Setting Up a Task Force to Monitor Social Media," The Nation, Feb. 1, 2018, available at https://goo.gl/Ud6mVD.

[15] See FBI, Limited Source Justification, *supra* note 13 at 1.

[16] See id.

[17] See, e.g., Center on National Security at Fordham Law, *Case by Case: ISIS Prosecutions in the United States* 19 (July 2016), available at https://goo.gl/eCE8hh (concluding that a significant percentage of individuals prosecuted for certain national security-related crimes came to the attention of the FBI through social media use).

4

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Technology plays a critical role in enabling government agencies to surveil and analyze social media content. The migration of speech and associational activity onto the social media web, and the concentration of that activity on a relatively small number of social media platforms, has made it possible for government agencies to monitor speech and association to an unprecedented degree. At the same time, advances in data mining, network analysis, and machine learning techniques enable the government to search, scrape, and aggregate content on a vast scale quickly and continuously, or to focus and filter such content according to specific investigative priorities.

Government surveillance of social media raises serious constitutional and privacy concerns. Most online speech reflects no wrongdoing whatsoever and is fully protected by the First Amendment. Protected speech and beliefs—particularly expression or association of a political, cultural, or religious nature—should not serve as the sole or predominant basis for surveillance, investigation, or watchlisting. When government agencies collect or share individuals' online speech without any connection to investigation of actual criminal conduct, they foster suspicion about individuals and make it more likely that innocent people will be investigated, surveilled, or watchlisted. Additionally, the knowledge that the government systematically monitors online speech has a deeply chilling effect on the expression of disfavored beliefs and opinions—all of which the First Amendment protects. People are likely to stop expressing such beliefs and opinions in order to avoid becoming the subject of law enforcement surveillance. Basic due process and fairness is also undermined when significant decisions affecting peoples' lives—such as decisions about immigration status or whether an investigator targets a person for additional scrutiny—are influenced by proprietary systems running secret algorithms, analyzing data without necessary context or rules to prevent abuse. Finally, suspicionless social media surveillance can facilitate government targeting of specific racial and religious communities for investigation and promotes a climate of fear and self-censorship within those communities.

Despite the significant resources federal agencies are expending on social media surveillance and the constitutional concerns it raises, little information is available to the public on the tools and methods agencies use for surveillance, or the policies and guidelines that govern their use. The public similarly lacks information on whether surveillance of social media contributes meaningfully to public safety or simply floods agencies with information on innocent individuals and innocuous conduct. Because government social media surveillance could impact free expression and individual privacy on a broad scale, it has generated widespread and sustained public and media interest.[18]

---

[18] *See, e.g.*, Harwell & Miroff, *supra* note 9; Michelle Fabio, "Department of Homeland Security Compiling Database of Journalists and 'Media Influencers,'" Forbes, Apr. 6, 2018, available at https://goo.gl/THDSLZ; Brendan Bordelon, "New Visa Rules Suggest

To provide the public with information on the federal government's use of social media surveillance, the ACLU submits this FOIA Request.

## II. Requested Records

1) All policies, guidance, procedures, directives, advisories, memoranda, and/or legal opinions pertaining to the agency's search, analysis, filtering, monitoring, or collection of content available on any social media network;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

2) All records created since January 1, 2015 concerning the purchase of, acquisition of, subscription to, payment for, or agreement to use any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network, including but not limited to:

    a. Records concerning any product or service capable of using social media content in assessing applications for immigration benefits or admission to the United States;

    b. Records concerning any product or service capable of using social media content for immigration enforcement purposes;

---

Expanded Plans for 'Extreme Vetting' Via Algorithm," Nat'l Journal, Apr. 5, 2018, available at https://goo.gl/9Ux2mX; Arwa Mahdawi, "Hand Over My Social Media Account to Get a U.S. Visa? No Thank You," Guardian, Mar. 31, 2018, available at https://goo.gl/tpU6Ba; Sewell Chan, "14 Million Visitors to U.S. Face Social Media Screening," N.Y. Times, Mar. 30, 2018, available at https://goo.gl/RDUvKm; Brendan O'Brien, "U.S. Visa Applicants to be Asked for Social Media History: State Department," Reuters, Mar. 30, 2018, available at https://goo.gl/3PRMef; Stephen Dinan, "Extreme Vetting: State Department to Demand Tourists' Social Media History," Wash. Times, Mar. 29, 2018, available at https://goo.gl/YwazXd; "U.S. Plans 'Enhanced Vetting' of Every Visa Applicant With Orders to Hand Over Their Social Media History, Old Email Addresses and Phone Numbers," Daily Mail, Mar. 29, 2018, available at https://goo.gl/yY1g6m; Gibbons, *supra* note 14; Sternstein, *supra* note 6; Lily Hay Newman, "Feds Monitoring Social Media Does More Harm Than Good," Wired, Sept. 28, 2017, available at https://goo.gl/4obGFi; Tal Kopan, "Vetting of Social Media, Phones Possible as Part of Travel Ban Review," CNN.com, Sept. 12, 2017, available at https://goo.gl/BXf4k3; Aaron Cantú & George Joseph, "Trump's Border Security May Search Your Social Media by 'Tone,'" The Nation, Aug. 23, 2017, available at https://goo.gl/MuTmVN; Conor Finnegan, "Trump Administration Begins Vetting Social Media Profiles for Visa Applicants," ABC News, June 5, 2017, available at https://goo.gl/cJbnjg; Russell Brandom, "Can Facebook and Twitter Stop Social Media Surveillance?", Verge, Oct. 12, 2016, available at https://goo.gl/hzA2fY; Ron Nixon, "U.S. to Further Scour Social Media Use of Visa and Asylum Seekers," N.Y. Times, Feb. 23, 2016, available at https://goo.gl/y5C7Ba.

c.   Records concerning any product or service capable of using social media content for border or transportation screening purposes;

d.   Records concerning any product or service capable of using social media content in the investigation of potential criminal conduct;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

3)   All communications to or from any private business and/or its employees since January 1, 2015 concerning any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network;

4)   All communications to or from employees or representatives of any social media network (*e.g.*, Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015 concerning the search, analysis, filtering, monitoring, or collection of social media content; and

5)   All records concerning the use or incorporation of social media content into systems or programs that make use of targeting algorithms, machine learning processes, and/or data analytics for the purpose of (a) assessing risk, (b) predicting illegal activity or criminality, and/or (c) identifying possible subjects of investigation or immigration enforcement actions.

With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files.

### III. Application for Expedited Processing

The ACLU requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E).[19] There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II).

---

[19] *See also* 6 C.F.R. § 5.5(e); 28 C.F.R. § 16.5(e); 22 C.F.R. § 171.11(f).

A.     *The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II).[20] Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[21]

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

The ACLU regularly publishes *STAND*, a print magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 980,000 people. The ACLU also publishes regular updates and alerts via email to over 3.1 million subscribers (both ACLU members and non-members). These updates are additionally broadcast to over 3.8 million social media followers. The magazine as well as the email and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[22] and ACLU attorneys are interviewed frequently for news stories about

---

[20] *See also* 6 C.F.R. § 5.5(e)(1)(ii); 28 C.F.R. § 16.5(e)(1)(ii); 22 C.F.R. § 171.11(f)(2).

[21] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 11 (D.D.C. 2003).

[22] *See, e.g.*, Press Release, American Civil Liberties Union, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, American Civil Liberties Union, Secret Documents Describe Graphic Abuse and Admit Mistakes (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, American Civil Liberties Union, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit; Press Release, American Civil Liberties Union, Justice Department White Paper Details Rationale for Targeted Killing of Americans (Feb. 4, 2013), https://www.aclu.org/national-security/justice-department-white-paper-details-rationale-targeted-killing-americans; Press Release, American Civil Liberties Union, Documents Show FBI Monitored Bay Area Occupy Movement (Sept. 14, 2012), https://www.aclu.org/news/documents-show-fbi-monitored-bay-area-occupy-movement-insidebayareacom.

8

documents released through ACLU FOIA requests.[23]

Similarly, the ACLU publishes reports about government conduct and civil liberties issues based on its analysis of information derived from various sources, including information obtained from the government through FOIA requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee. ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA requests.[24] The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties.

The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia. The ACLU also

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[23] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavioral Screen Program*, Intercept, Feb. 8, 2017, https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU staff attorney Hugh Handeyside); Karen DeYoung, *Newly Declassified Document Sheds Light on How President Approves Drone Strikes*, Wash. Post, Aug. 6, 2016, http://wapo.st/2jy62cW (quoting former ACLU deputy legal director Jameel Jaffer); Catherine Thorbecke, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program*, ABC, June 15, 2016, http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Device*, Guardian, Mar. 17, 2016, https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU staff attorney Nathan Freed Wessler); David Welna, *Government Suspected of Wanting CIA Torture Report to Remain Secret*, NPR, Dec. 9, 2015, http://n.pr/2jy2p71 (quoting ACLU project director Hina Shamsi).

[24] *See, e.g.*, Hugh Handeyside, *New Documents Show This TSA Program Blamed for Profiling Is Unscientific and Unreliable — But Still It Continues* (Feb. 8, 2017, 11:45 AM), https://www.aclu.org/blog/speak-freely/new-documents-show-tsa-program-blamed-profiling-unscientific-and-unreliable-still; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016, 3:15 PM), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Brett Max Kaufman, *Details Abound in Drone 'Playbook' – Except for the Ones That Really Matter Most* (Aug. 8, 2016, 5:30 PM), https://www.aclu.org/blog/speak-freely/details-abound-drone-playbook-except-ones-really-matter-most; Nathan Freed Wessler, *ACLU Obtained Documents Reveal Breadth of Secretive Stingray Use in Florida* (Feb. 22, 2015, 5:30 PM), https://www.aclu.org/blog/free-future/aclu-obtained-documents-reveal-breadth-secretive-stingray-use-florida; Ashley Gorski, *New NSA Documents Shine More Light into Black Box of Executive Order 12333* (Oct. 30, 2014, 3:29 PM), https://www.aclu.org/blog/new-nsa-documents-shine-more-light-black-box-executive-order-12333; ACLU, *ACLU Eye on the FBI: Documents Reveal Lack of Privacy Safeguards and Guidance in Government's "Suspicious Activity Report" Systems* (Oct. 29, 2013), https://www.aclu.org/sites/default/files/assets/eye_on_fbi_-_sars.pdf.

publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU's website also serves as a clearinghouse for news about ACLU cases, as well as analysis about case developments, and an archive of case-related documents. Through these pages, and with respect to each specific civil liberties issue, the ACLU provides the public with educational material, recent news, analyses of relevant Congressional or executive branch action, government documents obtained through FOIA requests, and further in-depth analytic and educational multi-media features.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU website includes many features on information obtained through FOIA.[25] For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. Similarly, the ACLU maintains an online "Torture Database," a compilation of over 100,000 pages of FOIA and other documents that allows researchers and the public to conduct sophisticated searches of FOIA documents relating to government policies on rendition, detention, and interrogation.[26]

---

[25] *See, e.g.*, Nathan Freed Wessler & Dyan Cortez, *FBI Releases Details of 'Zero-Day' Exploit Decisionmaking Process* (June 26, 2015, 11:00 AM), https://www.aclu.org/blog/free-future/fbi-releases-details-zero-day-exploit-decisionmaking-process; Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights; *ACLU v. DOJ – FOIA Case for Records Relating to the Killing of Three U.S. Citizens*, ACLU Case Page, https://www.aclu.org/national-security/anwar-al-awlaki-foia-request; *ACLU v. Department of Defense*, ACLU Case Page, https://www.aclu.org/cases/aclu-v-department-defense; *Mapping the FBI: Uncovering Abusive Surveillance and Racial Profiling*, ACLU Case Page, https://www.aclu.org/mappingthefbi; *Bagram FOIA*, ACLU Case Page, https://www.aclu.org/cases/bagram-foia; *CSRT FOIA*, ACLU Case Page, https://www.aclu.org/national-security/csrt-foia; *ACLU v. DOJ – Lawsuit to Enforce NSA Warrantless Surveillance FOIA Request*, ACLU Case Page, https://www.aclu.org/aclu-v-doj-lawsuit-enforce-nsa-warrantless-surveillance-foia-request; *Patriot FOIA*, ACLU Case Page, https://www.aclu.org/patriot-foia; *NSL Documents Released by DOD*, ACLU Case Page, https://www.aclu.org/nsl-documents-released-dod?redirect=cpredirect/32088.

[26] *The Torture Database*, ACLU, https://www.thetorturedatabase.org; *see also Countering Violent Extremism FOIA Database*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, through compilation and analysis of information gathered from various sources—including information obtained from the government through FOIA requests—the ACLU created an original chart that provides the public and news media with a comprehensive summary index of Bush-era Office of Legal Counsel memos relating to interrogation, detention, rendition, and surveillance.[27] Similarly, the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program[28]; a summary of documents released in response to a FOIA request related to the FISA Amendments Act[29]; a chart of original statistics about the Defense Department's use of National Security Letters based on its own analysis of records obtained through FOIA requests[30]; and an analysis of documents obtained through FOIA requests about FBI surveillance flights over Baltimore.[31]

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the requesters plan to disseminate the information disclosed as a result of this Request to the public at no cost.

*B.     The records sought are urgently needed to inform the public about actual or alleged government activity.*

These records are urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the requested records relate to the federal government's use of social media surveillance and its interactions with the private sector for the purpose of obtaining social media surveillance technology. As discussed in Part I, *supra*, federal agencies are expanding their use of social media surveillance—which implicates the online speech of millions of social media users—but little information is available to the public regarding the nature, extent, and consequences of that surveillance.

---

[27] *Index of Bush-Era OLC Memoranda Relating to Interrogation, Detention, Rendition and/or Surveillance*, ACLU (Mar. 5, 2009), https://www.aclu.org/sites/default/files/pdfs/safefree/olcmemos_2009_0305.pdf.

[28] *Bad Trip: Debunking the TSA's 'Behavior Detection' Program*, ACLU (2017), https://www.aclu.org/sites/default/files/field_document/dem17-tsa_detection_report-v02.pdf.

[29] *Summary of FISA Amendments Act FOIA Documents Released on November 29, 2010*, ACLU, https://www.aclu.org/files/pdfs/natsec/faafoia20101129/20101129Summary.pdf.

[30] *Statistics on NSLs Produced by Department of Defense*, ACLU (2014), https://www.aclu.org/ other/statistics-nsls-produced-dod.

[31] Nathan Freed Wessler, *FBI Documents Reveal New Information on Baltimore Surveillance Flights* (Oct. 30, 2015, 8:00 AM), https://www.aclu.org/blog/free-future/fbi-documents-reveal-new-information-baltimore-surveillance-flights.

Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

## IV. Application for Waiver or Limitation of Fees

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." *See* 5 U.S.C. § 552(a)(4)(A)(iii).[32] The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).

A.    *The Request is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the ACLU.*

As discussed above, credible media and other investigative accounts underscore the substantial public interest in the records sought through this Request. Given the ongoing and widespread media attention to this issue, the records sought will significantly contribute to public understanding of an issue of profound public importance. Because little specific information about government surveillance and monitoring of social media is publicly available, the records sought are certain to contribute significantly to the public's understanding of whether and under what circumstances the government monitors social media content, and how such monitoring affects individual privacy and liberty.

The ACLU is not filing this Request to further its commercial interest. As described above, any information disclosed by the ACLU as a result of this FOIA Request will be available to the public at no cost. Thus, a fee waiver would fulfill Congress's legislative intent in amending FOIA. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters." (quotation marks omitted)).

B.    *The ACLU is a representative of the news media and the records are not sought for commercial use.*

The ACLU also requests a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records

---

[32] *See also* 6 C.F.R. § 5.11(k); 28 C.F.R. § 16.10(k); 22 C.F.R. § 171.16.

12

are *not sought for commercial use. See* 5 U.S.C. § 552(a)(4)(A)(ii)(II).[33] The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *See* 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *Serv. Women's Action Network v. DOD*, 888 F. Supp. 2d 282 (D. Conn. 2012) (requesters, including ACLU, were representatives of the news media and thus qualified for fee waivers for FOIA requests to the Department of Defense and Department of Veterans Affairs); *ACLU of Wash. v. DOJ*, No. C09-0642RSL, 2011 WL 887731, at *10 (W.D. Wash. Mar. 10, 2011) (finding that the ACLU of Washington is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); *ACLU*, 321 F. Supp. 2d at 30 n.5 (finding non-profit public interest group to be "primarily engaged in disseminating information"). The ACLU is therefore a "representative of the news media" for the same reasons it is "primarily engaged in the dissemination of information."

Furthermore, courts have found other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's to be "representatives of the news media" as well. *See, e.g., Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 10–15 (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive*, 880 F.2d at 1387; *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53–54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).[34]

On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[35] As was true in those instances, the ACLU meets the requirements for a fee waiver here.

---

[33] *See also* 6 C.F.R. § 5.11(d)(1); 28 C.F.R. § 16.10(b)(6); 22 C.F.R. § 171.14(b).

[34] Courts have found these organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information / public education activities. *See, e.g., Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 5; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[35] In August 2017, CBP granted a fee-waiver request regarding a FOIA request for records relating to a muster sent by CBP in April 2017. In May 2017, CBP granted a fee-

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

                            *        *        *

        Pursuant to applicable statutes and regulations, the ACLU expects a
determination regarding expedited processing within 10 days. *See* 5 U.S.C.
§ 552(a)(6)(E)(ii).

        If the Request is denied in whole or in part, the ACLU asks that you
justify all deletions by reference to specific exemptions to FOIA. The ACLU
expects the release of all segregable portions of otherwise exempt material.
The ACLU reserves the right to appeal a decision to withhold any information
or deny a waiver of fees.

        Thank you for your prompt attention to this matter. Please furnish the
applicable records to:


        Hugh Handeyside
        American Civil Liberties Union
        125 Broad Street—18th Floor
        New York, New York 10004
        hhandeyside@aclu.org


        I affirm that the information provided supporting the request for expedited
processing is true and correct to the best of my knowledge and belief. *See* 5
U.S.C. § 552(a)(6)(E)(vi).

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**

---

waiver request regarding a FOIA request for documents related to electronic device searches
at the border. In April 2017, the CIA and the Department of State granted fee-waiver requests
in relation to a FOIA request for records related to the legal authority for the use of military
force in Syria. In March 2017, the Department of Defense Office of Inspector General, the
CIA, and the Department of State granted fee-waiver requests regarding a FOIA request for
documents related to the January 29, 2017 raid in al Ghayil, Yemen. In May 2016, the FBI
granted a fee-waiver request regarding a FOIA request issued to the DOJ for documents
related to Countering Violent Extremism Programs. In April 2013, the National Security
Division of the DOJ granted a fee-waiver request with respect to a request for documents
relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver
request regarding a FOIA request for documents related to "national security letters" issued
under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-
waiver request related to the same FOIA request issued to the DOJ. In June 2011, the DOJ
National Security Division granted a fee waiver to the ACLU with respect to a request for
documents relating to the interpretation and implementation of a section of the PATRIOT
Act. In March 2009, the State Department granted a fee waiver to the ACLU with regard to a
FOIA request for documents relating to the detention, interrogation, treatment, or prosecution
of suspected terrorists.

Respectfully,

Hugh Handeyside
American Civil Liberties Union
    Foundation
125 Broad Street—18th Floor
New York, New York 10004
212.549.2500
hhandeyside@aclu.org


Matt Cagle
American Civil Liberties Union
    Foundation of Northern California
39 Drumm Street
San Francisco, CA 94111
415.621.2493
mcagle@aclunc.org

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**

15

# EXHIBIT B

U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO 64064-8010



U.S. Citizenship
and Immigration
Services

June 6, 2018

COW2018000654

Hugh Handeyside
American Civil Liverties Union
125 Broad St
18th Floor
New York, NY 10004

Dear Hugh Handeyside:

We received your on June 4, 2018. You specifically requested the following:

1. All policies, guidance, procedures, directives, advisories, memoranda, and/or legal opinions pertaining to the agency's search, analysis, filtering, monitoring, or collection of content available on any social media network;

2. All records created since January 1, 2015 concerning the purchase of, acquisition of, subscription to, payment for, or agreement to use any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network, including but not limited to:

    a. Records concerning any product or service capable of using social media content in assessing applications for immigration benefits or admission to the United States;

    b. Records concerning any product or service capable of using social media content for immigration enforcement purposes;

    c. Records concerning any product or service capable of using social media content for border or transportation screening purposes;

    d. Records concerning any product or service capable of using social media content in the investigation of potential criminal conduct;

3. All communications to or from any private business and/or its employees since January 1, 2015 concerning any product or service that searches, analyzes, filters, monitors, or collects content available on any social media network;

4. All communications to or from employees or representatives of any social media network (e.g., Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015 concerning the search, analysis, filtering, monitoring, or collection of social media content; and

5. All records concerning the use or incorporation of social media content into systems or programs that make use of targeting algorithms, machine learning processes, and/or data analytics for the purpose of (a) assessing risk, (b) predicting illegal activity or criminality, and/or (c) identifying possible subjects of investigation or immigration enforcement actions.

COW2018000654
Page 2

Your request is being handled under the provisions of the Freedom of Information Act (5 U.S.C. § 552). It has been assigned the following control number: COW2018000654.  Please cite this number in all future correspondence about your request.

We respond to requests on a first-in, first-out basis and on a multi-track system.  Your request has been placed in the complex track (Track 2).

Your request for expedited processing has been granted.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.4(a)), USCIS uses a "cut-off" date to delineate the scope of a FOIA request by treating records created after that date as not responsive to that request. Therefore, in determining which records are responsive to your request, we will only include records in the possession of this agency as of June 6, 2018, the date we began the search for records.

Consistent with 6 C.F.R. § 5.5(a) of the Department of Homeland Security (DHS) FOIA regulations, USCIS processes FOIA requests according to their order of receipt.  Although USCIS' goal is to respond within 20 business days of receipt of your request, FOIA does permit a 10-day extension of this time period in certain circumstances.  Due to the increasing number of FOIA requests received by this office, we may encounter some delay in processing your request.  Additionally, due to the scope and nature of your request, USCIS will need to locate, compile, and review responsive records from multiple offices, both at headquarters and in the field.  USCIS may also need to consult with another agency or other component of the Department of Homeland Security that have a substantial interest in the responsive information.  Due to these unusual circumstances, USCIS will invoke a 10-day extension for your request pursuant to 5 U.S.C. § 552(a)(6)(B). Please contact our office if you would like to limit the scope of your request or to agree on a different timetable for the processing of your request.  We will make every effort to comply with your request in a timely manner.

This office will be providing your records on a Compact Disc (CD) for use on your personal computer.  The CD is readable on all computers through the use of Adobe Acrobat software.  A version of Adobe Acrobat will be included on the CD.  Your records can be viewed on your computer screen and can be printed onto paper.  Only records 15 pages or more are eligible for CD printing.  To request your responsive records on paper, please include your control number and write to the above address Attention: FOIA/PA Officer, or fax them to (816) 350-5785.

USCIS FOIA has agreed to grant your fee waiver request.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.3(c)), your request is deemed to constitute an agreement to pay any fees that may be chargeable up to $25.00.  Fees may be charged for searching for records sought at the respective clerical, professional, and/or managerial rates of $4.00/$7.00/$10.25 per quarter hour, and for duplication of copies at the rate of $.10 per copy.  The first 100 copies and two hours of search time are not charged, and the remaining combined charges for search and duplication must exceed $14.00 before we will charge you any fees.  Most requests do not require any fees; however, if fees in excess of $25.00 are required, we will notify you beforehand.

COW2018000654
Page 3

The National Records Center (NRC) has the responsibility to ensure that personally identifiable information (PII) pertaining to U.S. Citizenship and Immigration Services (USCIS) clients is protected. In our efforts to safeguard this information, we may request that additional information be provided to facilitate and correctly identify records responsive to your request.  Though submission of this information is voluntary, without this information, your request may be delayed while additional steps are taken to ensure the correct responsive records are located and processed. Further, if we are unable to positively identify the subject of the record we may be unable to provide records responsive to your FOIA request.

You may check the status of your FOIA request online, at www.uscis.gov/FOIA.  Click the "Check Status of Request" button in the middle of the web page or "FOIA Request Status Check & Average Processing Times" on the left side under "Freedom of Information and Privacy Act (FOIA)." Then click "FOIA Check Status of Request" at the bottom of the page and follow the instructions given.  We will make every effort to comply with your request in a timely manner.  In the interim if you have questions about the status of your request, you may contact Karl Bloom by e-mail at Karl.D.Bloom@uscis.dhs.gov.

All FOIA/PA related requests, including address changes, must be submitted in writing and be signed by the requester.  Please include the Control Number listed above on all correspondence with this office. Requests may be mailed to the FOIA/PA Officer at the PO Box listed at the top of the letterhead, emailed to USCIS.FOIA@uscis.dhs.gov, or sent by fax to (816) 350-5785.  You may also submit FOIA/PA related questions to our email address at FOIAPAQuestions@uscis.dhs.gov.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

# EXHIBIT C

# SIG
# SCAN AS

JAN -9 2019

## COW2018000654

☐ NEW REQUEST

 CSD

☐ REQUESTER DOCS

☐ RESPONSIVE RECORDS

REMARKS: <u>Emails with requester discussing request and setting up a conference call.</u>

DATE:  1/8/18

NAME:  Allen Jaynes

| | |
|---|---|
| **From:** | Hugh Handeyside <hhandeyside@aclu.org> |
| **Sent:** | Monday, January 07, 2019 11:19 AM |
| **To:** | Jaynes, Thomas A (Allen) |
| **Subject:** | RE: USCIS FOIA Request Regarding Social Media (COW2018000654) |

No problem – I'm available today. Would 2 p.m. work? I'm at 212-519-7857.

Best,
Hugh

**From:** Jaynes, Thomas A (Allen) [mailto:Thomas.A.Jaynes@uscis.dhs.gov]
**Sent:** Monday, January 07, 2019 7:57 AM
**To:** Hugh Handeyside
**Subject:** RE: USCIS FOIA Request Regarding Social Media (COW2018000654)

Hugh Handeyside,
I apologize for the delay in getting back with you.  I had a health issue come up.  If you are still available today to speak with me concerning your request please let me know.


T. Allen Jaynes
Senior Government Information Specialist
Freedom of Information Act (FOIA)
U.S. Citizenship and Immigration Services
(816) 350-5500, ext 5095

**From:** Hugh Handeyside [mailto:hhandeyside@aclu.org]
**Sent:** Wednesday, January 02, 2019 12:51 PM
**To:** Jaynes, Thomas A (Allen)
**Subject:** RE: USCIS FOIA Request Regarding Social Media (COW2018000654)

Mr. Jaynes,

Apologies for the difficulty in reaching each other to this point. I'm happy to set a time to discuss the request – tomorrow, Friday, and Monday of next week are looking flexible at this point – although I imagine you have been affected by the government shutdown.

As for your assertion that the request as written does not allow your office to conduct a reasonable search, our position is that the plain language of the request is more than adequate to enable a search for responsive records. We have made that position clear to other agencies to which we have directed this request. For instance, DHS responded that the request did not reasonably describe the records sought; we submitted the attached administrative appeal to DHS in response, and the appeals officer remanded the matter to DHS for corrective processing (decision attached).

