BRIAN M. BOYNTON
  Acting Assistant Attorney General

ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
  Deputy Branch Director

ELIZABETH TULIS (NY Bar)
  Trial Attorney
  U.S. Department of Justice
  Civil Division, Federal Programs Branch
  1100 L Street, NW
  Washington, D.C. 20005
  Telephone: (202) 514-9237
  Facsimile: (202) 616-8460
  E-mail: elizabeth.tulis@usdoj.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF STATE,<br><br>Defendants. | No. 19-cv-290-EMC-RMI<br><br>STATUS REPORT |

Pursuant to the Court's order dated March 26, 2021 (ECF No. 110), defendant Department of Homeland Security ("DHS") respectfully submits this status report to propose a timeline for the DHS Privacy Office's processing and production of documents responsive to Plaintiffs' FOIA request.

DHS reports as follows:

Because the DHS FOIAXpress system is only able to ingest data in 10GB increments DHS determined that it would not be possible to ingest all the responsive data and meet the Court's deadline using FOIAXpress. In an effort to meet the deadline, DHS sought other options to ingest the data for the purposes of establishing a page count and developing a proposal to complete production. DHS pursued the option of using DHS OGC Litigation's Relativity platform. Although the DHS OGC Litigation Relativity system is intended for use in discovery in civil litigation and not for storage and processing of records under the FOIA, the DHS OGC litigation Relativity platform was made available in this case for the limited purpose of estimating a page count and developing a production schedule. DHS will continue to ingest data into FOIAXpress in order to use FOIAXpress for production in accordance with the proposed schedule below.

DHS conducted three searches to locate records for Parts 1, 2, 3, and 5 of Plaintiffs' request. Search 1 corresponds to Part 1 of Plaintiffs' request. Searches 2 and 3 correspond to Parts 2, 3, and 5 of Plaintiffs' request.

Because Search 1 was already ingested into FOIAXpress and being processed for production, DHS did not need to use the DHS OGC Relativity system to conduct a page count for Search 1. As previously addressed For Parts 2, 3, and 5 of Plaintiffs' request, DHS tasked OCIO to conduct a search on October 1, 2020, using the date parameters January 1, 2018 through January 14, 2020 and the keywords/filters:

- (Purchase or subscription or acquisition or payment or agreement) AND (Product or service) AND (Immigration Benefits or immigration enforcement or border screening or transportation screening or criminal conduct)

AND (social media AND collect*) AND (monitor OR search) [herein after described as Search 2] and

• social media AND investigat* AND (risk or illegal or enforce* or target* or predict* or algorithm* or vetting). [herein after described as Search 3]

DHS has uploaded approximately 31 gigabytes of data associated with Search 2 into Relativity. After de-duplication, this data contains 65,405 documents. DHS collected this data by gathering email "families," meaning that any email that triggered a keyword search was uploaded with all of its attachments—regardless of whether those attachments contained any responsive keywords. Similarly, if a single email attachment triggered a keyword hit, DHS uploaded (i) the attachment with the keyword; (ii) the email that transmitted that attachment; and (iii) all other attachments that were included with that email.

DHS ran a global de-duplication on the data set. This means that if multiple custodians had the exact same email (e.g., multiple custodians were recipients of a single email), only one copy of the email was retained for review. However, if an attachment was sent to one custodian and then later forwarded to another custodian without changes, DHS did not de-duplicate that attachment.

In order to generate a page count, DHS must first generate single-page images for each file. As of mid-afternoon on April 21, 2021, DHS had successfully imaged 25,826 documents out of the 65,405[1] documents in the set.

---

[1] When a file is uploaded to Relativity, Relativity strips out embedded images and objects such as pictures in PowerPoint files and email inline images, and then publishes each of these embedded images and objects as a separate 'document.' For example, a Word .docx file that includes an embedded DHS logo would count as two "documents," even though it would be saved to a user's computer as a single .docx file. The count of 65,405 documents that DHS uploaded to Relativity includes a substantial number of image files and other embedded objects. Because images do not constitute a large number of pages, while the number of documents may go down significantly once ingestion into FOIAXpress is complete, it is unlikely to result in a significant reduction in pages.

The total page count for these 25,826 documents is 434,099 pages. Excluding Excel files, which can contain tens of thousands of pages in a single file, DHS has imaged 24,918 documents with a total page count of 218,135. Extrapolating to the full set of 65,405 documents, DHS estimates that Search 2 amounts to approximately 1.1 million pages (including Excel files), or 550,000 pages (not including Excel files).

After de-duplication, Search 2 yielded 65,405 documents from a data set of approximately 31 gigabytes of data. DHS does not know how many documents Search 3 will yield, because it has not completed de-duplication on that data set. However, Search 3 represents 274 gigabytes of data. Using the figures from Search 2, DHS estimates that this data set will contain approximately 578,000 documents and 9.7 million pages (including Excel files), or 4.9 million pages (not including Excel files).

Based on the above data, DHS can propose the following schedule:

As previously agreed, DHS will continue to produce documents located in search 1, reviewing 250 pages per month. Search 1 yielded 659 pages. DHS notes that prior to the March 31 production DHS ingested and prepared for review all of Search 1 (659 pages) and the first 10GB portion (2101 pages) of Search 2. Therefore, at the time of the March 31 production documents for Search 1 and the first 10GB portion of documents related to Search 2 were both available in the FOIAXpress production log. Although DHS previously described the March 31 production as reflecting documents located in response to Part 1 of Plaintiffs' FOIA request, the March 31 release was in fact made from the documents that were ingested from Search 2, and thus contained documents located in response to Part 2 of the FOIA request. DHS will review and produce records from Search 1 in the April production. Production of Search 1 will be complete by May 31, 2021.

DHS will continue to produce documents located in Search 2 starting on June 30, reviewing 250 pages per month. DHS estimates that Search 2 contains approximately 550,000 pages (excluding Excel files) of potentially responsive documents. Therefore, reviewing 250 pages per month, production of documents from Search 2 would be completed in 2,200 months.

DHS estimates that Search 3 may contain as many as 4.9 million pages of potentially responsive documents, thus review, processing, and production of documents located in that search would likewise take thousands of months.

As noted above, DHS gathered data by email families. In the Search 2 batch of 65,405 documents, fewer than 15% of the documents that were gathered contained the keywords "social media." The remaining 85% of documents in Search 2 did not contain the keyword "social media," but were gathered into the dataset because they were attached to one of the responsive email families. However, even that 85% reduction in documents would not result in a manageable number of pages to review and produce. DHS is willing to work with Plaintiffs to further focus the searches to develop a manageable set of records within which DHS can locate the documents that Plaintiffs are seeking.

Respectfully submitted,

Dated: April 22, 2021

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
Deputy Branch Director

/s/
ELIZABETH TULIS (NY Bar)
Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, D.C. 20005
Telephone: (202) 514-9237
elizabeth.tulis@usdoj.gov

*Attorneys for Defendants*