**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO-OAKLAND DIVISION**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, *et al.*, | ) ) ) |
| Plaintiffs, | ) CASE NO. 19-CV-00290-EMC ) |
| v. | ) **SUPPLEMENTAL DECLARATION OF** ) **PATRICK HOWARD** |
| DEPARTMENT OF JUSTICE, *et al.*, | ) ) |
| Defendants. | ) ) |

I, Patrick A. Howard, declare the following to be true and correct:

1.  I am a Branch Chief in the Freedom of Information Act (FOIA) Division, Privacy and Diversity Office, Office of the Commissioner, U.S. Customs and Border Protection (CBP).

2.  I submit this declaration to supplement the declaration dated January 28, 2021, that I submitted in support of Defendant Department of Homeland Security's Motion for Summary Judgment with respect to the request submitted to CBP.

3.  I understand that the American Civil Liberties Union Foundation and the American Civil Liberties Union Foundation of Northern California (hereinafter Plaintiffs) challenge CBP's withholding of certain information under Exemptions (b)(4), (b)(5), and (b)(7)(E).

4.   In this declaration, I provide additional clarifying information and details regarding specific redactions of the previously released records, including intra-agency memoranda, directives, issue papers, privacy threshold analyses (PTAs), social media operational use templates (SMOUTs), and commercial contracts.

## APPLICATION OF FOIA EXEMPTION (b)(7)(E)

5.   The records at issue include intra-agency memoranda, directives, issue papers, PTAs, SMOUTs, and commercial contracts. The information withheld pursuant to Exemption (b)(7)(E) was compiled and utilized for law enforcement purposes in that the information was created and used by CBP in its law enforcement mission to secure the border of the United States through the operational use of social media.

6.   As an initial matter, CBP's Social Media Directive 5410-003 (January 2, 2015) contained information under the headings of Overt Research, Overt Monitoring, and Overt Engagement that was released. *See* Pls.' Opp. & Cross-Mot. For Partial Summ. J., Ex. A, ECF No. 109-1 at USCBP000133-34. However, information under Masked Monitoring and Undercover Engagement was withheld under Exemption (b)(7)(E) because this information described tactics used for more sensitive law enforcement purposes, and the agency has imposed additional internal controls on their use. *See id*. at 134-36. Release of specific information withheld in these sections would reveal sensitive, non-public information relating to the scope of the use of these techniques and steps and limitations the agency places on the use of these techniques. This could reveal the relative frequency with which CBP utilizes these techniques, thereby enabling illicit actors to gain information regarding the relative likelihood with which they may be subjected to these techniques.  If this information were disclosed, individuals who seek to violate the law at the border could use it to allocate resources and employ countermeasures, thereby risking circumvention of the law.

7. Additionally, certain information contained within CBP's Social Media Directive, when aggregated with information in the public domain, could reveal specific information concerning how particular law enforcement techniques or procedures are used in specific situations. For example, certain PTAs and SMOUTs released in this case discuss the circumstances in which specific law enforcement techniques related to social media may be utilized. Information withheld in the Social Media Directive, when aggregated with other details of procedures and capabilities contained in these privacy documents, would reveal the scenarios in which CBP employs these techniques. It could also reveal CBP's capabilities and limitations, or the likelihood of CBP utilizing certain social media investigative techniques in specific operational locations, in particular circumstances, or against particular types of illicit threats. This additional information is not publicly known and release of this information would risk circumvention of law as it could be used to develop countermeasures, avoid detection, and frustrate CBP's ability to detect illicit activity and enforce the law.

8. In addition, Exemption (b)(7)(E) was applied in issue papers and summaries. *See* Pls.' Opp. & Cross-Mot. For Partial Summ. J., Ex. A, ECF No. 109-1 at USCBP000001-22. These issue papers were drafted by CBP personnel to describe to senior CBP law enforcement officials the current status and future proposals on the use of social media in support of CBP's law enforcement activities, such as the vetting of international travelers seeking entry into the United States to identify persons who are suspected of, or may pose a higher risk of, engaging in illicit activity. These issue papers described the efficacy of, and contain information regarding, specialized techniques and procedures related to CBP's operational use of social media. Their purpose was to aid CBP decisionmakers regarding the development of policy, the allocation of resources, and the implementation of procedures and techniques relating to CBP's law enforcement mission.

9.   These issue papers also include specific details and examples of law enforcement techniques and procedures that provide CBP managers a practical understanding of how CBP may utilize certain social media investigative techniques. The information that was withheld pursuant to Exemption (b)(7)(E) is not generally known to the public and the disclosure of this information would impede CBP's law enforcement mission by alerting individuals to CBP's specific techniques and procedures utilized in its investigations.

