UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA,<br><br>Plaintiffs,<br><br>v.<br><br>DEPARTMENT OF JUSTICE; FEDERAL BUREAU OF INVESTIGATION; DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTION; U.S. CITIZENSHIP AND IMMIGRATION SERVICES; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DEPARTMENT OF STATE,<br><br>Defendants. | No. 19-cv-290 |

**SUPPLEMENTAL DECLARATION OF FERNANDO PINEIRO IN SUPPORT OF IMMIGRATION AND CUSTOMS ENFORCEMENT'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

I, Fernando Pineiro, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

**1.** I am the Acting FOIA Officer of the U.S. Immigration and Customs Enforcement ("ICE") Freedom of Information Act ("FOIA") Office (the "ICE FOIA Office" or "ICE FOIA"). I have held this position since July 10, 2019 and am the ICE official immediately responsible for supervising ICE responses to requests for records under the Freedom of Information Act, 5 U.S.C § 552, the Privacy Act, 5 U.S.C. § 552a (the "Privacy Act"), and other applicable records access statutes and regulations. Prior to this position, I was the Deputy FOIA Officer of the ICE FOIA

1

Office from December 29, 2013 to July 9, 2019, and prior to that I was the FOIA Officer for three years at the Office for Civil Rights and Civil Liberties ("CRCL") at the U.S. Department of Homeland Security ("DHS").

2.      My official duties and responsibilities include the general management, oversight, and supervision of the ICE FOIA Office, which is responsible for the receipt, processing, and response to all FOIA, 5 U.S.C. § 552, and Privacy Act, 5 U.S.C. § 552a, requests received at ICE. In that capacity, I manage and supervise a staff of ICE FOIA Paralegal Specialists, who report to me regarding the processing of FOIA and Privacy Act requests received by ICE.  Due to my experience and the nature of my official duties, I am familiar with ICE's procedures for responding to requests for information pursuant to provisions of the FOIA and the Privacy Act.

3.      I make this declaration in further support of the Department of Homeland Security's Motion for Summary Judgment with respect to ICE and in opposition to Plaintiffs' Cross-Motion for Summary Judgment in the above-captioned action, to clarify and correct certain points in my original declaration and accompanying Vaughn index.  The statements contained in this declaration are based upon my personal knowledge, my review of documents kept by ICE in the ordinary course of business, and information provided to me by other ICE employees in the course of my official duties.

4.      This declaration supplements and incorporates by reference my previous declaration dated January 28, 2021, styled "Declaration of Fernando Pineiro."

I.      ALLEGED DEFICINCIES IN SEARCH

5.      In their opposition and cross-motion, Plaintiffs question the sufficiency of ICE's search, and specifically the search conducted by the Office of Enforcement and Removal Operations ("ERO"). Plaintiffs' argument may reflect a misunderstanding of the nature of ERO's

responsibilities.   ERO has a broad mission that includes identification and arrest, domestic transportation, detention, bond management, and supervised release, including alternatives to detention.  The identification and arrest of aliens who present a danger to national security or are a risk to public safety, makes up only a portion of ERO responsibilities.  Any ERO wide programs and/or systems that are used operationally in regard to this aspect of ERO's mission would not be implemented at Field Office level, but rather within specific divisions at the Headquarters level. As was explained in my January 28, 2021, Declaration, the ICE FOIA Office reviewed Plaintiffs' FOIA request and determined which offices should be tasked based on the nature of Plaintiffs' FOIA request.  With respect to ERO, the ICE FOIA Office submitted the FOIA request to the ERO Information Disclosure Unit ("IDU").  IDU has subject matter expertise and knowledge of the activities of the ERO divisions and field offices.  Based upon Plaintiffs' FOIA request, IDU determined the only office that would reasonably likely have records responsive to Plaintiffs' FOIA request would be the Office of Detention Policy and Planning ("ODPP").  While IDU considered tasking other offices, based upon the nature of Plaintiffs' FOIA request, these other offices were not reasonably likely to have responsive records, as Plaintiffs' FOIA request was limited in nature and did not request records relating to any programs or operations within the purview of ERO.  Part 5 of Plaintiffs' FOIA request was the only portion of the request relating to the operational use of social media and sought records relating to "the use or incorporation of social media content into systems or programs that make use of targeting algorithms, machine learning processes, and/or data analytics for the purpose of (a) assessing risk, (b) predicting illegal activity or criminality, and/or (c) identifying possible subjects of investigation or immigration enforcement actions."  At the time of the search, ERO did not have any systems or programs that incorporated the use of social media for "targeting algorithms, machine learning processes, and/or

data analytics." Therefore, the subject matter experts of the internal programs and systems of ERO determined that these other officers or divisions would not likely have responsive records.

