UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO-OAKLAND DIVISION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION, *et al.*,

        *Plaintiffs*,

    v.

DEPARTMENT OF JUSTICE, *et al.*,

        *Defendants*.

Case No. 19-CV-00290-EMC

**JOINT STATUS REPORT**

Pursuant to the Court's order dated April 26, 2021, (ECF No. 116), the parties respectfully submit this status report regarding their respective proposed schedules for the Department of Homeland Security ("DHS") Privacy Office's search for and processing of records responsive to Plaintiffs' FOIA request.

Defendant's Report

DHS's proposed schedule is contingent upon DHS's O365 electronic search functionality being operative again by June 11, 2021, and on the total data pull from the revised search being less than 10GB. The electronic search system is currently down, which has prevented DHS from confirming the maximum data amount that DHS will have to transfer and ingest into FOIAXpress based on the proposed revised search discussed below. If the system remains disabled longer

1

than anticipated, if the data pull from the revised search is larger than predicted, or if the parties are unable to agree on further filtering keywords within the time period estimated below, DHS will need to submit a revised proposed schedule.

With these contingencies noted, and assuming the conditions described above and further detailed below are met, DHS respectfully submits the following proposed schedule:

DHS will complete an updated electronic search by June 11, 2021.

DHS will transfer the data from OCIO to the DHS Privacy Office by June 18, 2021.

Data from the electronic search will be ingested into EDR/FOIAXpress by July 2, 2021.

DHS will use further keyword searches to filter this data in order to identify a narrower universe of potentially responsive documents by August 6, 2021.

Processing of the narrowed universe of potentially responsive documents will begin by August 9, 2021 and review will be completed at a rate of 250 pages per month. DHS will make its first interim production of responsive, non-exempt records by August 31, 2021.

Again, these dates are contingent on the conditions noted above and below, including but not limited to the restoration of the search functionality by June 11.

Background

For Parts 2, 3, and 5 of Plaintiffs' request (Searches 2 and 3), pursuant to the Court's order (ECF No. 116), DHS last week communicated to Plaintiffs an estimate of the volume of potentially responsive pages in Searches 2 and 3 and information to aid the parties in identifying ways to further adjust search parameters in order to reduce the volume of potentially responsive records to a manageable amount.

In analyzing these issues, DHS determined that the term "social media" without any additional modifier—as used in its earlier searches—was adding

2

1   significantly to the size of the data resulting from the original searches. Therefore,
2   in conferring with Plaintiffs, DHS initially proposed using the same custodians,
3   cutoff dates, and search strings, but made two categories of changes to the search
4   strings: substitution of "social media screening" for "social media" and adjusting
5   some of the connectors in the search strings to more closely align the relationship
6   between the terms in the search. The amount of data decreased significantly based
7   on these changes.

8       DHS considered expanding the search slightly by substituting ("social
9   media" w/in15 (screening)) for "social media screening," and leaving in the
10  revised connectors, expecting the amount of data to go up, but it went down
11  instead. To get an idea of what was causing this, DHS took the revised searches
12  and scaled them back to "social media" w/in15 (screening), which resulted in just
13  under 1GB of data (down from over 300GB in the current searches 2 and 3).
14  Therefore, it appears that something in the revised connectors in the expanded
15  searches was creating an issue with the search.

16      While DHS was working through the revised searches, Plaintiffs proposed
17  substituting ("social media" w/in [SENTENCE] (screening OR monitoring)) and a
18  revised set of connectors. Because DHS had determined that the connectors in the
19  DHS revised searches likely were creating issues with the search, DHS ran the
20  search for ("social media" w/in15[1] (screening OR monitoring)), and it resulted in
21  approximately 3GB of data. Based on that result, DHS proposed using the search
22  terms ("social media" w/in15 (screening OR monitoring)) for the OCIO searches
23  and ingesting the data into EDR/FOIAXpress to conduct secondary searches more
24  closely tailored to the specific parts of Plaintiffs' request.

25      The parties met and conferred on Thursday, May 20. Following the parties'
26  conferral, the evening of May 20, Plaintiffs proposed revising the search to ("social

27  _____

28  [1] DHS used "w/in 15" as a proxy for "w/in SENTENCE."

3

media" w/in [Paragraph] (monitoring or screening), and have reiterated their request that DHS use the date of the new electronic search as the search cut-off date. Unfortunately, due to technical difficulties with the electronic search functionality in Microsoft O365, DHS has been unable to test any revised search strings since Friday, May 21. When the technical issues with Microsoft O365 are resolved, DHS will run the proposed revised searches to determine their impact on data size. Because DHS has not been able to conduct those searches at this time, the DHS's analysis of the time needed to conduct the search and subsequent processing is based on the search ("social media" w/in15 (screening OR monitoring)).

