UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, et al.,<br><br>Defendants. | Case No. 19-cv-00290-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT**<br><br>Docket Nos. 98, 108 |

  Plaintiffs American Civil Liberties Union Foundation and American Civil Liberties Union Foundation of Northern California filed requests pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to obtain records from seven federal agencies regarding those agencies' surveillance and monitoring of persons through social media. *See* Docket No. 1. ("Compl."). After the agencies allegedly failed to respond as FOIA requires, Plaintiffs filed this action to compel the agencies to produce records responsive to Plaintiffs' requests. *Id.*

  Pending before the Court is Defendants' motion for partial summary judgment with respect to the adequacy of the searches and withholdings of U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizen and Immigration Services (USCIS) (collectively, "Defendants").[1] *See* Docket No. 98 ("Defs.' Mot."). Also pending before the Court is Plaintiffs' cross-motion for partial summary judgment. *See* Docket No. 108 ("Pls.' Mot."). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs

---

[1] Plaintiffs also seek records from the Department of Justice (DOJ), the Federal Bureau of Investigation (FBI), the Department of Homeland Security (DHS), and the Department of State (DOS). The term "Defendants" also includes these agencies.

and Defendants' motions.

## I. BACKGROUND

A. Factual Background

Plaintiffs contend Defendants "are taking steps to monitor social media users and their speech, activities, and associations" and the agencies are pursuing the ability to engage in "programmatic and sustained tracking of U.S. citizens and noncitizens alike." Compl. Plaintiffs also allege Defendants have specifically "ramped up the monitoring and retention of immigrants' and visa applicants' social media information, including for the purpose of conducting what the Trump administration has called 'extreme vetting' or 'visa lifecycle vetting.'" *Id*.

B. Procedural Background

On May 24, 2018, Plaintiffs submitted identical FOIA requests to Defendants "for records pertaining to social media surveillance, including the monitoring and retention of immigrants' and visa applicants' social media information for the purpose of conducting 'extreme vetting.'" *See* Docket No. 98-6 (White Decl., Ex A ("FOIA Requests")) at 2. Plaintiffs sought five categories of records:

> (1) social media surveillance-related policies and guidance;
>
> (2) records concerning the purchase or acquisition of social media surveillance technologies;
>
> (3) communications to or from private businesses concerning social media surveillance products;
>
> (4) communications to or from social media platforms concerning surveillance of social media content; and
>
> (5) records concerning the use or incorporation of social media content within systems or programs that make use of algorithms, machine-learning processes, or predictive analytics applications.

*Id*. at 6–7. After Defendants allegedly failed to produce responsive documents, Plaintiffs exhausted their administrative remedies and filed this lawsuit seeking to compel production on January 17, 2019. *See* Compl.

On September 6, 2019, Defendants filed a motion for partial summary judgment with respect to the FBI, *see* Docket No. 31 ("FBI Mot."), which this Court denied on October 24, 2019,

*see* Docket No. 39 ("FBI Order").

Eventually the agencies produced some records. CBP produced 358 pages of records in five tranches between June and October of 2019, and it withheld four pages entirely. Defs.' Mot. at 3. ICE produced records between May and August of 2019, with a supplemental production in February 2020, for a total of 2,169 pages. *Id.* USCIS produced 2,645 pages of records in July and August 2019, and April 2020. *Id.* It produced reprocessed versions of these records in October 2020. *Id.* Thereafter and in preparation for summary judgment, Defendants produced draft *Vaughn*[2] indices and Plaintiffs narrowed the redactions and withholdings challenged by their cross-motion. Pls.' Mot. at 6.

On January 28, 2021, Defendants filed their motion for partial summary judgment with respect to CBP, ICE, and USCIS. *See* Defs.' Mot. On March 25, 2021, Plaintiffs filed their cross-motion for partial summary judgment. *See* Pls.' MSJ.