I look forward to discussing this at your convenience.

Regards,
Hugh Handeyside

**From:** Jaynes, Thomas A (Allen) [mailto:Thomas.A.Jaynes@uscis.dhs.gov]
**Sent:** Friday, December 28, 2018 10:25 AM
**To:** Hugh Handeyside
**Subject:** RE: USCIS FOIA Request Regarding Social Media (COW2018000654)

Hugh,
I am following up with you regarding your USCIS FOIA request COW2018000654.  I would like to discuss your request to clarify certain items.  Is there a specific date and time we can set up a telephone call to discuss your request?

T. Allen Jaynes
Senior Government Information Specialist
Freedom of Information Act (FOIA)
U.S. Citizenship and Immigration Services
(816) 350-5500, ext 5095

---

**From:** Jaynes, Thomas A (Allen)
**Sent:** Wednesday, December 12, 2018 9:33 AM
**To:** 'hhandeyside@aclu.org'
**Subject:** RE: USCIS FOIA Request Regarding Social Media (COW2018000654)

Hugh Handeyside,
It seems you and I keep missing each other on the telephone to discuss your FOIA request.  Can we set up a specific date and time that I can call you to discuss this request?

T. Allen Jaynes
Senior Government Information Specialist
Freedom of Information Act (FOIA)
U.S. Citizenship and Immigration Services
(816) 350-5500, ext 5095

---

**From:** Jaynes, Thomas A (Allen)
**Sent:** Tuesday, November 20, 2018 11:55 AM
**To:** 'hhandeyside@aclu.org'
**Subject:** USCIS FOIA Request Regarding Social Media (COW2018000654)

Hugh Handeyside,
I am following up on the Freedom of Information Act (FOIA) request you submitted to USCIS dated May 24, 2018 requesting information regarding social media.  USCIS assigned the case number COW2018000654.  For your reference, attached is a copy of your request.

Item 3 of your request asks for all communications to or from any private business and/or its employees since January 1, 2015.  Item 4 asks for all communications to or from employees or representatives of any social media network (e.g., Twitter, Facebook, YouTube, LinkedIn, WhatsApp) since January 1, 2015.  In order for USCIS to conduct a reasonable search for these records our office needs more information.

These two requested items in their current form does not allow our office to conduct a reasonable search for records.  Taking this request at face value, your request is asking for USCIS to conduct a search throughout the agency since January 1, 2015.  A request such as this to too broad and our agency is not required to conduct a search such as this under the FOIA.  See Weirich v. Bd. of Governors of the Fed. Reserve Sys., No. CV-10-5031, 2010 WL 4717211, at *4 (E.D. Wash. Nov. 15, 2010) (determining that not only do requests for "'any documents'" by "'any members'" concerning "'emergency funds'" for "'commercial banks which were nearly insolvent'" lack specificity, but plaintiff's request would "unduly burden the FOI Office and significantly interfere with the Board's operations").

2

However, USCIS is willing to conduct a search for records if you would be willing to narrow the scope of these two items.  Narrowing the scope could be such as specific USCIS employees or specific positions in a USCIS office or by other means would allow our office to conduct a reasonable search.  If you would be willing to provide more information that would allow USCIS to search for records, please respond to this email or you may call me at my telephone number shown below.

T. Allen Jaynes
Senior Government Information Specialist
Freedom of Information Act (FOIA)
U.S. Citizenship and Immigration Services
150 Space Center Loop
Lee's Summit, MO 64064
(816) 350-5500, ext 5095

WARNING: This document is FOR OFFICIAL USE ONLY (FOUO). It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to Sensitive But Unclassified (SBU) information and is not to be released to the public or other personnel who do not have a valid "need-to-know" without prior approval from the originator.

# EXHIBIT D

U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010



**U.S. Citizenship
and Immigration
Services**

July 10, 2019                                                              **COW2018000654**

Hugh Handeyside
American Civil Liberties Union
125 Broad St
18th Floor
New York, NY  10004

Dear Hugh Handeyside:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated May 24, 2018, which is currently at issue in *ACLU v. DOJ, et al*, 19-cv-290 (N.D. Cal.).  The request sought records "pertaining to social media surveillance, including the monitoring and retention of immigrants' and visa applicants' social media information for the purpose of conducting 'extreme vetting.'"

We are providing records as part of a rolling production.  Enclosed is the first production, which consists of 2060 pages.  We are currently processing the remaining pages, which will be provided to you in a second production.

We have reviewed the enclosed pages and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA.

Exemption (b)(5) provides protection for inter-agency or intra-agency memorandums or letters, which would not be available by law to a party other than an agency in litigation with the agency.  The types of documents and/or information that we have withheld under this exemption may consist of documents containing pre-decisional information, documents or other memoranda prepared in contemplation of litigation, or confidential communications between attorney and client.

Exemption (b)(6) permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.  The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, drivers' licenses, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.

Exemption (b)(7)(C) provides protection for personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. We have withheld information relating to third-party individuals.  The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

COW2018000654
Page 2

Exemption (b)(7)(E) of the FOIA provides protection for records or information for law enforcement purposes which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  The types of documents and/or information we have withheld could consist of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques, and various other documents.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.4(a)), USCIS uses a "cut-off" date to delineate the scope of a FOIA request by treating records created after that date as not responsive to that request. Therefore, in determining which records are responsive to your request, we included only records in the possession of this agency as of March 26, 2018, the date we began the search for records.

The enclosed record consists of the best reproducible copies available.  Certain pages contain marks that appear to be blacked-out information. The black marks were made prior to our receipt of the file and are not information we have withheld under the provisions of the FOIA or PA.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

Enclosure(s)

U.S. Department of Homeland Security
National Records Center
P.O. Box 648010
Lee's Summit, MO  64064-8010



**U.S. Citizenship and Immigration Services**

August 7, 2019                                                                    **COW2018000654**

Hugh Handeyside
American Civil Liberties Union
125 Broad St
18th Floor
New York, NY  10004

Dear Hugh Handeyside:

This is in response to your Freedom of Information Act/Privacy Act (FOIA/PA) request dated May 24, 2018, which is currently at issue in *ACLU v. DOJ, et al*, 19-cv-290 (N.D. Cal.).  The request sought records "pertaining to social media surveillance, including the monitoring and retention of immigrants' and visa applicants' social media information for the purpose of conducting 'extreme vetting.'" This is the second and final release.

We are providing records as part of a rolling production. Enclosed is the second and final release, which consists of 585 pages. The two productions contain all of the records identified as responsive to your request. In total, we have identified 2645 pages that are responsive to your request, of which 306 were released in their entirety, 2234 released in part, and 64 pages withheld in full.  In our review of these pages, we have determined that they contain no reasonably segregable portion(s) of non-exempt information.  Additionally, we have referred 8 pages in their entirety to Department of Homeland Security and 33 pages to Immigration and Customs Enforcement for their direct response to you.  We have reviewed and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552 (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA.

Exemption (b)(5) provides protection for inter-agency or intra-agency memorandums or letters, which would not be available by law to a party other than an agency in litigation with the agency.  The types of documents and/or information that we have withheld under this exemption may consist of documents containing pre-decisional information, documents or other memoranda prepared in contemplation of litigation, or confidential communications between attorney and client.

Exemption (b)(6) permits the government to withhold all information about individuals in personnel, medical and similar files where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.  The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, drivers' licenses, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal.

Exemption (b)(7)(C) provides protection for personal information in law enforcement records, which could reasonably be expected to constitute an unwarranted invasion of personal privacy. We have withheld information relating to third-party individuals.  The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

COW2018000654
Page 2

Exemption (b)(7)(E) of the FOIA provides protection for records or information for law enforcement purposes which would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.  The types of documents and/or information we have withheld could consist of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques, and various other documents.

In accordance with Department of Homeland Security Regulations (6 C.F.R. § 5.4(a)), USCIS uses a "cut-off" date to delineate the scope of a FOIA request by treating records created after that date as not responsive to that request. Therefore, in determining which records are responsive to your request, we included only records in the possession of this agency as of March 26, 2018, the date we began the search for records.

The enclosed record consists of the best reproducible copies available.  Certain pages contain marks that appear to be blacked-out information. The black marks were made prior to our receipt of the file and are not information we have withheld under the provisions of the FOIA or PA.

Sincerely,

Jill A. Eggleston
Director, FOIA Operations

Enclosure(s)

# EXHIBIT E

**From:** Hugh Handeyside <hhandeyside@aclu.org>
**Sent:** Friday, November 06, 2020 5:50 PM
**To:** Tulis, Elizabeth (CIV) <etulis@CIV.USDOJ.GOV>
**Cc:** Matt Cagle <MCagle@aclunc.org>
**Subject:** RE: ACLU v. DOJ - follow-up re CBP b4 redactions

Hi Elizabeth,

It looks like we did inadvertently leave those b4 redactions in the CBP production (specifically: 251b, 251c, 253a, and 253b) off the list we previously sent. So you can consider this email as confirmation that we won't be challenging those.

We also checked the b7C redactions in the USCIS production, and we can confirm at this point that, other than the b7C redaction on page 1174 of the production, our position is the same as for the b6 redactions — i.e., we will not be litigating those. For the b7C redaction on page 1174, there's no way to distinguish the b7C redaction from the b5 redaction within which it is encompassed. Can you affirm that it is limited to a specific individual identity like the other b6/b7C redactions?

Let me know if you'd like to discuss further.

Best,
Hugh

# EXHIBIT F

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

***American Civil Liberties Union Foundation et al v. Department of Justice et al,***
**Civil Action No. 19-00290-SK**

*VAUGHN* INDEX[1]

| Bates Number (top right corner) | Description of Document | Exemption(s) Applied | Document Type | Description of Withheld Information and Explanation(s) for Withholding |
|---|---|---|---|---|
| 2 | Email, RE: FINAL RAS/SM vetting memo, ISCPM, BISC and tableASY.NACARA203.BISC 7.10.17 (fillable).pdf | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to redact portions of an email sent by employees in the U.S. Citizenship and Immigration Services (USCIS) Refugee, Asylum, and International Operations (RAIO) Directorate.  The information withheld under (b)(7)(E) includes a list of document titles that relate to the social media vetting process.  This information was compiled by USCIS employees as part of the review/revision process in finalizing the documents, and the titles contain law enforcement information and objectives.  The titles also contain specific details focused on the agency's vetting initiatives, including the types of applications and applicants that would fall under this vetting process.  This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background |

[1] This *Vaughn* Index contains descriptions of pages that Plaintiffs are contesting, which includes redactions under Exemptions (b)(5) and (b)(7)(E).  By email dated November 6, 2020, Plaintiffs advised Defendants that they do not intend to challenge any redactions under (b)(6) or (b)(7)(C).  Accordingly, descriptions of any redactions under Exemptions (b)(6) or (b)(7)(C) are not included in this *Vaughn* index.

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                    VAUGHN INDEX

| | | | | checks or vetting, which is part of specific guidelines and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal specific factors and information that law enforcement is aware of pertaining to the types of asylum applications that may need additional screening.  The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers. The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 4-24 | Supporting Statement for Paperwork Reduction Act, Generic Information Collection Submissions for "Generic Clearance for the Collection of | (b)(5) | Draft document | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | |
|---|---|---|---|
| | Social Media Information on Immigration and Foreign Travel Forms," Office of Management and Budget Control No. 1601-NEW | | | accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the development of the process of collection of social media information on immigration and foreign travel forms.   The material is also pre-decisional and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS Office of Chief Counsel (OCC) attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 25-26 | DHS Social Media Task Force, Social Media Use Teleconference, September 28, 2016 | (b)(5) | Meeting Summary | The information withheld under (b)(5) as deliberative and attorney-client privileged information consists of a summary of a legal opinion that focused on the USCIS Fraud Detection and National Security Directorate (FDNS) and FDNS's authorities under the Privacy Act.  FDNS is a directorate within USCIS, and is responsible for leading agency efforts aimed at enhancing the integrity of the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                    VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | legal immigration system.  FDNS develops and maintains fraud and screening programs, leads information sharing and collaboration activities, and supports law enforcement and intelligence communities.  The legal opinion was written by DHS's Office of General Counsel (OGC) and the summary of the opinion reflects OGC's legal opinions as well as facts and questions that DHS employees had provided to OGC.  The summary also contains potential courses of actions being considered, and OGC's legal opinion as to the risks associated with these options.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 27-28 | Email, RE: social media searches for businesses/ entities | (b)(5) | Email | The information withheld under (b)(5) as attorney-client privileged information consists of a legal question related to whether businesses and other entities would be included in the social media search process, and if so, to what extent.  The emails are between USCIS OCC attorneys and agency employees, and include OCC attorneys' legal opinions, as well as facts and questions that USCIS employees had provided to the attorneys.  The emails also contain potential courses of actions being considered, and OCC's legal opinion as to the risks associated with these options.  Accordingly, this material is appropriately exempt from |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 30-31 | SM LIP Terms of Use Language - Second Review and Comment | (b)(5) | Email | The information withheld under (b)(5) as attorney-client privileged information consists of a legal opinion regarding potential legal liability for participating in USCIS social media operational activities.  The legal opinion was written by a USCIS OCC attorney and provided to USCIS's social media working group (SMWG), at the request of the employees participating in the SMWG.  The information also contains the attorney's legal opinions as well as facts and questions that USCIS employees had provided to the attorney.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 32-36 | Email, RE: Read-out of DHS, DOJ, DOS meeting re PRA package DOJ questions 12/15/17 | (b)(5) | Email | The information withheld under (b)(5) as attorney-client privileged information consists of a legal question related to what information could be requested in specific immigration form types. The emails are between USCIS OCC attorneys and agency employees, and include OCC attorneys' legal opinions, a summary of legal questions from DOJ, as well as facts and questions that USCIS employees had provided to the attorneys.  The emails also contain potential |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | courses of actions being considered, outstanding issues and tasks, and OCC's legal opinion as to the risks associated with these options.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 37 | Email, RE: Pre-brief for call Email, RE: Sub-PCC SOC on screening/vetting enhancements | (b)(5) | Email | The information withheld under (b)(5) as attorney-client privileged information consists of a legal question related to what information could be requested in specific immigration form types, specifically in related to the OMB approval process. The emails are between USCIS OCC attorneys and agency employees, and include OCC attorneys' legal opinions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 41 | Email, RE: Privacy Training (for SVPI FDNS IO Social Media access) | (b)(5), (b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to privacy training, and the possibility of USCIS access to certain tools that could be used as part of the review of social media posts made by applicants. The emails are between USCIS OCC attorneys and agency employees, and include statements of uncertainty, and requests for additional information, which |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a request for legal opinions related potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed.<br><br>Exemption (b)(7)(E) was used to redact portions of an email sent by USCIS employees and OCC attorneys discussing privacy training for FDNS immigration officers involved in social media vetting and background investigations. The information withheld under (b)(7)(E) includes a description of the specific technology that FDNS would be using to conduct social media research as part of the vetting process. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by law enforcement as part of the vetting and screening process. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  Releasing this information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| 42-43 | Email, RE: Quick Question | (b)(5) | Email | The information withheld under (b)(5) as attorney-client privileged information consists of a legal question related to what information could be requested in specific immigration form types. The emails are between USCIS OCC attorneys and agency employees, and include OCC attorneys' legal opinions, a summary of legal questions from DOJ, as well as facts and questions that USCIS employees had provided to the attorneys.  The emails also contain potential courses of actions being considered, outstanding issues and tasks, and OCC's legal opinion as to the risks associated with these options.  Accordingly, this material is appropriately exempt from disclosure |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 46 | Email, RE: Reminder: [Clearance Request] Latest draft of Consolidated DHS Social Media Talking Points (Due 5pm Wednesday, April 18th) | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to redact portions of an email sent by USCIS employees discussing the review of a draft copy of DHS Social Media Talking Points. The information withheld under (b)(7)(E) includes the link to an internal intranet website that directs to the draft copy of the document being reviewed.  This information, if disclosed, would reveal the technology resources currently being used in the government to review sensitive law enforcement documents that aid in the vetting process. This type of information is part of specific techniques and procedures involved the agency's enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by the agency to coordinate review of documents to support DHS's mission.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 51 | Email, RE: Request For Occ Clearance [DHS Congressional Correspondence] Rep. Jayapal+ 16, regarding SORN and Social Media, WF 1152115 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the legal review of a draft response to Representative Jayapal regarding the USCIS social media review process. The emails are between USCIS OCC attorneys and agency employees, and include statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a request for legal opinions related potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 58-59 | Email, RE: RTQ on DHS Social Media Collection | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions about the agency's social media monitoring. The emails are between USCIS OCC attorneys and agency leadership, and include |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a request for legal opinions related potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 61, 64 | Email, RE: SM LIP Reorg v2 for final review | (b)(5): page 61<br><br>(b)(7)(E): page 64 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of a draft Social Media Limited Implementation Plan (SMLIP). The emails are between USCIS OCC attorneys and agency employees, and include statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a request for legal opinions related potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) was used to redact portions of an email sent by USCIS employees and OCC attorneys discussing the review of a draft SMLIP.  The information withheld under (b)(7)(E) includes the link to an internal intranet website that directs to the draft copy of the document being reviewed.  This information, if disclosed, would reveal the technology resources currently being used in the government to review sensitive law enforcement documents that aid in the vetting process.  This type of information is part of specific techniques and procedures involved the agency's enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by the agency to coordinate review of documents to support DHS's mission.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 65-67 | Email, RE: SM LIP WG call 2/12/18 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | privileged information related to the review of a draft Social Media Limited Implementation Plan (SMLIP), and the summary of a meeting of the SMWG. The emails are between USCIS OCC attorneys, and include statements summarizing current issues being considered as part of the SMWG, and which agency employees would have the authority to conduct social media pilot.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a request for legal opinions related potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 68-71 | Email, RE: Social media - FORMS project - LPRs | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the collection of information on immigration forms. The emails are between USCIS OCC attorneys, and include statements summarizing current legal issues being considered, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a request for legal opinions related potential courses of actions being considered. |

| | | | | |
|---|---|---|---|---|
| | | | | Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 73, 75, 77-78 | Email, RE: Social Media Compliance Documentation | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft social media compliance documentation. The emails are between USCIS OCC attorneys and include statements of uncertainty, edits, comments, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 80 | Email, RE: Social Media meeting between Jon Cantor and USCIS D2 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft social media compliance documentation. The emails are between USCIS OCC attorneys and include statements of clarifications and edits, which represents part of the deliberative process, as |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 84-85 | Email, RE: Social Media PRA - Follow-up | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to redact portions of an email sent between USCIS employees and OCC attorneys related to the review of Paperwork Reduction Act (PRA) materials.  The information withheld under (b)(7)(E) includes a summary of the updates that were being considered for two Department of State forms that were going to be used to collect social media information from applicants, and a list of the specific social media applications and websites that were approved for use by agency employees when conducting social media screening and vetting.  This information, if disclosed, would reveal the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 86 | Email, FORMS Project: Draft Social Media PRA – Seeking Input by 4.30.18 at 12 PM | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of PRA materials.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | also contains information related to a request for legal opinions and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 87, 92 | Email, RE: Social Media Privacy Compliance Documentation | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft social media compliance documentation. The emails are between USCIS OCC attorneys and include statements of clarifications and edits, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 93-95 | U.S. Citizenship and Immigration Services, Fraud Detection and National Security Investigations, Rules of Behavior for the Operational Use of Social Media – Draft | (b)(5): pages 93-94 (b)(7)(E): pages 94-95 | Draft document | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | requests for additional information. All of this information is part of the deliberative process related to the review of a draft version of the Rules of Behavior Form that must be signed by Immigration Officers who are authorized to access the Internet and social media content for official purposes. The material is also pre-decisional and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact portions of a draft version of the Rules of Behavior Form that must be signed by Immigration Officers who are authorized to access the Internet and social media content for official purposes.   The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for USCIS employees who |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | would be authorized to access the internet and social media content to support USCIS's mission.  The redacted language also contains specifics as to what methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be |
|--|--|--|--|--|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 100-101 | Email, RE: social media question | (b)(5): pages 100-101<br><br>(b)(7)(E): page 100 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal guidance on how certain information should be treated in adjudicating immigration cases.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact portions of an email sent between USCIS employees and OCC attorneys related to a request for legal guidance on how certain |

|  |  |  |  | information should be treated in adjudicating immigration cases.  The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered as guidance on the use of social media by the adjudications officers at USCIS Service Centers.  The redacted language also contains specifics as to what methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 102 | USCIS SOCIAL MEDIA | (b)(7)(E) | Meeting Agenda | Exemption (b)(7)(E) was used to redact portions of a meeting agenda, which was used as part of a DHS Social Media Working Group meeting.  The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered for USCIS's use of social media as part of its operations, including the status of the current use, the impact on law enforcement operations and other national security issues, and outstanding decisions that need to be made.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and |

| | | | | petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, how that information is obtained, and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| 104-105 | Email, RE: Social Media question for PRA Forms -look back period - seeking USCIS position by 5pm on 2.14.18 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the collection of information on immigration forms. The emails are between USCIS OCC attorneys, and include statements summarizing current legal issues being considered, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains legal opinions related to potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| --- | --- | --- | --- | --- |
| 106-109 | Email, RE: Social Media question for PRA Forms - seeking feedback by Jan. 17th at noon | (b)(5): pages 106-109<br><br>(b)(7)(E): pages 106-108 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of PRA materials.  The emails are between USCIS OCC attorneys, USCIS employees, DHS OGC attorneys, and DHS employees. The emails include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is |

|  |  |  |  | appropriately exempt from disclosure pursuant to Exemption (b)(5).

Exemption (b)(7)(E) was used to redact portions of an email sent between USCIS OCC attorneys, USCIS employees, DHS OGC attorneys, and DHS employees related to the review of PRA materials.  The information withheld under (b)(7)(E) includes a summary of the current outstanding decisions to be made regarding the updates to Department of State forms that were going to be used to collect social media information from applicants, including details about what information the Department of State wanted to collect on the form, what USCIS wanted to collect on the form, and the reasons that each agency had for the proposed changes.  The document also contains specific time frames that are considered, what information is collected, and how it will be used when conducting social media screening and vetting.  This information, if disclosed, would reveal the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 110-113 | Email, RE: Social Media Screening | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft legislative language that impacted the use of social media screening.  The emails |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | are between USCIS OCC attorneys and include edits, comments, clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 114-118 | Email, RE: Social Media Talking Points | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft talking points related to the use of social media screening.  The emails are between USCIS OCC attorneys and include edits, comments, clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | within this document was segregated and determined non-exempt and disclosed. |
| 119-120 | Email, RE: Social Media Update session for Managers training | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information, and consists of an email that contains portions of a meeting agenda, which includes summaries of key issues for clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this predecisional information is part of the deliberative and process related to the development of the process of collection of social media information as part of the immigration adjudication process.   The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact portions of a meeting agenda sent in emails between OCC attorneys, which was used as part of a DHS Social Media Working Group meeting.  The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered for USCIS's use of social media as part of its operations, including the status of the current use, the impact on law enforcement operations and other national |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | security issues, and outstanding decisions that need to be made.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, how that information is obtained, and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | within this document was segregated and determined non-exempt and disclosed. |
| 139 | Email, RE: USCIS internal touch base on collection of social media before call with CRCL and OGC | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of PRA materials.  The emails are between USCIS OCC attorneys and include a summary of OCC's interpretation of key legal issues prior to a scheduled call with DHS Office for Civil Rights and Civil Liberties (CRCL) and DHS OGC, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 140 | Email, FW: Social Media Memorandum Revised 10-31.docx | (b)(5) <br><br> (b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of a draft Social Media Memorandum.  The emails are between USCIS OCC attorneys and DHS OGC attorneys.  The emails include comments and suggested edits for the draft memorandum, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 141-148 | FDNS Use of Social Media Draft Memorandum | (b)(5)<br><br>(b)(7)(E) | Draft Memorandum | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the development of the memorandum on FDNS's use of social media as part of immigration adjudication.   The material is also pre-decisional and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) was used to redact portions of a draft version of a memorandum on FDNS's use of social media as part of immigration adjudication.  The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for FDNS employees who would be authorized to access the internet and social media content to support USCIS's mission.  The redacted language also contains specifics as to what actions should be taken for certain cases where there is suspected fraud or concerns regarding public safety or national security, the specific methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that |

| | | | | |
|---|---|---|---|---|
| | | | | could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 151 | Email, FW: social media 552a(e)(7) memo October 19 draft USCIS OPS_AWW.DOC | (b)(5)<br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of a draft Social Media Use memorandum.  The emails are between USCIS OCC attorneys, USCIS employees, DHS OGC attorneys, and DHS employees.  The emails include clarifications, and requests for |

|  |  |  |  | additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

Exemption (b)(7)(E) was used to redact portions of an email sent between USCIS employees and attorneys, and DHS employees and attorneys related to the review of a draft Social Media Use memorandum. The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered as DHS's policies on the use of social media.  The redacted language also contains specifics as to what methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 153 | Email, RE: USCIS internal touch base on collection of | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review |

| | social media before call with CRCL and OGC | | | of PRA materials.  The emails are between USCIS OCC attorneys and include a summary of OCC's interpretation of key legal issues prior to a scheduled call with DHS CRCL and DHS OGC, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| --- | --- | --- | --- | --- |
| 159-161, 164 | Email, RE: Weekly SMWG Meeting | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a weekly SMWG meeting.  The emails are between USCIS OCC attorneys and include working group process changes, as well as a summary of OCC's interpretation of key legal issues prior to a scheduled working group meeting, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 170 | Email, RE: D2 - Social Media meeting | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of social media pilot documents.  The emails are between USCIS OCC attorneys and include a summary of OCC's interpretation of key legal issues in the pilot documents, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 171, 174 | Email, FW: Social Media WG - Finalization of Pilot Documents | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of social media pilot documents.  The emails are between USCIS OCC attorneys and include a summary of OCC's interpretation of key legal issues in the pilot documents, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 177 | Collection, Use, And Retention of Publicly Available Social Media Information in Personnel Security Background Investigations and Adjudications (Version: 5.1-14 March 2016) | (b)(5) | Draft Directive | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the draft Directive guiding the collection, use, and retention of social media information for background investigations and immigration adjudications. The withheld material is also pre-decisional and includes information that is not reflected in the final version of the document.  All other information within this document was segregated and determined non-exempt and disclosed. |
| 183-184, 187 | Email, RE: DHS Social Media Task Force Action Plan | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft DHS Social Media Task Force Action Plan, and draft Social Media Operational Use Templates (SMOUT), which |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | are reviewed to ensure all privacy concerns are addressed.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 188-190, 194-195 | Email, RE: Social media | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft DHS Social Media Task Force Action Plan, and draft SMOUTs.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All |