10.  CBP also applied Exemption (b)(7)(E) to the various PTAs. *See* Pls.' Opp. & Cross-Mot. For Partial Summ. J., Ex. A, ECF No. 109-1 at USCBP000023-39, 48-57, 149-60, 296-306, 337-28, 349-58.  Unlike Privacy Impact Assessments (PIAs), CBP's PTAs are not generally released to the public.  The information withheld in these PTAs includes non-public descriptions of sensitive law enforcement techniques and procedures and is substantially more detailed than the information contained in publicly available PIAs.  The PTAs provide specific technical, unique, and specialized details about the activity being addressed in the record and often involve particular types of cases in which CBP may use certain law enforcement techniques, whereas one PIA may be applicable to cover activities described in multiple PTAs.  The information withheld in the PTAs would reveal sensitive, non-public details about CBP's law enforcement investigations and activities.  The information withheld in the PTA at USCBP000050-51 did not include the names of any contractor, but rather included names and descriptions of specific technical tools with unique capabilities utilized by CBP to review and analyze social media information for law enforcement purposes. The information withheld from the PTA at USCBP000298-99 also included names and descriptions of specific technical tools with unique capabilities utilized by CBP to review and analyze social media information for law enforcement purposes, as well as the company name of the tool's developer, which is similar to, closely associated with, and would tend to reveal

1    the capabilities of, the specialized tool utilized by CBP.  This information is not public.  Disclosure

2    of these details would permit bad actors to develop countermeasures, avoid detection, and frustrate

3    CBP's ability to detect illicit activity and enforce the law.  The rationale for redaction of the infor-

4    mation is further detailed in CBP's Vaughn index, which has been updated and is attached as

5    Exhibit A to this declaration.  With respect to information contained in the PTA on USCBP000033

6    regarding retention periods, CBP reprocessed the PTA without these redactions in May 2021, at-

7    tached as Exhibit B to this declaration.

8

9        11.  Next, CBP withheld information in SMOUTs that are not publicly available and, like in-

10   formation withheld in PTAs, would reveal information that is not publicly known.  *See* Howard

11   Decl., Ex. A, ECF No. 98-4 at USCBP000161-69, 170-77, 178-91.  While some general infor-

12   mation regarding law enforcement's use of social media may be in the public domain, the

13   SMOUTs discuss the specific circumstances in which CBP's may use certain law enforcement

14   techniques relating to the operational use of social media. Additionally, this information, when

15   combined with other information released in response to this FOIA request or that is otherwise

16   publicly available, could reveal sensitive details about the specific technique employed in partic-

17   ular kinds of circumstances.  For example, whether officers or agents interact with the public or

18   mask identities in particular kinds of circumstances would reveal the scope and type of social

19   media activity employed in the particular circumstances, use case, or mission that is the subject of

20   the SMOUT.  This information, if disclosed, would harm CBP's ability to effectively carry out its

21   law enforcement functions by revealing the types of illicit activities or the circumstances in which

22   CBP is likely to use certain techniques.  CBP's mission is to protect the borders of the United

23   States against terrorists and the instruments of terror, enforce the customs and immigration laws

24   of the United States, and foster our Nation's economy through lawful international trade and travel.

25

26

27

28

SUPPLEMENTAL DECLARATION OF
PATRICK HOWARD
CASE NO. 19-CV-00290-EMC

5

1    The disclosure of these techniques and methods would permit bad actors to understand how CBP
2    conducts law enforcement activities and would seriously compromise CBP's ability to perform its
3    law enforcement mission.
4
5        12. Finally, the information contained in CBP's commercial contracts that was withheld under
6    Exemption (b)(7)(E) was never publicly released as it relates to the specific contracts. *See* Pls.'
7    Opp. & Cross-Mot. For Partial Summ. J., Ex. A, ECF No. 109-1 at USCBP000197-249. Any in-
8    formation withheld is not publicly available.  This information includes names of specific compa-
9    nies that offer unique capabilities, tools used, and quantities purchased. Revealing this information
10   would indicate the scope, specific type, and extent of CBP's operational use of social media in a
11   certain field.  CBP has a legitimate law enforcement interest in protecting this information as it
12   demonstrates CBP's technical capabilities and potential limitations. Disclosure of this information
13   would risk circumvention of law as it could be used to develop countermeasures, avoid detection,
14   and frustrate CBP's ability to detect illicit activity and enforce the law.

15                          **APPLICATION OF FOIA EXEMPTION (b)(5)**

16       13. CBP invoked Exemption (b)(5) within its PTAs. *See*  Pls.' Opp. & Cross-Mot. For Partial
17   Summ. J., Ex. A, ECF No. 109-1 at USCBP000023-39, 48-57, 296-306, 337-48, 349-58. PTAs
18   play an important role in CBP's deliberations related to potential agency activity and any potential
19   privacy compliance requirements related to that activity. Specifically, information withheld pur-
20   suant to Exemption (b)(5) in these records relates to the CBP Privacy Office's recommendations
21   to the DHS Privacy Office with respect to proposed privacy limitations on CBP's proposed activ-
22   ities.  This information constitutes deliberative and predecisional analysis and was compiled to
23   inform the DHS decisionmaker's final decision regarding the privacy compliance requirements for
24   these activities.