## II.     FOIA EXEMPTION (B)(7)(E)

6.        Plaintiffs speculate that certain information redacted in ICE records at bates numbered pages 1680-1681, 1812-1813, and 1818-1826 contain information known to the public. Plaintiffs' speculation about what these documents are and what information they contain are wrong.

7.        The Vaughn index described the documents at issue as summarizing investigative steps.  However, more precisely, the documents describe in detail specific steps taken with respect to identified subjects, the methods used, including how social media and open-sourced information is used in connection with other investigative steps, programs, and operations, as well as what countries were selected to complement existing Homeland Security Investigations (HSI) screening efforts in response to national security threats and acts of terrorism perpetrated in those countries. The withheld information is not known to the public and if disclosed, would allow a potential wrongdoer to manipulate social media and avoid other programs that are used in connection with social media to evade and/or mislead law enforcement investigations and operations.   The knowledge of the investigative steps would allow for a potential wrongdoer to identify the process by which an investigation is followed with respect to the use of social media, therefore giving the wrongdoer the ability to always be several steps ahead of any enforcement investigation or operation.  .

8.      I also wish to clarify the basis for the withholdings of "overseas posts that issue visas to which ICE applies the VLVI program" on bates number pages 921 and 1017.[1]  As mentioned above, these posts were selected to complement existing HSI screening efforts in response to national security threats and global acts of terrorism perpetrated in those countries. These countries remain a focus of the Visa Lifecycle Initiative and are not known to the public. Further, disclosing their location could reasonably be expected to risk circumvention of the law because the disclosure, through a process of elimination, would identify those countries or areas where heightened screening efforts are not employed which would allow for potential wrongdoers a greater chance to go unnoticed in these areas or countries.  Additionally, for those countries identified where theses screening efforts are located, a potential wrongdoer would be able to avoid certain behaviors and activities that would alert law enforcement to their presence.

9.      Lastly, Plaintiffs contend that ICE has improperly withheld images and symbols that ICE uses when conducting open-source investigations, as well as the identities of various terrorist groups and criminal organizations.  The PowerPoint presentations at issue in bates numbered pages 432-448 contain the various ways ICE is able to identify potential groups that pose a threat to our national security.  Plaintiffs are wrong to speculate that the identifiers that will trigger further scrutiny by ICE are well known to the public.  The fact that these identifiers alert ICE to potential threats is not known to the public and if disclosed would alert potential wrongdoers to what information will be scrutinized by ICE.  Alerting these groups to this information would

---

[1] The Vaughn Index entry regarding bates number page 1017 mistakenly did not include the rational for withholding information under FOIA Exemption (b)(7)(E) and only included the rationale for withholding under FOIA Exemption (b)(5).  Attached to this Supplemental Declaration is an Amended Vaugh Index with respect to bates number page 1017, clarifying that the information regarding the country locations where the Visa Lifecycle Initiative was located is being withheld under FOIA Exemption (b)(7)(E).

allow them to avoid detection by not including these identifiers in any photographs or using them in ways that would mislead law enforcement operations.

## III.   FOIA EXEMPTION (B)(5)

10.     Plaintiffs challenge two emails Plaintiffs describe as "Vendor-related language for third party software" that was withheld under FOIA Exemption (b)(5).  With respect to the information on bates number pages 1012 and 1014, the withheld portions relate to discussions regarding what information should be shared with the public regarding HSI's use of social media in HSI operations.  The agency officers and/or employees are making editorial comments, recommendations, or judgments, such as decisions to insert or delete material from the information that ICE is deciding on releasing to the public.  The document also contains non-final agency decisions, options being considered, and recommendations as to how much information about law enforcement operations that use social media should be shared with the public.

11.     Plaintiffs also challenge the withholding of an initial non-final draft of a document titled "Performance Work Statement Visa Lifecycle Vetting Initiative" at bates number pages 596-640.  The draft document at issue contains an unfinalized version of a Performance Work Statement, which includes draft responsibilities, draft scope and objectives, and various personnel responsibilities.  Releasing the draft version of the Performance Work Statement, even with the "DRAFT" watermark, which is present, would cause confusion to the public and to other vendors regarding what performance would be required under the contract.

12.     With respect to bates number page 1761, ICE has lifted the (b)(5) withholding and re-released bates number page 1761 on May 21, 2021.

## IV.   SEGREGABILITY

6

**13.**     As I stated in my previous declaration, a line-by-line review was conducted to identify information exempt from disclosure and all information not exempted from disclosure pursuant to the FOIA was correctly segregated and non-exempt portions were released.

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Signed this 21st day of May 2021.

_____

Fernando Pineiro, Acting FOIA Officer
Freedom of Information Act Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
500 12th Street, S.W., Stop 5009
Washington, DC 20536-5009