DHS estimates that once the searches are finalized and run it will take approximately 1 week to transfer the data from OCIO to Privacy and 2 weeks to ingest the resulting data into EDR/FOIAXpress. Once further keywords can be finalized, DHS estimates that it will take one month to complete those searches in EDR/FOIAXpress and move the data to the review log.

Once the secondary searches are conducted in EDR/FOIAXpress and the information is moved to the Review Log, DHS will immediately begin processing documents to determine the final universe of responsive records, make any appropriate redactions and withholdings, and commence productions. DHS proposes reviewing records at a rate of 250 pages per month.

DHS will not have a firm estimate until the secondary searches are complete but based on the initial breakdown of data in the searches, DHS estimates that the data breaks down by primary data type as follows (excludes images, pictures, text files, etc. and focuses on document types most likely to be responsive):

(From Full Data Set)
Total Document Count:                                                        151,852
Word:  (DOC/X 28,714) & (DOTX 15) =                          28,729 (18.9%)
E-mail:  (EMF - 2054); (MHTML/HTM/MTH - 17,779); & (MSG - 28,460) =    48,316 (31.8%)
Excel: (XLS/S) =                                                              3972 (2.6%)
Power Point (PPT/X)                                                          4835 (3.2%)

4

Adobe PDF = (PDF) =                                        21,965 (14.5%)

Applying those percentages to 3GB of data results in:

Word:  (DOC/X 28,714) & (DOTX 15) =                          (18.9%) 0.567GB
E-mail:  (EMF - 2054); (MHTML/HTM/MTH - 17,779); & (MSG - 28,460) = (31.8%) 0.954GB
Excel: (XLS/S) =                                             (2.6%)  0.078GB
Power Point (PPT/X)                                          (3.2%)  0.096GB
Adobe PDF = (PDF) =                                          (14.5%) 0.435GB

LexisNexis has an estimator of pages per GB (available at: https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_Pa gesInAGigabyte.pdf):

| DOCUMENT TYPE | AVERAGE PAGES/DOC | AVERAGE PAGES/GIG |
|---|---|---|
| Microsoft® Word® Files | 9 | 64,782 |
| Email Files | 1.5 | 100,099 |
| Microsoft® Excel® Files | 50 | 165,791 |
| Lotus® 1-2-3 Files | 55 | 297,317 |
| Microsoft® PowerPoint® Files | 14 | 17,552 |
| Text Files | 20 | 677,963 |
| Image Files | 1.4 | 15,477 |

Word:                    0.567GB*64,782=36,768 pages
E-mail:                  0.954GB*100,099=95,548 pages
Excel:                   0.078GB*165,791=13,010 pages
Power Point (PPT/X)      0.096GB*17,552=1677 pages
Adobe PDF = 0.435GB*

Using the chart from Lexis, DHS estimates there will be roughly 147,003 pages (not including Adobe PDF files) before the secondary searches and responsiveness review in FOIAXpress are complete.

Plaintiffs' Report

DHS Privacy's proposals are unacceptable to Plaintiffs. The proposals underscore DHS Privacy's longstanding failure to conduct a search "reasonably calculated to uncover all relevant documents," *see Zemansky v. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985), and process responsive records in a timely manner, as FOIA demands.

Setting aside any technical issues that are currently impeding DHS Privacy's assessment of potentially responsive records, Plaintiffs are at a loss to understand why DHS Privacy could not have utilized the approach it now proposes promptly after receiving Plaintiffs' FOIA request three years ago, or at the very least after Plaintiffs filed this lawsuit two and a half years ago. As Plaintiffs have described in prior status reports, DHS Privacy for approximately two years has pressed Plaintiffs to agree to ever-narrower search parameters and has cited limitations in its FOIAXpress platform as an explanation for its failure to proceed with processing records, and/or as a reason why the search parameters must be narrowed. *See, e.g.*, ECF Nos. 49 at 4; 55 at 4, 59; 64 at 3-4; 65 at 2; 79 at 6-7; 107 at 2-3; 115 at 2-4. Plaintiffs have repeatedly objected that such limitations cannot dictate the scope of their request or the timeliness of DHS Privacy's processing of the request. *See, e.g.*, ECF Nos. 55 at 5; 79 at 3-4; 115 at 3-4.