During oral argument on the cross-motions for summary judgment, the Court ordered the Defendants to submit unredacted versions of all the documents at issue for *in camera* review. *See* Docket No. 137. Defendants complied shortly thereafter. After reviewing the documents, the Court determined that it needed clarification on Defendants' position regarding the applicability of the deliberative process privilege under FOIA Exemption 5. *See* Docket No. 139. Accordingly, on September 17, 2021, the Court conducted an *ex parte*, *in camera* hearing with Defendants' counsel to go over all the redactions related to the deliberative process privilege so that Defendants could explain with specificity how they contend that privilege applies to each redaction. The transcript of this hearing was filed under seal such that only Defendants' counsel and the Court have access to it.

///

///

---

[2] A "'*Vaughn* index' identifies each document withheld and the FOIA exemption claimed and explains how disclosure would damage the interests protected by the claimed exemption." *Am. Civ. Liberties Union of N. Cal. v. Fed. Bureau of Investigation* ("*ACLU v. FBI*"), 881 F.3d 776, 777, n. 1 (9th Cir. 2018) (citing *Wiener v. Fed. Bureau of Investigation*, 943 F.2d 972, 977 (9th Cir. 1991) and *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment [to a moving party] if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is genuine only if there is sufficient evidence for a reasonable jury to find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.* at 255.[3]

FOIA is animated by "the fundamental principle of public access to Government documents." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). It is "broadly conceived," and "disclosure, not secrecy" is its dominant objective. *Id.* at 151–52. At the same time, Congress has exempted some information "under clearly delineated statutory language." *Id.* at 152 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976)). These exemptions are "limited" and "must be narrowly construed." *Rose*, 425 U.S. at 361. "Furthermore, 'the burden is on the agency to sustain its action.'" *John Doe Agency*, 493 U.S. at 152 (citing 5 U.S.C. § 552(a)(4)(B)). In other words, "[g]iven FOIA's overarching purpose, 'the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents.'" *Civil Beat Law Ctr. for the Pub. Int., Inc. v. Centers for Disease Control & Prevention*, 929 F.3d 1079, 1084 (9th Cir. 2019) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).

The Ninth Circuit has observed that "[g]enerally, FOIA cases should be handled on motions for summary judgment." *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008)

---

[3] Evidence may be presented in a form that is not admissible at trial so long as it could ultimately be capable of being put in admissible form. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence"); *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial'").

4

(quoting *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir.1993)); *see also Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) ("Most FOIA cases are resolved by the district court on summary judgment."). Given the limited nature of discovery typically permitted in FOIA cases, district courts routinely "enter summary judgment on the basis of agency affidavits." *Lane*, 523 F.3d at 1134. Reliance on government affidavits is permissible "so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim." *Id.* at 1135–36 (quoting *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004)); *see also Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015) ("[W]e also give considerable deference to agency affidavits made in apparent good faith where the affidavits reasonably describe the justifications for nondisclosure and show that the content withheld falls within one of FOIA's exemptions."). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. C.I.A.*, 473 F.3d 370, 374–75 (D.C. Cir. 2007). In order to satisfy this burden, government declarations in support of withholding "must describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of bad faith." *Hamdan*, 797 F.3d at 769.

### III. DISCUSSION

This order will address, in turn, Plaintiffs' contention that Defendants' redactions and withholdings under Exemptions 7(E) and 5 are improper.

A. <u>Exemption 7(E)</u>

Exemption 7(E) protects from disclosure

> "records or information compiled *for law enforcement purposes*, but only to the extent that the production of such law enforcement records or information . . . would *disclose techniques and procedures for law enforcement investigations or prosecutions*, or would *disclose guidelines for law enforcement investigations or prosecutions* if such disclosure *could reasonably be expected to risk circumvention of the law*."

5 U.S.C. § 552(b)(7)(E) (emphases added). A "technique" is "a technical method of

accomplishing a desired aim," a "procedure" is "a particular way of doing or of going about the accomplishment of something," and a "guideline" is "an indication or outline of future policy or conduct." *Allard K. Lowenstein Int'l Hunan Rts. Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010) (quoting Webster's Third New International Dictionary (1986)). The statutory requirement that the government show disclosure "'could reasonably be expected to risk circumvention of the law' applies *only to guideline*s for law enforcement investigations or prosecutions, not to techniques and procedures." *Am. Civ. Liberties Union of N. Cal. v. U.S. Dep't of Justice* ("*ACLU v. DOJ*"), 880 F.3d 473, 491 (9th Cir. 2018) (emphasis added) (citing *Hamdan*, 797 F.3d at 778 and *Allard K. Lowenstein Int'l Human Rts. Proj.*, 626 F.3d at 681).