| | | | | |
|---|---|---|---|---|
| | | | | other information within this document was segregated and determined non-exempt and disclosed. |
| 197 | Email, RE: DHS Social Media Task Force Action Plan | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft DHS Social Media Task Force Action Plan, and draft SMOUTs.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 204 | Email, RE: FDNS SMOUT and Rules of Behavior Updates for Clearance | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft DHS Social Media Task Force Action Plan, draft SMOUTs, and draft updates to the Rules of Behavior.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). <br><br> Exemption (b)(7)(E) was used to redact portions of an email sent between USCIS employees and OCC attorneys related to the review of the draft DHS Social Media Task Force Action Plan, draft SMOUTs, and draft updates to the Rules of Behavior.  The information withheld under (b)(7)(E) includes specifics as to what methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 208-214, 219 | DHS Operational Use of Social Media, Specific Questions | (b)(5): pages 208-214, 219  (b)(7)(E): pages 209, 212-214 | Privacy Compliance Draft Document | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the review of a draft version of the Operational Use of Social Media template that must be completed in |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19–00290-SK*          VAUGHN INDEX

|  |  |  |  | order for the DHS Privacy Office to review and determine privacy compliance. The document includes draft responses to questions from the DHS Privacy Office about the collection of social media information, which includes pre-decisional and deliberative information. |
|  |  |  |  | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
|  |  |  |  | Exemption (b)(7)(E) was used to redact portions of a draft version of the Operational Use of Social Media template memorandum. The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for the use of social media screening for specific cases identified as having national security, fraud, or public safety concerns. The redacted language also contains specifics as to what actions should be taken for certain cases, which employees |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | are authorized to handle certain cases, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately |
|---|---|---|---|---|

| | | | | exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 220-221, 225, 227-228 | Email, RE: Review of Social Media Memo | (b)(5): pages 220-221, 225, 227-228<br><br>(b)(7)(E): page 221 | Email | The information withheld under (b)(5) as deliberative process privileged information related to the review of a draft Social Media memorandum.  The emails are between USCIS OCC and USCIS employees and contain pre-decisional and deliberative information, including multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft memorandum, which were provided by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact portions of an email sent between USCIS |

|  |  |  |  | OCC attorneys and USCIS employees related to the review of a draft Social Media memorandum regarding social media screening as part of adjudicating pending K-1 visa adjustments.  The information withheld under (b)(7)(E) includes a summary of the current outstanding decisions to be made regarding the K-1 process and which applications would be subject to social media review, and the potential legal considerations that were being reviewed. This information, if disclosed, would reveal the specific applications types that may be subject to social media screening and what actions to take in certain cases, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what applicants face social media screening, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 231 | Email, RE: Social Media Delegation Discussion - Follow Up Meeting | (b)(5) | Email | The information withheld under (b)(5) as deliberative process privileged information related to the review of a draft Social Media Delegation.  The emails are between USCIS OCC and USCIS employees and contain pre-decisional and deliberative information, including multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the review of a draft Social Media Delegation, which were provided by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 240-244 | Email, RE: [Social Media SORN] Coordinated response | (b)(5) | Email | The information withheld under (b)(5) as deliberative process privileged information related to the agency-wide coordinated review of the Social Media System of Records Notice (SORN).  The emails are between USCIS OCC and USCIS employees and contain pre-decisional and deliberative information, including multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft SORN, which were provided by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 246 | Email, FW: Social Media Delegation Templates | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | of the draft Social Media Delegation.  The emails are between USCIS OCC attorneys and include two versions of a portion of the Delegation, highlighting the differences between the two versions, and clarifying the options involved, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 248 | Email, Query re: signed Delegation 15002 (WF1137322) | (b)(5) | Email | The information withheld under (b)(5) as deliberative process privileged information related to the review of a draft Social Media Delegation.  The emails are between USCIS employees and DHS employees and contain pre-decisional and deliberative information, including a specific edit to a portion of the draft. All other information within this document was segregated and determined non-exempt and disclosed. |
| 250-251 | Social Media PRA Submission-DHS Policy Seeking Input by Noon Monday | (b)(5): page 251  (b)(7)(E): page 250 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of PRA materials.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact a link to an internal intranet website that directs to the draft copy of the document being reviewed.  This information, if disclosed, would reveal the technology resources currently being used in the government to review sensitive law enforcement documents that aid in the vetting process.  This type of information is part of specific techniques and procedures involved the agency's enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by the agency to coordinate review of documents to support DHS's mission.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could reasonably be expected to risk the |
| --- | --- | --- | --- | --- |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 252 | Email, Social Media Privacy Compliance Documentation | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft SMOUTs.  The emails are between USCIS OCC attorneys and include suggested concerns with language in the SMOUTs, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 253 | Social Media Talking Points | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft Social Media Talking Points.  The emails are between USCIS OCC |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | attorneys and include suggested concerns with language in the talking points, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 255 | Social Media Task Force | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to an upcoming meeting of the DHS Social Media Task Force.  The emails are between USCIS OCC attorneys and DHS OGC attorneys, and include specific issues that DHS employees had requested DHS OGC consider, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | segregated and determined non-exempt and disclosed. |
| 260-261, 263-264 | UPDATE: Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft Delegation 15002, which involves the delegation to USCIS to conduct certain law enforcement activities, including searches of social media as part of immigration adjudications.  The emails are between USCIS OCC attorneys and were sent to USCIS OCC leadership to provide a summary of the draft delegation and multiple concerns, edits, revisions, and comments that USCIS had received from ICE, U.S. Customs and Border Protection (CBP), Privacy, and CRCL.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions from USCIS OCC, ICE Office of the Principal Legal Advisor (OPLA), and CBP legal counsel, and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 268 | Email, RE: DHS social media policy | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to USCIS's |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | social media activities in relation to ICE and CBP's operations.  The emails are between attorneys from USCIS OCC, ICE OPLA, and CBP legal counsel, and include a summary of requested edits to the draft Social Media Delegation.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information also contains legal opinions from USCIS OCC and ICE OPLA, and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 270 | Weekly SMWG Meeting Minutes | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to redact portions of an email sent by USCIS employees discussing the minutes of the DHS Social Media Working Group meeting.  The information withheld under (b)(7)(E) includes the link to an internal intranet website that directs to the meeting minutes.  This information, if disclosed, would reveal the technology resources currently being used in the government to review sensitive law enforcement documents that aid in the vetting process.  This type of information is part of specific techniques and procedures involved the agency's enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*     VAUGHN INDEX

|  |  |  |  | that could risk circumvention of the law, including the specific tools used by the agency to coordinate review of documents to support DHS's mission.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 273-275 | DHS's 90 Day Letter to Office of Inspector General (OIG) 17-40Final Report: DHS' Pilots for Social Media Screening Need Increased Rigor to Ensure Scalability and Long-term Success (OIG Project No. 16-079-ISP-USCIS) | (b)(5)<br><br>(b)(7)(E) | Draft Memorandum | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the drafting of a Memorandum from DHS to the Inspector General regarding DHS' pilots for social media screening.  The draft memorandum contains draft recommendations and responses, which are pre-decisional and include information that is not reflected in the final version of the document. |

|  |  |  |  | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). <br><br> Exemption (b)(7)(E) was used to redact portions of a draft version of a Memorandum from DHS to the Inspector General regarding DHS' pilots for social media screening.  The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for DHS's pilots for social media screening.  The redacted language also contains specifics as to what actions should be taken by different DHS components, including USCIS, CBP, and ICE, and details as to how each component was involved in the social media pilots.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and |
|--|--|--|--|--|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 277-288 | Refugee Screening Review: The Defense Advanced Research Projects Agency 2.0 Pilot | (b)(7)(E) | Pilot Project Summary | Exemption (b)(7)(E) was used to redact portions of a document titled Refugee Screening Review: The Defense Advanced Research Projects Agency 2.0 Pilot, which was compiled by FDNS, and dated June 2, 2016.  The document contains a summary of the social media pilot project to assess the feasibility of using social media to screen refugee applicants.  The information withheld under (b)(7)(E) includes a description of the specific technology that USCIS and DHS would be using to conduct social media research as part of the vetting process, the specific cases and applicants that would be screened, and the challenges and limitations in the process.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by law enforcement as part of the vetting and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | screening process.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  Releasing this information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 289-292 | USCIS/State Social Media Elicitation Plan - Refugee Applicant Pilot | (b)(7)(E) | Concept of Operations | Exemption (b)(7)(E) was used to redact portions of a document prepared by USCIS and the Department of State on the Social Media Elicitation Plan as part of the Refugee Applicant Pilot.  The document contains a summary of the social media pilot project to assess the feasibility of using social media to screen refugee applicants.  The information withheld under (b)(7)(E) includes a description of the specific technology that USCIS and DOS would be using to conduct social media research as part of the vetting process, the specific cases and applicants that would be screened, the specific social media applications reviewed, and which employees and offices were involved in the process. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                    VAUGHN INDEX

| | | | | This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and |
|---|---|---|---|---|

| | | | | could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| --- | --- | --- | --- | --- |
| 294-300 | Review of Refugee Screening Social Media Pilot | (b)(7)(E) | Pilot Project Summary | Exemption (b)(7)(E) was used to redact portions of a document prepared by FDNS titled "Review of Refugee Screening Social Media Pilot," dated March 16, 2016. The information redacted under Exemption (b)(7)(E) consists of a description of the specific technology that USCIS would be using to conduct social media research as part of the vetting process, the specific cases and applicants that would be screened, detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and which key words were used to search those social media applications. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| --- | --- | --- | --- | --- |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 302-303, 305-318 | Review of K-1 Adjustment of Status Social Media Pilots | (b)(7)(E) | Pilot Project Summary | Exemption (b)(7)(E) was used to redact portions of a document prepared by USCIS titled "Review of K-1 Adjustment of Status Social Media Pilots." The information redacted under Exemption (b)(7)(E) consists of a description of the specific technology that USCIS would be using to conduct social media research as part of the vetting process, the specific cases and applicants that would be screened, detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and which key words were used to search those social media applications. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement. The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process. It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 319-324 | Briefing Paper/Way Forward - Refugee Social Media Screening | (b)(7)(E) | Briefing Paper | Exemption (b)(7)(E) was used to redact portions of a briefing paper prepared by FDNS and RAIO regarding Refugee Social Media screening. The information redacted under Exemption (b)(7)(E) consists of a |

| | | | | summary of the social media screening efforts to date, the timeline for proposed pilot projects, optional courses of action and recommendations, and summaries of the limitations and resource constraints.  The document also contains detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and which key words were used to search those social media applications. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| 326-328, 330 | FDNS PowerPoint, "USCIS Social Media Update | (b)(7)(E) | PowerPoint | Exemption (b)(7)(E) was used to redact portions of a PowerPoint presentation titled "USCIS Social Media Update," which was prepared by FDNS, and dated January 18, 2017.  The information redacted under Exemption (b)(7)(E) consists of a summary of the social media screening efforts as part of USCIS refugee pilots, detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, which key words were used to search those social |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | media applications, and the results of those screening efforts. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 331-334 | USCIS Social Media & Vetting: Overview and Efforts to Date | (b)(7)(E) | Briefing Overview | Exemption (b)(7)(E) was used to redact portions of a briefing overview for USCIS leadership dated March 2, 2017, which summarizes USCIS's social media vetting efforts to date.  The information redacted under Exemption (b)(7)(E) consists of a summary of the social media screening efforts to date, optional courses of action and recommendations, detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and which key words were used to search those social media applications. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 335-338 | DHS Secretary Briefing Binder; Social Media | (b)(7)(E) | Briefing Paper | Exemption (b)(7)(E) was used to redact portions of a DHS Secretary Briefing Binder on USCIS's use of social media.  The information redacted under Exemption (b)(7)(E) consists of specific techniques and procedures involved in the operational use of social media to conduct screening for certain applicants, including detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, which words and phrases were used to search those social media applications, and the challenges identified in the process of social media screening and vetting. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers and the specific words and photos being searched for as possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | and images are being searched for, and the specific factors being considered by law enforcement during the vetting process.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 341-343 | USCIS Social Media Use Cases | (b)(7)(E) | Use Case Scenarios Summary | Exemption (b)(7)(E) was used to redact a copy of a document containing USCIS Social Media Use Cases.  The document was compiled by USCIS and DHS Science & Technology as part of the effort to obtain technological tools for operational use of |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | social media.   The information redacted under Exemption (b)(7)(E) consists of multiple use-case scenarios for various private sector social media vendors that contain the techniques and procedures involved in the operational use of social media to conduct screening for certain applicants, which will allow vendors to determine whether they can offer the agency a technological tool that would fit operational needs.  Each scenario contains detailed information about how the search is conducted, what information is screened, the factors that may indicate potential national security or criminal concerns, technological challenges that need to be addressed, and other specific techniques and procedures that are part of the vetting process.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, the tools that may be used in future screening, and the specific words and patterns that are reviewed and flagged as possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what |
|---|---|---|---|---|

| | | | | information is considered as part of the screening and vetting process, what patterns immigration officers look for, and the specific factors being considered by law enforcement during the vetting process. Disclosure of this information would also put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 346-348 | S&T HSARPA DA-E, USCIS Social Media Analytics | (b)(7)(E) | PowerPoint | Exemption (b)(7)(E) was used to redact portions of a PowerPoint document, which was compiled by DHS Science and Technology, titled "USCIS Social Media Analytics," dated October 12, 2016.   The PowerPoint summarizes the current social media pilot plans in progress, and discusses proposed processes and courses of action being considered.  The redacted information consists of specific technology platforms being used to conduct social media searches and analyze data.  This information, if |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by law enforcement as part of the vetting and screening process.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  Releasing this information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| 360-363, 365-370, 372-380, 382, 384, 386, 390 | FDNS PowerPoint, "Open-Source and Social Media Research Standard Operating Procedures" dated November 24, 2015 | (b)(7)(E) | PowerPoint | Exemption (b)(7)(E) was used to redact portions of an FDNS PowerPoint, "Open-Source and Social Media Research Standard Operating Procedures" dated November 24, 2015.  The PowerPoint summarizes the types of open source and social media information |

|  |  |  |  | available, what information may be searched for by FDNS Immigration Officers, what the information may be used for in adjudications, and the limits and restrictions on searches and information that can be used.  The redacted information consists of specific technology platforms being used to conduct social media searches and analyze data, how it should be accessed and used, the benefits to the use of these platforms, how to evaluate information collected, what information should be deemed credible or significant, what information should be saved and documented, what techniques should be used when accessing user accounts, which specific social media platforms are required to be searched, and specific activities that are prohibited.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media platforms that are being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | information is considered as part of the screening and vetting process, what types of patterns, actions, and words are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 395-405 | Social Media Expansion Plan, Concept of Operations | (b)(7)(E) | Concept of Operations | Exemptions (b)(7)(E) was used to withhold information within a draft Concept of Operations (CONOP) document which focused on the Social Media Expansion Plan for Refugee Applicants.  The CONOP draft |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

|  |  |  |  | focused on certain key elements of the plan including the categories of applicants that will be part of the social media vetting process, the social media platforms to access, staffing requirements, and the process for reviewing results and incorporating them into the adjudicative process.  The information redacted under Exemption (b)(7)(E) consists of specific techniques and procedures involved in the operational use of social media to conduct screening for certain applicants, including detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and the factors, patterns, words, and phrases that are used to search those social media applications.  The redacted information also contains summaries of the program that detail which applicants will be flagged for enhanced review that includes social media screening, which areas the pilot will be taking place, the indicators that will be looked for and on which social media applications, and the challenges identified in the process of social media screening and vetting. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, the methods used to conduct searches, and the specific factors that immigration officers are looking for to indicate possible indicators of fraud, public |
|---|---|---|---|---|

|  |  |  |  | safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, which areas and applicants will be searched during which time periods, and the specific factors being considered by law enforcement during the vetting process. The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process. It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 407-415 | FDNS Training PowerPoint, "Social Media Screening," dated September 19, 2017 | (b)(7)(E) | PowerPoint | Exemption (b)(7)(E) was used to redact portions of an FDNS PowerPoint, "Social Media Screening," dated September 19, 2017.  The PowerPoint summarizes the FDNS Social Media Screening team, the status of the pilots for social media review, and the results of the pilots.  The information withheld under (b)(7)(E) consists of detailed information regarding the screening that took place during the pilots, which applicants were screened, and the screening results and the impact on those applications.  The withheld information also includes screenshots of actual words and images found on social media depicting potential indicators of national security or public safety concerns.  This information, if disclosed, would reveal the methods used to conduct searches, and the specific factors that immigration officers are looking for to indicate possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | screening and vetting process, which areas and applicants will be subject to screening, and the specific factors being considered by law enforcement during the vetting process. The release of this information could result in individuals hiding certain images, words, or other indicators that law enforcement is looking for, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| 417-423, 425, 426 | FDNS Training PowerPoint, "Social Media Screening," dated August 8, 2017 | (b)(7)(E) | PowerPoint | Exemption (b)(7)(E) was used to redact portions of an FDNS PowerPoint, "Social Media Screening," dated August 8, 2017. The PowerPoint summarizes the FDNS Social Media Screening team, the status of the pilots for social media review, and the results of the pilots. The information withheld under (b)(7)(E) consists of detailed information regarding the screening that took place during the pilots, which applicants were screened, and the screening results and the impact on those applications. The withheld |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | information also includes screenshots of actual words and images found on social media depicting potential indicators of national security or public safety concerns. This information, if disclosed, would reveal the methods used to conduct searches, and the specific factors that immigration officers are looking for to indicate possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, which areas and applicants will be subject to screening, and the specific factors being considered by law enforcement during the vetting process. The release of this information could result in individuals hiding certain images, words, or other indicators that law enforcement is looking for, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 431-442 | Social Media Assessment form - training form dated 9/30/2016 containing real examples from specific applicant's profiles | (b)(7)(E) | Form | Exemption (b)(7)(E) was used to redact portions of a Social Media Assessment form dated September 30, 2016.  The form was provided in a training session of FDNS immigration officers, and contains real examples from specific applicants' profiles.  The information withheld under (b)(7)(E) consists of detailed information regarding actual social media searches that were conducted on real applicants, including their names and A-numbers, the social media applications that were searched, screenshots of actual words and images found on social media depicting potential indicators of national security or public safety concerns, and the immigration officers' assessment and notes.   This information, if disclosed, would reveal the methods used to conduct searches, and the specific factors that immigration officers are looking for to indicate possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | notice as to what information is considered as part of the screening and vetting process, which areas and applicants will be subject to screening, and the specific factors being considered by law enforcement during the vetting process.  The release of this information could result in individuals hiding certain images, words, or other indicators that law enforcement is looking for, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 443-444 | Memorandum from DHS Undersecretary for Intelligence and Analysis to the USCIS Deputy Secretary, "U.S. Citizenship and Immigration Services Social Media Vetting Expansion," dated April 1, 2016 | (b)(7)(E) | Memorandum | Exemption (b)(7)(E) was used to redact portions of a memorandum from DHS Undersecretary for Intelligence and Analysis to the USCIS Deputy Secretary, "U.S. Citizenship and Immigration Services Social Media Vetting Expansion," dated April 1, 2016.  The memorandum contains updates for DHS on USCIS's efforts to expand social meeting vetting for certain applicants, and identifies options to optimize DHS's use of social media across the Department.  The |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | information withheld under (b)(7)(E) includes a summary of the pilots taking place, the countries and application types that were part of the screening efforts and the time period that those screening efforts took place, coordination information regarding other law enforcement agencies that were working with USCIS on its social media vetting process, and the current outstanding decisions to be made for future expansion of the agency's use of social media screening.  This information, if disclosed, would reveal the specific individuals that are likely to be subject to social media screening and the methods used by the agency, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, which areas and applicants will be subject to screening, and the specific factors being considered by law enforcement during the vetting process and could result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 445-446 | Browser setup guide | (b)(7)(E) | Procedures List | Exemption (b)(7)(E) was used to redact portions of a browser setup guide for a specific browser that agency employees were required to use when conducting social media checks.  The information withheld under (b)(7)(E) includes specifics on the name of the browser, how it works, how to set it up, which specific social media applications were listed within the browser to search, and screenshots of a search conducted using the browser.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media platforms that are being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 447 | Key Word Count, dated Jan 6, 2016 and Feb 2, 2016 | (b)(7)(E) | Spreadsheet | Exemption (b)(7)(E) was used to redact portions of a Key Word Count spreadsheet dated Jan 6, 2016 and Feb 2, 2016, which documents the results of actual social media screening. The information withheld under (b)(7)(E) consists of a list of key words used by immigration officers to search social media profiles of applicants and the total number of profiles located using those terms. This information, if disclosed, would reveal the methods used to conduct searches, and the specific words that immigration officers are using to search social media information for indications of possible fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what terms are considered as important factors by law enforcement during the vetting process.  The release of this information could result in individuals avoiding the use of these terms and using other ways to describe things without using words searched for by immigration officers, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 448-451 | U.S. Refugee Admission process: Interagency Overview | (b)(5) | Process Flowchart | The information withheld under (b)(5) as deliberative process privileged information consists of a draft version of a flowchart which details the proposed process for refugee admission, and how social media screening will be used in that process.  The |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | draft flowchart is predecisional and is pending determinations on the overall process of social media screening. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 452 | FDNS-DS Mandatory Minimums outline | (b)(7)(E) | Procedures List | Exemption (b)(7)(E) was used to redact portions of a procedures list used by FDNS when conducting social media checks.  The information withheld under (b)(7)(E) includes specifics on the name of the platform used by the immigration officers, how to document the social media checks, and what information should be stored on applicants.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the types of information being collected, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 453 | Email, "Agenda," dated October 20, 2016 | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to redact portions of an email dated October 20, 2016 sent between FDNS employees, which contained items for discussion at an upcoming USCIS leadership meeting. The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered for USCIS's use of social media as part of its operations, and the names of the specific technology and platforms that USCIS uses to conduct social media checks. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals |

| | | | | could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 454-532, 537, 540-541 | Spreadsheet report filtering social media information by geolocation and key words | (b)(7)(E) | Spreadsheet | Exemption (b)(7)(E) was used to redact a spreadsheet that contains a report of filtered social media information by geolocation and key words, which was obtained through actual searches of applicants' social media information.  The information withheld under (b)(7)(E) consists of a list of key words, acronyms, and filters used by immigration officers to search social media profiles of applicants and the total number of profiles located using those terms.   The spreadsheet also contains the name, A-numbers, and receipt numbers of the applicants that had social media information that included some of the key words used during the social media searches. This information, if disclosed, would reveal the methods used to conduct searches, and the specific words that immigration officers are using to search social media information for indications of |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | possible fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what terms are considered as important factors by law enforcement during the vetting process.  The release of this information could result in individuals avoiding the use of these terms and using other ways to describe things without using words searched for by immigration officers, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 548-575 | DHS Systems and Engineering & Development Institute, Social Media Analytics | (b)(7)(E) | Interface Control Document | Exemptions (b)(5) and (b)(7)(E) were used to withhold portions of DHS Systems and Engineering & Development Institute, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | Interface Control Document, dated October 21, 2016 | | | "Social Media Analytics Interface Control Document," dated October 21, 2016.  The document was developed by the Homeland Security Systems Engineering and Development Institute (HSSEDI), which is a federally funded research and development center (FFRDC) established by the Secretary of Homeland Security under Section 305 of the Homeland Security Act of 2002.  HSSEDI's mission is to assist the Secretary of Homeland Security, the Under Secretary for Science and Technology, and the DHS operating elements in addressing national homeland security system development issues where technical and systems engineering expertise is required.  This Interface Control Document aids the development of future DHS social media analytics to allow the agency to identify potential national security risks.  The information withheld under Exemption (b)(7)(E) includes a description of the specific technology that USCIS and DHS would be using to conduct social media research as part of the vetting process, the specific cases and applicants that would be screened, the specific social media applications reviewed, which employees and offices were involved in the process, how that information is used, how it will be analyzed, real data scripts and data files, and detailed process information regarding how information will be stored and shared.   This |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media platforms that are being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 577 | U.S. Refugee Admission process: Interagency Overview, flowchart | (b)(7)(E) | Process Flowchart | Exemption (b)(7)(E) was used to redact a draft of a process flowchart which details the process of reviewing certain immigration applicants and benefits that require enhanced review and social media screening.  The information withheld under (b)(7)(E) includes the proposed coordination processes and courses of action that can be taken during the adjudication of certain benefits, what factors trigger enhanced screening, the employees that are responsible for each part of the process, and how to make a determination on an application or petition based on the factors identified during screening.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers adhere to when determining whether a petition or application should go through enhanced screening, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | notice as to what information is considered as part of the screening and vetting process, what triggers enhanced screening, and whether their application or petition was part of enhanced screening due to specific teams that may have been involved in the review. The release of this information could result in individuals avoiding certain actions to avoid triggering enhanced review, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 578-754, 762-763, 771-772, 793-794, 797,799, 801-802, 809-810, 813-1023, 1031-1032, 1040-1041, 1062-1063, 1066, 1068, 1070-1071, | Key Word Spreadsheet associated with applicants | (b)(7)(E) | Spreadsheet | Exemption (b)(7)(E) was used to redact  a spreadsheet that contains a report of social media information filtered by key words, languages, and other search filters.  This information was obtained through actual searches of applicants' social media information.  The information withheld under (b)(7)(E) consists of a list of key words, acronyms, and filters used by immigration officers to search social media profiles of applicants and the total number of profiles |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| 1078-1079, 1081-1082, 1084-1086, 1088-1120 | | | | located using those terms.   The spreadsheet also contains the name, A-numbers, and receipt numbers of the applicants that had social media information that included some of the key words used during the social media searches. This information, if disclosed, would reveal the methods used to conduct searches, and the specific words that immigration officers are using to search social media information for indications of possible fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what terms are considered as important factors by law enforcement during the vetting process.  The release of this information could result in individuals avoiding the use of these terms and using other ways to describe things without using words searched for by immigration officers, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1122-1123 | Meeting agenda, FDNS and DHS Science and Technology Contracting Team, Reoccurring weekly on Tuesdays, includes spreadsheet | (b)(7)(E) | Meeting Agenda and Spreadsheet | Exemption (b)(7)(E) was used to redact portions of a meeting agenda, which was a reoccurring weekly meeting between FDNS and the DHS Science and Technology Contracting Team.  The information withheld under (b)(7)(E) includes the names of the specific technology and platforms that DHS and USCIS use to conduct social media checks and analyze data, along with a spreadsheet detailing how many cases were part of the FDNS Controlled Application Review and Resolution Program (CARRP) process, which is used to adjudicate applications and petitions with possible national security concerns.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers and the current FDNS workload, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1126 | Email, [3RD ROUND COMPONENT CLEARANCE REQUEST]: Latest draft of Consolidated DHS Social Media Talking Points, dated March 28, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft DHS Social Media Talking Points.  The emails are between USCIS OCC attorneys and USCIS employees, and contain suggested edits received by ICE employees and ICE OPLA.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions from ICE OPLA, and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| 1128-1134 | Department of Homeland Security Social Media Talking Points and Issue Paper | (b)(5): pages 1128-1134<br><br>(b)(7)(E): pages 1128, 1130-1134 | Draft Talking Points and Issue Paper | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the draft DHS Social Media Talking Points and Issue Paper, which contains pre-decisional information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact comments and edits that contain specifics as to what methods CBP, ICE, and USCIS's law enforcement and immigration officers are authorized to use as part of social media vetting, what information may be used for, and the limitations that are placed on the use and collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).