14. In addition, the information withheld pursuant to Exemption (b)(5) in CBP's issue papers is also deliberative and predecisional. As noted above, these issue papers were drafted by CBP staff and contained proposals for upper-level management concerning the proposed use of CBP's operational use of social media. The issue papers contained information that informed and guided CBP's leadership in the development and use of certain social media law enforcement techniques and procedures. The information withheld pursuant to Exemption (b)(5) involved assessments related to CBP's use of social media in its operations and analysis to support recommendations to CBP leadership.  Information related to the recommended responses to questions about CBP's use of social media was withheld pursuant to Exemption (b)(5) where it either discussed hypothetical future policies  relating to the collection of social media information as in USCBP000014-15, or discussed the subject matter of ongoing internal analyses relating to the potential capabilities and limitations of certain techniques relating to the operational use of social media, as in USCBP000003.  Release of the information withheld in these issue papers would reveal agency deliberations and could negatively impact CBP's decision-making process in the future.  This also could discourage and chill open, frank discussions on matters of policy between subordinates and superiors.  Further, release of this information could contribute to premature disclosure of proposed policies before they are finally adopted.

## APPLICATION OF FOIA EXEMPTION (b)(4)

15. Finally, Plaintiffs argue that CBP improperly withheld information in a privacy threshold analysis under Exemption (b)(4). However, CBP's reprocessed productions removed the (b)(4) redactions noted by Plaintiffs. Plaintiffs attached to their motion the original versions of these productions, rather than the re-processed documents. For the Court's reference, the re-processed

SUPPLEMENTAL DECLARATION OF
PATRICK HOWARD
CASE NO. 19-CV-00290-EMC

pages, which were produced to Plaintiffs in December 2020, are attached as Exhibit C to this declaration.

## CBP'S SEARCH

16. As discussed in my initial declaration, the Office of Field Operations' subject matter experts searched the electronic record repository identified as likely to contain responsive records. The specific personnel conducting the search in the Office of Field Operations have extensive knowledge of the subject matter involved in Plaintiff's FOIA request and are familiar with the types of records and the repositories where such records are maintained.  Therefore, the FOIA office determined that the areas identified and searched by these subject matter experts were the locations where responsive records were likely to be maintained.

17. In addition to the Office of Field Operations, as noted in my previous declaration, other offices, including the Privacy and Diversity Office, U.S. Border Patrol, Office of Professional Responsibility, Office of Acquisition, Office of Information Technology, Office of Intelligence, Office of Public Affairs, Air and Marine Operations, and the Office of Chief Counsel also conducted searches.  CBP's search was extensive and included a search for records among all offices that were determined to potentially have records responsive to the request.

18. The request to each of the relevant offices to conduct a search included all categories in Plaintiff's FOIA request.  However, CBP did not task its Office of Information and Technology to conduct an electronic keyword search of emails to identify records responsive to items 3 and 4 of Plaintiff's request.  In light of this fact, CBP has determined that it will conduct a supplemental electronic keyword search of email records responsive to items 3 and 4.

19. CBP also made minor corrections to its Vaughn Index to account for one change made in the December 2020 reprocessed production, and one change in the May 2021 reprocessed production.  This updated Vaughn index is attached as Exhibit A to this Declaration.

20. Also, as noted above, in December 2020, CBP reprocessed all five productions. The reprocessed pages that previously contained the (b)(4) redactions noted by Plaintiffs are attached as Exhibit C. CBP also again reprocessed Production 1 in May 2021 to remove redactions on USCBP000033.  This page is attached as Exhibit B to this declaration.

## SEGREGABILITY

21. Plaintiffs have been provided with all responsive records not withheld in full that were identified in CBP's search for records in response to Plaintiffs' FOIA request.  Where appropriate, CBP asserted FOIA exemptions in the released records. All information withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable because it is so intertwined with protected material that segregation is not possible or its release would have revealed the underlying protected material.  CBP personnel have reviewed the documents determined to be responsive, line-by-line, to identify information exempt from disclosure or for which a discretionary waiver of exemption could apply, and all reasonably segregable portions of the relevant records have been released to Plaintiffs in this matter.  In my determination, any further release of the exempted materials could reasonably lead to the identification of information that is properly protected by the exemptions asserted.

I declare under a penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

SUPPLEMENTAL DECLARATION OF
PATRICK HOWARD
CASE NO. 19-CV-00290-EMC

9

Executed this 21st day of May 2021.

*Patrick Howard*

Patrick A. Howard, Branch Chief
FOIA Division
Privacy and Diversity Office
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security