Now, apparently as a result of the parties' most recent conferral, DHS Privacy has indicated that it could start with a relatively broad search parameters—for instance, the phrase "social media" within a given number of words of either "screening" or "monitoring"—after which it could conduct "secondary searches more closely tailored to the specific parts of Plaintiffs' request." *See supra* at 3. Plaintiffs do not object to this approach in principle and have suggested setting slightly broader initial parameters that would enable more comprehensive results for subsequent filtering. It bears emphasis, however, that nothing should have prevented DHS Privacy from using this two-step approach from the outset. Indeed, DHS Privacy's current proposal, while potentially productive, only deepens Plaintiffs' concerns that the chronic delays in DHS Privacy's search and processing of responsive documents have been unnecessary and unjustifiable.

Given the foregoing, it is imperative that DHS Privacy use a cut-off date for its search that corresponds to the date the search is actually conducted. It is Plaintiffs' understanding the DHS Privacy still intends to use a search cut-off date

of January 14, 2020—an arbitrary date that is now nearly 17 months in the past. That is neither fair nor consistent with FOIA. Courts have emphasized that, absent a compelling justification, the cut-off date should be the date of the search itself. *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 2015 WL 4452136 at \*10 (N.D. Cal. 2015) (appropriate cut-off date for responsive records "is the day searching began") (citing cases); *Pub. Citizen v. Dep't of State*, 276 F.3d 634, 644 (D.C. Cir. 2002); *see also* ECF. No. 79 at 3; 107 at 4. This standard rule is of greater importance where, as here, using an earlier cut-off date would effectively reward an agency for chronic, unsupportable delays in conducting the search. Plaintiffs have made clear to DHS Privacy their willingness to discuss the *start* date for the search if doing so would facilitate returning a manageable volume of records.

Finally, Plaintiffs cannot agree to DHS Privacy's near-term scheduling proposal or its proposed processing rate. DHS Privacy offers no explanation why it would need more than two additional months to reach the point where it can "identify a narrower universe of potentially responsive documents" and begin processing them. *See supra* at 2. And it remains Plaintiffs' position that DHS Privacy's proposed processing rate of 250 pages per month is grossly inadequate. Plaintiffs submitted their FOIA request to DHS Privacy on this date *three years ago*, explaining the urgent need for public access to information about surveillance of online speech and associations. That need has only grown more urgent while DHS Privacy has chronically delayed its search and, until March 31, 2021, avoided producing records altogether. DHS Privacy should process records at a far higher rate. *See, e.g.*, *Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 268-69 (D.D.C. 2014) (rejecting FBI's proposed schedule of 500 pages per month and finding 5,000 pages per month "reasonable in light of the importance of" the issue); *Seavey v. Dep't of Justice*, 266 F. Supp. 3d 241, 242, 244 (D.D.C. 2017) (rejecting 500-pages-per-month processing schedule and ordering FBI to process

2,850 pages a month); *Boundaoui v. Fed. Bureau of Investigation*, Case No. 1:2017-cv-04782 (N.D. Ill. Sept. 26, 2017) (ECF No. 43) (ordering FBI to process 3,500 pages per month); *Ctr. for Media Justice v. Fed. Bureau of Investigation*, Case No. 4:19-cv-01465-DMR (N.D. Cal. Apr. 15, 2020) (ECF No. 72) (ordering the FBI to process 2,000 pages per month).

Plaintiffs therefore respectfully request that the Court order DHS Privacy to: (1) use a search cut-off date that corresponds to the date DHS Privacy conducts its search; (2) identify potentially responsive records and begin processing them by July 9, 2021; and (3) process responsive records at a rate of 2,500 pages per month thereafter.

Respectfully submitted,

DATED: May 24, 2021

*/s/ Hugh Handeyside*
Hugh Handeyside
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: 212-549-2500
hhandeyside@aclu.org

Matthew Cagle
American Civil Liberties Union Foundation
   of Northern California
39 Drumm Street
San Francisco, CA 94111
Telephone: 415-621-2493
mcagle@aclunc.org

*Attorneys for Plaintiffs*

BRIAN M. BOYNTON
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
Deputy Branch Director

*/s/ Elizabeth Tulis*
ELIZABETH TULIS (NY Bar)
Trial Attorney
U.S. Department of Justice,
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Telephone:  (202) 514-9237
elizabeth.tulis@usdoj.gov

*Attorneys for Defendants*

JOINT STATUS REPORT
CASE NO. 19-CV-00290-EMC