"[T]echniques and procedures" refers to "how law enforcement officials go about investigating a crime." *Allard K. Lowenstein Int'l Hunan Rts. Project*, 626 F.3d at 682. The Ninth Circuit has repeatedly held that "Exemption 7(E) only exempts investigative techniques *not generally known to the public*." *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). Moreover, if a record discusses "the *application* of [a publicly known technique] to . . . particular facts," the document is not exempt under 7(E); if it "describes a 'specific *means* . . . rather than an application' of deploying a particular investigative technique, the record is exempt." *Id.* (quoting *Hamdan*, 797 F.3d at 777–78). Likewise, records that provide a "'detailed, technical analysis of the techniques and procedures used to conduct law enforcement investigations' may properly be withheld under Exemption 7(E)." *Id.* (quoting *Bowen v. U.S. Food and Drug Admin.*, 925 F.2d 1225, 1228–29 (9th Cir. 1991)).

Considering these standards, the Court reviewed the documents at issue *in camera* and determined that Exemption 7(E) applies as follows:

1. CBP Documents

| Document | Application of Exemption 7(E) |
|---|---|
| Policy on Operational Use of Social Media (the "Policy") (**CBP 125-136**) | Exemption 7(E) does not apply because the redacted portions are simply procedures for obtaining authorization to use masked monitoring and undercover engagement. This information cannot reasonably be expected to risk circumvention of the law. *See ACLU v. DOJ*, 880 F.3d at 492 (procedures "describ[ing] the legal authorization necessary for |

6

| Document | Application of Exemption 7(E) |
|---|---|
| | obtaining location information" and "provid[ing] instructions to investigators and prosecutors regarding how to lawfully obtain electronic location information . . . provide no information that would assist criminals in conforming their behavior to evade detection or circumvent the law"). <br><br> ***CBP is instructed to re-produce the Policy without redactions within fourteen (14) days of this order.*** |
| Information Issue Papers; CBP Use of Social Media Papers; Social Media Briefing Papers (collectively, the "Papers") <br><br> (**CBP 1-22**) | Exemption 7(E) applies because the redacted portions of these documents "describe a 'specific *means* . . . of deploying a particular investigative technique." *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Hamdan*, 797 F.3d at 777–78). |
| Privacy Threshhold Analyses (PTAs) <br><br> (**CBP 23–39, 48–57, 149–60, 296–306, 337–48, 349–58**) | Exemption 7(E) applies because the redacted portions of these documents "describe a 'specific *means* . . . of deploying a particular investigative technique." *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Hamdan*, 797 F.3d at 777–78). <br><br> These documents also contain the names and descriptions of "investigative techniques not generally known to the public." *Id.* |
| Social Media Use Templates (SMOUTs) <br><br> (**CBP 161–69, 170–77, 178–91**) | Exemption 7(E) applies because the redacted portions of these documents refer to "investigative techniques not generally known to the public." *ACLU v. DOJ*, 880 F.3d at 491. |
| Contract Documents <br><br> (**CBP 197-249**) | Exemption 7(E) applies because the redacted portions of these documents refer to "investigative techniques not generally known to the public." *ACLU v. DOJ*, 880 F.3d at 491. |

2. <u>ICE Documents</u>

| Document | Application of Exemption 7(E) |
|---|---|
| Visa Lifecycle Vetting Initiative (VLVI) <br><br> (**ICE 1680-81**) <br><br> Open Source/Media Exploitation | Exemption 7(E) applies because the redacted portions of these documents "describe a 'specific *means* . . . of deploying a particular investigative technique." *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Hamdan*, 797 F.3d at 777–78). |