All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|

| 1148, 1150-1151 | Email, Call to discuss social media collection, dated March 14, 2018 | (b)(5): pages 1150-1151<br><br>(b)(7)(E): page 1148 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to an upcoming call between USCIS Privacy and OCC to discuss oversight of social media collection. The emails are between USCIS OCC attorneys and include a summary of OCC's interpretation of key legal issues prior to the scheduled call, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact a portion of page 1148, which was an email between OCC attorneys and FDNS employees.  The information withheld under (b)(7)(E) includes an internal USCIS conference number and passcode. This information, if disclosed, would reveal the technology resources currently being used in the government to host conference calls and to discuss sensitive law enforcement information.  The release of this information would put individuals on notice as to how to access internal DHS phone calls, and could reasonably be expected to risk the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1153-1163 | Department of Homeland Security Social Media Talking Points and Issue Paper | (b)(5): pages 1153-1163<br>(b)(7)(E): pages 1153-1161, 1163 | Draft Talking Points and Issue Paper | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the draft DHS Social Media Talking Points and Issue Paper, which contains pre-decisional information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by attorneys from USCIS OCC and ICE OPLA that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | Exemption (b)(7)(E) was used to redact comments and edits that contain specifics as to what methods CBP, ICE, and USCIS's law enforcement and immigration officers are authorized to use as part of social media vetting, what information may be used for, and the limitations that are placed on the use and collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1165, 1167-1168 | Email, Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities, dated April 19, 2018 | (b)(5): pages 1167-1168<br><br>(b)(7)(E): page 1165 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to an upcoming meeting between USCIS OCC and FDNS to discuss the draft Delegation and concerns raised by CBP, ICE, CRCL, and DHS Privacy. The emails are between USCIS OCC attorneys and USCIS employees and include a summary of specific operational and legal issues concerns that would be discussed during the meeting, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact a portion of page 1148, which was an email |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*    VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | between OCC attorneys and FDNS employees.  The information withheld under (b)(7)(E) includes an internal USCIS conference number and passcode. This information, if disclosed, would reveal the technology resources currently being used in the government to host conference calls and to discuss sensitive law enforcement information.  The release of this information would put individuals on notice as to how to access internal DHS phone calls, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1172-1177 | DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities", Review Workflow | (b)(5) | Review Workflow | The information withheld under (b)(5) as deliberative process privileged information related to the department-wide coordinated review of the draft Delegation 15002.  The information is contained in a review workflow spreadsheet, which lists specific details as to which agencies concurred and non-concurred with the draft version of the Delegation, and the specific comments, edits, revisions, and questions made by each |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | agency.  All of this information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft delegation, which were provided by attorneys within USCIS OCC, ICE OPLA, CBP OCC, and DHS OGC who had been asked to provide legal review.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1181-1182, 1184-1185 | Email, FINAL REVIEW: ACTION REQUIRED: Weekly SMWG Meeting - 1.8.18 [1.22.18], dated January 22, 2018 | (b)(5): pages 1181-1182, 1184-1185<br><br>(b)(7)(E): page 1184 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft USCIS Social Media Implementation Plan (SMLIP).  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this |

| | | | | material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes the link to an internal intranet website that directs to the draft copy of the document being reviewed.   This information, if disclosed, would reveal the technology resources currently being used in the government to review sensitive law enforcement documents that aid in the vetting process.  This type of information is part of specific techniques and procedures involved the agency's enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by the agency to coordinate review of documents to support DHS's mission.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 1187-1203, 1205-1208 | Office of Policy & Strategy (OP&S) National Security & Benefits Integrity Division (NSBI) & The Social Media Working Group (SMWG) Social Media Limited Implementation Plan (SMLIP), dated November 17, 2017 | (b)(5) | Draft Document | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft USCIS SMLIP, which was drafted by USCIS's Office of Policy and Strategy, National Security and Benefits Integrity Division, and the SMWG.  The draft SMLIP defines and tests the requirements and process for the operational use of social media as part of the immigration adjudication process.  The draft contains comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  This information is part of the deliberative process and contains pre-decisional information that is not reflected in the final version of the document.  The draft also contains edits and comments made by OCC attorneys which contain their legal opinions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1211 | Email, FW: [Clearance Request] Social Media Talking Points, dated January 29, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft talking points related to the use of |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | social media screening.  The emails are between USCIS OCC attorneys, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1213 | Email, FW: [REMINDER] [URGENT CLEARANCE REQUEST] UN Inquiry re DOS social media, dated June 6, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of a draft Department of State (DOS) response to a United Nations (UN) inquiry related to DOS's collection of social media information for visa applicants.  The emails are between USCIS OCC attorneys and USCIS employees, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1215 | Email, Draft response to Congresswomen Krishnamoorthi and Jayapal, dated February 9, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of a draft response to Congresswomen Krishnamoorthi and Jayapal regarding the collection of social media information.  The emails are between USCIS OCC attorneys, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1223 | Email, RE: AILA questions, dated April 24, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions sent to USCIS by the American Immigration Lawyers Association (AILA), which were sent prior to a scheduled luncheon meeting between USCIS and AILA employees. The emails are between USCIS OCC attorneys, and include |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1225-1227 | Email, RE: AILA questions for April 26th Richmond luncheon meeting, dated April 24, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions sent to USCIS by AILA, which were sent prior to a scheduled luncheon meeting between USCIS and AILA employees. The emails are between USCIS OCC attorneys, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1229 | Questions for the April 26, 2018, AILA Richmond meeting - draft responses | (b)(5) | Draft Meeting Questions and Responses | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of USCIS draft responses to questions sent to USCIS by AILA, which were sent prior to a scheduled luncheon meeting between USCIS and AILA employees. The draft responses to AILA's questions include edits, comments, revisions, and clarifications, all of which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the draft responses also contains USCIS OCC's legal opinions and comments related to legal issues.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1232, 1234-1235 | Email, FW: AILA questions, dated April 26, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions sent to USCIS by AILA, which were sent prior to a scheduled luncheon meeting between USCIS and AILA employees. The emails are between USCIS OCC attorneys and USCIS employees, and include comments and requests for additional information, which represents part of the deliberative process, as |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1236 | Email, FW: CLEARANCE REQUEST: Latest draft of Consolidated DHS Social Media Talking Points, dated April 26, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative process privileged information related to the review of draft talking points related to the use of social media screening.  The emails are between USCIS OCC attorneys and USCIS employees and detail specific concurrence or non-concurrence with the draft Talking Points, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1241-1244, 1246-1247 | Email, FW: Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to an upcoming meeting between USCIS OCC and ICE OPLA to discuss the draft Delegation and concerns raised by ICE OPLA. The |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | Enforcement Activities, dated May 2, 2018 | | | emails are between USCIS OCC and ICE OPLA attorneys and USCIS employees and include a summary of specific operational and legal issues concerns that would be discussed during the meeting, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1251-1252 | Email, FW: DHS COMPONENT PASSBACKS [DHS Congressional Correspondence] Sen. Menendez+ 5 to AS1, FRN/Privacy Concerns with retaining Social Media information, WF 1154028, dated February 27, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions received by DHS from Senator Menendez related to concerns with retaining social media information.  The emails are between USCIS OCC and USCIS employees and include a summary of specific operational and legal issues and responses to the questions, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1255 | Email, FW: Draft LEA Memo, dated January 10, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative privileged information related to the title of a draft document that details a proposed plan as part of the social media collection process.  This information is predecisional and is not finalized, and is part of the deliberative process. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1256-1265 | Memorandum to USCIS's Chief Counsel, "Delegation of Law Enforcement Authority to U.S. Citizenship and Immigration Services," dated August 7, 2017 | (b)(5) | Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum explores law enforcement authority as it relates to USCIS, and limits its focus to legal issues related to USCIS obtaining law enforcement authority.  It is written by multiple OCC attorneys, who have not finalized the draft yet.  It is directed to USCIS's Chief Counsel, who had requested the legal opinion.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | segregated and determined non-exempt and disclosed. |
| 1268, 1274-1278 | Draft Guidance for Use of Social Media in Field Operations Directorate Adjudications, dated October 27, 2017 | (b)(5): pages 1275-1278<br><br>(b)(7)(E): pages 1268, 1274-1275, 1277-1278 | Draft Guidance Document | The information withheld under (b)(5) as deliberative process privileged information consists of a draft version of a document that details Guidance for Use of Social Media in Field Operations Directorate Adjudications. The withheld information focuses on the types of questions and issues that adjudicators may want to look for when reviewing an application or interviewing an applicant related to social media information. The material is also pre-decisional and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees that contain summaries of the proposed processes and courses of action being considered for FDNS employees who would be authorized to access the internet and social media content to support USCIS's mission, as well as details about the CARRP process and how to handle social media results involve potential national security concerns.  The redacted language also contains specifics as to what specific questions can be used by immigration officers to question applicants to verify social media results as part of social media vetting.  This information, if disclosed, would reveal the specific methods |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what questions may be asked, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| --- | --- | --- | --- | --- |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1279 | Email, FW: Draft Social Media Guidance, dated October 27, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes attorney-client privileged information related to the review of draft guidance that details how USCIS's Field Office planned to implement the use of social media in adjudications.  The emails are between USCIS OCC and USCIS employees and include specific request for a legal opinion.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1280-1281 | Email, FW: FDNS Social Media Documents for Review, dated May 23, 2018 | (b)(5): pages 1280-1281<br><br>(b)(7)(E): page 1281 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft social media documents.  The emails are sent between USCIS OCC and USCIS employees, and include comments, questions, clarifications, and options being considered, all of which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the draft responses also contains USCIS OCC's legal opinions and comments related to legal issues. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | The information withheld under (b)(7)(E) includes the link to an internal intranet website that directs to a DHS policy, and a concern raised by FDNS in regard to a proposed course of action and potential conflicts with the policy. This information, if disclosed, would reveal the technology resources currently being used in the government to review sensitive law enforcement documents that aid in the vetting process.  This type of information is part of specific techniques and procedures involved the agency's enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by the agency to coordinate review of documents to support DHS's mission.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1286-1289 | Fraud Detection and National Security Directorate, Social Media Division - Implementation of DHS Delegation Number 15002, Standard Operating Procedure, dated April 19, 2018 | (b)(5)<br><br>(b)(7)(E) | Draft Standard Operating Procedure | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the development of the draft Standard Operating Procedure for FDNS's Social Media Division, and focuses on the implementation of Delegation 15002 and the possible process options being considered.  The material is both deliberative and pre-decisional and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS Office of Chief Counsel (OCC) attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes draft language in the document and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for FDNS employees who would be authorized to access the internet and social media content to support USCIS's mission.  The redacted language also contains specifics as to what actions should be taken for certain cases, the oversight and audit process, the specific methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*      VAUGHN INDEX

| | | | | effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1293-1304 | Draft Privacy Impact Assessment Update for the Fraud Detection and National Security Directorate, DHS/USCIS/PIA-013-01(a), dated May XX, 2018 | (b)(5) | Draft Privacy Impact Assessment Update | The information withheld under (b)(5) as deliberative process privileged information consists of comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the review of the draft Privacy Impact Assessment Update, which details the changes to the process for FDNS access to social media information when conducting certain background, identity and security checks. The material is both deliberative and pre-decisional and includes information that is not reflected in the final version of the document. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS Office of Chief Counsel (OCC) attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1311-1321 | DHS Operational Use of Social Media, Privacy Compliance memorandum, dated January 25, 2017 | (b)(5): page 1313<br>(b)(7)(E): pages 1311-1321 | Privacy Compliance Draft Document | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the review of a draft version of the Operational Use of Social Media template that must be completed in order for the DHS Privacy Office to review and determine privacy compliance.  The document includes draft responses to questions from the DHS Privacy Office about the collection of social media information, which includes pre-decisional and deliberative information. |

|  |  |  |  | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for DHS's operational use of social media, including how USCIS's FDNS would use the information as part of the background check and screening process. The redacted language also contains specifics as to FDNS's methods for handling cases involving potential fraud, criminal, public safety, or national security concerns, and specific examples of information that DHS and FDNS would be gathering through social media searches.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and |
|--|--|--|--|--|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1322-1325 | Draft Rules of Behavior for the Operational Use of Social Media | (b)(5): pages 1322-1323<br>(b)(7)(E): pages 1322-1325 | Draft Rules of Behavior | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | this information is part of the deliberative process related to the review of a draft version of the Rules of Behavior Form that must be signed by Immigration Officers who are authorized to access the Internet and social media content for official purposes. The material is also pre-decisional and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for DHS's operational use of social media, including what specific activities USCIS's FDNS employees were authorized or prohibited from conducting as part of the background check and screening process.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research and |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | what the limitations of access are.  The release of this information could result in individuals being able to determine what can and can't be searched on social media platforms, which would allow them to ascertain alternate ways to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1346, 1348, 1359, 1367-1368 | PowerPoint training presentation, "Privacy Requirements for Operational Use of Social Media" | (b)(7)(E) | PowerPoint | Exemption (b)(7)(E) was used to redact portions of a PowerPoint training presentation, "Privacy Requirements for Operational Use of Social Media."   The PowerPoint summarizes the privacy requirements and rules of behavior for employees involved in social media searches to support USCIS's mission.  The redacted information consists of specific details regarding what information can be used and what prohibitions are placed on searches, as well as direct phone numbers and email |

| | | | | address for USCIS internal IT offices. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the limitations on access to certain information, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information can and can't be searched on social media platforms, which would allow them to ascertain alternate ways to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| 1375 | Email, FW: FDNS Social Media Documents for Review, dated May 23, 2018 | (b)(5) (b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of FDNS Social Media documents.  The emails are between USCIS OCC and USCIS employees and include a summary of specific legal issues and concerns that should be noted when reviewing the documents.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a summary of USCIS OCC attorneys' legal position on courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

Exemption (b)(7)(E) was used to redact a summary of the compliance documents being reviewed, and the process issues related to methods used by FDNS to support social media information collection.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this |
|------|------|------|------|------|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1377 | Email, FW: Fictitious Account Social Media Privacy Compliance Documentation, dated May 21, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of social media privacy compliance documentation.  The emails are between USCIS OCC and USCIS employees and include a summary of OCC's legal opinion regarding the definition of the term "fictitious accounts" in relation to the development of the agency's social media policies.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a summary of USCIS OCC attorneys' legal position on defining certain terms and how that may impact the process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1380-1390, 1392-1395 | Draft Department of Homeland Security Social Media Talking Points and Issue Paper | (b)(5): pages 1380-1390, 1392-1395 | Draft Talking Points and Issue Paper | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | (b)(7)(E): pages 1380-1389, 1392, 1394-1395 | | accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the review of the draft DHS Social Media Talking Points and Issue Paper, which contains pre-decisional information that is not reflected in the final version of the document. |
| | | | | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by ICE OPLA and USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
| | | | | Exemption (b)(7)(E) was used to redact comments and edits that contain specifics as to what methods CBP, ICE, and USCIS's law enforcement and immigration officers are authorized to use as part of social media vetting, what information may be used for, and the limitations that are placed on the use and collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are. The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1397 | Email, FW: [URGENT CLEARANCE REQUEST] UN Inquiry re DOS social media collection -visa applications, dated June 5, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of a draft DOS response to a United Nations inquiry related to DOS's collection of social media information for visa applicants. The |

| | | | | |
|---|---|---|---|---|
| | | | | emails are between USCIS OCC attorneys and USCIS employees, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1404-1405 | Draft response from the United States to the United Nations Human Rights Office of the High Commission | (b)(5) | Draft letter | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the review of a draft response from the United States to the United Nations Human Rights Office of the High Commission, which related to the Department of State's proposed update of visa application forms and the collection of social media information from visa applicants.  The withheld portions of the document contain pre-decisional information |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*               VAUGHN INDEX

| | | | | that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1407-1410 | Email, FW: Meeting Summary and Status of Draft Delegation, dated February 2, 2018 | (b)(5): pages 1407-1410<br><br>(b)(7)(E): page 1408 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft delegation.  The emails are between USCIS OCC attorneys and include a summary of a recent meeting between USCIS and DHS privacy regarding USCIS's planned use of fictitious accounts when conducting social media searches in certain cases.  The withheld information includes specific legal issues and concerns that OCC attorneys wanted to highlight for leadership, as well as a list of some of the potential courses of actions.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a summary of USCIS OCC |

|  |  |  |  | attorneys' legal position on courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered as part of draft the Delegation allowing USCIS's use of social media as part of its operations, coordination information regarding when an application or petition should be referred to FDNS for determining whether a fraud investigation is warranted, and the outstanding issues involved with implementation.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, how that information is obtained, and what the limitations of access are.  The release of this information could result in individuals hiding |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1414-1416 | Email, RE: Outstanding issues re the use of fictitious social media accounts when fraud is suspected, dated October 13, 2017 | (b)(5): pages 1414-1416<br><br>(b)(7)(E): page 1416 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to outstanding issues involved in the use of fictitious social media accounts when adjudicating immigration cases involving suspected fraud. The emails are between USCIS OCC attorneys and include a summary specific legal issues and concerns that OCC attorneys wanted to highlight for leadership, as well as a list of some of the potential courses of actions.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | also contains a summary of USCIS OCC attorneys' legal position on courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered as part of draft the Delegation allowing USCIS's use of social media as part of its operations, coordination information regarding when an application or petition should be referred to FDNS for determining whether a fraud investigation is warranted, and the outstanding issues involved with implementation.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, how that information is obtained, and what the limitations of access are.  The release of this |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). <br><br> All other information within this document was segregated and determined non-exempt and disclosed. |
| 1420-1421 | Email, RE: Outstanding issues re the use of fictitious social media accounts when fraud is suspected, dated October 6, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to outstanding issues involved in the use of fictitious social media accounts when adjudicating immigration cases involving suspected fraud. The emails are between USCIS OCC attorneys and include a summary specific legal issues and concerns that OCC attorneys wanted to highlight for leadership, as well as a list of some of the potential courses of actions.  This information represents part of the deliberative process, as well as pre-decisional information being considered in |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | this process.  The information in the emails also contains a summary of USCIS OCC attorneys' legal position on courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1423 | Draft DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities" | (b)(5) | Draft Document | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a draft copy of DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities."  The Delegation, once finalized, would reaffirm the authority of the Director of USCIS to conduct specific law enforcement activities, which include the use of social media content as part of immigration adjudications.  The draft contains comments, revisions, additions, re-wordings, clarifications, and legal opinion. This information is part of the deliberative process and contains pre-decisional information that is not reflected in the final version of the document.  The draft also contains edits and comments made by OCC attorneys which contain their legal opinions. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | within this document was segregated and determined non-exempt and disclosed. |
| 1426 | Email, FW: Privacy Training (for SVPI FDNS IO Social Media access), dated September 27, 2017 | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to withhold a portion of emails between USCIS OCC attorneys and USCIS employees, which include a summary of an upcoming Privacy Training scheduled for employees who will be involved in the social media process, as well as a list of next steps that need to be taken and decisions that need to be made. The information withheld under (b)(7)(E) includes a description of the specific browser that agency employees were required to use when conducting social media checks, and the agency employees authorized to conduct social media searches.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the role that USCIS employees have in this process, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1428-1434 | Email, FW: Proposal to Revise Delegation to the Director of USCIS to Conduct Certain LE Activities - S: 3:00pm today, dated November 15, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the proposed plan to revise the delegation to allow USCIS to conduct social media review as part of its law enforcement activities.  The emails are between USCIS OCC and USCIS employees and include a summary of OCC's legal opinion regarding the definition of specific terms in the delegation, as well as questions and responses related to the scope of the delegation and certain levels of authority that it covered.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a summary of USCIS OCC attorneys' legal position on defining certain terms and how that may impact the process, as well as specific requests for legal opinions on certain issues.  Accordingly, this material is appropriately exempt from disclosure pursuant to |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1436-1437, 1444 | Email, FW: REQUEST FOR OCC CLEARANCE [DHS Congressional Correspondence] Rep. Jayapal +16, regarding SORN and Social Media, WF 1152115, dated November 6, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the legal review of a draft response to Representative Jayapal regarding the USCIS social media review process and the draft SORN. The emails are between USCIS OCC attorneys, and include statements of uncertainty, specific details regarding courses of action being considered and recommendations for those options. This information represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains multiple legal opinions related the potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1458-1462, 1469-1470 | DHS Privacy Summary, Operational Use of Social Media, dated January 25, 2017 | (b)(5): pages 1458-1459, 1462, 1469-1470<br><br>(b)(7)(E): pages 1460-1461 | Privacy Compliance Draft Document | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information. All of this information is part of the deliberative |

| | | | | process related to the review of a draft version of the Operational Use of Social Media template that must be completed in order for the DHS Privacy Office to review and determine privacy compliance.  The document includes draft responses to questions from the DHS Privacy Office about the collection of social media information, which includes pre-decisional and deliberative information. The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for DHS's operational use of social media, including how USCIS's FDNS would use the information as part of the background check and screening process. The redacted language also contains specifics as to FDNS's methods for handling cases involving potential fraud, criminal, public safety, or national security concerns, and |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

|  |  |  |  | specific examples of information that DHS and FDNS would be gathering through social media searches. This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are. The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|--|--|--|--|--|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 1471, 1473 | Email, FW: Social media - FORMS project - LPRs, dated May 21, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the collection of information on immigration forms. The emails are between USCIS OCC attorneys, USCIS employees, and DHS employees, and include statements summarizing current legal issues being considered related to the legal authority to collect social media handles on immigration forms.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a request for legal opinions related potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1475-1477 | Impediments to Proposed Expanded Immigration Vetting of Aliens in the United States | (b)(5) | DOJ Summary Paper | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this Summary Paper, which was drafted by Department of Justice (DOJ) attorneys. The Summary Paper details specific impediments to proposed expanded immigration vetting of |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | aliens in the United States. It contains legal analysis and opinion on these issues. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1478-1491, 1493-1495 | Draft Supporting Statement for Paperwork Reduction Act Generic Information Collection Submissions for "Generic Clearance for the Collection of Social Media Information on Immigration and Foreign Travel Forms," Office of Management and Budget Control No. 1601-NEW, dated April 26, 2018 | (b)(5) | Draft Document | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the development of a Supporting Statement for PRA requirements in connection with the collection of social media information on immigration and foreign travel forms.   The material is pre-decisional and includes information that is not reflected in the final version of the document.  The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| 1497 | Email, FW: Social Media Compliance Documentation, dated April 16, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft social media compliance documentation. The emails are between USCIS OCC attorneys and USCIS employees and include requests for a legal opinion and feedback, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a request for legal opinions on two specific issues.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| --- | --- | --- | --- | --- |
| 1499-1503, 1505-1506 | Draft - U.S. Citizenship and Immigration Services Fraud Detection and National Security Investigations, Rules of Behavior for the Operational Use of Social Media | (b)(5): pages 1499-1501, 1506<br><br>(b)(7)(E): pages 1502-1506 | Privacy Compliance Draft Document | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the review of a draft version of the Rules of Behavior Form that must be signed by Immigration Officers who are authorized to access the Internet and social media content for official purposes. The material is also pre-decisional and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for DHS's operational use of social media, including what specific activities USCIS's FDNS employees were authorized or prohibited from conducting as part of the background check and screening process.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research and what the limitations of access are.  The release of this information could result in individuals being able to determine what can and can't be searched on social media platforms, which would allow them to ascertain alternate ways to avoid proper vetting, which would impact the effectiveness |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1508 | Email, FW: Social Media Compliance Documentation, dated April 16, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft social media compliance documentation. The emails are between USCIS OCC attorneys and USCIS employees and include requests for a legal opinion and feedback, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a request for legal opinions on two specific issues.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| 1511-1512 | Email, Social Media Next Steps, dated November 30, 2017 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the process of evaluating the plan to allow certain access to social media as part of immigration adjudication.  The emails are between USCIS OCC attorneys, USCIS employees and leadership, and the DHS Privacy Office, and include summaries of DHS, CBP, ICE policies and legal opinions, and questions regarding options for next steps in USCIS's process.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains summaries of legal opinions provided by DHS, CBP, and ICE, and questions related to USCIS's legal interpretations of certain issues.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a description of the specific browser that agency employees were required to use when conducting social media checks, and the authorization for certain methods used by CBP, ICE, and USCIS employees to conduct social media searches.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | officers, and the role that USCIS employees have in this process, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1513-1517 | Interim SOP for CBP Access to Social Media 20150608 | (b)(7)(E) | Standard Operating Procedure | Exemption (b)(7)(E) was used to redact a copy of an Interim Standard Operating Procedure (SOP) for CBP Access to Social Media, dated June 8, 2015.  The SOP establishes the procedure for CBP's access to operational use of social media and the implementation process.  The redacted information consists of specific technology platforms being used to conduct social media |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | searches and analyze data, methods that CBP uses to conduct research and monitoring, and the procedures for accessing the platform to conduct social media searches.  This information, if disclosed, would reveal the technology resources and methods currently being used in the vetting process by CBP law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to the specific tools used by law enforcement, the level of access available, and what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1518-1529 | U.S. Customs and Border Protection Directive, CBP | (b)(7)(E) | Directive | Exemption (b)(7)(E) was used to redact a copy of a CBP Directive No. 5410-003, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | |
|---|---|---|---|
| | Directive No. 5410-003, "Operational Use of Social Media," dated January 2, 2015 | | | "Operational Use of Social Media," dated January 2, 2015.  The Directive assigns responsibilities and general rules of behavior for the operational uses of social media by CBP employees.  The redacted information consists of specific technology platforms being used to conduct social media searches and analyze data, methods that CBP uses to conduct research and monitoring, and the procedures for accessing the platform to conduct social media searches.  This information, if disclosed, would reveal the technology resources and methods currently being used in the vetting process by CBP law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to the specific tools used by law enforcement, the level of access available, and what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1530-1534 | U.S. Customs and Border Protection Operational Use of Social Media Rules of Behavior | (b)(7)(E) | Rules of Behavior | Exemption (b)(7)(E) was used to redact a copy of a CBP Operational Use of Social Media Rules of Behavior.  The redacted information consists of specific methods that are authorized or prohibited as part of the operational use of social media to conduct research and monitoring.  This information, if disclosed, would reveal the technology resources and methods currently being used in the vetting process by CBP law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to the specific tools used by law enforcement, the level of access available, and what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, |

| | | | | |
|---|---|---|---|---|
| | | | | and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1541-1543 | IP - USCIS Screening and Vetting | (b)(5): page 1543 <br><br> (b)(7)(E): pages <br> 1541-1542 | Briefing Summary | The information withheld under (b)(5) consists of deliberative and attorney-client privileged information related to the review of  the draft Issue Paper (IP) related to USCIS Screening and Vetting.  The withheld information includes comments and recommendations for revision and re-wording, which is part of the deliberative and pre-decisional process. <br><br> The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). <br><br> The information redacted under Exemption (b)(7)(E) consists of specific techniques and procedures involved in the operational use of social media to conduct screening for certain applicants, including detailed information about which applications and petitions could be subject to this screen, summaries of future plans for expanding the process, and the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | outstanding issues to be resolved for the process of social media screening and vetting. This information, if disclosed, would reveal the methods currently being used in the vetting process by law enforcement and immigration officers, and the types of applications that may be subject to screening for possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what types of applications are likely to be considered for enhanced screening, which could impact the effectiveness of the screening and vetting process and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|  |  |  |  |  |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*            VAUGHN INDEX