7

| Document | Application of Exemption 7(E) |
|---|---|
| (**ICE 1812–13**)<br><br>Counterterrorism and Criminal Exploitation Unit Open Source/Social Media Exploitation<br><br>(**ICE 1818–26**) | |
| Email Communications<br><br>(**ICE 921, 1017**) | Exemption 7(E) applies because the redacted portions of these documents are a list of U.S. government oversees posts that use the Visa Lifecycle Vetting Initiative (VLVI) to track non-immigrant visitor's social media. The Court concludes that this information is "a 'specific *means* . . . of deploying a particular investigative technique" that can be used to circumvent law enforcement. *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Hamdan*, 797 F.3d at 777–78). |
| Open Source Collection Tools (PowerPoint presentation)<br><br>(**CBP 432–48**) | Exemption 7(E) applies because the redacted portions of this document are a list of symbols ICE uses to identify specific terrorist groups on social media. The Court concludes that this information is "a 'specific *means* . . . of deploying a particular investigative technique" that can be used to circumvent law enforcement. *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Hamdan*, 797 F.3d at 777–78). |

3. USCIS Documents

| Document | Application of Exemption 7(E) |
|---|---|
| Guidance for Use of Social Media in Field Operations Directorate Adjudications<br><br>(**USCIS 1267–78**)<br><br>Guidance for Use of Social Media in Syrian Refugee Adjudications by the USCIS's Refugee Affairs Division<br><br>(**USCIS 2344 – 53**) | Exemption 7(E) applies because the redacted portions of these documents are a list of social-media-related questions asked to visa applicants under specific circumstances. The Court concludes that this information describes "a 'specific *means* . . . of deploying a particular investigative technique" that can be used to circumvent law enforcement. *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Hamdan*, 797 F.3d at 777–78). |
| Protecting the First Amendment in Social Media Research (PowerPoint presentation) | Exemption 7(E) does not apply to the redactions on **USCIS 1878** to **USCIS 1887**. These pages do not describe with any specificity the means of deploying any particular investigative technique. |

8

| Document | Application of Exemption 7(E) |
|---|---|
| (**USCIS 1878–1906**) | Exemption 7(E) does apply to the redactions on **USCIS 1886** to **USCIS 1906** because those pages "describe a 'specific *means* . . . of deploying a particular investigative technique.'" *ACLU v. DOJ*, 880 F.3d at 491 (quoting *Hamdan*, 797 F.3d at 777–78).<br><br>***USCIS is instructed to re-produce this presentation without redactions on USCIS 1878 to USCIS 1885 within fourteen (14) days of this order.*** |

B.  Exemption 5

Exemption 5 authorizes an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has held that Exemption 5 encompasses records "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). "These include records that would be protected in litigation by the attorney work-product, attorney-client, and deliberative process privileges." *ACLU v. DOJ*, 880 F.3d at 483 (quoting *Sears*, 421 U.S. at 150–54).

    1.    Deliberative Process Privilege

The Supreme Court recently reiterated that the deliberative process privilege "protects from disclosure documents generated during an agency's deliberations about a policy, as opposed to documents that embody or explain a policy that the agency adopts." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 783 (2021). More specifically, the deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* (quoting *Sears*, 421 U.S. at 8–9). Conversely, the privilege "does not apply . . . to documents that embody a final decision, because once a decision has been made, the deliberations are done." *Id.* The key distinction is between "predecisional, deliberative documents"—which are covered by the privilege—and "documents reflecting a final agency decision and the reasons supporting it"—which are not. *Id.* at 785–86 (citing *Renegot. Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 186, 95 (1975)).

"Documents are '**predecisional**' if they were generated before the agency's final decision on the matter." *Id.* at 786. Additionally, "[a] 'predecisional' document is one prepared in order to assist an agency decisionmaker in arriving at his decision, and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009).