| 1544-1545 | Email, FW: Social Media Talking Points, dated April 3, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft talking points for the use of social media screening.  The emails are between USCIS OCC attorneys, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions, as well as legal definitions of certain terms, and suggested recommendations for addressing legal concerns.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| --- | --- | --- | --- | --- |
| 1547-1549 | Email, FW: UPDATE - Email, RE: Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities, dated May 16, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft Delegation 15002, which involves the delegation to USCIS to conduct certain law enforcement activities, including searches of social media as part of immigration adjudications.  The emails are between USCIS OCC attorneys and were sent to USCIS OCC leadership to provide a summary of the draft delegation and multiple concerns, edits, revisions, and comments that |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | USCIS had received from ICE, CBP, Privacy, and CRCL.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains summaries of specific legal opinions from USCIS OCC, ICE OPLA, and CBP legal counsel, and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1551-1558 | Email, FW: USCIS SMWG - Request for legal guidance regarding potential civil liability for violations of social media providers, dated April 24, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request from the SMWG for guidance regarding potential legal liability for participating in USCIS social media operational activities.  The emails are between USCIS OCC attorneys and contain a discussion of certain proposed actions involved in the social media process, and the various potential legal risks associated with those courses of action.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also include summaries of specific legal opinions regarding liability for various courses of actions being considered.  Accordingly, this |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1571 | Email, FW: USCIS authority to collect/use social media information relating to the exercise of First Amendment protected activities (draft), dated June 22, 2016 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal guidance regarding USCIS's authority to collect and use social media information, specifically in relation to First Amendment protected activities. The emails are between USCIS OCC attorneys and include a summary of the legal issues and draft responses, which represents part of the deliberative and pre-decisional process.  The information in the emails also contains the detailed legal opinions on two specific issues. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1575 | Quick Question, dated October 4, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal review of  document related to social media screening. The emails are between USCIS OCC attorneys and include a summary of the legal issues and draft responses, which represents part of the deliberative and pre-decisional process.  The information in the emails also contains |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | OCC's legal opinion on a specific issue related to screening. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1577-1578, 1580 | Email, RE: [3RD ROUND COMPONENT CLEARANCE REQUEST]: Latest draft of Consolidated DHS Social Media Talking Points, dated March 30, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft talking points related to the use of social media screening. The emails are between USCIS OCC attorneys and USCIS employees, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains specific legal opinions from ICE OPLA and USCIS OCC and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1586, 1588 | Email, RE: [Clearance Request] Person-Centric Vetting and Person-Centric View Definition, dated February 8, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of proposed changes to the "person-centric vetting and person-centric view" definitions. The emails are between USCIS OCC and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | USCIS employees and include a summary of OCC's legal opinion regarding the definition of the terms, and analysis regarding the difference in definitions.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a summary of USCIS OCC attorneys' legal position on defining certain terms and how that may impact the process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1597-1600 | Email, RE: [Social Media SORN] Clearance request for responses to HSGAC, dated October 23, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft response to the Senate Homeland Security and Governmental Affairs Committee (HSGAC) regarding the collection of social media information and SORN.  The emails are between USCIS OCC attorneys and USCIS employees, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains OCC's legal opinions and draft responses to the questions.  Accordingly, this material is appropriately exempt from disclosure |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1603-1609, 1611 | Email, RE: [Social Media SORN] Coordinated response, dated October 11, 2017 | (b)(5) | Email | The information withheld under (b)(5) as deliberative process privileged information related to the agency-wide coordinated review of responses to Congressional Inquiries and other inquires received related to USCIS's plan to collect social media information on certain immigration applicants.  The emails are between USCIS OCC and USCIS employees and contain pre-decisional and deliberative information, including draft responses, revisions, additions, re-wordings, suggestions, clarifications, and requests for additional information.  All of this information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft responses, which were provided by USCIS OCC attorneys that had been asked to provide legal review.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*      VAUGHN INDEX

| 1616, 1618 | Email, RE: AILA questions, dated April 25, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions sent to USCIS by AILA, which were sent prior to a scheduled luncheon meeting between USCIS and AILA employees. The emails are between USCIS OCC attorneys, and include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1621 | Email, RE: AILA questions for April 26th Richmond luncheon meeting, dated April 24, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions sent to USCIS by AILA, which were sent prior to a scheduled luncheon meeting between USCIS and AILA employees. The emails are between USCIS OCC attorneys, and include comments and suggested language for the draft responses, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The information in the emails also contains OCC's legal opinion regarding the draft responses.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1623 | Email, RE: AILA questions, dated April 24, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions sent to USCIS by AILA, which were sent prior to a scheduled luncheon meeting between USCIS and AILA employees. The emails are between USCIS OCC attorneys, and include comments and suggested language for the draft responses, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains OCC's legal opinion regarding the draft responses.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1624 | Email, RE: Are you attending the 2 Social Media meeting, dated January 31, 2018 | (b)(5) (b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails related to a meeting between OCC, USCIS Privacy, and the USCIS Social Media Working Group |

| | | | | |
|---|---|---|---|---|
| | | | | (SMWG) to discuss the issue of oversight of social media collection activities.  The emails are between USCIS OCC attorneys, and include statements summarizing the meeting and current issues being considered as part of the SMWG.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a summary of certain legal issues that are outstanding and being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to withhold an attorney's summary of the meeting held between OCC, USCIS Privacy, and the USCIS Social Media Working Group to discuss the issue of oversight of social media collection activities, and the attorney's opinion as to the legal issues that needed to be addressed in regards to proposed options for methods of conducting and collecting social media information.  This information, if disclosed, would reveal the methods that immigration officers are authorized and prohibited from using to collect social media information to be used in the vetting process by law enforcement and immigration officers, and the role that USCIS employees have in this process, which is part of specific techniques and procedures involved in the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what limitations the agency's searches have and what methods may be used to collect information, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| --- | --- | --- | --- | --- |
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 1631 | Email, Call with USCIS Privacy to discuss oversight of social media collection, dated March 12, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to an upcoming meeting between the SMWG, USIS OCC, and USCIS Privacy regarding the oversight of social media collection activities. The emails are between USCIS OCC attorneys, and include statements summarizing the meeting agenda and current issues being considered as part of the SMWG involving privacy issues. This information represents part of the deliberative process, as well as pre-decisional information being |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | considered in this process.  The information in the emails also contains a summary of certain legal issues that are outstanding and being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1635-1637 | Email, RE: Call with the FBI, dated April 12, 2018 | (b)(5): pages 1635-1637<br><br>(b)(7)(E): pages 1636-1637 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a meeting between the SMWG, USCIS OCC, USCIS's Immigration Records and Identity Services Directorate (IRIS), and the FBI National Security Law Branch regarding the issue of what types of information maintained by USCIS that the FBI is permitted to access. The emails are between USCIS OCC attorneys, and include statements summarizing the meeting and current issues being considered as part of the SMWG.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a summary of certain legal issues that are outstanding and being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

| | | | | Exemption (b)(7)(E) was used to withhold an attorney's summary of the meeting and the issues raised by the FBI regarding information access requests and coordination to support law enforcement efforts, and whether FBI would have access to information collected by USCIS. The options discussed consist of information that reveals the type of information collected by USCIS and what is available to law enforcement agencies like the FBI, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to whether their information has or has not been provided to the FBI for law enforcement investigations, which may tip off individuals who otherwise would not have been aware of an ongoing investigation, which could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 1638-1639 | Email, RE: Children's Online Privacy Protection Act of 1998 (COPPA), dated January 29, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to whether the Children's Online Privacy Protection Act of 1998 (COPPA) impacts USCIS's social media policy.  The emails are between USCIS OCC attorneys, and include statements summarizing the various options being considered and the legal implications associated with these options.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions regarding how COPPA would impact USCIS's proposed plans, and legal recommendations to the client.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1643-1646 | Email, RE: Congressional Inquiry - USCIS Rule re. Social Media, dated October 2, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to congressional inquiries on topics related to DHS's authority to conduct social media checks on certain populations.  The emails are between USCIS OCC attorneys and USCIS employees, and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | include comments and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains OCC's legal opinions and draft responses to the questions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1648 | Email, RE: Congressional Inquiry - USCIS Rule re. Social Media, dated October 30, 2017 | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to redact portions of an email sent between USCIS OCC attorneys discussing the review of a draft response to a congressional inquiry. The information withheld under (b)(7)(E) includes the link to an internal intranet website that directs to the draft copy of the document being reviewed.   This information, if disclosed, would reveal the technology resources currently being used in the government to review sensitive law enforcement documents that aid in the vetting process.  This type of information is part of specific techniques and procedures involved the agency's enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by the agency to coordinate review of documents to support USCIS's mission.  The release of this |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 1650-1652 | Email, RE: Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities, dated May 30, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft Delegation 15002, which involves the delegation to USCIS to conduct certain law enforcement activities, including searches of social media as part of immigration adjudications.  The emails are between USCIS OCC attorneys and were sent to USCIS OCC leadership to provide a summary of the draft delegation and multiple concerns, edits, revisions, and comments that USCIS had received from ICE, CBP, Privacy, and CRCL.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions from USCIS OCC, ICE OPLA,  and CBP legal counsel, and includes potential courses of actions being considered.  Accordingly, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1655-1658 | Subject: Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities, dated May 24, 2018 | (b)(5) | Draft email response with OCC comments and edits | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a draft copy of DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities." The document is a draft email which OCC leadership planned to send to James McCament to summarize OCC's legal recommendations regarding the revised delegation. This information is part of the deliberative and pre-decisional process. The draft email also contains summaries of various legal opinions from USCIS OCC, ICE OPLA, and CBP attorneys related to the revised delegation. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1676-1678 | Email, RE: Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft Delegation 15002, which involves the delegation to USCIS to conduct certain law enforcement activities, including |

| | | | | |
|---|---|---|---|---|
| | Enforcement Activities, dated June 5, 2018 | | | searches of social media as part of immigration adjudications.  The emails are between USCIS OCC attorneys and include a summary of the draft delegation and multiple concerns, edits, revisions, and comments that USCIS had received from ICE, CBP, Privacy, and CRCL.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions from USCIS OCC, ICE OPLA, and CBP legal counsel, and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1681, 1684, 1686 | Email, RE: Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities ESEC Workflow # 1159363, dated May 16, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft Delegation 15002, which involves the delegation to USCIS to conduct certain law enforcement activities, including searches of social media as part of immigration adjudications.  The emails are between USCIS OCC, ICE OPLA, and CBP attorneys and include various statements summarizing concerns, edits, revisions, and comments related to the revised delegation. This information represents part of the deliberative process, as well as pre-decisional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information being considered in this process. The information in the emails also contains legal opinions from USCIS OCC, ICE OPLA, and CBP legal counsel, and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1689-1693 | Email, RE: DHS COMPONENT PASSBACKS [DHS Congressional Correspondence] Sen. Menendez+ 5 to AS1, FRN/Privacy Concerns with retaining Social Media information, WF 1154028, dated February 27, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft responses to questions received by DHS from Senator Menendez related to concerns with retaining social media information. The emails are between USCIS OCC and USCIS employees and include a summary of specific legal issues and responses to the questions, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1694-1695 | Email, RE: DHS PLCY REQUEST FOR | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | COMPONENT CLEARANCE - Chairman McCaul (R-TX) Letter on Social Media, WF 1160173, dated April 18, 2018 | | | privileged information related to the review of draft responses to questions from Chairman McCaul relating to potential restrictions placed on DHS use of publicly available social media information. The emails are between USCIS OCC and USCIS employees and include a summary of specific operational and legal issues and responses to the questions, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1711-1712 | Email, RE: DHS procurement of SM services in Enhanced Vetting initiative, dated April 9, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to questions USCIS received regarding DHS's potential procurement of social media services as part of the Enhanced Vetting initiative. The emails are between USCIS OCC and include a summary of specific operational and legal issues and thoughts about pending process decisions, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information related to OCC's legal opinions regarding the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1713-1715 | Email, RE: DHS-USCIS Social Media call, dated October 4, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the summary of a meeting between the SMWG and DHS Privacy.  The emails are between USCIS OCC attorneys, and include statements summarizing current issues being considered as part of the SMWG, and DHS Privacy's concerns with certain aspects of the use of fictitious accounts for fraud purposes, which was still an outstanding issue.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1719-1726, 1728-1729 | Guidance for Use of Social Media in Field Operations Directorate Adjudications, | (b)(5): pages 1719-1726, 1728-1729 | Draft Guidance Document | The information withheld under (b)(5) as deliberative process privileged information consists of a draft version of a document that |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | Draft copy, dated August 7, 2017 | (b)(7)(E): pages 1720-1726, 1728-1729 | | details Guidance for Use of Social Media in Field Operations Directorate Adjudications. The withheld information focuses on the types of questions and issues that adjudicators may want to look for when reviewing an application or interviewing an applicant related to social media information. The material is also pre-decisional and includes information that is not reflected in the final version of the document. |
|---|---|---|---|---|
| | | | | The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for FDNS employees who would be authorized to access the internet and social media content to support USCIS's mission, as well as details about the CARRP process and how to handle social media results involve potential national security concerns.  The redacted language also contains specifics as to what specific questions can be used by immigration officers to question applicants to verify social media results as part of social media vetting. This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what questions may be asked, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| 1730-1732 | Email, RE: Fictious Account definition, dated April 2, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of social media privacy compliance documentation. The emails are between USCIS OCC and USCIS employees and include a summary of OCC's legal opinion regarding the definition of the term "fictitious accounts" in relation to the development of the agency's social media policies. This information represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a summary of USCIS OCC attorneys' legal position on defining certain terms and how that may impact the process. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| --- | --- | --- | --- | --- |
| 1733-1734 | Email, RE: Fictious Account Privacy Compliance Documentation, dated June 6, 2018 | (b)(5): pages 1733-1734<br><br>(b)(7)(E): page 1733 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of social media privacy compliance documentation, the SMOUT, ROB, PIA, and training documents. The emails are between USCIS OCC and USCIS employees and include a summary of various outstanding issues and proposed options and concerns. This information represents part of the deliberative process, as well as pre-decisional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | information being considered in this process. The information in the emails also contains a summary of USCIS OCC attorneys' legal opinions on the issues raised and recommendations to the client.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes OCC attorneys' summaries of two legal issues raised as part of reviewing privacy compliance documentation.  The issues relate to proposed methods being considered for collection of social media, and what methods would be permitted and prohibited.  This information, if disclosed, would reveal the methods used by immigration officers for conducting social media screening, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information can and cannot be collected, and what methods are permitted and prohibited, which could result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). <br><br> All other information within this document was segregated and determined non-exempt and disclosed. |
| 1735 | Email, RE: Fictitious Account Privacy Compliance Documentation, dated May 22, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of social media privacy compliance documentation, the SMOUT, ROB, PIA, and training documents. The emails are between USCIS OCC attorneys, and include a summary of the draft documents being reviewed, various outstanding issues and proposed options and concerns. This information represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a summary of USCIS OCC attorneys' legal opinions on the issues raised and recommendations to the client. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1738-1740 | Email, RE: FOR DECISION: USCIS SMWG - Request for legal guidance regarding potential civil liability for violations of social media providers, dated April 25, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request from the SMWG for guidance regarding whether employees face any potential personal legal liability for participating in USCIS social media operational activities. The emails and were written by USCIS OCC attorneys and are directed to USCIS OCC leadership, and contain a discussion of certain proposed actions involved in the social media process, and the various potential legal risks associated with those courses of action.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also include summaries of specific legal opinions regarding liability for various courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1741-1743 | Email, RE: Fraud Referral Criteria, dated January 10, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the summary of a meeting between the SMWG, FDNS, and USCIS OCC.  The emails are between USCIS OCC attorneys and FDNS, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | and include statements summarizing current issues being considered as part of the SMWG, and DHS Privacy's concerns with certain aspects of the use of fictitious accounts for fraud purposes, which was still an outstanding issue.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1746-1747 | Email, RE: Fraud Referral Criteria, dated April 26, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the summary of a meeting between the SMWG, FDNS, and USCIS OCC.  The emails are between USCIS OCC attorneys and FDNS, and include statements summarizing current issues being considered as part of the SMWG, and DHS Privacy's concerns with certain aspects of the use of fictitious accounts for fraud purposes, which was still an outstanding issue.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1751 | Email, RE: Meeting Summary (DRAFT), dated February 1, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the summary of a meeting between USCIS and DHS Privacy.  The emails are between USCIS OCC attorneys, and include statements summarizing current issues being considered as part of the SMWG, and DHS Privacy's concerns with certain aspects of the use of fictitious accounts for fraud purposes, which was still an outstanding issue.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1752-1754 | Email, RE: Meeting Summary and Status of Draft Delegation, dated February 1, 2018 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the summary of a meeting between USCIS and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | DHS Privacy.  The emails are between USCIS OCC attorneys, and include statements summarizing current issues being considered as part of the SMWG, and various USCIS components responses to the proposed revisions to the delegation as it pertains to the use of fictitious accounts for fraud purposes, which was still an outstanding issue.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1755-1758 | Email, RE: Meeting Summary and Status of Draft Delegation, dated February 6, 2018 | (b)(5): pages 1755-1758<br><br>(b)(7)(E): page 1755 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the summary of a meeting between USCIS and DHS Privacy.  The emails are between USCIS OCC attorneys, and include statements summarizing current issues being considered as part of the SMWG, the meeting held, and various issues that USCIS OCC had noted that required additional research and consideration.  This information represents part of the deliberative process, as well as pre-decisional information being considered |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | in this process.  The information in the emails also contains legal opinions related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to withhold an attorney's summary of the meeting held and courses of action being considered as part of the International Information Sharing Integrated Product Team (IPT), and the attorney's opinion as to the legal issues that needed to be addressed in regards to proposed options for sharing social media information with other law enforcement partners.  This information, if disclosed, would reveal the methods that immigration officers are authorized and prohibited from using to collect social media information and how that information may be shared with other law enforcement partners, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what limitations law enforcement has in sharing information, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to |
| --- | --- | --- | --- | --- |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1760 | Email, RE: Meeting to discuss FDNS Fictitious Account SMOUT, ROB, and PIA, dated October 4, 2017 | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to withhold a portion of an email sent between FDNS, USCIS Privacy, and USCIS OCC related to an upcoming meeting to discuss DHS Privacy's outstanding questions on the draft USCIS privacy documentation for the agency's social media use and collection. The information withheld under (b)(7)(E) includes the link to an internal USCIS conference number and passcode. This information, if disclosed, would reveal the technology resources currently being used in the government to host conference calls and to discuss sensitive law enforcement information.  The release of this information would put individuals on notice as to how to access internal agency phone calls, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                 VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 1761-1762 | Email, RE: OMB/OIRA comments on draft social media PRA package, dated September 27, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of draft social media PRA materials and responses to comments received by the DHS Office of Management and Budget (OMB). The emails are between USCIS OCC attorneys and USCIS employees and include clarifications and responses to OMB questions, which represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to OCC's legal position on the various issues raised and the potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1763-1764, 1768 | Email, RE: Outstanding issues re the use of fictitious social media accounts when fraud is suspected, dated October 16, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to guidance being developed related to the use of fictitious social media accounts when fraud is suspected.  The emails are between USCIS OCC attorneys, and include statements summarizing outstanding issues being considered that required additional research and consideration.  This information |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1769-1771, 1774 | Email, RE: Document sent for concurrence "Delegation of Authority to Conduct Certain Law Enforcement Activities Including but Not Limited to Accessing Internet and Publicly Available Social Media Content Using a Fictitious Account or Identity", dated April 3, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the re-delegation to allow USCIS to conduct certain law enforcement activities including accessing social media content using a fictious account or identity.  The emails are between USCIS OCC attorneys, and include statements summarizing specific edits and comments that OCC attorneys had included in the draft re-delegation.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains legal opinions related to the potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| 1776-1805 | Draft Legal Memorandum from USCIS's Chief Counsel to DHS's General Counsel regarding Legal Considerations regarding the Operational Use of Social Media, dated January XX, 2016 | (b)(5): pages 1776-1805<br><br>(b)(7)(E): page 1804 | Draft Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum is written from USCIS's Office of Chief Counsel to DHS's Office of General Counsel, and explores legal considerations regarding the operational use of social media.  The memorandum outlines the legal considerations regarding whether USCIS employees may engage in fraud, misrepresentation, and/or deception while engaging in the operational use of social media, including an overview of the legal authorities and principles that USCIS had developed relating to their legal opinions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered for USCIS employees while engaging in the operational use of social media, analysis outlining the legal considerations with the various methods proposed, the specific social media applications searched and what's permitted under their terms of service and under the relevant legal authority, and the specific methods that counsel advised that the agency authorize and prohibit.  This information, if |

| | | | | disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, the specific information that is searched on specific social media applications, and the type of  actions or methods an immigration officer may engage in during information collection, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns.  The release of this information could result in individuals being able to ascertain when an immigration officer has searched social media or what information may be subject or not subject to a search, resulting in actions to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1808-1825 | Draft, Guidance for Use of Social Media in Field Operations Adjudications, dated 2017 | (b)(5)<br><br>(b)(7)(E) | Draft Guidance Document | The information withheld under (b)(5) as deliberative process privileged information consists of a draft version of a document that details Guidance for Use of Social Media in Field Operations Directorate Adjudications. The withheld information focuses on the types of questions and issues that adjudicators may want to look for when reviewing an application or interviewing an applicant related to social media information. The material is also pre-decisional and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(7)(E) includes draft language in the document that the specific technology that the agency would be using to conduct social media research as part of the vetting process, how to access that technology, which employees are authorized to search for social media information, what information should be saved and documented, and what types of searches should be conducted for various immigration |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | benefit types. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, and when social media searches are conducted for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms when applying for certain benefit types since they know a search will be conducted, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*      VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1830-1841 | Email, RE: Social Media Pilot Plan & Privacy Act/ First Amendment Issues (DRAFT), dated July 21, 2016 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal guidance regarding USCIS's authority to collect and use social media information, specifically in relation to Privacy Act issues and First Amendment protected activities. The emails are between USCIS OCC attorneys and include a summary of the legal issues and draft responses, which represents part of the deliberative and pre-decisional process. The information in the emails also contains the detailed legal opinions on two specific issues. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1886-1888, 1890-1891, 1895-1896, 1898-1900, 1902-1905 | PowerPoint training presentation, "Protect the First Amendment in Social Media Research," presented to USCIS's FDNS by the Office for Civil Rights and Civil Liberties | (b)(7)(E) | PowerPoint | Exemption (b)(7)(E) was used to redact portions of a PowerPoint training presentation, "Protect the First Amendment in Social Media Research," presented to USCIS's FDNS by the Office for Civil Rights and Civil Liberties. The PowerPoint summarizes what First Amendment protectives are in relation to information |

| | | | | collection and what is authorized and prohibited.  The redacted information consists of detailed instructions regarding what social media may or may not be searched for various immigration benefit types, how the information collected may be used in the determination, and specific scenarios to illustrate whether information searches and collection may be conducted in specific circumstances.  and when social media searches are conducted for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms when applying for certain benefit types since they know a search will be conducted, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1907-1909 | Web Access Request Process: Questions for Social Media, dated December 14, 2015 | (b)(7)(E) | Privacy Office Questions for Draft Process | Exemption (b)(7)(E) was used to redact portions of a draft copy of a web access request process, which included questions from the DHS Privacy office regarding the web access process, and draft responses to those questions.  The information withheld under (b)(7)(E) includes specifics as to which DHS employees are permitted to request access to the browser used to conduct social media searches, the specific purposes allowed for conducting searches, and a flowchart laying out the exact method for requesting and obtaining access to the web browser and which components are authorized and for what purposes. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers to conduct social media screening, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1912-1913 | Draft edits, USCIS Policy Manual, Volume 1: General Policies and Procedures | (b)(5) | Draft Policy Manual | The information withheld under (b)(5) as deliberative process and attorney client privileged information  consists of a draft version of the USCIS Policy Manual, Volume 1.  The withheld information includes comments made by OCC regarding the proposed policy, certain statements, and clarifications related to legal concerns.  In addition to containing legal guidance, the information is also deliberative and pre-decisional and includes information that is not reflected in the final version of the document.  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| 1914-1919 | Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities, Review Workflow #1159363 | (b)(5): pages 1914-1919<br><br>(b)(7)(E): pages 1916-1918 | Review Workflow | The information withheld under (b)(5) as deliberative process privileged information related to the department-wide coordinated review of the draft Delegation 15002. The information is contained in a review workflow spreadsheet, which lists specific details as to which agencies concurred and non-concurred with the draft version of the Delegation, and the specific comments, edits, revisions, and questions made by each agency. All of this information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft delegation, which were provided by attorneys within USCIS OCC, ICE OPLA, CBP OCC, and DHS OGC who had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered as part of the Delegation, and how it impacts CBP and ICE law enforcement officers and their work, the concerns that some DHS employees have with the Delegation and how it would impact their operations, and proposed alternative methods |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | as part of the social media search and collection process.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research to support operational needs, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals identifying law enforcement based on the methods used in search and collection operations, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|--|--|--|--|--|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 1921 | DHS draft response letter to The Honorable Jeanne Shaheen, United States Senate | (b)(5) | Draft letter | The information withheld under (b)(5) as deliberative process privileged information consists of a comment and revision. This information is part of the deliberative process related to the review of a draft response from the DHS Secretary to Senator Shaheen, related to DHS's use of social media. The withheld portions of the document contain pre-decisional information that is not reflected in the final version of the document. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1954-1955 | Memorandum from DHS Secretary Johnson to Component Heads, "Social Media Use," dated February 11, 2016 | (b)(7)(E) | Memorandum | Exemption (b)(7)(E) was used to redact portions of a memorandum from DHS Secretary Johnson to Component Heads, "Social Media Use," dated February 11, 2016. The information withheld under (b)(7)(E) includes summaries of the Social Media Task Force's recommendations regarding DHS's current and future use of social media to support operational and investigative purposes, which employees within USCIS are authorized to search social media information, which immigration benefit types and individuals were part of the pilot to expand the use of social media in |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | screening immigration applicants, and the upcoming priorities to continue to expand DHS's use of social media information to support its' mission.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research, and which immigration benefit types are likely to be subject to social media screening, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 1962-1963 | Additional Considerations for Email to James McCament, dated May 24, 2018 | (b)(5) | Draft Document and legal considerations | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a draft copy of DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities."  The document contains OCC attorneys' summary of additional considerations for revising the draft email which OCC leadership planned to send to James McCament to summarize OCC's legal recommendations regarding the revised delegation.  This information is part of the deliberative and pre-decisional process. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The considerations contain detailed summaries of various legal opinions from USCIS OCC, ICE OPLA, and CBP attorneys related to the revised delegation. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1964-1968 | Draft summary memorandum detailing USCIS's Social Media and Vetting Efforts to Date, dated January 14, 2016 | (b)(5)<br>(b)(7)(E) | Draft Summary Overview | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information. All of this information is part of the deliberative process related to the draft Summary/Updates on USCIS's Social Media & Vetting efforts to date, as of January 1, 2016. The material reflects deliberative information, is pre-decisional, and includes information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is |

|  |  |  |  | appropriately exempt from disclosure pursuant to Exemption (b)(5). The information redacted under Exemption (b)(7)(E) consists of a summary of the social media screening efforts to date, the timeline for proposed pilot projects, optional courses of action and recommendations, and summaries of the limitations and resource constraints.  The document also contains detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and which key words were used to search those social media applications. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*            VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1972 | Ian's comment to USCIS revised delegation, part of Additional Considerations for Email to James McCament, dated May 24, 2018 | (b)(5) | Draft Document and legal considerations | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a draft copy of DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Immigration Services to Conduct Certain Law Enforcement Activities." The document contains OCC attorneys' summary of additional considerations for revising the draft email which OCC leadership planned to send to James McCament to summarize OCC's legal recommendations regarding the revised delegation. This information is part of the deliberative and pre-decisional process. The draft email also contains summaries of various legal opinions from USCIS OCC, ICE OPLA, and CBP attorneys related to the revised delegation. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 1973-1975 | Draft Email from USCIS Chief Counsel to James McCament | (b)(5) | Draft Email and comments | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a draft copy of DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities." The document is a draft email written by multiple USCIS OCC attorneys, which OCC leadership planned to send to James McCament to summarize OCC's legal recommendations regarding the revised delegation. This information is part of the deliberative and pre-decisional process. The draft email also |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

|  |  |  |  | contains comments and summaries of various legal opinions from USCIS OCC, ICE OPLA, and CBP attorneys related to the revised delegation.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 1976-1982 | Draft memorandum, "Use of Social Media" | (b)(5) | Draft Memorandum | The information withheld under (b)(5) as deliberative process and attorney-client privileged information consists of the draft version of a Use of Social Media memorandum, which was written by USCIS OCC attorneys, and outlined the legal questions related to FDNS's use of social media when investigating applicants seeking an immigration benefit.  The withheld information includes draft text and comments.  This predecisional information is part of the deliberative process.  Further, the information withheld under (b)(5) as attorney-client privileged information consists of a comment that contain a legal opinion related to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| 1983-1984 | Technical Comments for Engagement# : 16-079-ISP-USCIS, ICE, "DHS' Pilots for Social Media Screening Need Increased Rigor to Ensure Scalability and Long-term Success" | (b)(5) | Review Workflow | The information withheld under (b)(5) as deliberative process privileged information related to USCIS's OCC coordinated review of the draft paper titled "DHS's Pilots for Social Media Screening Need Increased Rigor to Ensure Scalability and Long-Term Success." The document lists specific details as to which attorneys reviewed and their specific comments, edits, revisions, and questions made by each agency. All of this information is part of the deliberative process.