On the other hand, a document reflects a final agency decision and the reasons supporting it if "it communicates a policy on which the agency has settled." *Id.* Importantly, "[a] document is not final solely because nothing else follows it" because during agency deliberations "some ideas are discarded or simply languish." *Id.* Instead, to determine if a document is final, Courts must evaluate "whether the agency treats the document as its final view on the matter." *Id.* If so, the document will have "real operative effect" and will not be subject to the privilege because it "reflects 'the consummation of the agency's decision-making process' and not a 'merely tentative' position." *Id.* (first quoting *Sears*, 421 U.S. at 161; then quoting *Bennett v. Spear*, 520 U.S. 154, 177–178 (1997)). On the other hand, the document is not subject to the privilege if it "leaves the agency decisionmakers 'free to change their minds.'" *Id.* (quoting *Grumman*, 421 U.S. at 189–190).

Documents "are '**deliberative**' if they were prepared *to help the agency formulate its position*." *Sierra Club*, 141 S. Ct. at 786 (emphasis added). In other words, a document is deliberative if it "is a part of the 'deliberative process,' if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Lahr*, 569 F.3d at 979–90. A document cannot be deliberative unless it is predecisional. *Sierra Club*, 141 S. Ct. at 786.

The first step in the inquiry into whether materials are part of the deliberative process "is to examine the context in which the materials are used." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Wolfe v. Department of Health & Human Servs.*, 839 F.2d 768, 774 (D.C.Cir. 1988) (en banc)). Courts have recognized that "[t]o fall

10

within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment." *Id.* at 1435; *Habeas Corpus Res. Ctr. v. U.S. Dep't of Just.*, 2008 WL 5000224, at *1 (N.D. Cal. 2008) ("The deliberative process privilege 'does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment.'") (citing *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 80 (2d Cir. 2002) (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1248 (4th Cir. 1994)). The D.C. Circuit further explained the importance of framing the deliberative process inquiry around whether a document is related to the agency's policy-oriented judgment to the purpose of Exemption 5:

> Homing in on, and sheltering material implicating officials' exercise of judgment about policy matters secures the internal agency "give-and-take" Congress meant to protect when it enacted Exemption 5. Our decisions recognize that the process of selecting among alternative policies can be delicate and audience-sensitive, susceptible to distortions and vulnerable to fudging when the deliberators fear or expect public reaction. Inquiring whether the requested materials can reasonably be said to embody an agency's policy-informed or -informing judgmental process therefore helps us answer the "key question" in these cases: whether disclosure would tend to diminish candor within an agency.

*Petroleum Info. Corp.*, 976 F.2d at 1435 (citations and footnote omitted). Accordingly, "the deliberative process privilege has been held to cover all 'recommendations, draft documents, proposals, suggestions and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency,' as well as documents which would 'inaccurately reflect or prematurely disclose the views of the agency.'" *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir. 1988) (quoting *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)

Considering these standards, the Court reviewed the documents at issue *in camera* and determined that the deliberative process privilege in Exemption 5 applies as follows:

///
///
///
///

1.     a.     <u>CBP Documents</u>

| Document | Application of Exemption 5 |
|---|---|
| Privacy Threshold Analyses (PTAs)<br><br>(**CBP 23–39, 48–57, 149–60, 296–306, 337–48, 349–58**) | The deliberative process privilege applies to the redacted portions of this document because they discuss CBP's draft plans, policy recommendations, and pilot programs. |
| Issue Papers<br><br>(**CBP 1-22**) | The deliberative process privilege does not apply to the portions of **CBP 2, 17** and **19** that list the acronyms of sub-agencies that reviewed the Social Media Working Group's draft Social Media Strategy. The redacted language identifies sub-agencies involved in the review of the draft strategy. The materials are devoid of *any* description of the substance of the draft or the views of any of the sub-agencies (let alone "the personal opinions" of any particular "writer," *see Nat'l Wildlife Fed'n*, 861 F.2d at 1118). The *fact* that sub-agencies were involved in reviewing the draft strategy cannot, at least in the absence of any explanation by the government, "reasonably be said to embody [CBP's] policy-informed or -informing judgmental process[.]" *Petroleum Info. Corp.*, 976 F.2d at 1435 (quotation marks omitted).<br><br>The identity of participants in a discussion of draft policy may be appropriately subject to the deliberative process privilege if disclosure of the *fact* of a participant's involvement "would tend to diminish candor within an agency." *Id.* It is Defendants' burden to make such a showing in order to assert the deliberative process privilege under Exemption 5 and overcome FOIA's "strong presumption in favor of disclosure[.]" *Civil Beat Law Ctr.*, 929 F.3d at 1084. Defendants have not met their burden here. They provide no rationale for why the disclosure that sub-agencies within DHS were involved in reviewing DHS's draft policy for Social Media Strategy would chill honest discussion within the agency. And the redacted materials are certainly not based upon "personal opinions" of an agency official. *National Wildlife Fed'n*, 861 F.22d at 1118.<br><br>Defendants' Vaughn Index asserts the deliberative process privilege for these materials principally to protect "[d]escriptions of analyses" and "[d]escriptions of content and status of a draft . . . report." Docket No. 127-1. The government does not justify why the *fact* of the participation of particular sub-agencies in the review of the draft policy is privileged. Indeed, elsewhere in these same materials, Defendants disclose the existence of the DHS Social Media |