The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft document, which were provided by USCIS OCC attorneys who had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 1985-1992, 1994-1995, 1998 | Draft Memorandum, "Shared Social Media Screening Service: Implementation Plan" | (b)(5) (b)(7)(E) | Draft Memorandum | The information withheld under (b)(5) as deliberative process privileged information consists of the draft version of a Shard Social Media Screening Service Implementation Plan. The document was compiled by the DHS Social Media Task Force and included a summary of potential lines of action being |

considered to develop an initial operating capacity, as well as options for expanding pilots, establishing funding, creation of policy and government, and progress updates. The withheld information includes draft text and comments.  This predecisional information is part of the deliberative process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

The information withheld under (b)(7)(E) includes specifics for the implementation of the expansion of social media screening and vetting use across DHS mission sets, the timelines for implementation of expanded uses, the planned methods and courses of action, planned coordination between DHS components and other law enforcement agencies, and summaries of the limitations and resource constraints.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and DHS's priorities for the use of social media, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would put individuals on notice as to what technology is being used, the methods used, and the specific DHS employees authorized to

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | conduct vetting efforts, which would allow individuals to research the technology and DHS processes to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  <br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 1999-2006 | Draft memorandum from DHS's Associate General Counsel of the Legal Counsel Division to the DHS Social Media Task Force | (b)(5): pages 1999-2006 <br><br>(b)(7)(E): page 2002 | Draft Memorandum | The information withheld under (b)(5) as deliberative process and attorney-client privileged information consists of the draft version of a legal memorandum, which would be sent by DHS's Associate General Counsel to the DHS Social Media Task Force.  The memorandum focused on the legal issue of how the Privacy Act impacts USCIS's use of social media content.  The withheld information includes draft text, revisions, deletions, recommendations, and comments, all of which is predecisional information that is part of the deliberative process, and isn't reflected in the final version.  Further, the information withheld under (b)(5) as attorney-client privileged information consists of comments that |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | contain a legal opinion related to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered for USCIS employees while engaging in the operational use of social media, analysis outlining the legal considerations with the various methods proposed, whether there were any legal restrictions to the use of information to grant or deny a benefit request, and the specific law enforcement activities that would be permitted using the information collected. This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | screening and vetting process, the specific information that is searched on specific social media applications, and the type of actions or methods an immigration officer may engage in during information collection, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns.  The release of this information could result in individuals being able to ascertain when an immigration officer has searched social media or what information may be subject or not subject to a search, resulting in actions to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2007-2011 | Draft talking points - Social Media Task Force and Social Media Vetting | (b)(5): pages 2007-2011 | Draft Talking Points | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | (b)(7)(E): pages 2007-2010 | | suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information. All of this information is part of the deliberative process related to a draft Social Media Talking Points document put together by the DHS Social Media Task Force, which contains pre-decisional information that is not reflected in the final version of the document. |

The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

Exemption (b)(7)(E) was used to redact comments and edits that contain specifics as to what methods CBP, ICE, and USCIS's law enforcement and immigration officers are authorized to use as part of social media vetting, what information may be used for, planned projects to use social media vetting, and the limitations that are placed on the use and collection methods. This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 2012-2015 | Draft summary of USCIS Social Media & Vetting: | (b)(5): pages 2012-2015 | Draft Summary Overview | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, |

| | Overview and Efforts to Date, dated August 2, 2016 | (b)(7)(E): pages 2012-2014 | | revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the draft document titled USCIS's Social Media & Vetting: Overview and Efforts to Date, as of August 6, 2016.  The material reflects deliberative information, is pre-decisional, and includes information that is not reflected in the final version of the document.

The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

The information redacted under Exemption (b)(7)(E) consists of a summary of the social media screening efforts to date, the timeline for proposed pilot projects, optional courses of action and recommendations, detailed information about which social media applications were used and the immigrant populations subject to screening, and summaries of the limitations and resource constraints.  The document also contains detailed information about some applicants |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*　　　　VAUGHN INDEX

| | | | | that had been screened and the results of that screening, the specific social media applications reviewed, and which key words were used to search those social media applications. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2016-2017 | Draft Memorandum to USCIS Acting Director, "Delegation of Authority to Access Internet and Social Media Content Using a Fictitious Account or Identity" | (b)(5)<br>(b)(7)(E) | Draft Memorandum | The information withheld under (b)(5) as deliberative process privileged information consists of a draft version of a memorandum titled "Delegation of Authority to Access Internet and Social Media Content Using a Fictitious Account or Identity," which would be sent by USCIS's Acting Director to the heads of each USCIS Directorate once finalized.  The draft memorandum contains pre-decisional and  deliberative information, including multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft memorandum, which were provided by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
|---|---|---|---|---|
| | | | | The information redacted under Exemption (b)(7)(E) consists of a summary of the draft Delegation and the changes proposed to permit a technique that law enforcement officials could use to allow them to collect social media information for vetting purposes. This information, if disclosed, would reveal the techniques being used and those that are prohibited in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2018-2019 | Memorandum from DHS Secretary Johnson to Component Heads, "Social Media Use," dated February 11, 2016 | (b)(7)(E) | Memorandum | Exemption (b)(7)(E) was used to redact portions of a memorandum from DHS Secretary Johnson to Component Heads, "Social Media Use," dated February 11, 2016.  The information withheld under (b)(7)(E) includes summaries of the Social Media Task Force's recommendations regarding DHS's current and future use of social media to support operational and investigative purposes, which employees within USCIS are authorized to search social media information, which immigration benefit types and individuals were part of the pilot to expand the use of social media in screening immigration applicants, and the upcoming priorities to continue to expand DHS's use of social media information to support its' mission.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | immigration officers are able to use to conduct social media research, and which immigration benefit types are likely to be subject to social media screening, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 2021-2028 | Vetting and Screening Enhancements, dated June 20, 2017 | (b)(5): pages 2026-2028<br><br>(b)(7)(E): pages 2021-2025, 2028 | Summary Overview | The information withheld under (b)(5) consists of deliberative process privileged information related to proposed changes being considered as part of the finding of fraud at the case level.  The withheld information includes a summary of the proposed changes that were being considered and the factors that should be taken into account when making a determination on the process of finding fraud in an immigration benefit case, which is part of the deliberative and pre-decisional process. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information redacted under Exemption (b)(7)(E) consists of a list of specific items under consideration for law enforcement sharing between USCIS and the FBI as part of USCIS's biometric screening, as well as other proposals and changes to policy by ICE, CBP, DHS, Department of State, and other law enforcement partners.  Proposals |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | focus on interview tactics, data collection, screening and vetting, biometrics, and social media screening.   A spreadsheet and graph were also redacted which includes benefit fraud statistics that detail the number of fraud referrals in the past three years.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what information is available to law enforcement agencies, and the types of methods and patterns being used by law enforcement to enforce the law.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2029-2030 | Draft summary, Homeland Security Advisory Council In-Person Meeting, dated January 21, 2016 | (b)(5) | Briefing and Meeting Agenda | The information withheld under (b)(5) includes deliberative process information related to an upcoming meeting of the Homeland Security Advisory Council In-Person Meeting on January 21, 2016.  The document contains an overview of meeting and agenda, and background information. The withheld information consists of draft discussion points related to DHS's social media efforts, and highlighted the issues that needed to be discussed and decisions that needed to be made. This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2031 | Memorandum from USCIS Director to FDNS and RAIO, "Fraud Detection and National Security Use of Social Media" | (b)(7)(E) | Memorandum | Exemption (b)(7)(E) was used to withhold information within a memorandum from USCIS Director to FDNS and RAIO, "Fraud Detection and National Security Use of Social Media."  The information redacted under Exemption (b)(7)(E) consists of a specific authority for FDNS to begin |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | screening certain applicants with potential terrorism ties using social media vetting. This information, if disclosed, would reveal the criteria in place that is used to determine whether enhanced screening methods and procedures are necessary for the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what the focus will be when conducting vetting, what patterns and factors are being evaluated, and what information is available to law enforcement agencies, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 2033-2034 | Draft Memorandum from USCIS Director to FDNS's Associate Director, "Use of Social Media for the DHS K-1 Review" | (b)(5)<br><br>(b)(7)(E) | Draft Memorandum | The information withheld under (b)(5) as deliberative process privileged information consists of a draft version of a memorandum titled "Use of Social Media for the DHS K-1 Review," which would be sent by the USCIS Director to FDNS's Associate Director once finalized.  The draft memorandum contains pre-decisional and  deliberative information, including multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, and requests for additional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | information.  All of this information is part of the deliberative process. |
|---|---|---|---|---|
| | | | | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about  the draft memorandum, which were provided by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
| | | | | The information redacted under Exemption (b)(7)(E) consists of a specific authority for FDNS to begin screening certain applicants with potential fraud, public safety, and national security concerns.  This information, if disclosed, would reveal the criteria in place that is used to determine whether enhanced screening methods and procedures are necessary for the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what the focus will be when conducting vetting, what patterns and factors are being evaluated, and what information is available to law enforcement agencies, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                    VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2044-2046 | Social Media Task Force Action Plan -Future State, draft component questions and responses | (b)(5) | Draft Talking Points | The information withheld under (b)(5) consists of draft responses from multiple component subject matter experts, which respond to questions related to USCIS's use of social media in support of certain mission areas.  The withheld information includes draft comments, revisions, additions, re-wordings, suggestions, and clarifications.  All of this information is part of the deliberative process related to the draft document, which contains pre-decisional information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2047 | Draft USCIS Briefer with Social Media Talking Points | (b)(5) | Draft Talking Points | The information withheld under (b)(5) consists of deliberative process privileged information within a draft document containing talking points on the use of social media in DHS's vetting programs.  The withheld information includes draft text, revisions, additions, and re-wordings.  All of this information is part of the deliberative process related to the draft document, which contains pre-decisional information that is not reflected in the final version of the document.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2049 | Public Affairs Guidance, "System of Records Notice (SORN)-Alien File, Index, and National File Tracking System of Records, published to Federal Register (82 FR 43556) on September 18, 2017," dated October 20, 2017 | (b)(5) | Draft Guidance | The information withheld under (b)(5) consists of attorney-client privileged information within draft Responses to Queries (RTQ) in a draft copy of Public Affairs Guidance, "System of Records Notice (SORN)-Alien File, Index, and National File Tracking System of Records, published to Federal Register (82 FR 43556) on September 18, 2017," dated October 20, 2017.  The withheld information includes a summary of a legal opinion related to potential liability in response to a question from other USCIS employees.  Accordingly, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2052-2057 | Memorandum from DHS's Associate General Counsel of the Legal Counsel Division to USCIS's Chief Counsel, "Social Media Vetting Task Force - Identification of USCIS Legal Authorities for Operational Use of Social Media," dated December 19, 2015 | (b)(5) | Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum details legal issues, opinions, and analysis related to the relevant legal authorities for USCIS's operational use of social media.  It is written by USCIS's Chief Counsel, and is directed to DHS's Associate General Counsel, and contains USCIS OCC's legal analysis and opinion.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2062-2063, 2065 | Email, FW: URGENT request for review, dated September 6, 2016 | (b)(5): pages 2062-2063, 2065<br><br>(b)(7)(E): pages 2062, 2065 | Email | The information withheld under (b)(5) consists of deliberative and attorney-client privileged information within an email related to the review of  draft documents in preparation for briefing the USCIS Director for an upcoming Committee on Homeland Security hearing on September 14, 2016, which covered issues related to USCIS's use of social media in the vetting process.  The withheld information includes comments, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | recommendations, requests for additional information, and clarifications.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions within emails between USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of draft responses to questions for an upcoming congressional hearing on social media use in DHS, and a list of document titles that relate to the social media vetting process.  This information was compiled by USCIS employees as part of the review/revision process in finalizing the documents, and drafting the responses to the congressional inquiries.  The summaries and the titles contain law enforcement information and objectives, and specific details on the focus of the vetting initiatives, including the types of applications and applicants that would fall under this vetting process.  This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement |

of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including specific factors and information that law enforcement is aware of pertaining to the types of applications that may need additional screening.  The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers.  The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).

All other information within this document was segregated and determined non-exempt and disclosed.

All other information within this document was segregated and determined non-exempt and disclosed.

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| 2066-2068, 2071-2079 | Draft Issue Paper - USCIS Q & A's for CHS hearing, "Shutting Down Terrorist Pathways," dated September 1, 2016 | (b)(5): pages 2066-2067, 2071-2079<br><br>(b)(7)(E): pages 2066-2068, 2071-2079 | Draft Issue Paper | The information withheld under (b)(5) as deliberative process privileged information consists of draft comments, revisions, additions, re-wordings, suggestions, clarifications, and requests for additional information.  All of this information is part of the deliberative process related to the draft Q & A document that was drafted by USCIS employees to prepare USCIS's for an upcoming Committee on Homeland Security hearing on September 14, 2016, which covered issues related to USCIS's use of social media in the vetting process.  The draft contains pre-decisional information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information redacted under Exemption (b)(7)(E) consists of detailed information regarding the current status of DHS's social media screening and vetting tools, which social media applications are used, the government technology currently used as part of vetting, future plans to acquire new |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | technologies, and other key parts to DHS's social media process. Portions are also redacted that contain specifics on the results of screening using social media information, including which populations DHS focuses on when determining whether additional vetting is needed, how information is used, the results of screening specific applicants to date, what DHS's current background check process is and how social media is used in that process, and which law enforcement agencies collaborate with DHS and in what capacity. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement. The release of this information would put |
| --- | --- | --- | --- | --- |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2082 | Email, FW: K-1vetting LOI, dated December 16, 2015 | (b)(5) | Email | The information withheld under (b)(5) consists of deliberative and attorney-client privileged information within an email related to the review of a draft K-1 visa letter of interrogatory (LOI), which is part of the background investigation process of adjudication immigration benefits.  The withheld information includes OCC's summary of two key points regarding the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | LOI and social media screening initiative. This information reveals both deliberative and predecisional information, as well as privileged legal opinions of the USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).   All other information within this document was segregated and determined non-exempt and disclosed. |
| 2090-2092 | Email, FW: FINAL - Social Media and K-1 Visa Process, dated December 17, 2015 | (b)(5): pages 2090-2092<br><br>(b)(7)(E): page 2090 | Email | The information withheld under (b)(5) consists of deliberative and attorney-client privileged information within an email related to legal questions concerning proposed process changes to the K-1 visa adjudication process, including the background investigation process.  The withheld information includes proposals, recommendations, summaries of options, and feedback on options.  This information reveals both deliberative and predecisional information, as well as privileged legal opinions of the USCIS OCC attorneys that had been asked to provide legal analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a statement regarding the social media pilot that details who has access to the browsing system used for social media |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | screening.  This information, if disclosed, would reveal the individuals who have authorization for accessing social media as part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives, which would put individuals on notice that they were part of enhanced screening if those individuals handled their case.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2094 | Email, FW: Social Networking Sites, dated December 7, 2011 | (b)(5) | Email | The information withheld under (b)(5) consists of deliberative process privileged information within an email related to accessing social media sites as part of the adjudication process.  The withheld information includes a summary of the outstanding decisions that are being considered for the process and authority to access certain information during adjudication.  The withheld information reveals both deliberative and predecisional information. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).   All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| 2097-2099 | Email, FW: S1 needs quick assistance Email, RE: social media vetting for visa applicants, dated December 17, 2015 | (b)(5) | Email | The information withheld under (b)(5) consists of deliberative and attorney-client privileged information within an email related to a request from the DHS Secretary for information regarding USCIS's social media vetting of visa applicants, which was requested in preparation for an upcoming press engagement that the Secretary was participating in on December 16, 2015.  The withheld information includes comments, recommendations, requests for additional information, and clarifications.

The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions within emails between USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

All other information within this document was segregated and determined non-exempt and disclosed. |
| 2103-2106 | Email, FW: USCIS SMOUTs, dated December 17, 2015 | (b)(5): pages 2103-2106

(b)(7)(E): pages 2104-2106 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of five draft USCIS SMOUTs and Rules of Behavior documents related to the social media vetting process.  The emails are between USCIS OCC attorneys and include a legal summary of the draft documents and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

|  |  |  |  | key legal issues and recommendations regarding the optional courses of action. This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals OCC's attorneys' legal opinions and analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
|  |  |  |  | The information withheld under (b)(7)(E) includes specifics as to what methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*      VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2113 | Web Access Request Process: Questions for Social Media December 14, 2015 | (b)(5) | Draft Process Flowchart | The information withheld under (b)(5) as deliberative process privileged information consists of a draft version of a flowchart which details the proposed Web Access Request process.  The draft flowchart is predecisional and is pending determinations on the overall process of social media screening.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).   All other information within this document was segregated and determined non-exempt and disclosed. |
| 2117-2118 | Briefing Paper- Evaluation of Social Media Tools | (b)(7)(E) | Briefing Paper | Exemption (b)(7)(E) was used to redact a copy of a briefing paper evaluating the use of a specific tool as part of the social media |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | screening process. The information redacted under Exemption (b)(7)(E) consists of the name of the technological tool, evaluations of the uses of the tool as part of actual screening and the results, optional courses of action and recommendations, and summaries of the limitations and resource constraints. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process. It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|
| 2119-2122 | DHS Social Media Initiative Topline Document | (b)(5)<br><br>(b)(7)(E) | Briefing Summary | The information withheld under (b)(5) as deliberative process privileged information consists of a Topline Document that contains a summary of key issues and initiatives being considered as part of the pilot to use social media information for vetting purposes related to certain immigration programs.  This information is part of the deliberative process related, and consists of predecisional considerations on the pilot programs and options being considered by DHS, and each Components proposed submissions for operational use, and the status of those considerations.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information redacted under Exemption (b)(7)(E) consists of a summary of DHS's policy regarding the use of social media to support and perform core missions of CBP, ICE, and USCIS.  Specific examples are redacted, which include multiple pilots to expand the use of social media in DHS's vetting process and the results of the screening efforts during that pilot.  This information, if disclosed, would reveal the current procedures and authorized components that use social media as part of |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*  VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | vetting and how that screening is used, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2123-2126 | Briefing Paper - USCIS Social Media Use | (b)(5): pages 2123-2126<br><br>(b)(7)(E): page 2125 | Briefing Paper | The information withheld under (b)(5) consists of deliberative information contained in a USCIS Briefing Paper drafted by FDNS. The Briefing Paper focused on USCIS's social media use, the operations currently in progress, and operations being considered for future expansion.  The withheld information includes summary of the pilot programs, potential courses of action being considered, benefits and challenges that had been identified, and recommended course of action, all of which is part of the deliberative and pre-decisional process.   Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information redacted under Exemption (b)(7)(E) consists of a summary of a draft policy memorandum that proposed to expand the use of social media more broadly across USCIS, and details as to which USCIS employees would be given access and for |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | what specific purposes, and the benefits and challenges involved with the proposed course of action.  This information, if disclosed, would reveal the current procedures and authorized components that use social media as part of vetting and how that screening is used, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2127-2130 | Email, RE: Social Media partnership, dated December 18, 2015 | (b)(5): pages 2127-2128, 2130<br><br>(b)(7)(E): pages 2127-2130 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the drafting and review of a legal opinion that USCIS OCC attorneys were preparing for DHS OGC.  The emails are between USCIS OCC attorneys and include a legal summary of the draft paper and key legal issues related to statutory and regulatory authorities pertaining to USCIS's social media vetting operations. This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals OCC's attorneys' legal opinions and analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The information withheld under (b)(7)(E) includes a summary of two current pilot and an upcoming third pilot program that use social media vetting to examine certain refugee applicants, the results of screening during those pilots, and which law enforcement agencies had partnered with USCIS for the pilots.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2132-2135 | Email, RE: Social Media planning--Monday Deliverable Part 2, dated December 18, 2015 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to review of a draft memorandum regarding FDNS's Use of Social Media for Refugee Processing.   The emails are between USCIS OCC attorneys and USCIS employees, and include proposed language for the memorandum and recommended courses of action.  The language highlights specific proposals and changes that were being considered for USCIS's use of social media as part of the refugee vetting process.   This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals OCC's attorneys' legal opinions and analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a summary of a proposed expansion |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | to the use of social media vetting to examine certain refugee applicants, what the use would involve, the limited list of social media applications that it would involve, and how it would be limited and what the information could be used for.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2138-2140 | Email, FW: sub-IPC read out (Social Media), dated December 21, 2015 | (b)(5): pages 2138-2139<br><br>(b)(7)(E): page 2140 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request from the Department of State for USCIS to provide information to the National Security Council regarding the collection of social media information.  The emails are between USCIS OCC attorneys and USCIS employees, and include detailed summaries of the issues that need to be considered and recommended courses of action.  The language highlights specific proposals and changes that were being considered for USCIS's use of social media as part of the refugee vetting process.   This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals OCC's attorneys' legal opinions and analysis.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a list of the specific social media applications and websites that were approved |

| | | | | for use by agency employees when conducting social media screening and vetting. This information, if disclosed, would reveal the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 2141-2143 | Email, RE: quick look for CIS (social media sites and eliciting account info), dated December 21, 2015 | (b)(5): pages 2141-2142<br><br>(b)(7)(E): pages 2141-2143 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails that relate to the review of a draft proposal on incorporating certain social media sites as part of screening certain refugee applicants. The emails are between USCIS OCC attorneys and USCIS employees, and include proposed language for the document, courses of action being considered, and recommendations.  Draft language for the collection of information on immigration forms is also discussed as part of the review of the proposed process.  This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals OCC's attorneys' legal opinions and analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a discussion of the collection of social media information from applicants, whether to use forms to request that information, and how the information collected would be used.  This information, if disclosed, would reveal the specific information being collected for use in |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | screening and vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2144-2152 | Email, RE: social media planning- due Monday, dated December 22, 2015 | (b)(5): pages 2144-2152 (b)(7)(E): pages 2149-2152 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails that relate to the review of a draft proposal on |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | incorporating certain social media sites as part of screening certain refugee applicants. The emails are between USCIS OCC attorneys and USCIS employees, and include proposed language for the document, courses of action being considered, and recommendations.  This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals OCC's attorneys' legal opinions and analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a discussion of the collection of social media information from applicants, whether to use forms to request that information, and how the information collected would be used.  This information, if disclosed, would reveal the specific information being collected for use in screening and vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2154, 2157 | Email, RE: Here's the Final K-1 Visa Fact Sheet - Congressional Notification - Response to K-1 Application process, dated December 22, 2015 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) consists of deliberative and attorney-client privileged information within an email related to the review of a draft K-1 Visa Fact Sheet that would be submitted to Congress. The emails contain draft language for the fact sheet and summaries of proposed process changes to the K-1 visa adjudication process, including the background investigation process. The withheld information includes proposals, questions for clarification, recommendations, summaries of options, and feedback on options. This information reveals both deliberative and predecisional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | information, as well as privileged legal opinions of the USCIS OCC attorneys that had been asked to provide legal analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes specific details of what documents and biographic information are used for the background check process, what other governments require and use during their vetting process, and the types of applications and applicants that would fall under this vetting process. This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. It would also reveal guidelines that could risk circumvention of the law, including specific factors and information that law enforcement is aware of pertaining to the types of applications that may need additional screening. The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers. |
|---|---|---|---|---|

| | | | | The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2161 | Memorandum from DHS Office of Legislative Affairs, Congressional Notification, "Response to Chairman Goodlatte' s Statement on the K-1 application review" | (b)(7)(E) | Memorandum | Exemption (b)(7)(E) was used to withhold memorandum for Congressional Notification from the DHA Office of Legislative Affairs.  The information withheld under (b)(7)(E) includes a response to Chairman Goodlatte' s Statement on the K-1 application review, which includes a detailed summary of the K-1 visa vetting process.  The document also contains a summary of the vetting process that was conducted for a specific individual who was accused of perpetrating a terrorist attack, and the results of those screening processes.  This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*            VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including specific factors and information that law enforcement is aware of pertaining to the types of applications that may need additional screening.  The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers.  The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
| 2163-2169 | Email, RE: social media planning- due Monday, dated December 22, 2015 | (b)(5): pages 2163-2169<br><br>(b)(7)(E): pages 2163, 2166-2167, 2169 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails that contain a summary of a recent DHS Social Media Task Force meeting and outstanding issues currently pending regarding social media use for operational and intelligence purposes across DHS.  The emails are between USCIS OCC attorneys, USCIS |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