12

| Document | Application of Exemption 5 |
|---|---|
| | Task Force, collaboration between the Task Force, CBP and DHS Oversight bodies, and the creation of a CBP-wide working group to assess social media strategy. **CBP 2-3, 16-17.** Defendants fail to explain why the nature of the redacted information is different from the information Defendants already disclosed about sub-agency involvement in the crafting of the Social Media Strategy. Defendants do not describe why the fact of the involvement of the sub-agencies mentioned in **CBP 2, 17** and **19** warrant exemption under the deliberative process privilege. Thus, the deliberative process privilege does not apply.<br><br>***CBP is instructed to remove redactions from the following text at CBP 2, 17 and 19 within fourteen (14) days of this order:***<br><br>**CBP 2 and 19:** Remove redactions from the following: "The Social Media Working Group drafted a Social Media Strategy which has been reviewed and signed by OI, OFO, USBP, AMO, PDO, OIT, OPR, and OTD and is currently under final review with CBP OCC. This draft strategy proposes paths forward to advance the operational use of social media"<br><br>**CBP 17:** Remove redactions from the following: "The Social Media Working Group drafted a Social Media Strategy, which has been reviewed by OI, OFO, USBP, AMO, PDO, OIT, OPR and OTD" and "This draft strategy highlights the areas of focus and proposes paths forward to advance the operational use of social media"<br><br>The deliberative process privilege applies to the remaining redacted portions of this document because they discuss CBP's draft plans, policy recommendations, and pilot programs. |

b.   ICE Documents

| Document | Application of Exemption 5 |
|---|---|
| Contract Email<br><br>(**ICE 62-63**) | The deliberative process privilege applies to the redacted portions of this document, which appear to be draft language for a potential contract for a particular project. |
| Tasking Request Emails | The deliberative process privilege applies to the redacted portions of this document, which include draft |

13

| Document | Application of Exemption 5 |
|---|---|
| (**ICE 1012–14**) | recommendations for inclusion in a request for information to develop an internal briefing paper regarding DHS's use of Facebook data.  The redacted emails relate to an internal request for information in order to develop an internal briefing.<br><br>The documents in question are unlike early-stage compilations of facts that have  been found to be insufficiently substantive to qualify as "deliberative." *See Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 159 (D.D.C. 2009). |
| Procurement Sensitive: Performance Work Statement Visa Lifecycle Vetting Initiative<br><br>(**ICE 596–640**) | The deliberative process privilege applies to the redacted portions of this entire document because it appears to be a draft of policy. |

    c.    <u>USCIS Documents</u>

| Document | Application of Exemption 5 |
|---|---|
| First Amendment Email (Subject Line: "USCIS authority to collect/use social media information relating to the exercise of First Amendment protected activities (draft).")<br><br>(**USCIS 1571**) | The deliberative process privilege applies to the redacted portions of this email, which appear to be draft responses to potential questions about a USCIS policy on the use of social media. |
| Procurement Email (Subject line: "DHS procurement of SM services in Enhanced Vetting initiative")<br><br>(**USCIS 1711–12**) | USCIS reprocessed and disclosed previously redacted portions of **USCIS 1711-12**.  Docket No. 143-1.<br><br>The deliberative process applies to the remaining redacted portions of these emails, which appear to include the opinions of agency officials involved in policymaking and upcoming decisions regarding the policy discussed, the Enhance Vetting Initiative.  *See* Docket No. 129 § 9. |