<table>
<tr><td></td><td></td><td></td><td></td><td>employees, and DHS employees, and include a summary of significant actions requiring follow up, courses of action being considered, and recommendations.  This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals USCIS OCC and ICE OPLA's attorneys' legal opinions and analysis.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a summary of a proposed expansion to the use of social media vetting to examine certain refugee applicants, what the use would involve, the specific social media applications that it would involve, and how it would be limited and what the information could be used for.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as</td></tr>
</table>

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | part of the screening and vetting process and what the limitations of access are. The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2172-2174, 2176-2179, 2181-2182, 2184 | DHS Social Media Task Force PowerPoint presentation, "Current State of Social Media Use," dated December 23, 2015 | (b)(5): pages 2172, 2182, 2184<br><br>(b)(7)(E): pages 2173-2182 | PowerPoint | Exemptions (b)(5) was used to withhold portions of a PowerPoint presentation created by the DHS Social Media Task Force, titled "Current State of Social Media Use," dated December 23, 2015. The information withheld under (b)(5) as deliberative process privileged information consists of portions of pages 2182 and 2184, which contain summaries of outstanding topics, courses of action being considered, and recommendations for next steps. The information withheld under (b)(5) as |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

|  |  |  |  | attorney-client privileged information consists of a portion of page 2172, which contains a summary of a legal opinion regarding potential legal concerns and risks of liability that could arise.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). The information redacted under Exemption (b)(7)(E) consists of a summary of the social media screening usage policies and how many were pending approval, the specific operational and intelligence uses approved for each DHS component, how DHS components leverage social media for operational and intelligence uses, including specific examples of those uses and results, the technological tools used for conducting operations, the technical capabilities and gaps, and proposed next steps planned.   This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that |
|--|--|--|--|--|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*      VAUGHN INDEX

| | | | | could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement. The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process. It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2190-2191 | DHS/USCIS/DOS-CA K-1 Program Review: Draft | (b)(5) | Draft List of Tasks | The information withheld under (b)(5) as deliberative process privileged information |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | Recommendations/ Actions on the use of Social Media in the screening process | (b)(7)(E) | | consists of a draft version of a recommendations document developed by the joint USCIS, DHS, and DOS Social Media working group. The recommendations focused on the review of the K-1 visa program and the use of social media in the screening process. The draft contains pre-decisional and deliberative information, including comments, revisions, additions, re-wordings, suggestions, clarifications, and requests for additional information. All of this information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions about the draft recommendations, which were provided by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information redacted under Exemption (b)(7)(E) consists of the draft recommendations and actions on the use of social media to screen a specific applicant type, and comments that include discussion of the proposed courses of action, including how the screening procedures could be used by law enforcement, how they were used in the screening of individuals involved in a |
| --- | --- | --- | --- | --- |

|  |  |  |  | recent terrorist event, and proposed options for consideration in the process of social media screening and vetting. This information, if disclosed, would reveal how law enforcement agencies coordinate with USCIS and the methods used to conduct searches, and the specific factors that immigration officers are looking for to indicate possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, which areas and applicants will be screened, and the specific factors being considered by law enforcement during the vetting process.  The release of this information could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*            VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2193-2197 | DHS Management Directive 110-01, SMOUT Compliance Timeline | (b)(5) | Review Flowchart | The information withheld under (b)(5) as deliberative process privileged information related to the department-wide coordinated review of a draft SMOUT compliance timeline.  The document lists specific details revealing the nature of every SMOUT being drafted by each component regarding their use of social media, and outstanding issues and recommendations for each.  All of this information is part of the deliberative process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).   All other information within this document was segregated and determined non-exempt and disclosed. |
| 2233-2235, 2237-2241, 2243, 2245, 2247-2248 | DHS Social Media Task Force PowerPoint presentation, "Operational Recommendations for Improving Social Media Use," dated December 30, 2015 | (b)(5): pages 2233-2235, 2237-2241, 2245, 2247-2248<br>(b)(7)(E): pages 2235, 2237-2239, 2243 | PowerPoint | Exemptions (b)(5) was used to withhold portions of a PowerPoint presentation created by the DHS Social Media Task Force, titled "Operational Recommendations for Improving Social Media Use," dated December 30, 2015.  The information withheld under (b)(5) as deliberative process privileged information consists of summaries of outstanding topics, courses of action being |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | considered, recommendations for next steps, and challenges identified.  This information, if released, would reveal the deliberative process and predecisional information. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

The information redacted under Exemption (b)(7)(E) consists of a summary of the social media screening usage policies and how many were pending approval, the specific operational and intelligence uses approved for each DHS component, how DHS components leverage social media for operational and intelligence uses, including specific examples of those uses and results, the technological tools used for conducting operations, the technical capabilities and gaps, and proposed next steps planned.   This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that |
|--|--|--|--|--|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). <br><br> All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2251-2253 | DHS Social Media Task Force, USCIS draft Response to Task | (b)(5) | Draft Response | The information withheld under (b)(5) includes deliberative and attorney-client |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | Force Recommendations, dated January 5, 2016 | (b)(7)(E) | | privileged information related to the review of a draft USCIS response to the DHS Social Media Task Force's recommendations for next steps of developing policies and guidance for the use of social media to support USCIS's mission.  The draft includes detailed summaries of the issues that need to be considered and recommended courses of action, as well as comments and revisions to the draft USCIS responses.  This pre-decisional information is part of the deliberative process, and is also protected under attorney-client privilege, as it reveals OCC's attorneys' legal opinions and analysis. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of the DHS Social Media Task Force's recommendations regarding DHS's current and future use of social media to support operational and investigative purposes, which employees within USCIS are authorized to search social media information, which immigration benefit types and individuals were part of the pilot to expand the use of social media in screening immigration applicants, what technological tools are being acquired for DHS use, analysis of how effective or difficult social media screening was for different background check types, and the upcoming |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | priorities to continue to expand DHS's use of social media information to support its' mission.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research, and which immigration benefit types are likely to be subject to social media screening, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). <br><br> All other information within this document was segregated and determined non-exempt and disclosed. |
| 2254, 2256 | Email, RE: [CLEARANCE REQUEST] Social Media K-1 Authorization Memo, dated January 8, 2016 | (b)(5) <br><br> (b)(7)(E) | Email | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within emails between USCIS OCC and USCIS employees, which are related to the review of a draft Social Media K-1 Authorization Memo, which would allow FDHS to conduct an analysis of certain social media information related to certain applicants for immigration benefits. The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the draft, questions about accuracy, and requests for additional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information, which includes pre-decisional and deliberative information.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of a legal opinion regarding the proposed language in the memorandum drafted by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a discussion of the collection of social media information from applicants, what privacy documentation would be needed to document this collection, and the specific immigration benefit type that would be subject to collection of social media information.  This information, if disclosed, would reveal the specific information being collected for use in screening and vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in individuals hiding the use of certain |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2259-2269 | Privacy Threshold Analysis (PTA), version number 01-2014, "S&T Social A2356Media Tool Pilot Evaluation" | (b)(5): pages 2260-2269<br>(b)(7)(E): pages 2259-2265, 2268-2269 | Privacy Threshold Analysis | Exemptions (b)(5) was used to withhold deliberative process privileged information within Privacy Threshold Analysis (PTA), version number 01-2014, "S&T Social A2356Media Tool Pilot Evaluation."  This document covered a study of the application of social media tools to k-1 visa applicants, and examined options to address the use of social media as part of background checks for immigrations populations.  The information withheld under (b)(5) as deliberative process privileged information consists of a review of proposed process challenges, concerns, and recommendations, which include pre-decisional and deliberative information. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information redacted under Exemption (b)(7)(E) consists of the names of several technological tool being considered by DHS for use in facilitating its' operational use of social media, evaluations of the uses of the tools as part of actual screening and the results, optional courses of action and recommendations, and summaries of the limitations and resource constraints.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*     VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2270-2284 | Memorandum from DHS's Office of General Counsel to the DHS Social Media Task Force, "Overview of Department of Homeland Security Legal Authorities to Use Social Media," dated December 22, 2015 | (b)(5): pages 2270-2284<br>(b)(7)(E): pages 2273, 2280 | Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum details legal issues related to the Overview of Department of Homeland Security Legal Authorities to Use Social Media.  It is written by DHS OGC and directed to the SMTF, which had requested legal analysis and opinion.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of National Protection and Programs (NPPD) and ICE's use of social media for operational purposes and methods used by law enforcement for screening purposes, the specific social media |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | applications screened, and analysis outlining the legal considerations with the various methods proposed.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research for operational and investigative purposes, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2285-2286 | Draft, "USCIS Social Media & Vetting: Efforts to Date," dated January 4, 2016 | (b)(5)<br><br>(b)(7)(E) | Draft Summary Overview | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the draft Summary/Updates on USCIS's Social Media & Vetting efforts to date, as of January 4, 2016.  The material reflects deliberative information, is pre-decisional, and includes information that is not reflected in the final version of the document. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). The information redacted under Exemption (b)(7)(E) consists of a summary of the social media screening efforts to date, the timeline for proposed pilot projects, optional courses of action and recommendations, detailed information about which social media applications were used and the immigrant populations subject to screening, and summaries of the limitations and resource constraints.  The document also contains detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and which key words were used to search those social media applications. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what words and images are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 2288-2299 | Memorandum from DHS's Office of General Counsel, "DHS's Use of the Internet and Social Media Tools in Conducting Enforcement and Intelligence Operations," dated January 27, 2010 | (b)(5): pages 2288-2299<br><br>(b)(7)(E): pages 2289-2292 | Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum details legal issues related to DHS's Use of the Internet and Social Media Tools in Conducting Enforcement and Intelligence Operations.  It is written by DHS OGC, and contains their legal analysis and opinion. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes legal analysis regarding enforcement and intelligence activities involving online and social media monitoring, and DHS's compliance with applicable privacy laws, civil rights and civil liberties and constitutional rights, proposed courses of action as part of enforcement activities and procedures, and analysis outlining the legal considerations with the various methods proposed.  Detailed information is redacted that includes the use of social media for enforcement activities within ICE, CBP, NPPD, Federal Protective Services, USCIS, TSA, Federal Air Marshalls, and the Secret Service, what methods are used, and the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | results of specific enforcement operations that use social media screening.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research for operational and investigative purposes, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2303-2305 | Email, RE: Social Media memo, dated January 25, 2016 | (b)(5): pages 2303-2305<br>(b)(7)(E): pages 2303-2304 | Email | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within emails between USCIS OCC attorneys, which are related to the review of a draft Social Media memo on USCIS's use of certain social media information related to certain applicants for immigration benefits.  The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the draft, questions about legal authority and relevant statutory and regulatory citations, and requests for additional information, which includes pre-decisional and deliberative information. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | The information withheld under (b)(5) as attorney-client privileged information consists of a legal opinion regarding the draft which was written by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). <br><br> The information withheld under (b)(7)(E) includes draft language that was written for a memorandum on whether USCIS has authority to engage in undercover activities while engaging in the operational use of social media, and a summary of the outstanding issues and courses of action being considered, and a summary of the form that would be used to collect the information and the draft notice for the form.  This information, if disclosed, would reveal the collection methods and uses the agency considered for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2306 | Email, Director Rodriguez testimony and social media vetting, dated January 29, 2016 | (b)(5) | Email | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within emails between USCIS OCC and DHS OGC attorneys, which are related to the review of draft testimony to be submitted by Director Rodriguez related to social media vetting in refugee screening. The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the draft testimony and specific edits and issues of note, which includes pre-decisional and deliberative information. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The information withheld under (b)(5) as attorney-client privileged information consists of a legal opinion regarding the draft which was written by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2310-2311 | Draft testimony for USCIS Director Rodriguez for a hearing on "Crisis of Confidence: Preventing Terrorist Infiltration through U.S. Refugee and Visa Programs," dated February 3, 2015 | (b)(5) | Draft Testimony | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within a copy of draft testimony to be submitted by Director Rodriguez related to social media vetting in refugee screening.  The information withheld under (b)(5) as deliberative process privileged information consists of edits, revisions, comments, questions, and recommendations for the draft testimony, which is pre-decisional and deliberative information.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments that include legal opinions regarding the draft which were written by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2313, 2315 | Email, RE: Director Rodriguez testimony and social media vetting, dated January 31, 2016 | (b)(5) | Email | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within emails between USCIS OCC and DHS OGC attorneys, which are related to the review of draft testimony to be submitted by Director Rodriguez related to social media vetting in refugee screening. The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the draft testimony and specific edits and issues of note, which includes pre-decisional and deliberative information. The information withheld under (b)(5) as attorney-client privileged information consists of a legal opinion regarding the draft which was written by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| 2317-2327 | Email, RE: *URGENT* Testimony #1117293 - USCIS - Refugee/Visa Screening - need response to FO, dated February 1, 2016 | (b)(5): pages 2317-2327 <br><br> (b)(7)(E): page 2325 | Email | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within emails between USCIS OCC attorneys and USCIS employees, which are related to the review of draft testimony to that will be given to the House Committee on Homeland Security related to social media vetting in refugee screening. The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the draft testimony and specific edits and issues of note, which includes pre-decisional and deliberative information. <br><br> The information withheld under (b)(5) as attorney-client privileged information consists of a legal opinion regarding the draft which was written by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). <br><br> The information withheld under (b)(7)(E) includes summaries of draft testimony from a hearing on refugee visa screening, discussions over the legal authorities impacting the statements in the testimony, clarifications on specific procedures and methods USCIS's employees use in screening refugee visa applicants, and specific details on the focus of the vetting |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | initiatives, including the types of applications and applicants that would fall under this vetting process. This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. It would also reveal guidelines that could risk circumvention of the law, including specific factors and information that law enforcement is aware of pertaining to the types of applications that may need additional screening. The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers. The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|  |  |  |  |  |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*     VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 2330-2332 | Draft Social Media Expansion Plan for Refugee Applicants, Concept of Operations | (b)(5)<br><br>(b)(7)(E) | Draft Concept of Operations | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within a draft Concept of Operations (CONOP) document which focused on the Social Media Expansion Plan for Refugee Applicants.  The CONOP draft focused on certain key elements of the plan including the categories of applicants that will be part of the social media vetting process, the social media platforms to access, staffing requirements, and the process for reviewing results and incorporating them into the adjudicative process.<br><br>The information withheld under (b)(5) as deliberative process privileged information consists of  comments, edits, revisions, and proposed options for courses of action, as well as alternative courses of action.  This information is part of the deliberative process and consists of information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments including legal opinions regarding the draft which was written by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately |

|  |  |  |  | exempt from disclosure pursuant to Exemption (b)(5).

The information redacted under Exemption (b)(7)(E) consists of specific techniques and procedures involved in the operational use of social media to conduct screening for certain applicants, including detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and the factors, patterns, words, and phrases that are used to search those social media applications.  The redacted information also contains summaries of the program that detail which applicants will be flagged for enhanced review that includes social media screening, which areas the pilot will be taking place, the indicators that will be looked for and on which social media applications, and the challenges identified in the process of social media screening and vetting. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, the methods used to conduct searches, and the specific factors that immigration officers are looking for to indicate possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, which areas and applicants will be searched during which time periods, and the specific factors being considered by law enforcement during the vetting process.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. |
| 2334-2335 | Email, RE: Sharing of social media handles etc. with IC partners, dated March 28, 2016 | (b)(5): pages 2334-2335 | Email | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within emails between USCIS OCC and DHS OGC attorneys, which are related to review of a draft agreement that |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | (b)(7)(E): page 2334 | | will detail what information DHS is able to share with the intelligence community, specifically related to information collected during the social media vetting process. The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the draft agreement, the specific process issues being considered, and optional courses of action, which includes pre-decisional and deliberative information. The information withheld under (b)(5) as attorney-client privileged information consists of a legal opinion regarding the draft agreement and thoughts on potential liability, which was written by USCIS OCC attorneys that had been asked to provide legal review, and shared with DHS OGC attorneys. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). Exemption (b)(7)(E) was used to withhold an attorney's summary of the draft agreement and courses of action being considered as part of certain information sharing agreements with other law enforcement agencies, and whether USCIS would be share information from social media screening, including social media handles, with intelligence community partners, the proposed uses for the information, and the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | attorney's opinion as to the legal issues that needed to be addressed in regards to proposed options for sharing social media information with other law enforcement partners.  This information, if disclosed, would reveal the methods that immigration officers are authorized and prohibited from using to collect social media information and how that information may be shared with other law enforcement partners, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what limitations law enforcement has in sharing information, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). <br><br> All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2336-2339 | Draft USCIS/State Social Media Elicitation Plan - | (b)(5) | Draft Concept of Operations | Exemptions (b)(5) was used to withhold deliberative process and attorney-client |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | Concept of Operations, dated February 19, 2016 | (b)(7)(E) | | privileged information within a draft Concept of Operations (CONOP) document which focused on the Social Media Elicitation Plan for the Refugee Applicant Pilot.  The CONOP draft focused on certain key elements of the plan, which involved a pilot to elicit certain social media identifiers of certain refugee applicants. |
| --- | --- | --- | --- | --- |
| | | | | The information withheld under (b)(5) as deliberative process privileged information consists of draft language and comments, as well as proposed options for courses of action, all of which is pre-decisional and part of the deliberative process. |
| | | | | The information redacted under Exemption (b)(7)(E) consists of specific techniques and procedures involved in the operational use of social media to conduct screening for certain applicants, including detailed information about some applicants that had been screened and the results of that screening, the specific social media applications reviewed, and the factors and patterns that are highlighted as part of searching those social media applications.  The redacted information also contains summaries of the program that detail which applicants will be flagged for enhanced review that includes social media screening, which areas the pilot will be taking place, the indicators that will be looked for and on which social media applications, and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | the challenges identified in the process of social media screening and vetting. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, the methods used to conduct searches, and the specific factors that immigration officers are looking for to indicate possible indicators of fraud, public safety, or national security concerns, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, which areas and applicants will be searched during which time periods, and the specific factors being considered by law enforcement during the vetting process.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of summaries of legal opinions and potential liability risks provided to USCIS employees by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
|---|---|---|---|---|
| 2340-2341 | Email, RE: Comments on Social Media paper, dated March 28, 2016 | (b)(5)<br><br>(b)(7)(E) | Email | Exemptions (b)(5) was used to withhold deliberative process privileged information within emails between USCIS employees and USCIS OCC and DHS OGC attorneys, which are related to review of a draft Concept of Operations (CONOP) document which focused on the Social Media Expansion Plan for Refugee Applicants.  The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the draft agreement, the specific process issues being considered, and optional courses |

of action, which includes pre-decisional and deliberative information.

The information withheld under (b)(7)(E) includes a list of document titles that relate to the social media vetting process and DHS's plans for expansion.  This information was compiled by USCIS employees as part of the review/revision process in finalizing the documents, and the titles contain law enforcement information and objectives.  The titles also contain specific details on the focus of the vetting initiatives, including the types of applications and applicants that would fall under this vetting process.  This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including specific factors and information that law enforcement is aware of pertaining to the types of asylum applications that may need additional screening.  The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers.

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). <br><br> All other information within this document was segregated and determined non-exempt and disclosed. |
| 2345, 2350-2353 | USCIS's Refugee Affairs Division, Guidance for Use of Social Media in Syrian Refugee Adjudications, dated September 25, 2018 | (b)(5): pages 2351-2353 <br><br> (b)(7)(E): pages 2345, 2350-2353 | Guidance Document | The information withheld under (b)(5) as deliberative process privileged information consists of a document written by USCIS's Refugee Affairs Division, "Guidance for Use of Social Media in Syrian Refugee Adjudications," dated September 25, 2018. The purpose of the document is to provide guidance to immigration officers regarding how to use the results of social media checks in the refugee process.  The withheld information focuses on the types of questions and issues that adjudicators may want to look for when reviewing an application or interviewing an applicant related to social media information.   These questions are used in adjudications and reveal the immigration officers' predecisional deliberations and thoughts. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | The information withheld under (b)(7)(E) includes methods and guidance to immigration officers regarding how to use the results of social media checks in the refugee process, including specific examples of questions that can be used by immigration officers to question applicants to verify social media results as part of social media vetting. This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what questions may be asked, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2355 | Email, RE: CRCL Protecting First Amendment in Social Media Research, dated April 14, 2016 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal guidance regarding USCIS's authority to collect and use social media information, specifically in relation to First Amendment protected activities. The emails are between USCIS OCC attorneys and include a summary of the legal issues and the legal research being conducted, and the proposed courses of action, which represents part of the deliberative and pre-decisional process. The information in the emails also contains the detailed legal opinions on issues related to First Amendment protected activities and how that analysis impacts the recommended courses of action. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information within this document was segregated and determined non-exempt and disclosed. |
| 2356-2357 | Email, RE: Social Media Pilot Update, dated April 25, 2016 | (b)(5): pages 2356-2357<br><br>(b)(7)(E): page 2357 | Email | Exemptions (b)(5) was used to withhold deliberative process privileged information within emails between USCIS OCC attorneys and USCIS employees, which are related to the review of draft Social Media Pilot Plan. The information withheld under (b)(5) as deliberative process privileged information consists of a summary of the Social Media Working Group's feedback on the draft, and specific edits made to the draft, which consists of pre-decisional and deliberative information.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered as part of the Social Media Pilot Plan, specific edits to language in the plan describing the restrictions on searches, what methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2359-2375 | USCIS's Office of Policy & Strategy (OP&S), National Security & Benefits Integrity | (b)(5): pages 2359-2375 | Draft Pilot Plan | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within a draft version |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | Division (NSBI), Social Media Pilot Plan - Draft | (b)(7)(E): page 2374 | | of the USCIS's Office of Policy & Strategy (OP&S), National Security & Benefits Integrity Division (NSBI), Social Media Pilot Plan.  The document provides the goals and scope of the pilot, and the options for testing the operational requirements, process, and functionality for using social media to support the agency's mission.   The information withheld under (b)(5) as deliberative process privileged information consists of the draft text and proposed process for the pilot, which consists of pre-decisional and deliberative information. Additionally, (b)(5) was used to protect attorney-client information that included a summary of a legal opinion and analysis from USCIS OCC attorneys regarding First Amendment protected activities. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  Exemption (b)(7)(E) was used to redact details regarding the current social media pilot plans in progress, proposed processes and courses of action being considered regarding who might be the subject of a search, the pilot duration and timeline, the technology tools to be used, and limitations on social media use. This information, if disclosed, would reveal the methods and technology resources currently being used in the vetting process by law enforcement and |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by law enforcement as part of the vetting and screening process.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  Releasing this information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2376 | Email, RE: May 4th and 11th, 2016 SMTF meetings, dated May 12, 2016 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft delegation.  The emails are between USCIS OCC attorneys and include a summary of a recent meeting between the Department of State, USCIS, and DHS |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | focused on draft documents put together by the DHS Social Media Working Group. The withheld information includes specific legal issues and outstanding questions that OCC attorneys had following the meeting. This information represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains a summary of USCIS OCC attorneys' legal position and questions regarding courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
| 2378-2381 | State-DHS K-1 Review Action Plan | (b)(5): pages 2378-2381<br><br>(b)(7)(E): pages 2378, 2380 | Action Plan | The information withheld under (b)(5) as deliberative process privileged information consists of an Action Plan related to a review of the K-1 visa process. The draft contains pre-decisional and deliberative information, including proposed improvements and changes that DHS and the Department of State were considering, next steps and proposed courses of action, and summaries of challenges and concerns to take into account. All of this information is part of the deliberative process. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | The information withheld under (b)(7)(E) includes the specific background check steps that DHS and Department of State planned to take for review actions on K-1 visa petitions, included each background check and the stage it would occur for each petitioner, and coordination information pertaining to other law enforcement agencies.  This information, if disclosed, would reveal the specific procedures and methods taken place as part of the vetting process for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed.<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2384-2386 | Email, RE: Documents to review in advance of the next SMWG meeting (Monday - 5/23/16), dated May 23, 2016 | (b)(5): pages 2384-2386<br><br>(b)(7)(E): pages 2384-2385 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails between USCIS OCC attorneys and USCIS employees related to a request for legal guidance from the Social Media Working Group and the draft Social Media Pilot Plan.  The withheld |

|  |  |  |  | information consists of a summary of outstanding legal and privacy concerns specifically related to the coordination and review of potentially derogatory social media information, and the courses of action being considered.  The information in the emails also contains the detailed legal issues that are outstanding, and a summary of the legal opinions and questions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