14

2. <u>Attorney-Client Privilege</u>

Not all communications with lawyers are privileged. *See United States v. Martin*, 278 F.3d 988, 999–1000 (9th Cir. 2002), *as amended on denial of reh'g* (Mar. 13, 2002) (citing *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed" to the following circumstances: "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *Id.* (first quoting *Weil v. Inv. Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981); then quoting 8 Wigmore, Evidence § 2292, at 554 (McNaughton rev.1961)); *see also United States v. Plache*, 913 F.2d 1375, 1379 n. 1 (9th Cir. 1990) (same elements). The burden is on the party asserting the privilege to establish all these elements. *Id.*

Considering these standards, the Court reviewed the documents at issue *in camera* and determined that the attorney-client privilege in Exemption 5 applies as follows:

a. <u>USCIS Documents</u>

| Document | Application of Exemption 5 |
|---|---|
| Summary Paper<br><br>(**USCIS 1475–77**) | The attorney-client privilege applies because the withheld document is a memorandum with legal advice about potential constitutional issues that might arise from USCIS's use of social media. |
| First Amendment and Procurement Emails<br><br>(**USCIS 1571, 1711–12**) | The attorney client privilege applies to **USCIS 1571**, which is an email communication with legal advice about the first amendment implications of USCIS's use of social media.<br><br>USCIS reprocessed and disclosed previously redacted portions of **USCIS 1711-12**. Docket No. 143-1. The attorney-client privilege does not apply to **USCIS 1711** to **1712** because there is no legal advice at issue in those emails. As discussed above, the remaining redactions are appropriate under the deliberative process privilege. |

C.     CBP's *Vaughn* Index

"Specificity is the defining requirement of the *Vaughn* index." *Wiener*, 943 F.2d at 979. It "afford[s] the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review [*de novo*], the soundness of the withholding." *Id.* at 977; *see also Lahr*, 569 F.3d at 989 (a *Vaughn* index "must be detailed enough for the district court to make a *de novo* assessment of the government's claim of exemption"). To serve that purpose, it must contain "a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." *Wiener*, 943 F.2d at 977–78. "Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987). Similarly, "boilerplate explanations," that do not "tailor the explanation to the specific document withheld," are insufficient and pose an "obvious obstacle to effective advocacy." *Wiener*, 943 F.2d at 978–79. On the other hand, an agency "must disclose as much information as possible without thwarting the purpose of the exemption claimed." *Citizens Comm'n on Human Rts. v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (1995); *see also Hamdan*, 797 F.3d at 775 ("*Wiener* demands that the government disclose what it can without 'thwarting the claimed exemption's purpose.'" (quoting *Weiner*, 943 F.2d at 979)).

Plaintiffs bring a general challenge to CBP's *Vaughn* index because it "repeats non-specific recitations of the standard for the FOIA exemptions at issue, followed by multiple non-specific bullets drawn from a master list of reasons for withholding content that are set forth in [Mr. Howard's declaration]." Pls.' Mot. at 33. Indeed, the CBP's *Vaughn* index is unworkable. That being said, after conducting an *in camera* review of the documents, the Court need not ask CBP to update its *Vaughn* index in order to rule on the parties' disputes.

///

///

///

///

///

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** the parties cross-motions for summary judgment. Defendants are instructed to produce unredacted versions of certain documents identified above within fourteen (14) days of this order.

This order disposes of Docket Nos. 98 and 108.

**IT IS SO ORDERED**.

Dated: September 22, 2021

_____
EDWARD M. CHEN
United States District Judge