The information withheld under (b)(7)(E) includes a list of document titles that relate to the social media pilot plan, and discussions between USCIS employees as part of the review/revision process in finalizing the documents.  The redacted information contains specific details on the focus of the pilot and vetting initiatives, and restrictions on how the information could be used.  This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | to law enforcement or immigration officers. The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2387-2389 | Draft, "Coordination, Review, and Authorization Prior to Using Derogatory Social Media Information in Adjudicating Immigration Benefits" | (b)(5)<br><br>(b)(7)(E) | Draft Guidance and Process | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within a draft version of a process document, "Coordination, Review, and Authorization Prior to Using Derogatory Social Media Information in Adjudicating Immigration Benefits."  The information withheld under (b)(5) as deliberative process privileged information consists of the draft text, comments, edits, revisions, and proposed process options, which consists of pre-decisional and deliberative information.  Additionally, (b)(5) was used to protect attorney-client information that includes comments containing legal opinions and analysis from USCIS OCC attorneys.  Accordingly, this |

|  |  |  |  | material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees that contain summaries of the proposed processes and courses of action being considered for coordination of derogatory social medial information, how information could be use and the restrictions on use, as well as details about the CARRP process and how to handle social media results involve potential fraud or national security concerns.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns, and could reasonably be expected to risk the circumvention of law |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| 2390-2393 | Email, FW: (DIRECTOR'S OFFICE PASSBACK]: Review of Social Media Pilot Analysis for Front Office, dated June 2, 2016 | (b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails between USCIS OCC attorneys and USCIS employees related to a request for review of a draft version of a document related to the Social Media Pilot analysis. The withheld information consists of a summary of outstanding legal and privacy concerns specifically related to the coordination and review of potentially derogatory social media information, and the courses of action being considered.  The information in the emails also contains the detailed legal issues that are outstanding, and a summary of the legal opinions and questions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). The information withheld under (b)(7)(E) includes the name of a specific technology tool and a list of document titles that relate to the social media vetting process and DHS's |

| | | | | plans for expansion.  This information was compiled by USCIS employees as part of the review/revision process in finalizing the documents, and the titles contain law enforcement information and objectives.  The titles also contain specific details on the focus of the vetting initiatives, including the technology tools being used to support social media searches.  This information, if disclosed, would reveal the methods and technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by law enforcement as part of the vetting and screening process. The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  Releasing this information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2396-2407 | USCIS's FDNS, "Review of the Defense Advanced Research Projects Agency 2.0 Social Media Pilot," draft dated June 24, 2016 | (b)(5): pages 2397-2407<br><br>(b)(7)(E): pages 2396-2407 | Draft Pilot Project Summary | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within a draft version of document drafted by USCIS's FDNS, "Review of the Defense Advanced Research Projects Agency (DARPA) 2.0 Social Media Pilot," draft dated June 24, 2016.  The document summarizes the status of the pilot, and the results obtained, and proposed recommendations and options for moving forwards with the next steps in developing the process.  The information withheld under (b)(5) as deliberative process privileged information consists of the draft text, comments, edits, revisions, and proposed process options, which consists of pre-decisional and deliberative information. Additionally, (b)(5) was used to protect attorney-client information that includes comments containing legal opinions and analysis from USCIS OCC attorneys. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a description of the specific |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | technology that USCIS and DHS would be using to conduct social media research as part of the vetting process, the specific cases and applicants that would be screened, and the challenges and limitations in the process. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal guidelines that could risk circumvention of the law, including the specific tools used by law enforcement as part of the vetting and screening process. The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  Releasing this information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2412-2413 | Email, RE: DHS Social Media governance issue, dated June 28, 2016 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails between USCIS OCC attorneys and DHS employees related to a request for legal opinions on concerns raised by DHS's Office for CRCL, which relate to the draft Social Media Government Charter.  The withheld information consists of a summary of outstanding legal and privacy concerns, and the courses of action being considered.  The information in the emails also contains the detailed legal issues that are outstanding, and a summary of the legal opinions and questions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2414-2420 | Charter for the Department of Homeland Security, Social Media Governance Structure – Draft | (b)(5) | Draft Charter Document | Exemptions (b)(5) was used to withhold deliberative process and attorney-client privileged information within a draft version of the Charter for the Department of Homeland Security, Social Media Governance Structure.  The document defines the mission, goals, authorities, and procedures for the DHS Social Media Governance Structure.  The information withheld under (b)(5) as deliberative process |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*         VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | privileged information consists of the draft text, revisions, deletions, and comments on the draft, all of which contain pre-decisional and deliberative information.  Additionally, (b)(5) was used to protect summaries of legal opinions written by DHS OGC and USCIS OCC attorneys and legal questions asked by DHS CRCL.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2421-2426 | Email, RE: Access, dated July 19, 2016 | (b)(5): pages 2421-2424<br><br>(b)(7)(E): pages 2421-2426 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information within emails between USCIS OCC attorneys and USCIS employees related to the process for submitting access requests by DHS employees who require access to certain website content.  The information withheld under (b)(5) as deliberative process privileged information consists of comments, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this pre-decisional information is part of the deliberative process.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions written by USCIS OCC attorneys that had |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | been asked to provide legal opinions. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes specifics as to how DHS employees must to request access to the browser used to conduct social media searches, and which components are authorized and for what purposes. This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers to conduct social media screening, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*      VAUGHN INDEX

| | | | | exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2428-2431 | Social Media WG Meeting Minutes, Information, Proposals, & Requests, dated November 9, 2015 | (b)(5)<br><br>(b)(7)(E) | Meeting Minutes | The information withheld under (b)(5) includes deliberative and attorney-client privileged information contained within a copy of Social Media WG Meeting Minutes, Information, Proposals, & Requests, dated November 9, 2015.  The document summarizes a recent meeting between the DHS Social Media Working Group, and the issues discussed and left outstanding.  The information withheld under (b)(5) as deliberative process privileged information consists of summaries of recommendations, proposed actions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this pre-decisional information is part of the deliberative process.<br><br>The information withheld as attorney-client privilege includes summaries of specific legal opinions and outstanding legal questions, as well as a list of some of the potential courses of actions.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

| | | | | The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered for USCIS's use of social media as part of its operations, including the status of the current use, the impact on law enforcement operations and other national security issues, and outstanding decisions that need to be made.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, how that information is obtained, and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| | | | | expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). All other information within this document was segregated and determined non-exempt and disclosed. |
| 2433-2435 | Email, RE: Social Media Pilot Plan & Privacy Act / First Amendment Issues (DRAFT), dated July 20, 2016 | (b)(5): pages 2433-2435 (b)(7)(E): pages 2434-2435 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal guidance regarding USCIS's authority to collect and use social media information, specifically in relation to Privacy Act issues and First Amendment protected activities. The emails are between USCIS OCC attorneys and include a summary of the legal issues and draft responses, which represents part of the deliberative and pre-decisional process. The information in the emails also contains the detailed legal opinions on two specific issues. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). The information withheld under (b)(7)(E) includes discussions between USCIS OCC attorneys as part of the review/revision process in finalizing the social media pilot plan. The redacted information contains |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | specific details on the focus of the pilot and vetting initiatives, and restrictions on how the information could be used.  This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers.  The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| --- | --- | --- | --- | --- |
| 2442-2445 | Email, RE: Follow up on Social Media Pilot Plans -- DRAFT | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | EMAIL TO OGC, dated August 15, 2016 | (b)(7)(E) | | privileged information related to a request for legal guidance regarding USCIS's legal review of draft social media pilot plans.   The emails are between USCIS OCC attorneys and include a summary of the legal issues and a draft email for DHS OGC which contains USCIS OCC's legal questions and analysis, which represents part of the deliberative and pre-decisional process.  The information in the emails also contains the detailed legal opinions on a variety of specific issues pertaining to the draft social media pilot plans.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes discussions between USCIS OCC and DHS OGC attorneys as part of the review/revision process in finalizing the social media pilot plan.  The redacted information contains specific details on the focus of the pilot and vetting initiatives, and restrictions on how the information could be used.  This information, if disclosed, would reveal the types of factors considered when determining whether an application needs additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | information would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in them not disclosing that information to law enforcement or immigration officers.  The disclosure of this information would reveal guidelines and procedures for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2447-2452 | Email, RE: Waiver language, dated August 26, 2016 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal guidance regarding USCIS's legal review of draft social media pilot plans.   The emails are between USCIS OCC attorneys and include a summary of the legal issues, legal questions and analysis, and other opinions regarding the legal question that was asked of USCIS OCC.  This information represents part of the deliberative and pre-decisional process.  The information in the |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | emails also contains the detailed legal opinions on whether or not waivers are legally required, and the courses of action being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2453-2460 | Draft memorandum from DHS's Office of General Counsel, regarding the use of social media | (b)(5): pages 2453-2460<br><br>(b)(7)(E): pages 2453-2455, 2459-2460 | Draft Legal Memorandum | The information withheld under (b)(5) as deliberative and attorney-client privileged information consists of legal opinions contained in this draft legal memorandum from DHS's Office of General Counsel, regarding the use of social media.  The memorandum explores the protections of the Privacy Act and how it impacts the collection of social content in relation to the adjudication of immigration benefits.  It is written by multiple DHS OGC attorneys, who have not finalized the draft yet, and includes comments, edits, revisions, additions, and questions.  It also contains a variety of legal opinions and deliberative material on the legal questions being raised.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes summaries of the proposed processes and courses of action being considered for USCIS employees while |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | engaging in the operational use of social media, analysis outlining the legal considerations with the various methods proposed, whether there were any legal restrictions to the use of information to grant or deny a benefit request, and the specific law enforcement activities that would be permitted using the information collected. This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, the specific information that is searched on specific social media applications, and the type of actions or methods an immigration officer may engage in during information collection, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns.  The release of this information could result in individuals being able to ascertain when an immigration officer has |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | searched social media or what information may be subject or not subject to a search, resulting in actions to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2461-2466 | Draft memorandum from USCIS's Office of Chief Counsel, regarding the use of social media | (b)(5)<br><br>(b)(7)(E) | Draft Legal Memorandum | The information withheld under (b)(5) as deliberative and attorney-client privileged information consists of legal opinions contained in this draft legal memorandum from USCIS's OCC, regarding the use of social media.  The memorandum explores whether USCIS can use social media to support its mission and to what extent and how it can be used within its legal authority.  It is written by multiple USCIS OCC attorneys, who have not finalized the draft yet, and includes comments, edits, revisions, additions, and questions.  It also contains a variety of legal opinions and deliberative material on the legal questions being raised. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
| | | | | Exemption (b)(7)(E) was used to redact portions of a draft version of a memorandum on FDNS's use of social media as part of immigration adjudication.  The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for FDNS employees who would be authorized to access the internet and social media content to support USCIS's mission.  The redacted language also contains specifics as to what actions should be taken for certain cases where there is suspected fraud or concerns regarding public safety or national security, the specific methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 2470-2480 | Memorandum from DHS's Office of General Counsel, "DHS's Use of the Internet and Social Media Tools in | (b)(5): pages 2470-2480 | Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | Conducting Enforcement and Intelligence Operations," dated January 27, 2010 | (b)(7)(E): pages 2471-2480 | | details legal issues related to DHS's Use of the Internet and Social Media Tools in Conducting Enforcement and Intelligence Operations.  It is written by DHS OGC, and contains their legal analysis and opinion.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes legal analysis regarding enforcement and intelligence activities involving online and social media monitoring, and DHS's compliance with applicable privacy laws, civil rights and civil liberties and constitutional rights, proposed courses of action as part of enforcement activities and procedures, and analysis outlining the legal considerations with the various methods proposed.  Detailed information is redacted that includes the use of social media for enforcement activities within ICE, CBP, NPPD, Federal Protective Services, USCIS, TSA, Federal Air Marshalls, and the Secret Service, what methods are used, and the results of specific enforcement operations that use social media screening.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research for operational and investigative purposes, which is part of specific techniques and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*     VAUGHN INDEX

| | | | | procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).  All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2481-2495 | Civil Rights and Civil Liberties Principles for DHS Intelligence Products Version 1.0 (September 19, 2014) | (b)(5): pages 2481-2495<br><br>(b)(7)(E): pages 2481-2494 | Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum was written by DHS's Office for Civil Rights and Civil Liberties (CRCL), and contains the CRCL Principles for DHS Intelligence Products, and related legal analysis and opinion.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes the CRCL Principles for DHS Intelligence Products which outline specific law enforcement methods and how CRCL principles apply to those methods, legal analysis regarding enforcement and intelligence activities involving online and social media monitoring, and DHS's compliance with civil rights and civil liberties and constitutional rights, proposed courses of action as part of enforcement activities and procedures, and analysis outlining the legal considerations with the various methods |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | proposed.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research for operational and investigative purposes, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2496 | Email, Delegation regarding Social Media, dated February 13, 2017 | (b)(7)(E) | Email | Exemption (b)(7)(E) was used to withhold a portion of an email related to a request for legal guidance regarding the implementation of DHS Delegation Number 15002, which granted USCIS's Director the authority to conduct certain law enforcement activities. The information withheld under (b)(7)(E) includes specifics as to what implementation documents have been reviewed by OCC attorneys, their legal options on the documents and the proposed methods for collection of social media information, and the limitations that will be placed on the collection methods.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|
| 2498-2499 | Email, RE: Social Media Delegation Templates, dated March 10, 2017 | (b)(5): page 2499<br><br>(b)(7)(E): pages 2498-2499 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a request for legal guidance regarding USCIS's legal review of draft social media delegation templates.   The emails are between USCIS |

|  |  |  |  | OCC attorneys and include a summary of the legal issues, legal questions and analysis, and other opinions regarding the legal question that was asked of USCIS OCC.  This information represents part of the deliberative and pre-decisional process.  The information in the emails also contains the detailed legal opinions on the courses of action being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes comments from OCC attorneys that have reviewed the draft delegation documents, their legal options on the documents and the proposed methods for collection of social media information, and the limitations that will be placed on the collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2502-2503 | Email, FW: Social Media Delegation Templates, dated March 16, 2017 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft Social Media Delegation.  The emails are between USCIS OCC attorneys and include two versions of a portion of the Delegation, highlighting the differences between the two versions, and clarifying the options involved, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*                VAUGHN INDEX

| | | | | information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes comments from OCC attorneys that have reviewed the draft delegation documents, their legal options on the documents and the proposed methods for collection of social media information, and the limitations that will be placed on the collection methods.   This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2504 | Email, RE: Query re: signed Delegation 15002 (WF1137322), dated January 24, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative process privileged information related to the review of the draft Social Media Delegation.  The emails are between USCIS and DHS employees, and include a question about a specific edit that USCIS made, and whether DHS had included that edit in the current draft Delegation.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| 2511-2513 | Draft Memorandum from DHS Acting Under Secretary for Intelligence and Analysis to the Inspector General, "DHS's 90 Day Letter to Office of Inspector General (OIG) 17-40 Final Report: DHS' Pilots for Social Media Screening Need Increased Rigor to Ensure Scalability and Long-term Success (OIG Project No. 16-079-ISP-USCIS)," – Draft | (b)(5): pages 2511-2512<br><br>(b)(7)(E) : pages 2511-2513 | Draft Memorandum | The information withheld under (b)(5) as deliberative process privileged information consists of multiple draft comments, revisions, additions, re-wordings, suggestions, clarifications, questions about accuracy, statements of uncertainty, and requests for additional information.  All of this information is part of the deliberative process related to the drafting of a Memorandum from DHS to the Inspector General regarding DHS' pilots for social media screening.  The draft memorandum contains draft recommendations and responses, which are pre-decisional and include information that is not reflected in the final version of the document.<br><br>The information withheld under (b)(5) as attorney-client privileged information consists of comments and legal opinions added to this draft document by USCIS OCC attorneys that had been asked to provide legal review. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes draft language in the document and comments written by USCIS employees and OCC attorneys that contain summaries of the proposed processes and courses of action being considered for DHS's pilots for social media screening.  The redacted language also |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*        VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | contains specifics as to what actions should be taken by different DHS components, including USCIS, CBP, and ICE, and details as to how each component was involved in the social media pilots.  This information, if disclosed, would reveal the specific methods and procedures that law enforcement and immigration officers are able to use to conduct social media research, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2514-2564 | Homeland Security Systems Engineering and Development Institute (HSSEDI), "Open Source and Social Media Technology/Tools Operational Effectiveness Evaluation Methodology," dated April 10, 2011 | (b)(5): pages 2514-2523, 2525, 2527-2539, 2541-2545, 2547-2564<br><br>(b)(7)(E): pages 2514-2564 | Evaluation Methodology | Exemptions (b)(5) and (b)(7)(E) were used to withhold a copy of Homeland Security Systems Engineering and Development Institute (HSSEDI), "Open Source and Social Media Technology/Tools Operational Effectiveness Evaluation Methodology," dated April 10, 2011.  HSSEDI is a federally funded research and development center (FFRDC) established by the Secretary of Homeland Security under Section 305 of the Homeland Security Act of 2002.  HSSEDI's mission is to assist the Secretary of Homeland Security, the Under Secretary for Science and Technology, and |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

|  |  |  |  | the DHS operating elements in addressing national homeland security system development issues where technical and systems engineering expertise is required. This evaluation methodology report includes the results of an Open Source and Social Media (OSSM) Technology Operational Effectiveness Evaluation Methodology. The focus is on the critical success factors, issues, and metrics for assessing these OSSM technologies and tools during the OSSM operational pilots. |
|  |  |  |  |  |
|  |  |  |  | The information withheld under Exemption (b)(5) consists of deliberative process privileged information, including specific courses of action that DHS was considering as part of the use of social media collection, including the options for certain tools, keyword data, search techniques, and other key elements pertaining to the technological development of the collection process.  The evaluation provides analysis on the options for the process, recommendations, challenges, issues to consider, and other key information that DHS would take into consideration prior to finalizing the technological part of the process.  This information is pre-decisional, and the release of the information would reveal factors considered as part of USCIS's technological decision making process.  These factors and potential options considered are deliberative |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | in nature, and the release of this information would chill and inhibit the ability of DHS employees to appropriately address concerns and various options when considering and developing new technological processes to support DHS's mission.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). <br><br> The information withheld under Exemption (b)(7)(E) includes a description of the specific technology that USCIS and DHS would be using to conduct social media research as part of the vetting process, the specific cases and applicants that would be screened, the specific social media applications reviewed, which employees and offices were involved in the process, how that information is used, how it will be analyzed, real data scripts and data files, and detailed process information regarding how information will be stored and shared.   This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media platforms that are being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | immigration and national security laws and directives. The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process. It could also result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). <br><br> All other information on this page was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2567-2592 | Homeland Security Operational Analysis Center, In-Progress Briefing, "Integrating Open- | (b)(5): pages 2567-2581, 2583-2592 | PowerPoint | Exemptions (b)(5) and (b)(7)(E) were used to withhold portions of a PowerPoint presentation created by the DHS Homeland |

| | source Data and Social Media into Information Systems," dated May 18, 2017 | (b)(7)(E): pages 2567-2569, 2577, 2582 | | Security Operational Analysis Center (HSAC). The PowerPoint contains an in-progress briefing, "Integrating Open-source Data and Social Media into Information Systems," dated May 18, 2017.<br><br>The information withheld under (b)(5) as deliberative process privileged information consists of portions of pages 2567-2581, and 2583-2592, which contain summaries of outstanding topics, courses of action being considered, and recommendations for next steps.  Draft documents are also included to highlight outstanding issues and decisions to be made.  This information is pre-decisional and deliberative in nature, and the release of this information would chill and inhibit the ability of DHS employees to appropriately address concerns and various options when considering and developing new processes to support DHS's mission.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact information that consists of specific technology platforms being used by to conduct social media searches and analyze data, how it should be accessed and used, the benefits to the use of these platforms, how to evaluate information collected, what information should be deemed credible or significant, what information should be saved |

|  |  |  |  | and documented, what techniques should be used when accessing user accounts, which specific social media platforms are required to be searched, and specific activities that are prohibited.  The information also includes details regarding how CBP, TSA, ICE, USCIS, and other project stakeholders use social media to support differing screening goals.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, and the specific websites, applications, and social media platforms that are being reviewed by law enforcement for screening purposes, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, what types of patterns, actions, and words are being searched for, and the specific tools used by law enforcement.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  It could also |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2594-2597 | Email, RE: Follow-up to last week's meeting, dated June 2, 2017 | (b)(5): pages 2594, 2596-2597<br>(b)(7)(E): pages 2594-2597 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a follow-up meeting held by the Social Media Working Group.  The emails are between USCIS OCC attorneys and USCIS employees, and include a summary of the meeting, a specific outstanding issue related to DHS's social media vetting process, decisions to be made, and factors to take into account when making a decision.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

|  |  |  |  | also contains information related to a request for legal opinions and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a summary of the draft Privacy Impact Assessment, and specific language from the PIA that outlined methods that were approved for use by agency employees when conducting social media screening and vetting.  This information, if disclosed, would reveal the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and could result in individuals hiding the use of certain social media platforms or encouraging the use of platforms that the agency does not access to, which would impact the effectiveness of screening and vetting |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2600-2601 | Email, RE: FDNS SMOUT and Rules of Behavior Updates for Clearance, dated June 12, 2017 | (b)(5): page 2601<br>(b)(7)(E): pages 2600-2601 | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the review of the draft FDNS SMOUT and Rules of Behavior documents.  The emails are between USCIS OCC attorneys and USCIS employees and include clarifications, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | The information withheld under (b)(7)(E) includes specifics as to what methods USCIS's immigration officers are authorized to use as part of social media vetting, and what limitations are placed on their collection methods.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process and what the limitations of access are.  The release of this information could result in individuals hiding the use of certain information on social media platforms or engaging in behavior to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless. |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*       VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2602 | Email, RE: Draft Social Media Delegation, dated June 28, 2017 | (b)(5) | Email | Exemption (b)(5) was used to withhold deliberative and attorney-client privileged information related to the review of the draft Social Media Delegation.  The emails are between USCIS employees and PCC attorneys, and include a question about a specific edit that USCIS made, and whether DHS had included that edit in the current draft Delegation.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2605-2606 | Delegation to the Director of U.S. Citizenship and Immigration Services Regarding Social Media Vetting and Screening - Draft | (b)(5) | Draft Delegation | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a draft copy of DHS Delegation Number 15002, "Delegation 15002, Revision 01, Delegation to the Director of U.S. Citizenship and Immigration Services to Conduct Certain Law Enforcement Activities."  The Delegation, once finalized, would reaffirm |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | the authority of the Director of USCIS to conduct specific law enforcement activities, which include the use of social media content as part of immigration adjudications. The draft contains comments, revisions, additions, re-wordings, clarifications, and legal opinion. This information is part of the deliberative process and contains pre-decisional information that is not reflected in the final version of the document. The draft also contains edits and comments made by OCC attorneys which contain their legal opinions. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). All other information within this document was segregated and determined non-exempt and disclosed. |
|---|---|---|---|---|
| 2610-2611 | Email, Meeting Follow-up, dated July 31, 2017 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a follow-up meeting held by the Social Media Working Group and DHS's Chief Information Officer. The emails are between USCIS OCC attorneys and USCIS employees, and include a summary of the meeting, a specific outstanding issue related to DHS's social media vetting process, decisions to be made, and factors to take into account when making a decision. This information represents part of the deliberative process, as well as pre-decisional information being considered in this process. The information in the emails also contains information related to a request |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | for legal opinions and includes potential courses of actions being considered. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a summary of a specific proposed course of action and methods that FDNS and USCIS were considering as part of the social media screening process, and details how that process and methods would be implemented. This information, if disclosed, would reveal the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2612-2613 | Email, RE: Heard at the CIO staff meeting, dated July 31, 2017 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to a follow-up meeting held by the Social Media Working Group and DHS's Chief Information Officer. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*     VAUGHN INDEX

| | | | | The emails are between USCIS OCC attorneys and USCIS employees, and include a summary of the meeting, a specific outstanding issue related to DHS's social media vetting process, decisions to be made, and factors to take into account when making a decision.  This information represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains information related to a request for legal opinions and includes potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a summary of a specific proposed course of action and methods that FDNS and USCIS were considering as part of the social media screening process, and details how that process and methods would be implemented.  This information, if disclosed, would reveal the specific websites, applications, and social media that is being reviewed by immigration officers for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is |
| --- | --- | --- | --- | --- |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2615 | Email, RE: FDNS Operational Use of Social Media Training, dated July 31, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the legal review of a draft training document focused on FDNS's operational use of social media, dated July 31, 2017.  The emails are between USCIS OCC attorneys and agency employees, and include a summary of the draft training, requests for legal review, statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a request for legal opinions related to potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2616 | Email, RE: FDNS Social Media Training, dated August 4, 2017 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the legal review of a draft training document focused on FDNS's operational use of social media, |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | dated July 31, 2017.  The emails are between USCIS OCC attorneys and agency employees, and include a summary of the draft training, requests for legal review, statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a request for legal opinions related to potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>Exemption (b)(7)(E) was used to redact portions of an email sent by OCC attorneys discussing FDNS specific portions of a training of the use of social media, and whether the training accurately reflected the SMOUT and Rules of Behavior, including the portions regarding the methods that were permitted and prohibited by DHS.  This information, if disclosed, would reveal the technology resources and methods currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E). |
|---|---|---|---|---|

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | All other information within this document was segregated and determined non-exempt and disclosed. |
| 2622 | Email, Latest Draft of Social Media Delegation, dated July 28, 2017 | (b)(5) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the legal review of a draft Social Media delegation. The emails are between DHS OGC and USCIS OCC attorneys and include a summary of the draft document, requests for legal review, statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a request for legal opinions related to potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).  All other information within this document was segregated and determined non-exempt and disclosed. |
| 2625-2634 | Memorandum from USCIS's Office of Chief Counsel to USCIS Chief Counsel Craig Symons, "Delegation of Law Enforcement Authority to U.S. Citizenship and Immigration Services," dated August 7, 2017 | (b)(5): pages 2625-2634<br><br>(b)(7)(E): pages 2627-2632 | Legal Memorandum | The information withheld under (b)(5) as attorney-client privileged information consists of legal opinions contained in this legal memorandum.  The memorandum details legal issues related to the Delegation of Law Enforcement Authority to U.S. Citizenship and Immigration Services.  It is directed to the USCIS Chief Counsel, and was written by multiple USCIS OCC |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | attorneys, and contains their legal analysis and opinion.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).

The information withheld under (b)(7)(E) includes summaries of USCIS's current law enforcement authority, what authority may be delegated by DHS to USCIS, how that impacts USCIS's vetting process, the proposed processes and courses of action being considered for USCIS employees while engaging in the operational use of social media, analysis outlining the legal considerations with the various methods proposed, and the specific methods that counsel advised that the agency authorize and prohibit.  This information, if disclosed, would reveal the specific methods and procedures that immigration officers are able to use to conduct social media research for certain immigration applicants and petitioners that need additional background checks or vetting, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  The release of this information would also reveal guidelines that could risk circumvention of the law, because it would put individuals on notice as to what information is considered as part of the screening and vetting process, the specific information that is searched on specific social |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | media applications, and the type of  actions or methods an immigration officer may engage in during information collection, which would tip off the individuals that the immigration officer was investigating possible national security or public safety concerns.  The release of this information could result in individuals being able to ascertain when an immigration officer has searched social media or what information may be subject or not subject to a search, resulting in actions to avoid proper vetting, which would impact the effectiveness of screening and vetting procedures used for the enforcement of certain immigration and national security laws and directives, and could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2638-2639, 2641-2642 | Email, RE: FDNS Social Media - Privacy/Training Requirements, dated September 5, 2017 | (b)(5)<br><br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the development of privacy training requirements as part of USCIS's use of social media information to support the agency's mission. |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*　　　　VAUGHN INDEX

| | | | | The emails are between USCIS OCC attorneys and agency employees, and include draft language for the training requirements document, requests for legal review, statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information in the emails also contains a request for legal opinions related to potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5). |
|---|---|---|---|---|
| | | | | Exemption (b)(7)(E) was used to redact portions of an email sent by USCIS employees and OCC attorneys discussing privacy training for FDNS immigration officers involved in social media vetting and background investigations.  The information withheld under (b)(7)(E) includes a description of the specific methods and technology that FDNS would be using to conduct social media research as part of the vetting process.  This information, if disclosed, would reveal the technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives.  It would also reveal |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | |
|---|---|---|---|---|
| | | | | guidelines that could risk circumvention of the law, including the specific tools used by law enforcement as part of the vetting and screening process.  The release of this information would put individuals on notice as to what technology is being used, so that individuals could research the technology to identify vulnerabilities and limitations, which could impact the effectiveness of the screening and vetting process.  Releasing this information could reasonably be expected to risk the circumvention of law and render the guidelines for additional screening measures relevant to national security, public safety, and fraud prevention useless.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |
| 2643-2644 | Email, RE: RAD SVI Operational Use of SM, dated September 13, 2017 | (b)(5)<br>(b)(7)(E) | Email | The information withheld under (b)(5) includes deliberative and attorney-client privileged information related to the development of the USCIS refugee and asylum division's operational use of social media.  The emails are between USCIS OCC attorneys, and include requests for legal review, statements of uncertainty, and requests for additional information, which represents part of the deliberative process, as well as pre-decisional information being considered in this process.  The information |

American Civil Liberties Union Foundation et al v. Department of Justice et al, *19-00290-SK*          VAUGHN INDEX

| | | | | in the emails also contains a request for legal opinions related to potential courses of actions being considered.  Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(5).<br><br>The information withheld under (b)(7)(E) includes a legal opinion in response to a question regarding the USCIS asylum division's operational use of social media, and the specific authorization that they have to conduct social media research as part of the vetting process.  This information, if disclosed, would reveal the methods and technology resources currently being used in the vetting process by law enforcement and immigration officers, which is part of specific techniques and procedures involved in the enforcement of certain immigration and national security laws and directives. Accordingly, this material is appropriately exempt from disclosure pursuant to Exemption (b)(7)(E).<br><br>All other information within this document was segregated and determined non-exempt and disclosed. |